UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** )<br>          )<br>      v.    )<br>          )<br>**GERARDO GONZALEZ-VALENCIA,** )<br>   also known as "Lalo," "Flaco," )<br>   "Silver," "Silverio," "Eduardo," and )<br>   "Laline,"    )<br>          )<br>      **Defendant.** ) | **CRIMINAL NO.: 16-CR-065** |

## GOVERNMENT'S MOTION FOR PRE-TRIAL DETENTION

The United States respectfully moves to detain the Defendant, Gerardo Gonzalez-Valencia, pending trial, pursuant to 18 U.S.C. § 3142(e)(1). The Defendant is alleged to have been a high-ranking leader of an international drug trafficking organization ("DTO"). As discussed below, the Defendant is charged with drug trafficking offenses that carry a presumption that no condition or combination of conditions will sufficiently guarantee the Defendant's presence in court and protect the safety of the community. Further, the Defendant faces significant jail time, including a mandatory minimum sentence of ten years on Count One of the Indictment; potentially has access to substantial amounts of drug proceeds in the form of untraceable cash; and has the resources and connections necessary to allow him to flee the jurisdiction. Accordingly, the Defendant presents a serious risk of flight and danger to the community that cannot be mitigated by any condition or combination of conditions and should be detained pending trial.

## BACKGROUND

On April 19, 2016, a federal grand jury sitting in the District of Columbia returned and filed an Indictment against the Defendant, charging him with conspiracy to distribute five

kilograms or more of a mixture or substance containing a detectable amount of cocaine and conspiracy to distribute five hundred grams or more of a mixture or substance containing a detectable amount of methamphetamine, knowing and intending that such substances would be unlawfully imported into the United States from a place outside thereof, in violation of Title 21, United States Code, Sections 959(a), 963, and Title 18, United States Code, Section 2.

Based on the charges, the United States District Court for the District of Columbia issued a warrant for the Defendant's arrest on April 19, 2016. The Defendant was arrested on local charges in Uruguay on April 21, 2016 and was extradited from Uruguay to the District of Columbia on May 14, 2020. The Government made his initial appearance and was arraigned before the Honorable G. Michael Harvey on May 15, 2020.

The Indictment in this case is the product of an extensive, long-term and ongoing investigation conducted by the Drug Enforcement Administration ("DEA") into the operations of two large-scale DTOs based in Jalisco, Mexico known as the Cartel de Jalisco Nueva Generacion ("CJNG"), headed by Nemesio Oseguera Cervantes ("Mencho"), and Los Cuinis Drug Trafficking Organization ("Los Cuinis"), headed by the Defendant's brother Abigael Gonzalez Valencia ("Abi"). Los Cuinis and CJNG routinely operate together under a close alliance. The close alliance between Los Cuinis and CJNG is further strengthened by familial ties between the criminal organizations: Mencho, the leader of CJNG, is married to Rosalinda Gonzalez Valencia, who is Abi's and the Defendant's sister. Together, Los Cuinis and CJNG form one of the largest, most dangerous, and prolific drug cartels in the world. They are responsible for trafficking ton quantities of illegal drugs into the United States and employing extreme violence to further that objective.

If this matter were to proceed to trial, the Government intends to prove that the Defendant was a high-ranking leader of Los Cuinis whose drug trafficking activities spanned over a decade and extended from South America, through Mexico, and into the United States. The ultimate objective of the conspiracy was to import illegal drugs, namely cocaine and methamphetamine, into the United States and repatriate drug proceeds to the Defendant and his associates in Mexico. The Government's evidence at trial will consist of testimony from cooperating witnesses regarding the Defendant's drug and weapons trafficking activities; lawfully intercepted communications in which the Defendant reveals his participation in drug trafficking activities; and testimony from law enforcement officers about the seizure of narcotics shipments that the Defendant helped to organize and in which the Defendant invested.

## ARGUMENT

### The Bail Reform Act

Under the Bail Reform Act, 18 U.S.C. §§ 3141 et seq., federal courts must order a defendant's pre-trial detention upon determining that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence. § 3142(f); *see United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987). A finding of risk of flight must be supported by a preponderance of the evidence. *See United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996). If the Court finds that no conditions will reasonably assure both the appearance of the defendant and the safety of any other person and the community, the Court shall order the defendant detained. § 3142(e)(1). Thus, detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both.

