UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**GERARDO GONZALEZ-VALENCIA,**<br><br>**Defendant.** | **CRIMINAL NO. 16-CR-065 (BAH)** |

**DEFENDANT GERARDO GONZLAEZ-VALENCIA'S MOTION TO STRIKE
IMPROPER ALIASES AND RELATED EVIDENCE AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

NOW COMES, the Defendant Gerardo Gonzalez-Valencia and respectfully moves this Court to strike from the Indictment (Doc. 1) any references to supposed aliases. Mr. Gonzalez-Valencia further moves this Court to preclude the United States of America (the "Government") from offering evidence related to the improper aliases pursuant to Rule 7(d) of the Federal Rules of Criminal Procedure ("Rules"). References to any of these supposed aliases is unduly prejudicial to Mr. Gonzalez-Valencia, unsupported by the evidence, and would unnecessarily confuse the jury.

**I.     BACKGROUND**

The Government has charged Mr. Gonzalez-Valencia with offenses related to his alleged involvement in a drug distribution conspiracy. *See* Doc. 1. Immediately following Mr. Gonzalez-Valencia's true name in the caption of the Indictment, the Government adds several alleged aliases, which it repeats in Count I of the Indictment: "Lalo," "Flaco," "Silver," "Silverio," "Eduardo," and "Laline." *Id.* at 1. The Indictment does not again mention any of the alleged aliases in relation

1

to Mr. Gonzalez-Valencia's alleged conduct and does not otherwise identify how the alleged aliases are relevant to the charged offenses.  *See generally id.*

## II. LEGAL STANDARD

Rule 7(d) authorizes courts to "strike surplusage from the indictment or information."  Fed. R. Crim. P. 7(d).  Relatedly, Rule 7(c)(1) states that an indictment "must be a plain, concise and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c).  Consequently, a court should grant a motion to strike surplusage "if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial."  *United States v. Rezaq*, 134 F.3d 1121, 1134 (D.C. Cir. 1998) (quoting 1 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 127, at 426 (1982)); *see also United States v. Oakar*, 111 F.3d 146, 157 (D.C. Cir. 1997) (courts should strike surplusage that is "irrelevant and prejudicial").

"The use of aliases in indictments is disfavored, and aliases should only be retained when the Government intends to introduce evidence of an alias and the use of that alias is necessary to identify the defendant in connection with the acts charged."  *United States v. Hsia*, 24 F. Supp. 2d 14, 25 (D.D.C. 1998) (internal quotation marks and citations omitted) (finding that references to an alias "in the caption and the introductory paragraph of the indictment are unnecessary and prejudicial"); *see also United States v. Wilkerson*, 456 F.2d 57, 59 (6th Cir. 1972) ("Only when proof of an alias is relevant to identifying the defendant should a court allow its inclusion in the indictment and its subsequent introduction at trial.").  "[E]ven when relevant, a defendant's alias may be inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice."  *United States v. Brown*, 636 F. App'x 157, 159 (4th Cir. 2016) (citing *United States v. Farmer*, 583 F.3d 131, 135 (2d Cir. 2009)); *see also United States v. Grayson*, 166 F.2d 863, 867 (2d Cir. 1948) (the use of an alias can "arouse suspicion that the accused is a person who has

found it useful or necessary to conceal his identity"). "And even when admission of the nickname was found proper, the courts went on to consider the frequency, context, and character of the use that the prosecution made of it." *Farmer*, 583 F.3d at 146 (collecting cases); *see also United States v. Berry*, 92 F.3d 597, 600–01 (7th Cir. 1996) (affirming a finding of undue prejudice thus requiring a new trial because the jury received an unauthenticated "transcript identif[ying] the defendant as the speaker" even though "there was not a significant amount of identification evidence" which therefore left the transcript's identification uncorroborated).

### III.    ANALYSIS

The Court should strike all aliases from the indictment and preclude the Government from offering evidence related to any improper alias at trial. To that end, the Government lacks sufficient evidence that Mr. Gonzalez-Valencia has used any of the supposed aliases to outweigh the prejudicial harm that the introduction of any alleged alias would inflict upon Mr. Gonzalez-Valencia. *See Grayson*, 166 F.2d at 867 (the introduction of aliases may unjustifiably "arouse suspicion" of an individual); *see also* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). Further, the Government is unable to demonstrate that "the use of [any] alias is necessary to identify the defendant in connection with the acts charged." *Hsia*, 24 F. Supp. 2d at 25.

In fact, beyond introducing the alleged aliases alongside Mr. Gonzalez-Valencia's name, the Indictment never again mentions any of the terms. *See generally* Doc. 1. So the inclusion of aliases in the Indictment is pure surplusage, which does nothing "to identify the defendant in connection with the acts charged." *See Hsia*, 24 F. Supp. 2d at 25 (striking an alias from an

indictment, in part, because "there are no allegations in the . . . indictment that refer to [the defendant] by that name, suggesting that neither she nor any of her co-conspirators ever used the [alias] in connection with the acts charged in the indictment."). And, even if the supposed aliases could show that someone using a particular alias engaged in certain conduct, the Government is unable to specifically link the terms to Mr. Gonzalez-Valencia. *See United States v. Ramos*, 839 F. Supp. 781, 788 (D. Kan. 1993) (granting a motion to strike "[b]ecause the government has failed to show the relevance of the aliases" without showing "that the aliases here are used in a way to identify the defendant," which impermissibly leaves the court "to speculate" whether the "use of the aliases on these documents somehow identifies the defendant" or someone else entirely). Indeed, the terms in the Indictment could refer to any number of people, so failing to strike and preclude reference to the uncertain terms would unduly prejudice Mr. Gonzalez-Valencia by leading the jury to believe he is named in conversations when the Government lacks the foundation for such an inference.

