UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GERARDO GONZALEZ-VALENCIA,<br>     Defendant. | CRIMINAL NO. 16-CR-065<br>(BAH) |

**DEFENDANT GERARDO GONZALEZ-VALENCIA'S MOTION TO EXCLUDE
EVIDENCE AND MENTION OF THE 2009 SHARK INCIDENT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

  NOW COMES, the Defendant Gerardo Gonzalez-Valencia, by and through undersigned counsel, and moves to exclude evidence and mention of the 2009 shark incident (the "Shark Incident") pursuant to Rule 12 of the Federal Rules of Criminal Procedure. In June 2009, media outlets reported that Mexico's navy seized shark carcasses filled with slabs of cocaine through the search of a container ship in southern Mexico. *See* Reuters Staff, *Cocaine haul found hidden in frozen sharks*, Reuters (June 17, 2009) (appended as Exhibit A). The Government apparently believes that the Shark Incident is connected to Mr. Gonzalez-Valencia and seeks to offer evidence of it at trial. However, the Government has provided no evidence to verify the seizure of cocaine in the first instance. Namely, the Government produced no evidence concerning the chain of custody of the shark carcasses, no lab reports, and no other proof that the substance stuffed inside the sharks was indeed cocaine. Without adequate foundation or chain of custody concerning the alleged cocaine-stuffed sharks, the Court should preclude the government

from presenting evidence concerning, or otherwise mentioning, the Shark Incident.[1]

I.  **LEGAL STANDARD**

"It is axiomatic that the party offering testimony or physical evidence has the burden of laying the factual foundation that satisfies the requirements for its admission." 1 Jones on Evidence § 3:24 (7th ed.); *see also, e.g.*, *United States v. King*, 587 F.2d 956, 961 (9th Cir. 1978) (the burden is on the government "to produce clear and convincing evidence of authenticity and accuracy as a foundation for the admission of [evidence]"); *United States v. Starks*, 515 F.2d 112, 121 (3d Cir. 1975) (the same); *United States v. Knohl*, 379 F.2d 427, 440 (2d Cir. 1967) (the same). Failure to lay adequate foundation therefore renders evidence inadmissible at trial. *See, e.g.*, *United States v. Small*, 74 F.3d 1276, 1282 (D.C. Cir. 1996); *see also* Fed. R. Evid. 901(a) ("To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.").

The Government's burden to establish chain of custody is critical to demonstrating the authenticity of tangible evidence. *See United States v. Mitchell*, 816 F.3d 865, 872 (D.C. Cir. 2016) (proceeding "with a single chain-of-custody analysis instead of separate chain-of-custody and authentication analyses" because, oftentimes, "the authentication and chain-of-custody concerns are one and the same"). To establish the requisite level of authentication, identification, or foundation, "tangible objects become admissible in evidence only when proof of their original acquisition and subsequent custody forges their

---

[1] Moreover, the inadequacy of evidence regarding the 2009 Shark Incident further erodes the statute of limitations in this matter, as the only evidence the Government can point to in an attempt to implicate Mr. Gonzalez-Valencia is the 2007 submarine seizure, which, as discussed in Mr. Gonzalez-Valencia's concurrently filed *Motion to Suppress Evidence Related to the 2007 Submarine Seizure*, in and of itself has issues. Accordingly, Mr. Gonzalez-Valencia's last alleged action in this conspiracy is almost ten years prior to his arrest.

connection with the accused and the criminal offense." *United States v. Mejia*, 597 F.3d 1329, 1335 (D.C. Cir. 2010) (quoting *Gass v. United States*, 416 F.2d 767, 770 n.8 (D.C. Cir. 1969)). In many cases, "an unbroken chain of custody is a prerequisite to admissibility." *Id.* (citing *Novak v. District of Columbia*, 160 F.2d 588, 588–89 (D.C. Cir. 1947) (reversing a conviction because the prosecution failed to establish that a sample collected by law enforcement was the same one analyzed by a lab chemist; thus the chain of custody was "missing a necessary link in the chain of identification")). And, in any case, the Government has the burden of establishing the chain of custody for evidence it seeks to offer at trial. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 311 n.1 (2009) ("[I]t is the obligation of the prosecution to establish the chain of custody."); *see also Mitchell*, 816 F.3d at 871 ("The government has the burden to demonstrate that the item still is what the government claims it to be.") (alterations omitted).

