UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GERARDO GONZALEZ-VALENCIA,<br><br>Defendant. | CRIMINAL NO. 16-CR-065 (BAH) |

### REPLY IN FURTHER SUPPORT OF DEFENDANT GERARDO GONZALEZ-VALENCIA'S MOTION TO SUPPRESS EVIDENCE

Defendant Gerardo Gonzalez-Valencia, by and through undersigned counsel, respectfully submits this Reply in support of his Motion to Suppress Evidence [Docket No. 36-5]. The Government is unable to carry its burden on the authenticity of evidence related to the August 2007 interception of a self-propelled semi-submersible vessel (the "semi-submersible"). Specifically, the Government cannot show by a reasonable probability that its agents eliminated the possibility of misidentification and adulteration concerning the seizure of presumed contraband in international waters off the coast of the Guatemala-Mexico border. Accordingly, the Court must suppress all evidence related to the August 2007 seizure.

I. ARGUMENT

    a. **The Origins of the Seizure Preclude the Government from Meeting its Burden to Show by a Reasonable Probability that its Agents Eliminated the Possibility of Misidentification of the Evidence**

As a threshold matter, for evidence to be admissible, the Government carries the burden to "demonstrate that, as a matter of reasonable probability," it has eliminated "possibilities of misidentification and adulteration." *United States v. White*, 116 F.3d 903, 920–21 (D.C. Cir. 1997). In this instance, that means the Government must show that suspected drugs found floating in the open water near the site of an interception of a vessel hours earlier indeed came from the

intercepted vessel. However, the delayed identification and recovery of supposed contraband and related circumstances of the original seizure prevent the Government from carrying its burden.

Interestingly, the Government relies upon two cases which speak to the weight of the evidence—but not admissibility—while questioning Mr. Gonzalez-Valencia's analysis for that very reason. First, the Government relied upon a case where the defendants challenged the sufficiency of the evidence post-trial rather than, as in this case, admissibility in the first instance. *See United States v. Valencia*, 169 F. App'x 565, 574 (11th Cir. 2006) (holding that a jury could reasonably conclude that the defendants jettisoned from their boat bales of cocaine found floating behind the boat). In that case, although law enforcement did not see the defendants jettison the drugs from their boat, surveillance aircraft crew members actually observed bales of cocaine in the wake of the boat during pursuit. *Id.* at 573. Further, crew members testified that the boat initially appeared to have substantial cargo on board—before the floating bales appeared in the boat's wake—because they observed the boat riding low until the defendants jettisoned the bales of cocaine. *Id*.

In this case, no indication exists from the available evidence that the Maritime Patrol Aircraft ("MPA") crew spotted anything other than four individuals emerge from the semi-submersible. And that is all the MPA crew saw, despite the fact that the MPA maintained sight of the location long enough to observe the scuttle of the semi-submersible and subsequent recovery and removal of the individuals from the water by the United States Coast Guard. So, without any contemporaneous observation of the semi-submersible crew and the supposed drugs later recovered from the open water, the Government lacks the requisite evidence to link the recovered bales with the semi-submersible in the first place.

Next, the Government relies upon yet another case considering a sufficiency of the evidence challenge, which the court also decided on entirely different facts. *See United States v. Cardales*, 168 F.3d 548, 554 (1st Cir. 1999) (affirming the convictions of crewmen not only because testimony traced their boat to the location where agents found bales of marijuana, but also based on a myriad of corroborating evidence). There, the First Circuit focused on several distinctive pieces of corroborating evidence linking the recovered contraband with the boat.[1] *Id.* at 554–55. Such a thorough analysis is not even possible here because the Coast Guard never recovered the semi-submersible, which further cuts against the Government's admissibility argument in this case.

