# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**GERARDO GONZALEZ-VALENCIA,**<br>        Defendant. | **CRIMINAL NO. 16-CR-065 (BAH)** |

### DEFENDANT GERARDO GONZALEZ-VALENCIA'S MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES

NOW COMES, the Defendant, Gerardo Gonzalez-Valencia, by and through undersigned counsel, and respectfully moves this Honorable Court to dismiss the indictment pending against Mr. Gonzalez-Valencia pursuant to Rule 12 of the Federal Rules of Criminal Procedure and in support thereof states as follows:

**I.  BACKGROUND**

On April 19, 2016, the Government filed the Indictment (Doc. 1) charging Mr. Gonzalez-Valencia with aiding and abetting and conspiracy to distribute five kilograms or more of cocaine, and five hundred grams or more of methamphetamine for importation into the United States, in violation of 21 U.S.C. §§ 959(a), 960, 963 and 18 U.S.C. § 2. Mr. Gonzalez-Valencia, who resided in Uruguay at the time, challenged the United States' subsequent extradition request. Following a lengthy extradition battle—the Uruguayan Court of Appeals affirmed his extradition order in October 2017—Uruguay extradited Mr. Gonzalez-Valencia to the United States on May 14, 2020 to stand trial in the instant case. Trial is set to begin here on February 7, 2022.

In pertinent part, the Indictment alleges:

> [T]he controlled substances involved in the conspiracy attributable to [Mr. Gonzalez–Valencia] as a result of his own conduct, and the conduct of others reasonably foreseeable to him, is five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine, and five hundred (500) grams or more of a mixture and substance containing a detectable amount of methamphetamine.

Indictment ¶ 2.

However, the Government recently notified undersigned counsel for Mr. Gonzalez-Valencia that it no longer intends to pursue the methamphetamine portion of its charge.[1] Accordingly, only the cocaine portion of the charges against Mr. Gonzalez-Valencia remain at issue.

## II.   LEGAL STANDARD

"A criminal defendant may move to dismiss an indictment before trial based on a 'defect in the indictment,' such as the 'failure to state an offense.'" *United States v. Knowles*, 197 F. Supp. 3d 143, 148 (D.D.C. 2016), *aff'd and remanded sub nom. United States v. Oral George Thompson*, 921 F.3d 263 (D.C. Cir. 2019) (quoting Fed. R. Crim. P. 12(b)(3)(B)). The Federal Rules of Criminal Procedure make clear that "an indictment must contain 'a plain, concise, and definite written statement of the essential facts constituting the offense charged.'" *Id.* at 149 (quoting Fed. R. Crim. P. 7(c)). "For an indictment to sufficiently state an offense," the indictment "must inform the defendant of 'the precise offense of which he is accused so that he may prepare his defense.'" *Id.* at 148 (quoting *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014)).

Of course, a court has "supervisory power to dismiss an indictment." *Id.* "When

---

[1] Specifically, the Government provided notice of its intention to no longer pursue the methamphetamine portion of its charge against Mr. Gonzalez-Valencia during a call on September 15, 2021, at 4:30 PM Eastern Daylight Time. Assistant United States Attorneys Brett Reynolds, Kaitlin Sahni, and Kate Naseef took part in the call on behalf of the Government, along with undersigned counsel for Mr. Gonzalez-Valencia.

2

considering a motion to dismiss an indictment, a court assumes the truth of the government's factual allegations," but those allegations must nevertheless, if proven, be sufficient to state an offense. *Id.* (quoting *United States v. Ballestas*, 795 F.3d 138, 148 (D.C. Cir. 2015) (alterations omitted)).

### III.   ARGUMENT

Mr. Gonzalez-Valencia seeks dismissal of his Indictment on the grounds that the Government presented insufficient evidence both in support of the extradition request to Uruguay and to the grand jury concerning the charged conspiracy. Specifically, the Government relies on a single text message from 2013 that it believes implicates Mr. Gonzalez-Valencia in an alleged conspiracy during the limitations period. Even by the Government's own interpretation, however, the message fails to establish that Mr. Gonzalez-Valencia was involved in a conspiracy to distribute *cocaine*. Likewise, the Government's cooperating witnesses add nothing to salvage the Government's insufficient evidence concerning an alleged conspiracy to distribute *cocaine*. Accordingly, the Court must dismiss the Indictment.

In the alternative, Mr. Gonzalez-Valencia requests that the Court enter an order compelling the Government to immediately disclose *Brady/Giglio* evidence in connection with (1) its extradition of Mr. Gonzalez-Valencia, (2) the Government's decision not to pursue the methamphetamine portion of its charge against Mr. Gonzalez-Valencia, and (3) the credibility of its cooperating witness, CW-2.

