UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GERARDO GONZALEZ-VALENCIA,<br><br>Defendant. | CRIMINAL NO. 16-CR-065 (BAH) |

**DEFENDANT GERARDO GONZALEZ-VALENCIA'S MOTION FOR TEMPORARY RELEASE PENDING TRIAL AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES**

NOW COMES, the Defendant, Gerardo Gonzalez-Valencia, by and through undersigned counsel, and respectfully moves this Honorable Court to grant his motion for temporary release from his detention at the William G. Truesdale Adult Detention Center in Alexandria, Virginia (the "Detention Center"). Pursuant to 18 U.S.C. § 3142(i), Mr. Gonzalez-Valencia's release is necessary to prepare his defense for trial.[1]

**I.    BACKGROUND**

Mr. Gonzalez-Valencia was extradited from Uruguay to the United States on May 14, 2020. On May 15, 2020, Mr. Gonzalez-Valencia was arraigned before the Honorable G. Michael Harvey and a detention hearing was set for May 20, 2020. On May 20, 2020, the Court heard and granted the Government's oral motion to commit Mr. Gonzalez-Valencia to the Custody of the

---

[1] By making this and other motions, Mr. Gonzalez-Valencia preserves and does not waive his argument that the United States violated his due process rights by securing his extradition from Uruguay without probable cause. Doc. 36-8. Accordingly, this Court lacks jurisdiction over Mr. Gonzalez-Valencia to hear this case, which must be dismissed. Mr. Gonzalez-Valencia makes this and other motions in the event the case proceeds notwithstanding his due process argument but does not assent to the Court's jurisdiction over him.

Attorney General. Mr. Gonzalez-Valencia consented to the order for detention, but reserved his right to bring up the matter of his detention in the future.

Mr. Gonzalez-Valencia was taken to the Detention Center where he has been detained since the detention order was granted. By May 2020, the COVID-19 pandemic had intensified, and restrictions were in place in Virginia following the Virginia Governor's declaration of a state of emergency in March. *See* Press Release, Ralph Northam, Governor of Virginia, Governor Northam Declares State of Emergency, Outlines Additional Measures to Combat COVID-19 (Mar. 12, 2020), https://www.governor.virginia.gov/newsroom/all-releases/2020/march/headline-853537-en.html. In person visitation at the Detention Center resumed on May 1, 2021, and attorneys were permitted to visit clients in forty-five (45) minute blocks by appointment, unless visiting for an urgent matter. *See* Special Announcement, Alexandria Sheriff's Office, Information for Attorneys (May 1, 2021), https://www.alexandriava.gov/sheriff/info/default.aspx?id=4182. All attorneys seeking to visit a client are required to be fully vaccinated, wear a mask, face shield and plastic gloves, always remain six feet from their client, and no more than two attorneys are permitted to visit a client at any one time. *Id*. If there are to be more than two attorneys present at a visit, an explanation must be submitted and thereafter forwarded to the Chief of Security for consideration. *Id*.

Following the resumption of visits at the Detention Center, undersigned counsel scheduled a visit for June 14, 2021 at 7:00pm. When Stephen A. Best, Partner at Brown Rudnick LLP ("Brown Rudnick"), undersigned counsel, arrived at the Detention Center with Samuel Farnsworth, summer intern, for the scheduled visit, Mr. Farnsworth's name was not on the list for entry, so the Detention Center temporarily denied their entry. After a phone call with Sergeant

Andrea Diaz, Mr. Best and Mr. Farnsworth were eventually permitted entry and met with Mr. Gonzalez-Valencia.

On July 29, 2021, Mr. Best and Tiffany B. Lietz of Brown Rudnick and Lilly Ann Sanchez, Partner at The L.S. Law Firm, arrived at the Detention Center for a meeting with Mr. Gonzalez-Valencia. Despite necessary arrangements and calls made before the visit Ms. Lietz was not permitted to enter the meeting with Mr. Gonzalez-Valencia. Ms. Lietz had travelled from New York and Ms. Sanchez had travelled from Miami for the purpose of the visit.

