**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 16-CR-065** |
| **v.** | **(BAH)** |
| **GERARDO GONZALEZ-VALENCIA,** | |
| Defendant. | |

**DEFENDANT GERARDO GONZALEZ-VALENCIA'S**
**REPLY TO THE GOVERNMENT'S RESPONSE TO MINUTE ORDER**

NOW COMES, the Defendant, Gerardo Gonzalez-Valencia, by and through undersigned counsel, and respectfully submits this reply memorandum ("Reply") to the Government's Response to Minute Order (Dk. 70) ("Response"), in accordance with the Court's Minute Order of November 9, 2021. As discussed below, the Government's Response is its latest attempt in the Government's game to obstruct the judicial process and infringe on Mr. Gonzalez-Valencia's constitutional right to due process.

**I.      THE GOVERNMENT HAS FAILED TO COMPLY WITH ITS DISCLOSURE OBLIGATIONS**

As a preliminary matter, the Government claims that it is in compliance with its obligation under Local Criminal Rule 5.1, which requires the Government "as soon as reasonably possible after its existence is known" to "disclose to the defense all information 'favorable to an accused' that is 'material either to guilt or to punishment' under *Brady v. Maryland*, 373 U.S. 83, 87 (1963)." This could not be further from the truth, as the Government continues to produce documents as trial quickly approaches. Since Mr. Gonzalez-Valencia filed his pre-trial motions on October 10, 2021, the Government has made three additional productions, containing approximately 343 pages and numerous video files, including fourteen-year-old documents relating to the submarine

seizure—a key issue in this case. Of course, the Government has provided no explanation for the dilatory nature of its production of documents that it has surely had in its possession for years. The strategic decision to dump additional documents at this late stage in the case, that the Government should have had in its possession the entire time, can only have one motivation: delay.

The Government's stalling has only continued as pre-trial proceedings progress. For example, on November 9, 2021, defense counsel submitted a discovery request to the Government identifying specific *Brady* material reasonably believed to be in the Government's possession. Defense counsel has yet to receive a response as of the filing of this Reply. Thus, the Government does not appear motivated to act in compliance with its obligations unless specifically ordered to do so by this Court.

In light of the prosecution's deficiencies, the Government has continually resorted to delay, presumably to give it more time to gather evidence in an effort to fill the gaping holes in its case. And that same tactic is what the Government seeks to do today. The Government's continued ploy to delay disclosure provides no reassurance to Mr. Gonzalez-Valencia, or this Court, that the Government is adhering to its *Brady* obligations.

## II.   THE GOVERNMENT'S RATIONALE FOR DELAYING THE PRODUCTION OF *GIGLIO* AND JENCKS ACT MATERIALS IS UNFOUNDED

The Government states that it is willing to provide *Giglio v. United States,* 405 U.S. 150 (1972), and Jencks Act, 18 U.S.C. § 3500, material thirty days before trial for its law enforcement and government witnesses, but refuses to provide such material in connection with its lay witnesses until fourteen days prior to trial. This is yet another outrageous tactic by the Government to delay the disclosure of key information to Mr. Gonzalez-Valencia. It is clear that the Government must resort to such tactics because it realizes it does not have a case against Mr. Gonzalez-Valencia, as highlighted by Mr. Gonzalez-Valencia's numerous pre-trial motions.

In arguing that this Court should require disclosure of lay witnesses fourteen days prior to trial the Government cites vague, entirely unsubstantiated "security risks" and states that "*all* of the government's lay witnesses . . . would face serious security risks" if their status as prospective trial witnesses was revealed thirty days prior to trial.  Gov't. Resp. at 1 (emphasis added). However, it is not clear from the Government's motion whether this is even true (it is not).  Further, the Government's refusal to disclose thirty days before trial what it agrees to disclose approximately two weeks later is arbitrary and capricious.

To start, Mr. Gonzalez-Valencia has never been accused of a crime of violence.  In fact, the Government itself has only identified Mr. Gonzalez-Valencia as an investor in the alleged shipments underlying the conspiracy.  Opp'n to Def.'s Mot. to Suppress Evid. (Dk. 48).  To be clear, the Government has never alleged and the record wholly belies any assertion that Mr. Gonzalez-Valencia is capable or interested in levying any threat against anyone.  The disclosure of information necessary for an alleged passive investor to prepare for trial simply does not pose the security threat that the Government's hyperbole suggests.

