# **EXHIBIT A**

BILATERAL EXTRADITION TREATIES

<u>URUGUAY</u>

Extradition Treaty signed at Washington April 6, 1973;
Transmitted by the President of the United States of America to the Senate May 21, 1973 (Ex. K, 93d Cong., 1st Sess.);
Reported favorably by the Senate Committee on Foreign Relations September 26, 1973 (S. Ex. Rept. No. 93-19, 93d Cong., 1st Sess.);
Advice and consent to ratification by the Senate October 1, 1973;
Ratified by the President November 21, 1973;
Ratified by Uruguay November 22, 1973;
Ratifications exchanged at Montevideo April 11, 1984;
Proclaimed by the President October 11, 1984;
Entered into force April 11, 1984.

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

A PROCLAMATION

CONSIDERING THAT:

The Treaty on Extradition and Cooperation in Penal Matters between the United States of America and the Oriental Republic of Uruguay was signed at Washington on April 6, 1973, the text of which Treaty is hereto annexed;

The Senate of the United States of America by its resolution of October 1, 1973, two-thirds of the Senators present concurring therein, gave its advice and consent to ratification of the Treaty;

The Treaty was ratified by the President of the United States of America on November 21, 1973, in pursuance of the advice and consent of the Senate, and was duly ratified on the part of Uruguay;

It is provided in Article 20 of the Treaty that the Treaty shall enter into force upon the exchange of instruments of ratification;

The instruments of ratification of the Treaty were exchanged at Montevideo on April 11, 1984; and accordingly the Treaty entered into force on that date;

NOW, THEREFORE, I, Ronald Reagan, President of the United States of America, proclaim and make public the Treaty, to the end that it be observed and fulfilled with good faith on and after April 11, 1984, by the United States of America and by the citizens of the United States of America and all other persons subject to the jurisdiction thereof.

IN TESTIMONY WHEREOF, I have signed this proclamation and caused the Seal of the United States of America to be affixed.

DONE at the city of Washington this eleventh day of October in the year of our Lord one thousand nine

hundred eighty-four and of the Independence of the United States of America the two hundred ninth.

Ronald Reagan

[SEAL]

By the President:

George P. Shultz

Secretary of State

TREATY ON EXTRADITION AND COOPERATION IN PENAL MATTERS BETWEEN THE UNITED STATES OF AMERICA AND THE ORIENTAL REPUBLIC OF URUGUAY

The United States of America and the Oriental Republic of Uruguay, desiring to make more effective the cooperation of the two countries in the repression of crime, agree as follows:

ARTICLE 1

The Contracting Parties agree to extradite on a reciprocal basis to the other, in the circumstances and subject to the conditions established in this Treaty, persons found in the territory of one of the Parties who have been charged with or convicted by the judicial authorities of the other of the offenses mentioned in Article 2 of this Treaty committed within the territory of such other, or outside thereof under the conditions specified in Article 3.

ARTICLE 2

Persons shall be delivered up according to the provisions of this Treaty for any of the following offenses provided that these offenses are punishable by the laws of both Contracting Parties by deprivation of liberty for a maximum period exceeding one year:

1. Murder or manslaughter.

2. Abortion.

3. Aggravated injury or mutilation or assault.

4. Illegal use of arms.

5. Willful abandonment of a child or spouse when for that reason the life of that child or spouse is or is likely to be endangered or death results.

6. Rape; statutory rape; indecent assault; corruption of minors, including unlawful sexual acts with or upon minors under the age specified by the penal laws of both Contracting Parties.

7. Procuration; promoting or facilitating prostitution.

8. False imprisonment; abduction or child stealing; kidnapping.

9. Robbery or larceny or burglary.

10. Extortion or threats.

11. Bigamy.

12. Fraud; embezzlement or breach of fiduciary relationships; obtaining money, valuable securities or property, by false pretenses or by other fraudulent means including the use of the mails or other means of communication.

13. Unlawful manufacture, use, distribution, supply, acquisition or possession, or theft of bombs, apparatus capable of releasing nuclear energy, explosive or toxic materials, asphyxiating or flammable materials.

14. Offenses that endanger the safety of means of transportation or communication, including any act that endangers any person on a means of transportation.

15. Piracy and any act of mutiny or revolt on board an aircraft or vessel against the authority of the captain or commander of such aircraft or vessel, any seizure or exercise of control, by force or violence or threat of force or violence, of an aircraft or vessel.

16. Offenses against public health.

17. Unlawful introduction or importation, exportation, fabrication, production, preparation, sale, delivery or supply of narcotic drugs, psychotropic drugs, cocaine and its derivatives and other dangerous drugs including cannabis sativa L, and chemicals or substances injurious to health or of primary materials designed for such fabrication.

