**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 16-CR-065 (BAH)** |
| **v.** | |
| **GERARDO GONZALEZ-VALENCIA,** | |
| Defendant. | |

**DEFENDANT GERARDO GONZALEZ-VALENCIA'S RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR JOINDER OF DEFENDANTS FOR TRIAL**

NOW COMES, the Defendant, Gerardo Gonzalez-Valencia, by and through undersigned counsel, and respectfully submits this response memorandum ("Response") to the Government's Motion for Joinder of Defendants for Trial (Dk. 72) ("Motion").

Respectfully, this Court lacks jurisdiction to decide any motion in this case besides Mr. Gonzalez-Valencia's Motion to Dismiss the Indictment (Dk. 64) on the grounds that the United States secured his extradition from Uruguay without probable cause and in violation of his constitutional right to due process. As such, he is not properly before this Court. (Dk. 64; Dk. 58). Accordingly, the Court must dismiss the Indictment (Dk. 1), or, in the alternative and at the very least, order Mr. Gonzalez-Valencia's release from custody.

In the alternative, if the Court believes it retains jurisdiction to hear the Government's motion on joinder at this time, Mr. Gonzalez-Valencia respectfully requests that this Court deny the Government's Motion pursuant to Rule 14 of the Federal Rules of Criminal Procedure. The Government's attempt to join Mr. Gonzalez-Valencia's case with that of his brother, Jose Gonzalez-Valencia, is nothing more than a last-ditch effort to salvage this case, having now realized its numerous issues and lack of evidence to proceed. More importantly, the Government's attempt at joinder at this point is contrary to the rule of specialty and the treaty requirements with

Uruguay.  In essence, moving to join these defendants equates to a superseding indictment and the addition of evidence that was not contemplated by the extradition treaty.  In 2016, the Government indicted both Mr. Gonzalez-Valencia and Jose Gonzalez-Valencia in separate cases.  The Government had every opportunity to indict the brothers together, but chose not to do so for its own strategic purposes—perhaps because the indictments cover different time periods and Mr. Gonzalez-Valencia withdrew from any alleged conspiracy well before the statute of limitations expired.  (*See* Dk. 35).  The Government then waited over five years—now on the eve of trial, after the Court's pretrial motions deadline has passed—to seek to join these distinct cases.  The Court should not allow Mr. Gonzalez-Valencia to suffer substantial prejudice through joinder with a defendant who arrived on U.S. soil from Brazil only last week and is undoubtedly unprepared to proceed to trial in February 2022.

## I.    Background

The facts at issue are uncontradicted.

- On or around June 1, 2016, the United States sent documents to Uruguay in support of the extradition of Mr. Gonzalez-Valencia to the United States.  These documents included: identifying information; a sworn declaration from Drug Enforcement Agency ("DEA") Special Agent Kyle Mori, and a sworn declaration of United States Department of Justice ("DOJ") Trial Attorney Amanda Liskamm.

- Previously, Mr. Gonzalez-Valencia was detained in Uruguay pursuant to this extradition warrant.  Mr. Gonzalez Valencia challenged the extradition as improper on a number of grounds including lack of probable cause, and errors and misrepresentations by the United States.  The singular paragraph in Special Agent

Mori's affidavit speaking to conduct within five years of the date of indictment is paragraph nineteen, which reads in full:

> One [sic] June 26, 2013, during a lawfully-intercepted text messages [sic], Gonzalez-Valencia and a co-conspirator discussed whether a drug trafficking transaction was complete. Gonzalez-Valencia and his co-conspirator discussed 85 units of drugs which belonged to the co-conspirator as well as 15 more units that Gonzalez-Valencia was saving. Gonzalez-Valencia and his co-conspirator further discussed a drug sample. Based on my training and experience, and knowledge of this investigation, drug traffickers usually request a drug sample before agreeing to a large drug purchase. Gonzalez-Valencia also discussed additional drug amounts which were being prepared for shipment "up there," which I believe is a reference to the United States, the intended shipment point for those drugs.

Special Agent Kyle Mori, Affidavit in Support of Request for Extradition (May 5, 2016) (Dk. 64, Ex. A).

- There is, however, no mention of the type of drugs at issue; specifically, Special Agent Mori does not state that the drugs referenced in his summary were cocaine (which is critical to a determination of probable cause). *See* Counsel's Analysis of Mori Affidavit (attached as Exhibit A).

- Moreover, public-source documents from the DEA repeatedly state that the organization Mr. Gonzalez-Valencia is accused of associating with distributed a wide array of drugs including marijuana. (Dk. 64, Ex. F (U.S. Attorney's Office press release announcing the indictment of twelve members of Jalisco New Generation Cartel (CJNG) alleging the distribution of "multiple pounds of marijuana which they had received directly from members of CJNG")).