The Bail Reform Act lists the following factors as relevant to the determination of whether detention is appropriate: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence; (3) the history and characteristics of the defendant, including family ties, financial resources, length of residence in the community, community ties, and past conduct; and (4) the seriousness of the danger posed by the defendant's release. *See* § 3142(g). Under governing case law, the government may proceed by factual proffer in lieu of presenting live witnesses at a detention hearing pursuant to the Bail Reform Act. *See United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

There is a significant danger to the community and risk of flight in this case due to the Defendant's association with two violent and well financed international DTOs, the weight of the evidence against him, his complete lack of ties to the district, the significant financial resources he has at his disposal, and his connections to other countries in Central and South America. Notably, pretrial detention has also been ordered in two cases pending in this District related to the present case pursuant to LCrR 57.12. *See United States v. Ruben Oseguera Gonzalez*, No. 16-cr-229, Feb. 26. 2020, Minute Order; *United States v. Jessica Johanna Oseguera Gonzalez*, No. 20-cr-40, Dkt. No. 19 (Mar. 5, 2020) (opinion and order reversing magistrate judge's release order and ordering pretrial detention), *aff'd United States v. Jessica Johanna Oseguera Gonzalez*, No. 20-3018 (D.C. Cir. Apr. 29, 2020). The Defendant is affiliated with the same drug trafficking organization, CJNG, and is the uncle to both defendants in the related cases.

### **Statutory Presumption of Dangerousness and Risk of Flight**

Under § 3142(e)(3)(A), there is a rebuttable presumption that no conditions will assure a defendant's presence as to both flight risk and danger if the defendant is charged with a Controlled Substances Act offense with a statutory maximum of 10 years or more. In the Indictment, the

4

Defendant is charged with an offense for which the maximum term of imprisonment is life as prescribed by the Controlled Substances Act. Thus, the presumption under § 3142(3) applies here.

An indictment charging a qualifying offense, as is the case here, is sufficient to trigger this rebuttable presumption. *See Smith*, 79 F.3d at 1210-1211; *United States v. Mosuro*, 648 F. Supp. 316, 318 (D.D.C. 1986). When the presumption is triggered, it operates "at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985). However, the presumption is not erased when a defendant proffers evidence to rebut it; rather the presumption remains as an evidentiary finding militating against release and to be weighed along with all the evidence relating to the factors listed in § 3142(g). *See United States v. Cherry*, 221 F. Supp. 3d 26, 32 (D.D.C. 2016) (citing *United States v. Ali*, 793 F. Supp. 2d 386, 391 (D.D.C. 2011) and *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)). In other words, "it does not follow that the effect of the presumption disappears as soon as the defendant produced some contrary evidence. Congress framed the flight presumption in light of its general finding, based on extensive testimony, that flight to avoid prosecution is particularly high among those charged with major drug offenses." *United States v. Martir*, 782 F.2d 1141, 1144 (2d Cir. 1985); *see also Cherry*, 221 F. Supp. 3d at 32; *Ali*, 793 F. Supp. 2d at 391. Indeed, the concept of "dangerousness" in relation to serious drug crimes encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "harm to society caused by [continued] narcotics trafficking." *United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985); *see* S. Rep. No. 225, 98th Cong., 1st Sess. 12 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3195 ("[L]anguage referring to safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community . . . . The Committee intends that

the concern about safety be given a broader construction than merely danger of harm involving physical violence."). For the reasons addressed below, the Defendant is unable to rebut the presumption that no condition or combination of conditions will reasonably assure his appearance and the safety of the community.

## Nature and Circumstances of the Offenses Charged

The factual proffer detailed herein is derived from a DEA investigation into the Defendant. Throughout the course of the investigation, federal law enforcement agents employed a variety of techniques to investigate the DTO of which the Defendant is a leader, including Title III wiretap interceptions, debriefings of confidential sources and cooperating witnesses, surveillance and coordination with foreign law enforcement partners. Potential witnesses against the Defendant include co-conspirators who worked with him in connection with the transportation and trafficking of illicit narcotics.