Specifically, Mr. Gonzalez-Valencia has received no evidence containing the term "Laline" and the only evidence received related to the term "Eduardo" is conclusory BlackBerry message affidavits attributing a device to "Eduardo Gonzalez-Valencia" with no further explanation. So, the Government cannot reliably identify Mr. Gonzalez-Valencia by any of those supposed aliases. Moreover, "Lalo" and "Flaco" are particularly common nicknames in Latin America. Attributing such common nicknames to a specific individual without more evidence to support the link therefore provides limited probative value of any material fact and unnecessarily prejudices Mr. Gonzalez-Valencia before the jury which could improperly ascribe conduct by someone else using a common nickname to Mr. Gonzalez-Valencia without proper foundation for the identification.

Further, the BlackBerry messages the Government has provided that use nicknames do so in an inconsistent and confusing manner. For instance, BlackBerry messages include conversation referring to multiple people as "Flaco" during the same conversation. And the Government conceded to defense counsel that Mr. Gonzalez-Valencia cannot possibly be all of the individuals called "Flaco" in the messages. Without any indication of how the Government would differentiate which "Flaco" a dialogue refers to at different points, the introduction of evidence referring to multiple people called "Flaco" adds unnecessary confusion. *See* Fed. R. Evid. 403. Again, the Government's inability to demonstrate that a particular nickname applies to Mr. Gonzalez-Valencia renders improper the inclusion of the nickname in the Indictment and admission of any related evidence as unduly prejudicial, unreliable, and irrelevant.

Likewise, the Government has provided BlackBerry messages that mention "Silverio." But the Government has offered no evidence to demonstrate that Mr. Gonzalez-Valencia is in fact "Silverio." To the contrary, the Government has admitted that it does not have a single witness who knows Mr. Gonzalez-Valencia as "Silverio"—the screen name that the Government attributes to Mr. Gonzalez-Valencia without adequate foundation in Blackberry messages. *See Berry*, 92 F.3d at 600–01. Instead, the Government relies on a convoluted rationale that because it believes "Silverio" is the brother of "Boss" (who the Government has identified as Mr. Gonzalez-Valencia's brother, Abigael Gonzalez-Valencia) he must be Mr. Gonzalez-Valencia. Yet, that rationale neglects the fact that Mr. Gonzalez-Valencia has nine brothers, so the nickname could apply to any number of siblings. And "Silver" is simply a derivation of "Silverio." So, without a basis upon which to conclude that "Silverio" is actually Mr. Gonzalez-Valencia, the rationale for including "Silver" in the Indictment and allowing any evidence concerning "Silver's" alleged acts fails as well.

Accordingly, the inclusion of aliases in the Indictment without the requisite foundation is irrelevant, highly prejudicial, and unnecessarily confuses who may have committed certain acts. The introduction of evidence using the supposed aliases to ascribe conduct to Mr. Gonzalez-Valencia in an unreliable manner further prejudices Mr. Gonzalez-Valencia and improperly expands the scope of evidence beyond the bounds of admissibility.  *See* Fed. R. Evid. 403.

## IV.   CONCLUSION

Based on the foregoing, Mr. Gonzalez-Valencia respectfully requests that the Court strike all supposed aliases from the Indictment and further preclude the Government from offering evidence at trial using the terms because it cannot prove that the terms in fact refer to Mr. Gonzalez-Valencia.  Any evidence purporting to identify Mr. Gonzalez-Valencia by a nickname or supposed alias without demonstrating that the evidence is necessary to identify Mr. Gonzalez-Valencia in connection with the acts charged is highly prejudicial, irrelevant, confusing, and therefore inadmissible.

[*Remainder of page intentionally left blank*]

Dated: October 4, 2021

                        Respectfully submitted,

**BROWN RUDNICK LLP**

By: _/s/ Stephen A. Best_
Stephen A. Best (DC Bar No. 428447)
Tiffany B. Lietz (Admitted *Pro Hac Vice*)
Brown Rudnick LLP
601 13th Street, NW, Suite 600
Washington, DC 20005
Telephone: (202) 536-1737
Email: sbest@brownrudnick.com

**The L●S LAW FIRM**
Lilly Ann Sanchez (admitted *pro hac vice*)
Four Seasons Tower, Suite 1200
1441 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 503-5503
Email: lsanchez@thelsfirm.com

*Counsel for Defendant Gerardo Gonzalez-Valencia*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 4, 2021, I electronically filed the foregoing document with the Clerk of the U.S. District Court for the District of Columbia by using the CM/ECF system. All participants registered through the Court's electronic filing system will be served by the CM/ECF system as required to be served by Federal Rule of Civil Procedure 5(a).

                          */s/ Stephen A. Best*

                          Stephen A. Best
                          Brown Rudnick LLP
                          601 13th Street, NW, Suite 600
                          Washington, DC 20005
                          Telephone: (202) 536-1737
                          Email: sbest@brownrudnick.com

                          *Counsel for Defendant Gerardo Gonzalez-Valencia*