## II. ANALYSIS

The Government lacks adequate foundation to offer evidence related to the Shark Incident. To that end, the Government's reliance on news reports for the proposition that the carcasses seized in the Shark Incident in fact contained cocaine is insufficient.[2] *See, e.g.*, *Oculu, LLC v. Oculus VR, Inc.*, No. SACV 14-0196 DOC, 2015 WL 3619204, at *14 n.7 (C.D. Cal. June 8, 2015) (rejecting a party's attempt to rely upon news articles as the foundation for statements the party sought to put into evidence); *see also Los Angeles News Serv. v. CBS Broad., Inc.*, 305 F.3d 924, 935 (9th Cir. 2002), *opinion amended on denial of reh'g*, 313 F.3d 1093 (9th Cir. 2002) (media reports of facts in question generally fail to satisfy the best evidence rule). Without adequate foundation, the Government is

---

[2] *See* Reuters Staff, *Cocaine haul found hidden in frozen sharks*, Reuters (June 17, 2009) (appended as Exhibit A).

3

unable to offer evidence related to the Shark Incident.

Further, the Government cannot provide any evidence concerning chain of custody to establish that the seized carcasses in fact contained cocaine. To that end, the Government has provided no chain of custody log concerning who handled the carcasses upon seizure and no lab reports addressing whether the substance inside the carcasses was in fact cocaine or whether officials only presumed it be cocaine. Indeed, it is impossible to see how it could, given that the Shark Incident seizure occurred in Yucatan, Mexico and involved members of the Mexican navy.

The United States played no part in the seizure and therefore has no way to verify the nature of the substances recovered in the Shark Incident. The Government cannot provide any evidence that anyone ever conducted testing on the seized carcasses, which could just as easily have contained flour as cocaine. Without access to the tangible evidence or sufficient records verifying the authenticity and chain of custody of the supposed cocaine-lined carcasses, the Government cannot meet the burden of proof required to introduce evidence related to the Shark Incident. *See Mejia*, 597 F.3d at 1335 (requiring that the government show proof of a tangible object's "original acquisition and subsequent custody" to forge the requisite "connection with the accused and the criminal offense").

Moreover, independent research confirms that all individuals involved in the Shark Incident received acquittals.[3] To that end, courts around the country routinely take notice of the outcome of judicial proceedings, which are a matter of public record. *See, e.g., Gray v. Wittman*, No. 1:19-CV-000125, 2020 WL 2104739, at *1 (W.D. Pa. May 1, 2020), *aff'd*,

---

[3] *See Estado gasta ¢550 mills. en falsos narcotraficantes*, Diario Extra (July 31, 2013) (appended with English translation as Exhibit B).

4

839 F. App'x 669 (3d Cir. 2021) (taking judicial notice of "the outcome of the state court prosecution"). Therefore, Mr. Gonzalez-Valencia's requests that the Court take judicial notice of the Shark Incident acquittals, which further erodes any purported foundation for introducing evidence of the Shark Incident in this case.

### III. CONCLUSION

Based on the foregoing, Mr. Gonzalez-Valencia requests the Court preclude the Government from offering evidence of or otherwise mentioning the 2009 Shark Incident at trial.

*[remainder of page intentionally left blank]*

Dated: October 4, 2021

Respectfully submitted,

 /s/Stephen A. Best

**BROWN RUDNICK LLP**

Stephen A. Best (DC Bar No. 428447)
Tiffany B. Lietz (admitted *pro hac vice*)
Brown Rudnick LLP
601 13th Street, NW, Suite 600
Washington, DC 20005
Telephone: (202) 536-1737
Email: sbest@brownrudnick.com

**The L●S LAW FIRM**
Lilly Ann Sanchez (admitted *pro hac vice*)
Four Seasons Tower, Suite 1200
1441 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 503-5503
Email: lsanchez@thelsfirm.com

*Counsel for Defendant Gerardo Gonzalez-Valencia*

## **CERTIFICATE OF SERVICE**

     I hereby certify that on October 4, 2021, I electronically filed the foregoing document with the Clerk of the U.S. District Court for the District of Columbia by using the CM/ECF system. All participants registered through the Court's electronic filing system will be served by the CM/ECF system as required to be served by Federal Rule of Civil Procedure 5(a).

Date: October 4, 2021

                                                     */s/ Stephen A. Best*
                                                Stephen A. Best
                                                Brown Rudnick LLP
                                                601 13th Street, NW, Suite 600
                                                Washington, DC 20005
                                                Telephone: (202) 536-1737
                                                Email: sbest@brownrudnick.com

                                                *Counsel for Defendant Gerardo Gonzalez-Valencia*