The Government did rely upon a single case that involved a challenge to the admissibility of evidence, but it is nonetheless inapposite. *See United States v. Mejia*, 597 F.3d 1329, 1337 (D.C. Cir. 2010) (trial court did not abuse its discretion by admitting a handwritten note despite the fact that chain of custody documents did not identify the seizing officer). The court reached its conclusion in that case based on two other foundational pieces of evidence absent here: (1) an agent found the note *inside* the defendant's wallet *ten minutes* after his arrest, and (2) other "substantial corroborative evidence [tied] the list to [the defendant]." *Id.* (noting that the agent who recovered the contested note from the defendant's wallet testified to that fact, the wallet

---

[1] Namely, the Court identified the following specific pieces of evidence:

> (1) there were impressions in the [the boat's] carpet that matched the shape of the marijuana bales; (2) there was yellow dye on the [the boat's] carpet that matched yellow dye found in the bricks of marijuana; (3) there were cardboard pieces and packing tape on board the [the boat] that matched the materials used to package the marijuana; (4) the pieces of plastic removed from the [the boat's] carpet matched the thickness and type of plastic used to package the bales; (5) there was a piece of what appeared to be a marijuana stem on the [the boat] that tested positive for THC; and (6) a narcotics dog aboard the [the boat] alerted Coast Guard officers to the presence of drugs.

*Cardales*, 168 F.3d at 554–55. No such corroborating evidence is available in this case.

contained the defendant's identification cards, and the defendant did not deny that the wallet was his).

Critically, the Government here acknowledges that the seizure "presumably" may not have occurred for "hours" after the sighting of the semi-submersible in what is described several times in the available evidence as a "known drug trafficking" area. Opp'n at 5; Mot., Ex. A at 00012088, 00012100. The Government nevertheless seeks to link the semi-submersible to the purported cocaine seized from what it believes to be the same location that the Coast Guard intercepted the semi-submersible. The Government cannot plausibly equate a break in the chain of custody identified by the First Circuit of ten minutes on land to hours at sea in a known drug trafficking area.

Further, the discovery of items floating in what the Government believes to be the same location as an earlier vessel interception is simply not enough evidence for the Government to meet its burden. In fact, the Government fails to reference any additional corroborating evidence to link the seized items to the semi-submersible.[2] Nobody—not even the MPA crew flying overhead—reported observing the nearly 300 kilograms of supposed cocaine surface from the semi-submersible (though the drugs were apparently discovered "immediately" after the Coast Guard returned to the site), nor could the Coast Guard recover the semi-submersible itself for examination. Such limited evidence is insufficient to dispel the reasonable probability that the supposed contraband the Coast Guard recovered from the open water did not originate from the

---

[2] The Government mentions in its Opposition brief that it has identified cooperating witnesses to testify about Mr. Gonzalez-Valencia's alleged involvement in a conspiracy to transport several thousand kilograms of cocaine for eventual importation into the United States via a semi-submersible. Even with this testimony, the Government still cannot authenticate evidence related to the August 2007 seizure. Instead, the proffered testimony speaks to Mr. Gonzalez-Valencia's alleged involvement in a general conspiracy, but does nothing to link what the Coast Guard recovered from the open water to the semi-submersible intercepted hours earlier.

semi-submersible at issue here.  Accordingly, the Government lacks the legal foundation necessary for evidence related to the August 2007 seizure to be admissible in this case.

> **b. Subsequent Gaps in the Chain of Custody also Preclude the Government from Meeting its Burden to Show by a Reasonable Probability that it Eliminated the Possibility of Misidentification and Adulteration of the Evidence**

The Government acknowledges that the reports do not detail "with precise specificity" how its agents transferred the 260-kilogram bulk seizure from the USS De Wert to the USS Kalkring. Opp'n at 6.  More accurately, the reports do not account for the movement of the bulk seizure *at all* from the time the Coast Guard seized and brought it aboard the USS De Wert "on or about" August 21, 2007, to when the USS Kalkring turned it over to Drug Enforcement Agency ("DEA") Special Agents Scoot Schoonover and Scott Sieben on October 5, 2007—over *six weeks* later. Mot. Ex. A at 00012065.  For over *six weeks*, during which time the evidence was moved to *at least* one other ship, the Government has provided absolutely no record of the whereabouts of the evidence.  The Government cannot say whether its agents transferred the bulk seizure more than once, who performed the transfer(s), when the transfer(s) occurred, where custodians stored the evidence, under what conditions custodians stored the evidence, or who had access to the evidence during this period.  Each of those factors provides a basis to scrutinize the misidentification or adulteration of the evidence.