### A. The Government Presented Insufficient Evidence to Support Extradition and to the Grand Jury to Indict Mr. Gonzalez-Valencia

From the beginning, the United States faced serious concerns in this case. In fact, the veracity of the United States' extradition application was of clear concern to Uruguay,

3

well before Mr. Gonzalez-Valencia ever reached the United States. *See* Affidavit in Support of Request for Extradition (the "Extradition Affidavit") (attached as Exhibit A). Prior to approving extradition, Uruguayan officials contacted the Embassy of the United States of America to seek additional evidence in support of the extradition request. After inquiry and investigation with U.S. Department of Justice attorneys, on July 16, 2019, the Embassy of the United States of America admitted that the materials provided in the extradition request for Mr. Gonzalez-Valencia "includes ***all*** evidence supporting the narcotics charge." Diplomatic Note No. 273 from the Embassy of the United States of America to the Ministry of Foreign Affairs of the Oriental Republic of Uruguay at 3 (July 16, 2019) (emphasis added) (attached as Exhibit B). In fact, the United States even relied upon an affidavit from one of the trial attorneys on this case in support of the extradition submission. Affidavit of Amanda N. Liskamm, May 6, 2016 (attached as Exhibit C).

Per its own admission, the United States relied on two limited categories of evidence to support the indictment and extradition of Mr. Gonzalez-Valencia: a June 26, 2013 BlackBerry message and statements of cooperating witnesses, CW-1 and CW-2, allegedly implicating Mr. Gonzalez-Valencia in the purported conspiracy. However, that evidence cannot support the charged conduct in this case. Specifically, the BlackBerry message that the Government relies upon to purportedly link Mr. Gonzalez-Valencia to the alleged conspiracy, even assuming *arguendo* that the message is properly attributed to Mr. Gonzalez-Valencia, in no way establishes the existence of the alleged conspiracy to distribute cocaine. Further, CW-2's account cannot be considered credible, leaving the Government without corroborating evidence that Mr. Gonzalez-Valencia engaged in the charged acts.

4

1. <u>By the Government's own Admission, it lacks Evidence to Establish that the June 26, 2013 BlackBerry Message Concerned the Alleged Conspiracy to Distribute Cocaine</u>

To support the Government's charge that Mr. Gonzalez-Valencia conspired to distribute cocaine, DEA Agent Kyle Mori submitted an Extradition Affidavit detailing the Government's evidence. In particular, Agent Mori points to a June 26, 2013 text message in which "Silverio" (whom the Government believes is Mr. Gonzalez-Valencia)[2] purportedly discussed drug trafficking:

> On June 26, 2013, during a lawfully-intercepted text messages [*sic*], Gonzalez-Valencia and a co-conspirator discussed whether a drug trafficking transaction was complete. Gonzalez-Valencia and his co-conspirator discussed 85 units of drugs which bellowed to the co-conspirator as well as 15 more units that Gonzalez-Valencia was saving. Gonzalez-Valencia and his co-conspirator further discussed a drug sample. Based on my training and experience, and knowledge of this investigation, drug traffickers usually request a drug sample before agreeing to a large drug purchase. Gonzalez-Valencia also discussed additional drug amounts which were being prepared for shipment "up there," which I believe is a reference to the United States, the intended shipment point for those drugs.

Exhibit A ¶ 19.

According to discovery provided by the Government, the message referenced by Agent Mori reads as follows:

> **Silverio:** Barriga.
> **Boss:** Yes?
> **Silverio:** Hey, that transaction is completed, okay?
> **Boss:** That's good.
> **Silverio:** There is 85 that are yours, plus 15 that I was going to save for you.
> **Boss:** Hey, the man down there is calling me. He wants to know if we'll give him a sample tomorrow and see if he might get those.
> **Silverio:** Since I sent 40 more that I was able to fit in, I'm sending the 15 now so I won't owe them to you.
> **Silverio:** Up there?
> **Boss:** Yes.
> **Silverio:** If you want, I can see you in a bit.

---

[2] For purposes of this Motion only, Mr. Gonzalez-Valencia assumes *arguendo* that the Government is able to establish that he is Silverio in the referenced BlackBerry message.

      **Silverio:** Yes go ahead.
      **Silverio:** Let's give them to him.
      **Silverio:** Better.
      **Boss:** Okay.
      **Silverio:** That way we get rid of all of it.
      **Silverio:** Just so you know, your 15 are going as well.
      **Boss:** Let me know when you're free.
      **Silverio:** Yes, around 5:00 PM.
      **Boss:** Okay.
      **Silverio:** Go ahead.
      **Boss:** He wants one to show and if they like it, we'll give them all.
      **Silverio:** Yeah, I'll see you today.
      **Boss:** Okay.

Bates No. 00001465-66, 00001470 (attached as Exhibit D).