On September 24, 2021, on behalf of Mr. Best, John Whyman, Practice Group Support Administrator at Brown Rudnick, requested a contact visit between counsel and Mr. Gonzalez-Valencia to discuss the defense case and preparation for trial.[2] *See Declaration of John Whyman in Support of Defendant Gerardo Gonzalez-Valencia's Motion for Temporary Release Pending Trial* (Exhibit A). The Detention Center informed Mr. Whyman that a contact visit was not permitted, and that counsel would only be allowed to meet with Mr. Gonzalez-Valencia while separated by a glass partition and using phones to communicate. A meeting was scheduled for September 27, 2021. However, on the morning of September 27, Chief Williams informed Mr. Best by telephone that the meeting could no longer be accommodated and instead agreed to an in-person meeting on October 1, 2021. Mr. Whyman scheduled a meeting between Mr. Best, David Rosenthal, Associate at Brown Rudnick, and Mr. Gonzalez-Valencia for 1:00pm on October 1, 2021. *Id*. Although Mr. Best and Mr. Rosenthal arrived punctually for the meeting at 1:00pm, they waited in the waiting area for over an hour before the meeting began. *Id*. Again, the meeting was not on the schedule despite an arrangement being made in advance of the meeting.

---

[2] Contact visit for the purpose of this memorandum is a visit in which counsel and client can meet in a room without any COVID-19 restrictions or social distancing for an unlimited period of time to discuss the case.

Moreover, on October 15, 2021, Mr. Gonzalez-Valencia was unable to attend for a video conference meeting with counsel due to a COVID-19 outbreak at the Detention Center. This further demonstrates the obstacles to preparing Mr. Gonzalez-Valencia's defense; even video conferencing from the Detention Center can prove impossible. It should also be noted that Mr. Gonzalez-Valencia has recently been diagnosed with kidney stones and requires medical treatment. Treatment has been sought outside of the Detention Center but has yet to be arranged. Mr. Gonzalez-Valencia's health is a serious concern given his recent diagnoses while housed in an institution still battling COVID-19 outbreaks.

Therefore, it has been consistently difficult to schedule meetings between undersigned counsel and Mr. Gonzalez-Valencia at the Detention Center. The Sergeant in charge of scheduling at the Detention Center will not accept emails, and voicemails are often left unanswered. As Mr. Gonzalez-Valencia's trial date approaches, the situation has become untenable. Without unrestricted access to Mr. Gonzalez-Valencia, undersigned counsel is unable to prepare his defense. For adequate preparation for trial to take place, Mr. Gonzalez-Valencia and undersigned counsel must meet to review discovery and strategize. The unpredictable nature of the production of documents by the Government may require visits at short notice and for extended periods. If this is not possible, neither is preparation for Mr. Gonzalez-Valencia's defense. Therefore, Mr. Gonzalez-Valencia seeks temporary release from detention in order to undertake the necessary steps to prepare his defense before trial.

## II.     DISCUSSION

Following the issuance of a detention order, the "judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of the United States or another appropriate person, to the extent that the judicial officer determines such release to be necessary

for the preparation of the person's defense." 18 U.S.C. § 3142(i). In other words, the defendant must show that he would be released to an "appropriate person" and that temporary release is necessary either for the preparation of their defense or for another compelling reason. *United States v. Riggins* 456 F. Supp. 3d 138, 149 (D.D.C. 2020).

The "burden of demonstrating that . . . temporary release is warranted" rests with the defendant. *United States v. Thomas*, 456 F. Supp. 3d 69, 72 (D.D.C. 2020). It has been recognized by the judicial system that the "obstacles the current public health crisis poses to the preparation of the Defendant's defense constitute a compelling reason under 18 U.S.C. § 3142(i)." *United States v. Stephens*, 447 F. Supp. 3d 63, 67 (S.D.N.Y. 2020) (the spread of COVID-19 in the State of New York resulted in the suspension of prison visits, including legal visits. The court found that "this suspension impacts the Defendant's ability to prepare his defenses to [an] alleged violation of supervised release" and defense counsel faced significant issues when attempting to communicate with the defendant). The restrictions currently in place at the Detention Center are affecting Mr. Gonzalez-Valencia's ability to communicate with his counsel. As such, Mr. Gonzalez-Valencia has demonstrated that his temporary release is warranted and necessary for the preparation of his defense. The difficulties encountered during visitation have not abated in the last few months, and delays and scheduling difficulties persist. Moreover, contact visits are not being permitted unless there are "special circumstances" and may be permitted two or three weeks before trial. *See Declaration of John Whyman in Support of Defendant Gerardo Gonzalez-Valencia's Motion for Temporary Release Pending Trial* (Exhibit A). This will not give counsel enough time to prepare what is an extensive defense involving a significant number of documents, specifically 54, 700 pages of discovery. Furthermore, Mr. Gonzalez-Valencia has five lawyers presently working on his defense and yet is not able to receive a visit from all members of his team

simultaneously. This will significantly hamper the ability of Mr. Gonzalez-Valencia's legal team to prepare a cohesive and strategic defense.