Moreover, the Government provides no evidence or inclination that Mr. Gonzalez-Valencia has a proclivity to disclose the names of any witnesses, cooperators, or informants to the public.  Rather, the Government relies on vague categorizations and stereotypes to advance its blanket assertion that *all* of its lay witnesses face security risks.  *See id.* at 2–3 (purporting that "*several* of the government's cooperating witnesses have families who live in foreign countries" and "*several* of these witnesses are currently assisting the United States and foreign law enforcement in ongoing and unrelated investigations") (emphasis added).  Nothing could be farther from the truth.  But even assuming, *arguendo*, that the Government's premises are true, it simply does not follow that any witnesses, let alone all of them, face such risks.  The Government's

willingness to disclose witnesses fourteen days before trial confirms as much.  Accordingly, the Government's excuse to avoid disclosure of pertinent information to its fledging case falls flat on its face.

Additionally, the Government provides no logical basis to explain how disclosure of witnesses thirty days prior to trial, as opposed to fourteen days prior to trial, will significantly affect any witnesses' security posture.  As a preliminary matter, the Government admits the majority of its witnesses are secured in custody.  *Id.* at 2.  It is completely preposterous of the Government to say that the Federal Bureau of Prisons (BOP) is not capable of keeping these individuals safe.  After all, the BOP is a law enforcement agency under the Department of Justice, so the same organization trying (or mis-trying as the case may be soon) this case cannot credibly assert that its own department is incapable of fulfilling its mission to responsibly care for incarcerated individuals who may become witnesses in this case.

It is also unclear to Mr. Gonzalez-Valencia how a difference of sixteen days would significantly change the course of the Government's hypothetical "campaign of harassment or retaliation" against witnesses and their families by individuals not affiliated with Mr. Gonzalez-Valencia.  *Id.* at 3.  Even if the Government's hyperbole came to fruition, it makes no sense that these hypothetical individuals would be less likely to harass or retaliate against cooperators' families if the information was released fourteen days prior to trial, as opposed to thirty.

Further, the Government's argument that late disclosure will ensure only its "likeliest testifying witnesses need be exposed" highlights the fragility of the Government's case.  *Id.* at 2. The Government's hyperbole aside, an additional sixteen days should not significantly alter the Government's case-in-chief against Mr. Gonzalez-Valencia.  The Government has had *over five years* to prepare its case and solidify its witnesses against Mr. Gonzalez-Valencia.  In fact, the only

reason the Government is able to bring in any new evidence or modify its witnesses list at this

point is because it has taken advantage of Mr. Gonzalez-Valencia's inability to have a speedy trial

due to the COVID-19 pandemic.   The Government has waited long enough, while taking

advantage of the understandable delays caused by the pandemic, to build its case.  Further delay

in disclosure does nothing but impede Mr. Gonzalez-Valencia's due process rights and the Court

should not allow it.

　　　As explained above, the Government's rationale for disclosing lay witnesses at fourteen

days before trial, rather than thirty, is unfounded.  Although disclosure thirty days prior to trial

would not significantly impact the Government or its witnesses, it would be instrumental in

ensuring adequate protection to Mr. Gonzalez-Valencia's Fifth Amendment right to due process

and Sixth Amendment right of confrontation.  As explained in Mr. Gonzalez-Valencia's Motion

to Compel Disclosure of Information Regarding Witnesses, Confidential Informants, and

Cooperators (Dk. 34), the scope of the alleged conspiracy at issue and lack of discovery directly

related to Mr. Gonzalez-Valencia present unique challenges to the defense's ability to identify and

properly prepare to cross-examine the Government's unknown witnesses.   After all, as the

Government asserts in its Response, Los Cuinis and Cartel de Jalisco Nueva Generacion form one

of the largest drug cartels in Mexico.  Gov't. Resp.  at 2.  As such, disclosure of witnesses thirty

days prior to trial greatly improves defense counsel's ability to properly investigate the

Government's witnesses, their alleged connection to Mr. Gonzalez-Valencia, and his purported

acts in foreign countries.  This is especially true when considering anticipated logistical difficulties

and risks associated with international travel during the on-going COVID-19 pandemic.   If

anything the complications of holding trials amid the pandemic should require the Government to

disclose pertinent information earlier than usual, as opposed to withholding the information until

the eve of trial.

### III.    THIS IS NOT THE GOVERNMENT'S FIRST ATTEMPT AT OBSTRUCTING THE JUDICIAL PROCESS IN AN EFFORT TO STRIP MR. GONZALEZ-VALENICA OF HIS RIGHTS

This is not the first time the Government has engaged in outrageous gamesmanship in an

effort to strip Mr. Gonzalez-Valencia of his constitutional rights.  In fact, the Government has

bungled this case from the start and repeatedly made material misrepresentations in affidavits.