18. Introduction, export, fabrication, transportation, sale or transmission, use, possession or stockpiling of explosives, offensive chemicals or similar materials, substances or instruments designed for such fabrication, arms, munitions, nuclear elements and other materials considered war material, other than such acts legally provided for or properly authorized.

19. Bribery, including soliciting, offering and accepting.

20. Malversation.

21. False statements, accusations or testimony effected before a government agency or official.

22. Counterfeiting or forgery of money, bank bills, bonds, documents of credit, seals, stamps, marks, and public and private instruments. For the purpose of this offense, holographic wills, sealed wills, checks, letters of exchange and negotiable or bearer documents shall be considered public instruments.

23. Issuance, acceptance or endorsement of receipts which do not conform, totally or partially, to purchases and sales actually performed.

24. Execution or issuance of checks without sufficient funds.

25. Smuggling.

26. The acquisition, receipt or concealment of money, objects or valuables, knowing the article is the result of a crime, whether or not the receiver participated in such crime or intervened pursuant to an agreement preceding the offense.

27. Arson; malicious or willful injury to property.

28. An offense against any law relating to the protection of the life or health of persons from contaminated or poisoned water, substances or products.

29. Any offense against the bankruptcy laws.

30. Industrial or commercial fraud, including:

(a) The raising or lowering the price of merchandise, public funds or negotiable instruments through the use of false information, simulated negotiations, meetings or coalitions, for the purpose of not selling certain merchandise or of selling at a fixed price.

(b) The offering of public funds or stock or financial obligations of the corporations, companies, partnerships, or corporate bodies, dissimulating or concealing facts or true circumstances or affirming or expressing false statements or circumstances.

(c) The publishing or authorizing of false or incomplete inventories, accounts, profit and loss statements, reports or statements or informing a meeting of partners by falsehood or the withholding of information about important facts needed to understand the economic condition of a firm, for whatever end.

In the case of subparagraphs (a) and (b) of this item, the offense can be committed by any individual as well as by members of corporations or partnerships of any nature. In the supposition of subparagraph (c) of this item, the offense must necessarily have been committed by incorporators, directors, administrators, liquidators or trustees of incorporated entities, cooperatives or other joint companies.

31. Assault upon a public official.

32. Unlawful interference in any administrative or juridical proceeding by bribing, threatening, or injury by any means, any officer, juror, witness or duly authorized person.

Extradition shall also be granted for participation in any of the offenses mentioned in this Article, not only as principal or accomplices, but as accessories, as well as for attempt to commit or conspiracy to commit any of the aforementioned offenses, when such participation, attempt or conspiracy is subject, under the laws of both Parties, to a term of imprisonment exceeding one year.

If extradition is requested for any offense mentioned in the first or second paragraphs of this Article and that offense is punishable under the laws of both Contracting Parties by a term of imprisonment exceeding one year, such offense shall be extraditable under the provisions of this Treaty whether or not the laws of both Contracting Parties would place that offense within the same category of offenses made extraditable by the first or second paragraphs of this Article and whether or not the laws of the requested Party denominate the offense by the same terminology.

Extradition shall also be granted for any offense against a federal law of the United States in which one of the above-mentioned offenses is a substantial element, even if transporting, transportation, the use of the mails or interstate facilities are also elements of the specific offense.

In the case in which a person has already been sentenced, extradition will be granted only if the sentence imposed or remaining to be served is a minimum of one year of imprisonment.

ARTICLE 3

For the purposes of this Treaty, the territory of a Contracting Party shall include all the territory under the

jurisdiction of that Contracting Party, including airspace and territorial waters and vessels and aircraft registered in that Contracting Party if any such aircraft is in flight or if any such vessel is on the high seas when the offense is committed. For purposes of this Treaty an aircraft shall be considered to be in flight from the moment when power is applied for the purpose of take-off until the moment when the landing run ends. The aforementioned provisions do not exclude the application of penal jurisdiction exercised in accord with the legislation of the requested Party.

When the offense for which extradition has been requested has been committed outside the territory of the requesting Party, extradition may be granted if the laws of the requested Party provide for the punishment of such an offense committed in similar circumstances.

ARTICLE 4

A requested Party shall not decline to extradite a person sought because such person is a national of the requested Party.

ARTICLE 5

Extradition shall not be granted in any of the following circumstances:

1. When the person whose surrender is sought is being proceeded against or has been tried and discharged or punished in the territory of the requested Party for the offense for which his extradition is requested.

2. When the person whose surrender is sought has been tried and acquitted, or has undergone his punishment in a third State for the offense for which his extradition is requested.

3. When the prosecution or the enforcement of the penalty for the offense has become barred by lapse of time according to the laws of either of the Contracting Parties.

4. When the offense for which the extradition is requested is of a political character, or the person whose extradition has been requested proves that the extradition request has been made for the purpose of trying or punishing him for an offense of the above-mentioned character. In either case, the final judgment as to the application of this subparagraph shall rest with the requested Party.