- On or about September 1, 2017, the Uruguayan Court issued a written order granting extradition to the U.S. In so doing, the Uruguayan Court applied a different standard of proof than required under the Extradition Treaty. Specifically, the Uruguayan Court

<u>never held</u> that probable caused existed to support the extradition.  The Uruguayan court wrote (translated from Spanish to English):

> It is therefore not the purview of this court to evaluate the evidence submitted by the requesting State; rather, it must only evaluate the evidence to determine *whether the extradition request and arrest warrant are manifestly lacking in grounds*, according to the provisions of Art. 10.3 in fine of the Treaty.

> Judgement of Court of First Instance Subpoena No. 1367/2017 IUE 474-76/201, at *6 (Sept. 1, 2017) (translated) (emphasis added) (attached as Exhibit B).

- In or around November 2018, Uruguay requested the United States provide more evidentiary support for its position that probable cause existed to grant extradition. Criminal Court Specialized in Organized Crime 1 T, Reiteration of the File No. 950/2018 (attached as Exhibit C).

- Subsequently, on or about July 16, 2019, the United States conceded that there was no additional information and stated that the information provided was all that exists for a determination of probable cause.  In fact, the United States simply re-submitted its extradition package including the same affidavits with no additional evidence.

- Instead, the United States referred back to Attorney Liskamm's affidavit.  In so doing, Attorney Liskamm of the DOJ affirmed under oath that she was familiar with the facts of this case, was an <u>expert</u> in the relevant criminal statutes at issue and statute of limitations, and that Mr. Gonzalez-Valencia was guilty of the crime charged.  (Dk. 64, Ex. C).

- On or about May 14, 2020, Mr. Gonzalez-Valencia was extradited to the United States.

- On or about September 15, 2021, the United States Department of Justice informed counsel that it was not proceeding with the allegation regarding conspiracy to distribute

methamphetamine.  The United States walked away from its claim that it had sufficient evidence to proceed to trial on this charge only after securing Mr. Gonzalez-Valencia's extradition to the United States.

- The United States engaged in misconduct by submitting to Uruguay an affidavit replete with misstatements, inaccurate information, and accusations that the United States has since abandoned, and conclusory statements rather than actual evidence which could be relied upon for a proper and legal determination of probable cause. Ex. A.  Similarly, DOJ Attorney Liskamm's affidavit is evidence of misconduct by the United States.  Any federal prosecutor who prosecutes narcotics cases knows that they have to allege the specific drug at issue.  She nevertheless swore that:

> I have thoroughly reviewed the applicable statute of limitations.  Since the applicable statute of limitations is five years, and the indictment, which charges criminal violations occurring from January 2003 to April 19, 2016, was filed on April 19, 2016, Gonzalez-Valencia was formally charged within the required five-year time period. The prosecution of the charge in this case is, therefore, not barred by the statute of limitations.

Amanda Liskamm, Affidavit in Support of Request for Extradition (May 6, 2016) (Dk. 64, Ex. C ¶ 13).

> I have reviewed the affidavit of DEA Special Agent Kyle J. Mori and the evidence in this case. I attest that the evidence indicates that Gonzalez-Valencia is guilty of the offense for which extradition is sought.

*Id.* ¶ 19.

- In swearing the accuracy of her statements under oath, Attorney Liskamm knew or should have known: (1) DEA Special Agent Mori's affidavit was insufficient for a determination of probable cause; (2) the United States did not have sufficient evidence to proceed with the charge of conspiracy to distribute methamphetamine; and (3) that it was improper to inform a foreign court that Mr. Gonzalez-Valencia was guilty of the

crime charged, particularly since the same prosecution team has now since abandoned half of its case.

## II.   The Court Lacks Jurisdiction to Hear any Other Aspect of This Case Except This Motion to Dismiss

As Mr. Gonzalez-Valencia squarely put before this Court in his Motion to Dismiss the Indictment (Dk. 64), the Government violated his due process rights by securing his extradition without probable cause.  The D.C. Circuit has made clear that this Court has jurisdiction to review Uruguay's extradition decision.  And, of course, due process rights apply in such proceedings. Yet, the Government's evidence in its extradition package is plainly insufficient to meet its burden to establish probable cause that Mr. Gonzalez-Valencia conspired to distribute the particular drugs alleged in the Indictment during the limitations period.  Because the Government therefore secured Mr. Gonzalez-Valencia's extradition in violation of the applicable extradition treaty and under false pretenses, this Court must dismiss the case with safe passage guaranteed for Mr. Gonzalez-Valencia back to Uruguay.