At trial, the Government would show that the Defendant was a high-ranking leader of the Los Cuinis, a major Mexican DTO. Los Cuinis works in close alliance with CJNG and is a primary source of CJNG's financial funding. Together they form one of the largest, most dangerous drug cartels currently operating in Mexico and are responsible for trafficking tonnage quantities of cocaine, methamphetamine, and heroin into the United States, as well as for violence that has caused significant loss of life in Mexico. As a high-ranking leader of the Los Cuinis DTO, the Defendant employed and supervised numerous individuals who worked at his behest to facilitate: (a) the manufacture and production of methamphetamine on a large scale, including securing precursor chemicals to manufacture methamphetamine for unlawful importation into the United States; (b) the unlawful importation of cocaine into Mexico for the further unlawful importation into the United States; (c) the laundering of drug proceeds; (d) the trafficking of weapons to further

the DTO's drug trafficking activities; and (e) acts of violence in furtherance of the drug trafficking conspiracy. The Defendant has been involved in large-scale drug trafficking since approximately 2003 and has acquired substantial assets in Central and South America.

### History and Characteristics of the Defendant

The Defendant's prior history and characteristics establish his serious risk of flight in this case. A determination of risk of flight must be supported by a preponderance of the evidence. *Xulam*, 84 F.3d at 442. Here, there is a significant risk of flight in this case due to the potential sentence the Defendant faces, as well as his lack of ties to this District or the United States.

The possibility of a severe sentence is an important factor in assessing a defendant's incentive to flee. *See United States v. Hong Vo*, 978 F. Supp. 2d 41, 43 (D.D.C. 2013) (holding the nature and circumstances of the offenses charged against defendant strongly favor detention because of the substantial incentive to flee the United States); *United States v. Anderson*, 384 F. Supp. 2d 32, 36 (D.D.C. 2005) (holding the gravity of the offenses and the potential prison term create a considerable incentive for the defendant to avoid prosecution and the likelihood of imprisonment in the event of a conviction); *see also Ali*, 793 F. Supp. 2d at 392. As discussed above, the Defendant faces a mandatory minimum sentence of 10 years if convicted on the count charged in the Indictment.

Federal courts have repeatedly recognized that "[f]light to avoid prosecution is particularly high among persons charged with major drug offenses," because "drug traffickers often have established ties outside the United States . . . [and] have both the resources and foreign contacts to escape to other countries." *See, e.g., United States v. Alatishe*, 768 F.2d 364, 370 n.13 (D.C. Cir. 1985) (citing S. Rep. No. 98-225 at 20 (1983), reprinted in 1984 U.S.C C.A.N. 1, 23). This is nowhere more evident than in the type of transnational organized crime which the Defendant has

engaged in, which often spans multiple countries and has the potential to generate millions of dollars in gross proceeds from the sale of potent controlled substances.  Indeed, "Congress made 'risk of flight' a grounds for detention because it believed that there were major drug dealers to whom the posting and losing of even large amounts of money bond were not a deterrent, but a mere cost of doing business." *United States v. Battle*, 59 F. Supp. 2d 17, 19 (D.D.C. 1999).  Even if the Defendant were to execute an agreement to forfeit a significant amount of money if he failed to appear, the financial resources of the CJNG and/or Los Cuinis are so vast that its loss would be insignificant.

There is a serious risk that the Defendant would attempt to leave the United States if given the opportunity. Although the Defendant is a dual U.S and Mexican citizen, he has no known assets, no employment, and no property in the United States.  Further, he has no known lawful contacts in this District and thus, has no reason to remain in the District of Columbia.  On the contrary, the Defendant has substantial familial and financial ties outside the United States, increasing the likeliness of flight from the United States.  The Defendant has been brought here under the authority of this Court solely for the purpose of federal prosecution.  Not only does the Defendant face serious drug charges in this District, but he also is an indicted fugitive in the Northern District of California.  In January 2001, while serving a sentence for use of a communication facility in committing possession with intent to distribute methamphetamine, the Defendant escaped from a halfway house in Oakland, California and was subsequently charged with escape in violation of Title 18, United States Code, Section 751.  *See United States v. Valencia-Gonzalez*, Case No. 4:06-cr-106 (N.D. Cal.); Exhibit 1.  In short, the Defendant has no reason to remain in this country other than to face criminal charges, and he therefore represents an overwhelming risk of flight if released from custody.  Additionally, members of the CJNG and/or