These facts significantly differ from those available in the Government's leading authority on this issue, where the gap in the chain of custody occurred in a single location and lasted only ten minutes. *See Mejia*, 597 F.3d at 1337.  The instant facts are also distinguishable from the second, inapposite circumstances the Government relies upon where state actors had already placed the seized produce into a police vault, with no suggestion of relocation, during only a 12-day period lacking full documentation.  *See United States v. Stewart*, 104 F.3d 1377, 1380 (D.C.

5

Cir. 1997). To be sure, the custodians certainly did not store the contested evidence in a vault while seemingly drifting aboard unnamed vessels. Even more, records confirm that someone had to transfer the bulk seizure to *at least* one additional ship.

Relatedly, the Government's position that the weight of the substance seized from the open water was similar to the weight of the bulk seizure ultimately transferred to the DEA is of no help in authenticating the contents of the bulk seizure. The Government has identified no case where a notation that items match in weight is somehow sufficient to meet its burden to "establish that, as a matter of reasonable probability, the cocaine tested by the DEA laboratory in Miami was the same cocaine seized by the USS De Wert without adulteration." Opp'n at 6. Of course, the weight of transferred items, without more specific, identifying information, does nothing to dispel the possibility of misidentification or adulteration during the unaccounted for period.

Likewise, the chain of custody records of the representative sample are also troublesome and fail to specify how the Coast Guard stored the sample aboard the USS De Wert or who had access to the sample onboard.[3] Given the limited evidence related to the chain of custody of the bulk seizure and representative sample, the Government cannot show by a reasonable probability that it eliminated the possibility of misidentification and adulteration of the evidence before the DEA retested whatever happened to arrive at the laboratory in Miami.[4]

## II.   CONCLUSION

Based on the foregoing reasons, as well as those set forth in Mr. Gonzalez-Valencia's Motion to Suppress Evidence and Incorporated Memorandum of Points and Authorities, Mr.

---

[3] Special Agent Schoonover transferred the representative sample to the DEA laboratory in Miami on October 10, 2007, where it was photographed and analyzed on November 9, 2007. Mot. Ex. A at 00012108–09. The Government incorrectly noted in its Opposition that these events occurred on October 10, 2017 and November 19, 2017, respectively. Opp'n at 2–3, 6.

[4] Both the representative sample and bulk seizure were destroyed on August 28, 2008 because the Government did not anticipate needing the evidence for additional prosecution. Mot. Ex. A at 00012070.

Gonzalez-Valencia respectfully requests this Court to suppress all evidence related to the August 2007 interception and seizure, and preclude the use of such evidence at trial.

Dated: October 25, 2021

                Respectfully submitted,

                */s/ Stephen A. Best*

                **BROWN RUDNICK LLP**

                Stephen A. Best (DC Bar No. 428447)
                Tiffany B. Lietz (admitted *pro hac vice*)
                Brown Rudnick LLP
                601 13th Street, NW, Suite 600
                Washington, DC 20005
                Telephone: (202) 536-1737
                Email: sbest@brownrudnick.com

                -and-

                **The L●S LAW FIRM**

                Lilly Ann Sanchez (admitted *pro hac vice*)
                Four Seasons Tower, Suite 1200
                1441 Brickell Avenue
                Miami, Florida 33131
                Telephone: (305) 503-5503
                Email: lsanchez@thelsfirm.com

                *Counsel for Defendant Gerardo Gonzalez-Valencia*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 25, 2021, I electronically filed the foregoing document under seal with the Clerk of the U.S. District Court for the District of Columbia by using the CM/ECF system. All participants registered through the Court's electronic filing system will be served by electronic mail.

Date: October 25, 2021

> */s/ Stephen A. Best*
> Stephen A. Best
> Brown Rudnick LLP
> 601 13th Street, NW, Suite 600
> Washington, DC 20005
> Telephone: (202) 536-1737
> Email: sbest@brownrudnick.com
>
> *Counsel for Defendant Gerardo Gonzalez-Valencia*