      Both the Extradition Affidavit and the intercepted communication itself make clear that, while the Government may have evidence of some agreement allegedly attributable to Mr. Gonzalez-Valencia, it lacks evidence to indicate that said agreement involved the distribution of *cocaine*. While Mr. Gonzalez-Valencia contests Agent Mori's conclusion that the above-referenced message is, in fact, indicative of drug distribution, Mr. Gonzalez-Valencia nevertheless commends Agent Mori's credibility and forthrightness in his analysis. Specifically, Mr. Gonzalez-Valencia applauds Agent Mori's candor for not stretching the conclusions provided in Agent Mori's affidavit beyond their logical end.

      Of particular importance, Agent Mori did *not*, for instance, claim, based on his experience, that the drugs allegedly at issue are cocaine or methamphetamine or anything in particular. *See* Exhibit A ¶ 19. The basis for that restraint is presumably the fact that Agent Mori knows that the cartel at issue distributes a number of other drugs, including marijuana and heroin, and the message does not indicate what, if any specific substance, the parties may have discussed. *See* Press Release, U.S. Dept. of Justice, *Drug Enforcement Administration Public, Safety Alert, High-Level CJNG Associate Financially*

*Sanctioned* (Mar. 3, 2021) (Exhibit E) (describing Cartel de Jalisco Nueva Generacion ("CJNG") as "a violent Mexican drug trafficking organization that is responsible for trafficking a significant proportion of the fentanyl and other deadly drugs that enter the United States"); U.S. Attorney's Office, *Western District of Virginia, Federal Grand Jury Indicts 12 Members of Jalisco New Generation Cartel (CJNG)* (Mar. 25, 2019) (Exhibit F) (indicted members of CJNG alleged to hold various properties for the "purpose of receiving, storing, packaging, and distributing multiple kilograms of cocaine and multiple pounds of marijuana which they had received directly from members of CJNG"). Instead, Agent Mori's broad refence to "drugs" concedes that the Government cannot prove that this message relates to cocaine or any drug in particular.

To be clear, the Government chose not to seek a broader indictment against Mr. Gonzalez-Valencia, including other drugs the alleged conspiracy commonly traffics. Agent Mori's broad categorization of the amounts referenced in the BlackBerry message as "drugs" therefore cannot substantiate the narrow Indictment, which focuses on cocaine distribution. After all, the Government chose to include marijuana and other drugs in its continuing criminal enterprise charge against alleged cartel leader and brother-in-law of Mr. Gonzalez-Valencia, Nemesio Oseguera Cervantes. *See* Superseding Indictment, *United States v. Oseguerra Cervantes*, No. 1:14-cr-51-2 (D.D.C. Dec. 14, 2017). Yet, the Government made the calculated decision to charge Mr. Gonzalez-Valencia in this case with intent to distribute cocaine. The Government is now limited to that specific charge, a charge unsupported by the only available evidence.

Because the June 26, 2013 BlackBerry message is insufficient to establish the charged agreement to distribute cocaine, the Government improperly relied upon the

message as the sole basis for the alleged conspiracy into the five-year limitations period. *See United States v. Sitzmann*, 74 F. Supp. 3d 96, 107 (D.D.C. 2014) (the Government must prove that the conspiracy existed during the limitations period). The Government also lacks evidence in the extradition application to prove that any alleged conspiracy continued on or after April 19, 2011—five years after the filing of the indictment. *See* 18 U.S.C. § 3282(a) ("[N]o person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed[.]"). To be sure, the Government admitted that the limited materials provided in the extradition request for Mr. Gonzalez-Valencia are "***all*** evidence supporting the narcotics charge." Exhibit B. So, without any other evidence upon which to connect Mr. Gonzalez-Valencia to the alleged conspiracy during the limitations period, the Indictment falls flat. Accordingly, the Court must dismiss the Indictment.

> 2. *The Government's Decision to Abandon with the Methamphetamine Portion of its Charge Evidences the Lack of Credibility of CW-2*

Additionally, the United States' extradition application relies on statements from two cooperating witnesses, CW-1 and CW-2, who each assert that they conspired with Mr. Gonzalez-Valencia. While CW-1 solely recounts instances where he allegedly conspired to distribute cocaine with Mr. Gonzalez-Valencia, CW-2 purports to have conspired to distribute both cocaine and methamphetamine with Mr. Gonzalez-Valencia. In particular, the Extradition Affidavit states as follows regarding cooperating witness, CW-2:

[redacted]

Exhibit A ¶ 15.

Tellingly, CW-2's account regarding the transportation of methamphetamine precursor chemicals is the Government's sole evidence that Mr. Gonzalez-Valencia was ever involved in a conspiracy to distribute methamphetamine. The Government's decision not to pursue its methamphetamine charge raises significant doubt concerning CW-2's credibility on any issue and the sufficiency of the evidence used to support the United States' extradition of Mr. Gonzalez-Valencia in the first instance.