It is accepted that "to date, it appears that most courts that have addressed a motion for temporary release under section 3142(i) have done so in the context of evaluating the necessity of release to permit the defendant to assist with preparing his defense." *United States v. Lee*, 451 F. Supp. 3d 1, 5 (D.D.C. 2020); *see also Riggins,* 456 F. Supp. 3d 138, 149 ("[C]ourts have granted relief on [another compelling reason] basis only sparingly") (first alteration in original) (original citation omitted). Defendants have been granted temporary release when there is a concern that "given the … limited access to telephones and attorney conference rooms at the detention facilities, the effective preparation of a defense might have been impossible in the short time available before the commencement of the trial." *United States v. Persico*, No. S 84 Cr. 809, 1986 WL 3793, at *1 (S.D.N.Y. Mar. 27, 1986) (discussing cases where temporary pretrial release is necessary for the preparation of the defense case). There is such a concern facing Mr. Gonzalez-Valencia. He does not have meaningful access to his counsel to allow for preparation of his defense. Sporadic video conferencing and short visits that must be arranged in advance are inadequate.

Mr. Gonzalez-Valencia acknowledges that he must be released to the custody of an appropriate person. An "appropriate person" under § 3142(i) must, at a minimum be a "designated person, who agrees to assume supervision and to report any violation of a release condition to the court" and able to "reasonably assure the judicial officer that the person will appear as required and will not pose a danger to the safety of any other person or the community." 18 U.S.C. § 3142(c)(1)(B)(I). Furthermore, the defendant must establish that the custodian is "appropriate in terms of actually being qualified to be given such responsibility." *United States v. Leake*, No. 19-cr-194 (KBJ), 2020 WL 1905150, at *4 (D.D.C. Apr. 17, 2020) (internal quotation marks omitted).

6

Doubt has been cast by the Court on whether "Congress intended for 'another appropriate person' to be anyone other than a law enforcement officer." *Id.* at *4 (quoting 18 U.S.C. § 3142(i)). However, courts have found that, in appropriate circumstances, a family member does constitute an appropriate person. *Stephens*, 447 F. Supp. 3d at 67 (family members may constitute "appropriate person" if "the defendant is released to relatives and placed under house arrest"); *See Thomas*, 456 F. Supp. 3d at 74 (finding that the defendant's sister was considered an appropriate person); *See United States v. Perez*, No. 19-cr-297, 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (finding that temporarily releasing the defendant in to the custody of his wife on twenty-four (24) hour house arrest was appropriate). Aside from being a relative of a defendant, an appropriate person can be assessed based on "certain characteristics…such as maintaining stable employment and owning a home in which the defendant can be confined…have longstanding ties to the United States" and be "in a position to monitor defendant on a continuous basis and ensure against him either fleeing or recidivating." *United States v. Otunyo*, No. 18-251 (BAH), 2020 WL 2065041, at *9 (D.D.C. Apr. 28, 2020); *See United States v. Dhavale*, No. 19-mj-00092, 2020 WL 1935544, at *5 (D.D.C. Apr. 21, 2020) (defendant's wife who had no criminal history, ran a small business, resided at her and the defendant's home in Virginia, and was able to provide "essentially round-the-clock monitoring of defendant upon his release to home detention in her custody" deemed eligible by pre-trial services and the court to be a suitable third-party custodian). Upon the court's request, Mr. Gonzalez-Valencia will gladly provide information of such an appropriate person for an *in camera* review by the court. The court must assess the suitability of the proposed appropriate person *in camera* to ensure the continued safety of Mr. Gonzalez-Valencia and the appropriate person. It is unsuitable for information about Mr. Gonzalez-Valencia's address to be released to the public.

The Government may argue that Mr. Gonzalez-Valencia is a threat to the community and a flight risk. However, under 3241(i), the defendant is not required to "show a change of circumstances as would be required under 3142(f) to reopen the detention hearing." *United States v. Buswell*, No. 11-cr-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013). Indeed "section 3142(i) provides a distinct mechanism for temporarily releasing a detained defendant, in a manner that has nothing to do with a revisiting of the initial detention determination." *Dhavale*, 2020 WL 1935544, at *2. Mr. Gonzalez-Valencia requests temporary release because it is necessary for his defense, not based on any other factor.