For starters, the affidavit the United States submitted in support of Mr. Gonzalez-

Valencia's extradition from DEA Special Agent Kyle Mori is defective in both form and substance.

Namely, Agent Mori's affidavit was sworn to in the wrong court, in front of the wrong judge, and

has a caption for a case that does not exist.  Dk. 36-8, Ex. A.[1]  The failure to include an accurate

caption renders the affidavit a document which has no force or effect in the United States and,

thus, should have had no force or effect in Uruguay.[2]  *See Belanger v. BNY Mellon Asset Mgmt.,*

*LLC*, 307 F.R.D. 55, n. 4 (D. Mass. 2015) (holding that the requirement to include an accurate

---

[1] Indeed, Special Agent Mori's affidavit contains a fundamental misrepresentation in the very first words of the document: that there is a case against Mr. Gonzalez-Valencia in the United States District Court for the Central District of California.  Special Agent Mori swore to this affidavit before a United States Magistrate Judge on belief that the information contained therein was true and accurate.  However, there is no such case in the United States District Court for the Central District of California, and there is no such affidavit available in the files of the United States District Court for the Central District of California.

[2] The defective affidavit also fails to satisfy the Treaty requirements.  First, the Treaty states that Uruguay may only "agree to extradite on a reciprocal basis . . . in the circumstances and subject to the conditions established in this Treaty."  Uruguay International Extradition Treaty with the United States, art. 1, Apr. 11, 1984, TIAS 10850 (the "Treaty") (attached as Exhibit A).  Next, Article 10 of the Treaty states that Uruguay "may require the requesting Party to produce evidence to establish probable cause that the person claimed has committed the offense for which extradition is requested."  *Id.* at art. 10(3).  The Mori affidavit's improper form negates its ability to "establish probable cause," as required by the Treaty.  *Id.*  The improper affidavit, which falsely and misleadingly lists the wrong court and case number, is unreliable and therefore, Uruguay should not have allowed the affidavit to be used to attempt to satisfy the Treaty's requirement that the United States provide evidence that Mr. Gonzalez-Valencia "committed the offense for which [his] extradition is requested."  *Id.* at art. 10(3).  Although Uruguay declined to disregard Special Agent Mori's affidavit in its entirety, this Court should recognize the flagrantly improper and misleading affidavit as deficient under the Treaty.  Because the defective affidavit is insufficient to establish probable cause to indict or extradite Mr. Gonzalez-Valencia, for the reasons discussed in Mr. Gonzalez-Valencia's numerous pre-trial motions, this case was fatally flawed from the start and merits dismissal.  *See* Dk. 36-8.

caption "is not a mere procedural nicety;" a "caption 'protect[s] the public's legitimate interest in knowing which disputes involving which parties are before the federal courts.'" (citation omitted)); *see also Gusler v. City of Long Beach*, 700 F.3d 646, 649 (2d Cir. 2012) (reaffirming that a caption that is "inconsistent with the body of the notice," is impermissibly vague because "any ambiguity" between the caption and the body "defeat[s] the notice"). Because of these defects, the affidavit is invalid, and Uruguay should have denied the United States' extradition request.

What's more, a member of the DOJ's own trial team likewise made a material misrepresentation in her affidavit in support of extradition, consistent with the Government's "indict now, find evidence later" approach to this case. Despite Special Agent Mori's defective and deficient affidavit, attorney Amanda Liskamm relied exclusively on Agent Mori's affidavit for the "Summary of the Facts of the Case." Dk. 36-8, Ex. C at 6. To procure Mr. Gonzalez-Valencia's extradition, Ms. Liskamm represented to Uruguay and Magistrate Judge Deborah A. Robinson that she was an expert on the law concerning the conspiracy charge facing Mr. Gonzalez-Valencia and the statute of limitations, the grand jury process and the probable cause standard, and the facts and evidence of this case. *Id.* at 1–7. Ms. Liskamm specifically attested that "the evidence indicates that Gonzalez-Valencia is guilty of the offense for which extradition is sought." *Id.* at 6–7. But with nothing beyond Special Agent Mori's affidavit to identify the Government's woefully deficient evidence in this case, Mr. Gonzalez-Valencia's pre-trial motions demonstrate that the Government did not have probable cause, let alone sufficient evidence to prove that Mr. Gonzalez-Valencia is actually "guilty," of the charged conspiracy. *See* Dk. 36-8. To suggest otherwise is a plain misrepresentation of law and fact that took advantage of Uruguay's trust in the United States to improperly secure Mr. Gonzalez-Valencia's extradition.