The provisions of subparagraph 4 of this Article shall not be applicable to the following:

(a) An attempt, whether consummated or not, against the life, the physical integrity or the liberty of the Head of State of either Contracting Party or of a member of the Cabinet of the Government of the United States of America or a Minister of the Government of the Oriental Republic of Uruguay or a member of the respective family.

(b) A kidnapping, murder or other assault against the life or physical integrity of a person to whom a Contracting Party has the duty according to international law to give special protection, or any attempt to commit such an offense with respect to any such person.

(c) An offense committed by force or threat of force on board a commercial aircraft carrying passengers in scheduled air services or on a charter basis.

ARTICLE 6

When the person whose extradition is requested is, at the time of the presentation of the request for extradition, under the age of 18 years and has permanent residence in the requested Country and the

competent authorities of that Country determine that extradition would prejudice the social readjustment and rehabilitation of that person, the requested Party may suggest to the requesting Party that the request for extradition be withdrawn, specifying the reasons therefor.

The provisions of the preceding paragraph will be applicable only in the case in which the person sought is subject to prosecution in accordance with the laws of the requested Party.

ARTICLE 7

When the offense for which the extradition is requested is punishable by death under the laws of the requesting Party, and the laws of the requested Country do not permit the death penalty for that offense, extradition may be refused unless the requesting Party provides such assurances as the requested Party considers sufficient that the death penalty shall not be imposed, or, if imposed, shall not be executed.

ARTICE 8

When the person whose extradition is requested is being proceeded against or is serving a sentence in the territory of the requested Party for an offense other than that for which extradition has been requested, his surrender may be deferred until the conclusion of the proceedings and, in the case of a conviction, until the full execution of any punishment he may or may have been awarded.

ARTICLE 9

The determination that extradition should or should not be granted shall be made in accordance with this Treaty and the law of the requested Party. The person whose extradition is sought shall have the right to use such remedies and recourses as are provided by the law of the requested Party.

ARTICLE 10

1. The request for extradition shall be made through the diplomatic channel.

2. The request shall be accompanied by:

(a) A statement of the facts of the case.

(b) The data necessary to prove the identity of the person whose extradition is sought including, when possible, photographs and fingerprints.

(c) The text of the applicable laws, including the laws defining the offense, the law prescribing the punishment for the offense and the laws relating to the limitation of the legal proceedings or the enforcement of the legal penalty for the offense.

3. When the request relates to a person who has not yet been convicted, it must be accompanied by a warrant of arrest issued by a judge or other judicial officer of the requesting Party.

The requested Party may require the requesting Party to produce evidence to establish probable cause that the person claimed has committed the offense for which extradition is requested. The requested Party may refuse the extradition request if an examination of the case in question shows that the warrant is manifestly ill-founded.

4. When the request relates to a person already convicted, it shall be accompanied by the following:

(a) When emanating from the United States of America, a copy of the judgment of conviction and of the sentence if it has been passed.

(b) When emanating from the Oriental Republic of Uruguay, a copy of the sentence.

In a case envisioned in this paragraph, a certification showing that the sentence has not been served or how much of the sentence has not been served shall also be sent to the requested Party.

5. The documents which, according to this Article, shall accompany the extradition request, shall be admitted in evidence when:

(a) In the case of a request emanating from the United States of America, they are signed by a judge, magistrate or officer of the United States of America, authenticated by the official seal of the Department of State and certified by the principal diplomatic or consular officer of the Oriental Republic of Uruguay in the United States of America.

(b) In the case of a request emanating from the Oriental Republic of Uruguay they are signed by a judge or other judicial authority and are Legalized by the principal diplomatic or consular officer of the United States of America in the Oriental Republic of Uruguay.

6. All the documents mentioned in this Article shall be accompanied by a translation into the language of the requested Party which will be at the expense of the requesting Party.

ARTICLE 11

In case of urgency the Contracting Parties may request, through their respective diplomatic agents or by direct communication between the Department of Justice of the United States and the Ministry of the Interior of the Oriental Republic of Uruguay, the provisional arrest of an accused as well as the seizure of objects relating to the offense of which he has been accused and which objects are in the possession of the accused or of his associate or representative, and the location of which has been identified by the requesting Party. The requesting Party shall support a request for objects by evidence showing the relationship of the objects to the offense charged. The requested Party may decline this request if it appears that the interest of innocent third parties has intervened.

The request for provisional arrest shall be granted if it contains a declaration of the existence of one of the documents enumerated in Article 10, paragraphs 3 and 4, the description of the person sought and the offense for which he has been charged.