### A.   This Court has Jurisdiction to Review Uruguay's Extradition Decision

Preliminarily, this Court has jurisdiction to review Uruguay's decision, but, respectfully, that is where the Court's jurisdiction ends.  *United States v. Trabelsi*, 845 F.3d 1181, 1186 (D.C. Cir. 2017) ("We hold that we have jurisdiction to review [a foreign country's extradition] decision.").  Courts "presume, *absent evidence to the contrary*, that the extraditing nation has complied with its obligations under the treaty and that the extradition is lawful." *Id.*  However, the presumption of compliance "is not irrebuttable." *Id.* at 1189.  Rather, "[e]vidence that might rebut the presumption would include misconduct on the part of the United States in procuring an extradition, or the absence of review of the extradition request by the requested party." *Id.* (internal citation omitted).

In fact, the so-called *Ker/Frisbie* exceptions provide two ways in which criminal defendants may "defeat personal jurisdiction by asserting that they were brought under the district court's jurisdiction through illegal means." *United States v. Ceja*, 543 F. App'x 948, 953 (11th Cir. 2013). The doctrine restricts the Government from trying a defendant if: (1) "the transfer of the defendant violated the applicable extradition treaty," *id.* (quoting *United States v. Struckman*, 611 F.3d 560, 571 (9th Cir. 2010)); or (2) "the United States government engaged in misconduct," which "suppresses 'the fruits' of the government's misconduct," *id.* (internal quotation marks and citation omitted). Due process therefore requires "a court to divest itself of jurisdiction over the person or a defendant where it has been acquired as the result of the government's deliberate, unnecessary and unreasonable invasion of the accused's constitutional rights." *United States v. Gotti*, No. X5 02 CR 743(RCC), 2004 WL 602689, at *11 (S.D.N.Y. Mar. 26, 2004) (quoting *United States v. Toscanino*, 500 F.2d 267, 275 (2d Cir. 1974), *narrowing recognized by In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 157, 167 (2d Cir. 2008)).

Mr. Gonzalez-Valencia's rights to due process were violated by:

- The United States submitting insufficient evidence to show probable cause of the accused's guilt;

- The Uruguayan court's failure to conduct an independent review of the evidence to assess probable cause as required under the Treaty;

- The Uruguayan Court's application of a different standard other than probable cause to determine grounds for extradition in violation of the Treaty;

- The United States engaging in in misconduct by knowingly and willingly making misstatements and misrepresentations in the extradition process which Uruguay clearly and unequivocally relied upon to grant extradition.

**B.      The Government Violated Due Process by Securing Mr. Gonzalez-Valencia's Extradition without Probable Cause**

In pressuring Uruguay to extradite Mr. Gonzalez-Valencia without probable cause, the United States violated Mr. Gonzalez-Valencia's due process rights.  "Courts have unanimously held that the government is bound by principles of due process in its conduct of extradition proceedings." *Martinez v. United States*, 793 F.3d 533, 556 (6th Cir. 2015), *rev'd on other grounds*, 828 F.3d 451 (6th Cir. 2016) (en banc).  Principles of due process are particularly significant to Mr. Gonzalez Valencia's arguments based on his status and rights as a United States citizen. *Id.* (citing *Valenzuela v. United States*, 286 F.3d 1223, 1229 (11th Cir. 2002) (granting habeas relief on a due process claim arising from the Government's conduct in extradition proceedings because "the judiciary must ensure that the constitutional rights of individuals subject to extradition are observed"); *Petition of Geisser*, 627 F.2d 745, 750 (5th Cir. 1980) (a defendant may raise a constitutional claim to challenge extradition proceedings and "a purported treaty obligation of the United States government cannot override an individual constitutional right")).  In fact, the violation of due process principles forms the foundation for Mr. Gonzalez-Valencia's dismissal motion due to the Government's misconduct in securing his extradition without probable cause.

When the United States secures a defendant's presence in court through improper means, "dismissal is required." *United States v. Struckman*, 611 F.3d 560, 573 (9th Cir. 2010) (internal quotation marks and citation omitted).  Accordingly, dismissal and discharge from custody is the appropriate remedy for the due process violations Mr. Gonzalez-Valencia suffered through his extradition to the United States without probable cause. *See also In re Extradition of Platko*, 213 F. Supp. 2d 1229, 1241 (S.D. Cal. 2002) (ordering a defendant be "discharged forthwith and the case closed" because the extradition application made "an insufficient showing of probable

8

cause").  In fact, discharge from custody requires not only the Mr. Gonzalez-Valencia be freed upon dismissal, but that the United States ensure his safe passage back to Uruguay.  After all, Mr. Gonzalez-Valencia would still be in Uruguay, but for his improper extradition without probable cause.