Los Cuinis may aid and assist the Defendant in fleeing justice. Those criminal organizations maintain routes for smuggling illegal proceeds from their narcotics trafficking activities out of the United States and into Mexico. If the Defendant is able to cross into Mexico, the CJNG and Los Cuinis DTOs exert a high degree of corrupt control over various municipalities and states in Mexico, and the DTOs could be able to provide the Defendant with a certain measure of freedom from arrest, if he returned to Mexico.

In sum, the Defendant has the means, motive, and opportunity to flee the country and should be detained without bail. *See Hong Vo*, 978 F. Supp. 2d at 43 (finding detention warranted because not only was defendant indicted on serious charges carrying a severe punishment potential, but defendant had ability to flee the United States); *see also Anderson*, 384 F. Supp. 2d at 36 (finding detention warranted because not only did the defendant have the ability to flee D.C. and the United States, but also had the ability to live comfortably in foreign jurisdiction and evade capture due to his substantial assets abroad).

## Safety of the Community

A determination of dangerousness to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). Federal courts have recognized that drug traffickers, particularly those in positions of authority, are likely to continue engaging in drug related activities if released on bail and thus constitute a danger to the community. *See, e.g., Alatishe*, 768 F.2d at 370 n.13 (citing S. Rep. No. 98-225 at 20 (1983), reprinted in 1984 U.S.C.C.A.N. 1, 23); *accord United States v. Creekmore*, No. CR97-624-M, 1997 WL 732435 (D.D.C. Sep. 25, 1997). The Defendant was a high-level leader of an international DTO which imported cocaine and methamphetamine, dangerous and addictive controlled substances, into the United States for distribution to the United States public at large. The DTO is also extremely violent and its

members routinely commit murder, kidnappings, assault, and other violent acts. The Government has information personally implicating the Defendant in acts of violence. Accordingly, if he were released the Defendant would pose a significant risk to the safety of the community, both here in the United States and abroad.

## Weight of the Evidence

Where the evidence of guilt is strong, it provides a considerable additional incentive to flee. *See United States v. Medina Coronado*, 588 F. Supp. 2d 3, 5 (D.D.C. 2008) (finding detention warranted because government's evidence was strong against the defendant); *see also United States v. Vergara*, 612 F. Supp. 2d 36, 37 (D.D.C. 2009).

The evidence against the Defendant here is particularly strong. The evidence includes testimony of multiple witnesses with personal knowledge of the Defendant's role in this international drug trafficking conspiracy; intercepted communications between the Defendant and his co-conspirators regarding the trafficking of narcotics; and testimony and evidence about the seizure of narcotics shipments organized and funded by the Defendant. Given the strength of the evidence against him, there is no condition or combination of conditions that would assure the Defendant's appearance in court or the safety of the community.

## Conclusion

For the foregoing reasons, the Government respectfully submits that the Defendant cannot rebut the Government's proof and proffer that supports the presumption that "no condition or

//

//

//

combination of conditions will reasonably assure [his] appearance . . . as required and the safety of the community." 18 U.S.C. § 3142(e).  Accordingly, he should be detained pending trial.

    Respectfully submitted this 19th day of May, 2020.

                                         MARLON COBAR, Acting Chief
                                         Narcotic and Dangerous Drug Section
                                         Criminal Division
                                         United States Department of Justice

By:     /s/_____
            Kaitlin Sahni, Trial Attorney
            Brett Reynolds, Trial Attorney
            United States Department of Justice
            Narcotic and Dangerous Drug Section
            145 N Street, Northeast
            East Wing, Second Floor
            Washington, D.C. 20530
            Kaitlin.Sahni@usdoj.gov
            (202) 514-0917

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing was sent via ECF to counsel of record for the Defendant, this 19th day of May, 2020.

By:    /s/
       Kaitlin Sahni
       Trial Attorney
       Narcotic and Dangerous Drug Section
       Criminal Division
       U.S. Department of Justice