That leaves the Government with only the testimony of CW-1. Relying solely on the testimony of a single cooperator is not sufficient for probable cause of a federal indictment. That is why the Government sought the testimony of CW-2 for corroboration. However, now that CW-2's testimony is shown to be unreliable, the Government is left with insufficient evidence to support its charge.

### B. In the Alternative, the Government should Immediately Produce *Brady/Giglio* Information Related to Mr. Gonzalez-Valencia's Extradition Proceeding, the Government's Decision Not to Pursue the Methamphetamine Portion of its Charge Against Mr. Gonzalez-Valencia, and the Credibility of its Cooperating Witness, CW-2

In the alternative, and pursuant to Federal Rule of Criminal Procedure 12(b)(3) and the principles of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972), Mr. Gonzalez-Valencia requests that the Court enter an order compelling the Government to immediately disclose *Brady/Giglio* evidence in connection with (1) its extradition of Mr. Gonzalez-Valencia, (2) the Government's decision not to pursue the methamphetamine portion of its charge against Mr. Gonzalez-Valencia, and (3) the credibility of its cooperating witness, CW-2. Specifically, Mr. Gonzalez-Valencia moves for immediate disclosure of the *Brady/Giglio* material detailed below.

1. *The Government must Alternatively Satisfy its Duty to Disclose the Requested* Brady/Giglio *Material*

The Government has a well-established duty to disclose impeachment and exculpatory evidence, including information bearing on the credibility of government witnesses. *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 154 (1972). The Government also has an obligation to disclose favorable evidence that may lead, through investigation, to the discovery of further evidence. *Giles v. Maryland*, 386 U.S. 66, 74 (1974). Failure to disclose evidence favorable to a defendant who has requested it constitutes a due process violation in the event the withheld evidence is material to either guilt or punishment, irrespective of the good or bad faith actions of the prosecution. *Brady*, 373 U.S. at 87.

If the Government is choosing not to go forth with its methamphetamine charge because it determined that CW-2's statements implicating Mr. Gonzalez-Valencia are no longer accurate or correct, the information behind that decision is exculpatory *Brady* evidence that Mr. Gonzalez-Valencia is entitled to review in order to properly prepare his defense at trial. *See United States v. Pollack*, 534 F.2d 964, 975 (D.C. Cir. 1976). ("*Brady* imposes upon the government the obligation to reveal evidence within its possession that is material to the guilt of the accused."). The need for such evidence is heightened by the fact that CW-2, a cooperator who is incentivized to say whatever maximized his cooperation credit, also told the Government of at least four instances where CW-2 allegedly conspired with Mr. Gonzalez-Valencia to transport cocaine, an allegation that the Government intends to prove at trial. Exhibit A ¶¶ 13–14, 16–17. Assessing the credibility of CW-2 is therefore vital to Mr. Gonzalez-Valencia's defense. Accordingly, Mr. Gonzalez-Valencia requests that the Court order the Government to immediately produce

all *Brady/Giglio* materials related to its extradition of Mr. Gonzalez-Valencia, the Government's decision not to pursue the methamphetamine portion of its charge against Mr. Gonzalez-Valencia, and the credibility of CW-2.

IV.     **CONCLUSION**

Accordingly, Mr. Gonzalez-Valencia respectfully requests that the Court dismiss the Indictment pending against Mr. Gonzalez-Valencia, or, in the alternative, order the Government to immediately disclose all *Brady/Giglio* materials described above in order to provide Mr. Gonzalez-Valencia an opportunity to fully investigate all charges against him and properly prepare his defense.

Dated: October 4, 2021

Respectfully submitted,

 /s/Stephen A. Best

**BROWN RUDNICK LLP**

Stephen A. Best (DC Bar No. 428447)
Tiffany B. Lietz (admitted *pro hac vice*)
Brown Rudnick LLP
601 13th Street, NW, Suite 600
Washington, DC 20005
Telephone: (202) 536-1737
Email: sbest@brownrudnick.com

**The L●S LAW FIRM**
Lilly Ann Sanchez (admitted pro hac vice)
Four Seasons Tower, Suite 1200
1441 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 503-5503
Email: lsanchez@thelsfirm.com

*Counsel for Defendant Gerardo Gonzalez-Valencia*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 4, 2021, I electronically filed the foregoing document under seal with the Clerk of the U.S. District Court for the District of Columbia by using the CM/ECF system. All participants registered through the Court's electronic filing system will be served by electronic mail.

Date: October 4, 2021

                                           */s/ Stephen A. Best*
                                           Stephen A. Best
                                           Brown Rudnick LLP
                                           601 13th Street, NW, Suite 600
                                           Washington, DC 20005
                                           Telephone: (202) 536-1737
                                           Email: sbest@brownrudnick.com

                                           *Counsel for Defendant Gerardo Gonzalez-Valencia*