That said, it is worth noting that the determination that a defendant must be detained pursuant to 18 U.S.C. § 3142(g) "may be reopened" at any time prior to trial if new information surfaces "that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of another person and the community." 18 U.S.C. § 3142(f). If the Government make such an argument, it is worth noting that at the time Mr. Gonzalez-Valencia conceded his detention, he would not have known that the COVID-19 pandemic would persist and interfere with his ability to prepare for his trial. *See Stephens*, 447 F. Supp. 3d at 64–65 (Holding that the "unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic" constituted a "change [in] circumstance").

Additionally, it is respectfully submitted that the Government's case is weaker than it believed it to be at the May 20, 2020 detention hearing.[3] Most notably, the lack of evidence produced by the Government to prove Mr. Gonzalez-Valencia's identification on crucial

---

[3] *See* Doc. No. 30 Motion to Strike Improper Aliases and Related Evidence, Doc. No. 33 Motion to Exclude Evidence and Mention of the 2009 Shark Incident, Doc. No. 35 Motion to Dismiss the Indictment on Statute of Limitations Grounds or in the Alternative for a Bill of Particulars filed by undersigned counsel on behalf of Mr. Gonzalez-Valencia on October 4, 2021.

8

BlackBerry messages and a lack of evidence that Mr. Gonzalez-Valencia was involved in a conspiracy of any kind after 2009. *See Stephens*, 447 F. Supp. 3d at 64 (finding that primary evidence relied upon by the Government to demonstrate the danger posed by the defendant if he were released into the community had "been undermined by new information not available to either party at the time of the [hearing]"); *see also* Motions filed by Mr. Gonzalez-Valencia on October 4, 2021. Doc. Nos. 30, 31, 32, 33, 34, 35, 37, 38, 39. The Government's failure to produce such evidence significantly weakens the argument that Mr. Gonzalez-Valencia is a danger to the public. Indeed, it is submitted that even if the Government could establish that Mr. Gonzalez-Valencia was involved in a conspiracy until 2009, there is no evidence to indicate any activity after that. Mr. Gonzalez-Valencia in fact withdrew from any conspiracy in which he allegedly took part in 2009 when he moved to Argentina to open a convenience store, and there is no evidence of actual involvement in criminal activity thereafter. Therefore, it is submitted that Mr. Gonzalez-Valencia poses no risk to the community. Furthermore, a period on house arrest will adequately address this concern.

      Finally, Mr. Gonzalez-Valencia's deteriorating health condition must be considered. The Detention Center, although likely trying to tackle the risks faced by the incarcerated population because of the COVID-19 pandemic, has been unable to stop the spread of the virus among prisoners. Mr. Gonzalez-Valencia has now been diagnosed with a serious health condition and treatment is already sought outside of the Detention Center. Another outbreak such that prevented Mr. Gonzalez-Valencia from attending his video conference with counsel has the potential to prevent him from accessing the medical treatment that he requires. Mr. Gonzalez-Valencia asks the court to consider the substantial risk his confinement poses to his health in considering his release. *See United Stated v. Bess*, No. 16-CR-156 (W.D.N.Y. Apr. 22, 2020), Dkt. No. 97

(granting compassionate release to a man who was at heightened risk of COVID-19 because of his health conditions).

### III.     CONCLUSION

Based on the foregoing, Mr. Gonzalez-Valencia submits that temporary release from detention is necessary for the preparation of his defense and requests that the court grant this motion.

Dated: November 8, 2021

Respectfully submitted,

*/s/ Stephen A. Best*

**BROWN RUDNICK LLP**

Stephen A. Best (DC Bar No. 428447)
Tiffany B. Lietz (admitted *pro hac vice*)
Brown Rudnick LLP
601 13th Street, NW, Suite 600
Washington, DC 20005
Telephone: (202) 536-1737
Email: sbest@brownrudnick.com

-and-

**The L●S LAW FIRM**

Lilly Ann Sanchez (admitted *pro hac vice*)
Four Seasons Tower, Suite 1200
1441 Brickell Avenue
Miami, Florida 33131
Telephone: (305) 503-5503
Email: lsanchez@thelsfirm.com

*Counsel for Defendant Gerardo Gonzalez-Valencia*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 8, 2021, I electronically filed the foregoing document with the Clerk of the U.S. District Court for the District of Columbia by using the CM/ECF system. All participants registered through the Court's electronic filing system will be served by the CM/ECF system as required to be served by Federal Rule of Civil Procedure 5(a).

Date: November 8, 2021

*/s/ Stephen A. Best*
Stephen A. Best
Brown Rudnick LLP
601 13th Street, NW, Suite 600
Washington, DC 20005
Telephone: (202) 536-1737
Email: sbest@brownrudnick.com

*Counsel for Defendant Gerardo Gonzalez-Valencia*