In fact, the Government's decision, over five years after the grand jury returned an indictment, to walk away from the methamphetamine component of the charge against Mr. Gonzalez-Valencia demonstrates the unreliability of its "evidence."   But the Government represented to Uruguay and presumably the grand jury that it could prove Mr. Gonzalez-Valencia conspired to distribute methamphetamine in order to obtain the indictment and Mr. Gonzalez-Valencia's extradition.   Without the insufficient methamphetamine allegations that the Government now seeks to sweep under the rug, this case may have never gotten past the grand jury.   But the Government said what they needed to say to bring Mr. Gonzalez-Valencia to the United States from Uruguay, only to abandon one of two components of the charge for which Ms. Liskamm attested the Government had sufficient evidence.   With the case crumbling around it, the Government's hubris and misrepresentations from the very beginning of this case are now being laid bare before this Court.

By refusing to timely disclose witness identities under the false guise of unsubstantiated security concerns and withholding additional material until the eve of trial, the Government seeks to stall these proceedings and deprive Mr. Gonzalez-Valencia of his due process rights.   Likewise, as Mr. Gonzalez-Valencia will explain in opposition to the Government's eleventh hour Motion for Joinder, Dk. 72, the Government's tactics in this case inhibit the fair administration of justice. Rather, with the Government's tactics and fledging nature of its prosecution now exposed, this Court should not allow further stall and delay at the hands of the Government.   The Government will seemingly do anything, justice aside, to prevent Mr. Gonzalez-Valencia from adequately preparing his defense.   This Court should reject the Government's baseless stall tactics and order the timely disclosure of key information in accordance with Mr. Gonzalez-Valencia's requests.

**IV.    IN THE ALTERNTATIVE THIS COURT SHOULD CONDUCT AN *IN CAMERA* REVIEW OF THE GOVERNMENT'S SECURITY CONCERNS**

At a minimum, Mr. Gonzalez-Valencia requests that this Court require the Government to detail its supposed concern regarding each particular witness in an *ex parte* submission for the Court's review before issuing a blanket order covering every witness. *See United States v. Cooper*, 91 F. Supp. 2d 79, 83–84 (D.C. Cir. 2000) ("Although the government has indicated concern for witness safety in this case, it has not made specific arguments as to any particular witness. . . . If the government has safety concerns about disclosing the names of particular witnesses, it shall so advise the Court with illuminating detail, and *ex parte*."). Doing so will ensure that the alleged security risks surrounding each witness are properly balanced against Mr. Gonzalez-Valencia's due process and confrontation rights that protect the integrity of his upcoming trial.

**V.    CONCLUSION**

Based on the foregoing, Mr. Gonzalez-Valencia respectfully reiterates his requests that the Court enter an Order requiring the Government to: (1) disclose all *Brady* material immediately, or alternatively, conduct an *in camera* review to ensure that no *Brady* material is being withheld; (2) produce *Giglio* and Jencks material at least thirty (30) days before trial; and (3) disclose discovery related to its witnesses, confidential informants, and cooperating criminals thirty (30) days before trial or, in the alternative, order the Government to file an *ex parte* submission detailing the specific, alleged security concerns faced by each witness individually. If the Government is to uphold its constitutional responsibilities in this case, the time for stall tactics and delay is over.

Dated: November 15, 2021

        Respectfully submitted,

         /s/ Stephen A. Best

        **BROWN RUDNICK LLP**

        Stephen A. Best (DC Bar No. 428447)
        Tiffany B. Lietz (admitted *pro hac vice*)
        601 Thirteenth Street, NW
        Suite 600
        Washington, DC 20005
        Telephone: (202) 536-1737
        sbest@brownrudnick.com

        -and-

        **The L●S LAW FIRM**

        Lilly Ann Sanchez (admitted *pro hac vice*)
        Four Seasons Tower, Suite 1200
        1441 Brickell Avenue
        Miami, Florida 33131
        Telephone: (305) 503-5503
        lsanchez@thelsfirm.com

        *Counsel for Defendant Gerardo Gonzalez-Valencia*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 15, 2021, I electronically filed the foregoing document with the Clerk of the U.S. District Court for the District of Columbia by using the CM/ECF system. All participants registered through the Court's electronic filing system will be served by the CM/ECF system as required to be served by Federal Rule of Civil Procedure 5(a).

Date: November 15, 2021

*/s/ Stephen A. Best*
Stephen A. Best
601 Thirteenth Street, NW
Suite 600
Washington, DC 20005
Telephone: (202) 536-1737
sbest@brownrudnick.com

*Counsel for Defendant Gerardo Gonzalez-Valencia*