If, within forty-five calendar days from the date of provisional arrest, the requesting Party fails to present the formal request for extradition to the Department of State in a request emanating from the Oriental Republic of Uruguay, or to the Ministry of Foreign Affairs in a request emanating from the United States of America, supported by the documents required by Article 10, the person claimed shall be released and a new request based on the same offense shall be admitted only if a formal request for extradition is presented with all the requirements enumerated in Article 10.

ARTICLE 12

If the requested Party requires additional evidence or information to enable it to decide on the request for extradition, such evidence or information shall be submitted to it within such time as that Party shall require.

If the person sought is under arrest and the additional evidence or information submitted as aforesaid is not

sufficient or if such evidence or information is not received within the period specified by the requested Party, he shall be discharged from custody. Such discharge shall not bar the requesting Party from submitting another request in due form in respect of the same or any other offense.

ARTICLE 13

A person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting Party for an offense other than that for which extradition has been granted nor be extradited by that Party to a third State unless:

1. If, upon being released, he remains in the territory of the requesting Party for more than thirty days counting from the date his release was granted; or

2. When, having left the territory of the requesting Party after his extradition, he has voluntarily returned to it;

3. When the requested Party has manifested its consent to his detention, trial or punishment for an offense other than that for which extradition was granted or to his extradition to a third State provided such other offense is covered by Article 2.

For the purposes of subparagraphs 1 and 2 of this Article, the person extradited must be formally advised at the time he is released in the requesting Party of the possible consequences if he remains in the territory of that Party.

The stipulations of subparagraphs 1, 2 and 3 of this Article shall not apply to offenses committed after the extradition.

ARTICLE 14

The requested Party upon receiving two or more requests for the extradition of the same person, either for the same offense or for different offenses, shall determine to which of the requesting States it will grant extradition, taking into consideration all the circumstances of the case and, particularly, the possibility of a later extradition between the requesting States, the seriousness of each offense, the place where the offense was committed, the nationality of the person sought, the dates upon which the requests were received and the provisions of any extradition agreements between the requested Party and the other requesting States.

ARTICLE 15

The requested Party shall promptly communicate to the requesting Party through the diplomatic channel the decision on the request for extradition.

If a warrant or order for the extradition of a person sought has been issued by the competent authority and he is not removed from the territory of the requested Party within thirty days from the date of said communication, he shall be set at liberty and the requested Party may subsequently refuse to extradite that person for the same offense.

ARTICLE 16

To the extent permitted under the law of the requested Party and subject to the rights of third Parties, which shall be duly respected, all articles, objects of value or documents relating to the offense, whether acquired as a result of the offense or used for its execution, or which in any other manner may be material evidence for the prosecution, shall, if found, be surrendered upon the granting of the extradition even when

extradition cannot be effected due to the death or disappearance of the accused.

ARTICLE 17

Transit through the territory of one of the Contracting Parties of a person surrendered to the other Contracting Party by a third State shall be granted on request made through the diplomatic channel, which request shall be accompanied by a copy of the warrant or order of extradition, provided that conditions are present which would warrant extradition of such person by the State of transit and reasons of public order are not opposed to the transit.

The requesting Party shall reimburse the State of transit for any expenses incurred in connection with such transportation.

ARTICLE 18

Expenses related to the translation of documents and to the transportation of the person sought shall be paid by the requesting Party. The appropriate legal officers of the country in which the extradition proceedings take place shall, by all legal means within their power, assist the requesting Party before the respective judges and magistrates.

No pecuniary claim arising out of the arrest, detention, examination and surrender of persons sought under the terms of this Treaty shall be made by the requested Party against the requesting Party.

ARTICLE 19

In order to cooperate in the prevention and repression of crime, subject to their respective national laws the Contracting Parties agree as follows:

1. To exchange information and to consider the most efficient administrative techniques for the prevention and repression of crime;

2. To expedite as rapidly as possible requests in connection with those offenses listed in this Treaty;

3. To exchange statistical data and the results of research in the field of criminology.

ARTICLE 20

This Treaty shall be ratified and shall enter into force upon the exchange of ratifications at Montevideo at the earliest possible date. [FN1]

FN1. Apr. 11, 1984.

End of Footnote(s).

It may be terminated at any time by either Contracting Party by prior notification to the other Contracting Party, and termination shall become effective six months after the date such notification is received.

This Treaty shall terminate and replace the Extradition Treaty between the United States of America and the Oriental Republic of Uruguay signed at Washington March 11, 1905; [FN2] however, the crimes listed in that Treaty and committed prior to the entry into force of this Treaty shall nevertheless be subject to extradition pursuant to the provisions of that Treaty, with the exception of the procedural provisions which will be, in all cases, those of this Treaty.

FN2. TS 501; 35 Stat. 2028.

End of Footnote(s).

35 U.S.T. 3197, 1983 WL 472072 (U.S. Treaty), T.I.A.S. No. 10,850

Back to top