### 1. The Government Specifically Lacked Evidence that Mr. Gonzalez-Valencia Committed the Charged Offense: Conspiracy to Distribute *Cocaine*

To convict a defendant of participating in a conspiracy to distribute cocaine, the Government unsurprisingly must establish that the defendant engaged in a conspiracy to distribute *cocaine*.  Consistent with Mr. Gonzalez-Valencia's argument, jury instructions in this District have included "a description of what the conspiracy's unlawful purposes and unlawful objectives were—the importation, manufacture, and distribution of *cocaine* with knowledge or intent that it end up in the United States" *United States v. Vega*, 826 F.3d 514, 524 (D.C. Cir. 2016) (emphasis added).  For the same charged offense as Mr. Gonzalez-Valencia, jury instructions used in this District similarly require the Government, without any evidence of a continuing conspiracy, to prove that Mr. Gonzalez-Valencia participated in a conspiracy to distribute *cocaine* within the limitations period.  *United States v. Borda*, 786 F. Supp. 2d 25, 41 (D.D.C. 2011) (Kessler, J.) (jury instructions used in this District require the Government to prove a conspiracy to distribute the particular drug—here, cocaine—under the charged statutes).

As set forth in his Motion to Dismiss the Indictment, without any evidence linking Mr. Gonzalez-Valencia to the particular drug alleged in the Indictment during the limitations period, the Government lacked evidence to meet its probable cause burden.  This requirement is all the more prescient following the Government's decision to walk away from the methamphetamine portion of the charge, leaving only cocaine.  (Dk. 64 at 8–9); *see United States v. Fernandez*, 182

F.3d 919, n.3 (6th Cir. 1999) (unpublished) (addressing whether the Government lacked "sufficient evidence to support a finding that he distributed *in excess of five kilograms of cocaine within the limitations period*" (emphasis added)).

To recap the Government's evidence addressed in previous briefing, the Government relied almost exclusively on DEA Special Agent Mori's affidavit to supply "evidence" of the alleged offense.  (Dk. 58 at 9–15).  Yet Agent Mori's affidavit offers little more than inaccurate, withdrawn, and conclusory statements.  For starters, the affidavit is addressed to the wrong court and sworn before a magistrate judge in the Central District of California.  (*See* Dk. 74. at 6–7). Agent Mori's affidavit also cites only two cooperating witnesses, one of which supplied allegations concerning the metaphone portion of the charge which the Government has now abandoned.  (Dk. 64, Ex. A).  So the Government is left with, at most, one anonymous cooperating witness to recite stale claims from well before the statute of limitations expired.[1]  And, as Mr. Gonzalez-Valencia discussed at length, the affidavit's sole allegation within the limitations period concerns a convoluted interpretation of a 2013 text message in which "Silverio" (whom the Government believes, but Mr. Gonzalez-Valencia disputes is Mr. Gonzalez-Valencia) allegedly engaged in a vague discussion concerning unnamed drugs.  (*See* Dk. 58 at 5–8).  Even accepting Agent Mori's scant allegations at face value, the Government lacks evidence that Mr. Gonzalez-Valencia conspired to distribute *cocaine* during the limitations period.  So the affidavit is woefully insufficient to provide probable cause of the charged offense.

The Government offers no additional evidence beyond  the affidavit from a member of its trial team, Attorney Liskamm.  And Attorney Liskamm's affidavit does nothing more than flag the

---

[1] By comparison, this Court recently approved of a more typical extradition affidavit, which articulates over four pages worth of specific, factual allegations, rather than two scant paragraphs concerning conduct within the limitations period here.  *United Stated v. Apodaca*, No. 14-cr-057 (BAH) (June 28, 2017) (ECF Dk. 54-2).

Government's statute of limitations problem and point to DEA Agent Kyle Mori's affidavit for "specific details" of Mr. Gonzalez-Valencia's alleged "involvement with the offense charged in the indictment." (Dk. 64, Ex. C). Contrary to Attorney Liskamm's sworn statements, Special Agent Mori's affidavit contains no specific details concerning the charged offense and therefore fails to establish probable cause. Attorney Liskamm's affidavit is false in so far as she attested "that the evidence indicates that Gonzalez-Valencia is guilty of the offense for which extradition is sought." *Id.* Accordingly, the submission of woefully deficient and false affidavits constitutes misconduct in the extradition process by the United States and provides another basis for dismissal. From every angle, the Government failed to establish probable cause to secure Mr. Gonzalez-Valencia's extradition in the first instance, which divests this Court of jurisdiction over him and requires dismissal of this case.

### 2. Uruguayan Courts Permitted Mr. Gonzalez-Valencia's Extradition without Conducting an Independent Review of the Evidence to Assess Probable Cause

The Court must first look to the extradition treaty between Uruguay and the United States. *See* Uruguay International Extradition Treaty with the United States, art. 1, Apr. 11, 1984, TIAS 10850 (the "Treaty," attached as Exhibit D). The Treaty requires the United States to provide evidence to establish *probable cause* of the alleged offense upon request. *Id.* In the Treaty's own words: "The requested Party may require the requesting Party to produce *evidence to establish probable cause* that the person claimed has committed the offense for which extradition is requested. The requested Party may refuse the extradition request if an examination of the case in question shows that the warrant is manifestly ill-founded." *Id.* (emphasis added). The first *Ker/Frisbie* exception applies in this case because Uruguay did not conduct an adequate review of

the extradition request.  *Trabelsi*, 845 F.3d at 1189 (identifying "the absence of review of the extradition request by the requested party" as evidence of an extradition treaty violation).

To be clear, a probable cause determination in extradition requires that there be "evidence warranting the finding that there was a reasonable ground to believe the accused guilty" of the charged offense.  *In re Extradition Lanzani*, No. CV 09-07166-GAF (MLG), 2010 WL 625351, at *5 (C.D. Cal. Feb. 18, 2010) (citation omitted).  "The Court must base a finding of probable cause on competent evidence."[2]  *Id.* (denying Spain's request for a certificate of extradition "[b]ecause Spain's formal extradition papers fail to state the sources or basis of their accusations." (*id.* at *7)). And the reviewing court's examination "of the proffered evidence 'cannot be a mere ratification of the bare conclusions of others.'"  *Id.* at *6 (citing *In re Extradition of Ribaudo*, 2004 U.S. Dist. LEXIS 1456, 2004 WL 213021, *5 (S.D.N.Y. Feb. 3, 2004)) (conclusory statements by Costa Rican authorities did not support probable cause)).

Rather, the reviewing court "must conduct an 'independent review' of the evidence to determine whether probable cause exists."  *Id.* (citing *In re Extradition of Lehming*, 951 F. Supp. 505, 514 (1995)).  "In order to determine probable cause, a judge is to review the evidence presented and make an independent determination that the accused committed the crimes alleged,"

---

[2] As explained in Mr. Gonzalez-Valencia Reply to the Court's Minute Order of November 9, 2021 (Dk. 74), DEA Special Agent Kyle Mori's affidavit is not competent evidence to begin with because affidavit was sworn to in the wrong court, in front of the wrong judge, and has a caption for a case that does not exist.  (Dk. 74 at 6–7 (citing *Belanger v. BNY Mellon Asset Mgmt., LLC*, 307 F.R.D. 55, n. 4 (D. Mass. 2015) (holding that the requirement to include an accurate caption "is not a mere procedural nicety;" a "caption 'protect[s] the public's legitimate interest in knowing which disputes involving which parties are before the federal courts.'" (citation omitted)); *Gusler v. City of Long Beach*, 700 F.3d 646, 649 (2d Cir. 2012) (reaffirming that a caption that is "inconsistent with the body of the notice," is impermissibly vague because "any ambiguity" between the caption and the body "defeat[s] the notice")); *see also Doe v. Ind. Black Expo, Inc.*, 923 F. Supp. 137, 139 (S.D. Ind. 1996) (rules, including the accurate identification of court and parties, "are not a matter of mere administrative convenience for staff and counsel" and "exist ultimately to serve the American public."); *Nat'l Commodity and Barter Ass'n, Nat'l Commodity Exch. v. Gibbs*, 886 F.2d 1240, 1245 (10th Cir. 1989) (dismissing a complaint because the federal rules require that "every pleading shall contain a caption setting forth the name of the court, the title of the action, the file number, and a designation as in Rule 7(a)" and "make no provision" for suits that fall short of these requirements).

such that the reviewing judge "must judge for himself the persuasiveness of the *facts* relied upon by a complaining officer to show probable cause" and "should not accept without question the complainant's mere conclusions that the person whose arrest is sought has committed a crime." *In re Extradition of Lehming*, 951 F. Supp. at 514 (quoting *Giordenello v. United States*, 357 U.S. 480, 486 (1958) (emphasis in original)).  The Uruguayan court failed to conduct an independent review of the evidence by providing far too much deference to the United States' request.  Instead, the Uruguayan court simply accepted the United States' conclusory allegations—a failure of due process that this Court should not allow to go on without a remedy.

In this case, Uruguay went so far as to request additional evidence following the United States' initial submission.  Despite Uruguay's concern, the United States explained in a diplomatic note that it had no additional evidence to offer.  (*See* Dk. 64 at 4); Diplomatic Note No. 273 from the Embassy of the United States of America to the Ministry of Foreign Affairs of the Oriental Republic of Uruguay at 3 (July 16, 2019) (Dk. 64, Ex. B).  Yet, Uruguay yielded to the United States' extradition request anyway.  That alone raises concern about the adequacy of the evidence the United States submitted in its limited extradition package discussed in more depth below. (*See* Dk. 64 at 4).

Even so, the reviewing court in Uruguay applied the incorrect standard when reviewing the extradition request in the first instance.  In granting Mr. Gonzalez-Valencia's extradition as requested by the United States, the Uruguayan court wrote (translated from Spanish to English): "It is therefore not the purview of this court to evaluate the evidence submitted by the requesting State; rather, it must only evaluate the evidence to determine *whether the extradition request and arrest warrant are manifestly lacking in grounds*, according to the provisions of Art. 10.3 in fine

of the Treaty." Ex. B at *6.  Of course, the standard for extradition is probable cause, not whether the request "is manifestly lacking in grounds."  *Id.*

No matter what the Uruguayan court's understanding of the American "probable cause" standard may have been, that is certainly not it.[3]  And the Uruguayan court plainly misunderstood the facts because it found that the United States' documents "indicate that in 2013, a telephone call involving the accused and whose topic was a drug deal was detected."  *Id.*  The Government has never provided any evidence concerning a telephone call, but rather relied on Blackberry Messenger messages (text messages) to form the flimsy basis for its allegations.  In any event, Uruguay's court of last resort failed to correct the error or otherwise analyze probable cause before entering a final judgment on February 11, 2020 that sealed Mr. Gonzalez-Valencia's extradition fate.  Final Judgement, Uruguayan Supreme Court of Justice (Feb. 11, 2020) (translated) (attached as Exhibit E).  Accordingly, "the absence of review of the extradition request by the requested party" violates the Treaty and justifies dismissal on due process grounds.  *Trabelsi*, 845 F.3d at 1189.[4]

---

[3] Surely, courts around the world may use the term "probable cause" but the standard means very different things in different jurisdictions.  So even if the Uruguayan courts purported to apply "probable cause," which they did not, that standard may vary greatly from the "probable cause" required in U.S. federal courts.  *See, e.g.*, Christopher Slobogin, *An Empirically Based Comparison of American and European Regulatory Approaches to Police Investigation*, 22 MICH. J. INT'L L. 3 (2001) (discussing the varied outcomes of the judiciary's review for probable cause across nations); Leslie R. Carter, *Probable Cause and Provisional Arrest Under Certain Extradition Treaties: Caltagirone v. Grant*, 7 N.C. J. INT'L L. 121 (1982) (comparing the application of probable cause across extradition treaties).  Of course, the law obliges the Government to demonstrate "probable cause" as defined in American jurisprudence.  But the Government's evidence is woefully lacking in this case.

[4] Based on the law and record before this Court, the review of Uruguay's extradition decision should be *de novo*, without deference, because the Court must consider a woefully deficient extradition package in light of the Government's decision to walk away from the methamphetamine allegations used to secure Mr. Gonzalez-Valencia's extraction before trial.

**3. The United States engaged in improper conduct by submitting false affidavits which the Government of Uruguay relied upon in granting extradition.**

As Exhibit A attached clearly demonstrates, the affidavit submitted by Special Agent Mori is replete with misstatements of fact and law, substantive evidence advanced to support extradition which has since been abandoned, and conclusory statements which are not evidence.

Impudently, and with either reckless abandon or through willfulness, the DOJ Attorney submitted her own affidavit assuring Uruguay that she has personal knowledge of the facts in this case, is "particularly knowledgeable in the area of law relating to violations of the federal narcotics statutes," that "the prosecution of the charge in this case is not barred by the statute of limitations," and that "[she has] reviewed the affidavit of DEA Special Agent Kyle J, Mori and the evidence in this case," and "attest[s] that the evidence indicates that Gonzalez-Valencia *is guilty of the offense for which extradition is sought*."  (Dk. 64, Ex. C ¶¶ 4, 13, 23 (emphasis added)).

By making these statements and assertions under oath, Attorney Liskamm engaged in improper conduct when she knew or should have known that Special Agent Mori's affidavit was replete with misstatements and failed to state the drug in question regarding the 2013 conduct described in paragraph nineteen of Special Agent Mori's affidavit.  Moreover, as a *de facto* expert in narcotics laws in the United States, she should have known the Government must allege the drug in question with particularity.  Instead, and despite no evidence of what the drugs in question actually were, she improperly states that "the evidence [in question] indicates that Gonzalez-Valencia is guilty of the offense for which extradition is sought."  (Dk. 64, Ex. C ¶ 20).  Attorney Liskamm essentially doubles down and says that it is her expert opinion, which the Uruguayan court indeed relied upon, that Mr. Gonzalez-Valencia is guilty of the crime charged beyond a

reasonable doubt when she knew or should have known that the affidavit contained a glaring omission rendering it insufficient for even a probable cause determination.

### III.        In the Alternative, the Court should Deny the Government's Untimely Motion

The Government's Motion to join Mr. Gonzalez-Valencia and his brother, Jose Gonzalez-Valencia for trial is blatantly unfair to Mr. Gonzalez-Valencia.  Mr. Gonzalez-Valencia has been detained in the United States awaiting trial for almost two years.  Tellingly, the case law upon which the Government relies involves defendants indicted *jointly*, who moved to *sever* their trials from their co-defendants.  After all, it is "the 'general rule' that defendants jointly indicted should be tried together."  *United States v. Mardian*, F.2d 973, 979 (D.C. Cir. 1976) (quoting *United States v. McDaniel*, 538 F.2d 408, 410 (D.C. Cir. 1976); *Brown v. United States*, 375 F.2d 310, 315, cert. denied, 388 U.S. 915, 87 (1967)).  However, that is not the posture of this case.

Rather, the Government made the strategic choice to indict Mr. Gonzalez-Valencia and his brother *separately* in 2016, just months apart.  Even if it had changed its mind, the Government could have moved to join these defendants at any point during the last five years.  But it did not.  Then, last week, after Mr. Gonzalez-Valencia clearly laid out all of the faults in the Government's case in his pretrial motions, Jose Gonzalez-Valencia was conveniently extradited to the United States, and the Government attempted to seize on the opportunity on the eve of trial to delay its fledgling case.  In the interests of justice, these attempts cannot stand.

Of course, it would be judicially improper for the Government to force Jose Gonzalez-Valencia—who arrived in the United States one week ago and is still in the process of engaging counsel—to proceed to trial in less than three months.  And it would be equally improper to force Mr. Gonzalez-Valencia, who is ready for trial, to be tried with a co-defendant who is (understandably) completely unprepared to move forward.  *See United States v. Berry*, No. 3:17-

cr-00206-02 and 05, 2021 WL 848175, at *5 –6 (N.D. Mar. 5, 2021) (finding joinder would result in prejudicial delay if a defendant in custody for almost three years was joined with co-defendants who had obtained counsel less than two months prior and would likely need to request a continuance due to the voluminous discovery in the case).  As the Government identified in its Motion, it has not yet even produced the Rule 16 discovery to Jose Gonzalez-Valencia, let alone provided sufficient opportunity for Jose Gonzalez-Valencia and his counsel to review the voluminous discovery in this case.  Yet the Government purportedly intends to join his case with another that has been stewing for years.  Mot. at 6.  To expect Jose Gonzalez-Valencia to even be able to assess whether joinder with Mr. Gonzalez-Valencia is proper at this point is incredibly premature and an insidious act on the part of the Government.  In essence, by joining the defendants, the Government wishes to effectively supersede the Indictment.  Joining these defendants at this stage would most certainly deprive each of their individual right to a fair trial. *See United States v. Eiland*, No. CRIM. 04-379 (RCL), 2005 WL 3211808, at *3 (D.D.C. Oct. 26, 2005) ("[T]his Court recognizes that, as a general matter, joinder occurring very late in the trial process may result in unfairness to a defendant.  The filing of superseding indictments may require each defendant to reevaluate and restructure his defense strategy multiple times.  As a result were a defendant not given sufficient notice of new indictments, he might be unable to prepare an adequate defense.")

## A.  Joinder Causes Mr. Gonzalez-Valencia to Suffer Extreme Prejudice

The Government's tactics aside, Mr. Gonzalez-Valencia will face substantial prejudice if he is tried with Jose Gonzalez-Valencia.  Although the Constitution does not guarantee a trial "free from . . . prejudice . . . it demands [that] the potential for transference of guilt be minimized to the extent possible under the circumstances." *United States v. Edelin*, 118 F. Supp. 2d 36, 42 (D.D.C.

2000) (citation omitted).  The evidence the Government intends to produce to prove the guilt of Jose Gonzalez-Valencia must not be transferred to secure an erroneous conviction against Mr. Gonzalez-Valencia.

If his case proceeds to trial, Mr. Gonzalez-Valencia intends to present a withdrawal defense.  (*See* Dk. 35).  By moving out of Mexico and opening a convenience store in Argentina in 2009, Mr. Gonzalez-Valencia withdrew from any conspiracy in which he allegedly, previously took part.  *Id*. at 5.  Indeed, discovery produced thus far by the Government corroborates Mr. Gonzalez-Valencia's withdrawal and it has disclosed no evidence of continued involvement by Mr. Gonzalez-Valencia in any alleged conspiracy past the limitations period.  Therefore, a significant risk exists that the jury may, in considering Mr. Gonzalez-Valencia's case alongside that of his brother, Jose Gonzalez-Valencia, "cumulate the evidence of the various crimes charged and find guilt, when, if considered separately, it would not so find."  *Drew v. United States*, 331 F.2d 85, 88 (D.C. Cir. 1964).

Indeed, a court should not permit joinder "where the crimes charged are of such a nature that the jury might regard one as corroborative of the other when, in fact, no corroboration exists." *Id*. at 89 (citation omitted).  If the Government presents evidence of Jose Gonzalez-Valencia's involvement in the alleged conspiracy after 2009, a pressing danger persists that the jury will view the evidence "cumulatively" and the "sum of it" will mistakenly mislead the jury concerning Mr. Gonzalez-Valencia's continued participation in an alleged conspiracy, despite the lack of evidence to support this assertion.  *See id*. at 91 (citing *United States v. Lotsch*, 102 F.2d 35, 36 (2d Cir. 1939).[5]

---

[5] Mr. Gonzalez-Valencia has been preparing for trial based on his Indictment as written.  Joinder of Jose Gonzalez-Valencia throws Mr. Gonzalez-Valencia's carefully crafted trial preparation into disarray by adding last minute

Because Mr. Gonzalez-Valencia will suffer extreme prejudice through joinder, the Court must reject the Government's Motion.  *See* Fed. R. Crim. Pro. 14.  As the Supreme Court has explained, prejudice in the context of Rule 14 includes anything that will "prevent the jury from making a reliable judgement about guilt or innocence." *Edelin*, 118 F. Supp. 2d at 41 (citing *Zafiro v. United States*, 506 U.S. 534, 539 (1993)) (original quotations omitted).  In particular, evidence of Jose Gonzalez-Valencia's involvement in an alleged conspiracy may prevent the jury from properly considering Mr. Gonzalez-Valencia's withdrawal defense.  That consequence alone prevents a reliable decision about Mr. Gonzalez-Valencia's guilt or innocence, thus confirming joinder is improper.

### B.  Joinder Violates the Rule of Specialty

Moreover, the joinder of Jose Gonzalez-Valencia's case with Mr. Gonzalez-Valencia's violates the rule of specialty.  Under the rule of specialty, "the United States as the requesting party is bound to try [Mr. Gonzalez-Valencia] only for those offenses as to which [Uruguay] agreed to extradite."  *See United States v. Carvajal*, 924 F. Supp. 2d 219, 248 (D.D.C. 2013), *aff'd sub nom. United States v. Miranda*, 780 F.3d 1185 (D.C. Cir. 2015).  Without any reason to think that the United States would try Mr. Gonzalez-Valencia with Jose Gonzalez-Valencia, Uruguay was not "fully appraised of the charges and circumstances before it agreed to extradite."  *Id.*  Joining Mr. Gonzalez-Valencia and Jose Gonzalez-Valencia at this stage defeats the entire purpose of the specialty doctrine.  Indeed, specialty "encourages international cooperation in the extradition system by giving assurance that, when a country gives up persons for extradition only for specified purposes or on certain conditions, those terms will not be flouted."  *United States v. Trabelsi*, 845

---

uncertainty as to the case-in-chief his new co-defendant may bring.  Thus, Mr. Gonzalez-Valencia is undoubtedly prejudiced by this proposed joinder.

F.3d 1181, 1196 (D.C. Cir. 2017).  The Government's preferred course of action would plainly violate specialty through an eleventh hour joinder.

## IV.    Conclusion

Mr. Gonzalez-Valencia has already spent the last eighteen months in quarantine, patiently awaiting his trial.  With the Government acting in such an unpredictable manner by apparently filing a last-minute joinder motion on a whim, the Court cannot expect Mr. Gonzalez-Valencia to idly wait even longer until a time comes that is finally convenient to the Government.  Accordingly, in the event the Court sees fit to further delay proceedings, it should grant Mr. Gonzalez-Valencia's Motion for Temporary Release Pending Trial (Dk. 67).  Anything less would perpetuate the Government's pattern of constitutionally violative treatment of Mr. Gonzalez-Valencia, on-going from the origins of this flawed case.

Dated: November 17, 2021

Respectfully submitted,

  /s/ Stephen A. Best

**BROWN RUDNICK LLP**

Stephen A. Best (DC Bar No. 428447)
Tiffany B. Lietz (admitted *pro hac vice*)
601 Thirteenth Street, NW
Suite 600
Washington, DC 20005
Telephone: (202) 536-1737
sbest@brownrudnick.com

-and-

**The L●S LAW FIRM**

Lilly Ann Sanchez (admitted *pro hac vice*)
Four Seasons Tower, Suite 1200
1441 Brickell Avenue
Miami, Florida 33131

Telephone: (305) 503-5503
lsanchez@thelsfirm.com

*Counsel for Defendant Gerardo Gonzalez-Valencia*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 17, 2021, I electronically filed the foregoing document with the Clerk of the U.S. District Court for the District of Columbia by using the CM/ECF system. All participants registered through the Court's electronic filing system will be served by the CM/ECF system as required to be served by Federal Rule of Civil Procedure 5(a).

Date: November 17, 2021

 _/s/ Stephen A. Best_
Stephen A. Best
601 Thirteenth Street, NW
Suite 600
Washington, DC 20005
Telephone: (202) 536-1737
sbest@brownrudnick.com

*Counsel for Defendant Gerardo Gonzalez-Valencia*