# **EXHIBIT B**

From: Attorney at the Special Court 1 T for Org. Crime  aromano@poderjudicial.gub.uy
Re: DELLA VALLE VICTOR Subpoena No. 1367/2017 IUE 474-76/2016
Date: Fri. September 1, 2017 5:15 PM
To: 767766

C. No. 1367/2017

**Attorney at the Special Court 1 T for Org. Crime**
ADDRESS Bartolome Mitre 1275, second floor

## SUBPOENA

**DELLA VALLE BATAILLE, VICTOR**
Montevideo, September 1, 2017

In the case captioned
**GONZÁLEZ VALENCIA, GERARDO – EXTRADITION –**
File 474-76/2016

Processed before this Court, you are hereby notified of the procedural order as set forth below:

Sentence: 13/2017, Date: 08/28/17

**HAVING REVIEWED AND CONSIDERED**:

For the final ruling in the first instance, these case files captioned **GONZÁLEZ VALENCIA, GERARDO – EXTRADITION – File 474-76/2016**, with the participation of the illustrious National Prosecutor for Specialized Crimes and Organized Crime, Second Shift, Dr. Luis Pacheco and Defense Counsel Dr. Victor Della Valle and Dr. Carlos Balbi.

**AND THEREFORE**:

1) On June 16, 2016, a request was submitted to these offices for the extradition of Gerardo González Valencia, sent through diplomatic channels by the US Department of Justice (folios 1-107).

After a hearing by the Office of the Prosecutor General, by means of ruling No. 71/2016 on June 27, 2016, these offices filed an objection to the request because of the failure to fulfill the conditions for admissibility set forth in Art. 10, numeral 5 section a) of the Treaty for Mutual Assistance in Criminal and Extradition Matters (Law No. 15.476), and it demanded that the requesting State meet the aforementioned requirements and further that it provide additional information pursuant to Art. 11, paragraph 1, at the end of the same Treaty (folios 108-114).

2) On February 2, 2017, documents sent by diplomatic dispatch by the requesting State were received at these offices (folios 125-131).

By means of Order No. 156/2017 on February 23, 2017, the representative from the Office of the Prosecutor General deemed that the necessary requirements to process the extradition request had been met (folios 132 back of page-135).

By means of Resolution No. 181/2017 on March 3, 2017, and in compliance with the decision of the Prosecutor General, the extradition process began pursuant to the provisions of the Montevideo Treaties, specifically Arts. 33-37 of the Treaty on International Penal Law of 1940 - applicable by analogy in this case according to the principles of due process and the regulations generally governing legal proceedings, for any not set forth in the previous document (folios 136-137).

3) During a hearing that was convoked - which was twice postponed at the request of the subject himself - and in the presence of his defense counsel, Gerardo González Valencia did not accept the extradition that had been requested (folios 141-160).

After a review of the request had been granted pursuant to a petition by the US authorities, the Defense Counsel of the subject appeared in order to file an objection, for the reasons set forth in the grounded written submissions presented in due time and manner, with attached supporting documents (folios 161-120).

4) For its part, by means of Order No. 682/2017 on June 12, 2017, the representative of the Office of the Prosecutor General recommended that the extradition request be accepted subject to the conditions that it establishes (folios 222-227).

5) By means of Case files No. 682/2017 on June 15, 2017, the summoning Judge at these offices summoned the parties so that a resolution could be handed down, after the case files were forwarded to the office on June 23, 2017 (folios 228-230 back of page.).

**IN LIGHT OF THE FOLLOWING FACTS:**

1) The proceedings for these case files involve an extradition request by the appropriate authorities of the United States regarding Gerardo González Valencia, so that he can be brought to trial in that country for drug trafficking charges.

Extradition is an institution of international legal cooperation in criminal matters, understood as "any procedural activity of any nature performed in a State to serve criminal proceedings filed or to be filed in foreign jurisdictions". This cooperation becomes effective "when a body with jurisdiction in a State which has no authority to act outside of its own territory requests the collaboration of other States through their bodies which have jurisdiction" (Vieira, M., Garcia Altolaguirre, C. – Extradition, FCU, pgs. 108-109). For his part, Prof. Miguel Langon holds that extradition is the highest expression of the principle of international legal cooperation between States in the battle against crime, enshrining the obligation of the State before whom the petition is brought to grant the respective request, within the limits of the law and applicable treaties (Course on Criminal Law and Criminal Procedure ed. Del Foro, 2003, pps. 119-121; Cfme. Cairoli, M., International Criminal Cooperation, Mutual Assistance and Extradition, FCU, 2000, p. 59).

Similarly, domestic jurisprudence has said the same, affirming that "extradition, as such an institution, is viewed as a modern instrument in international criminal judicial cooperation, which must of course be seen as an overarching structure of regulations providing solidarity and guarantees which at the same time means it can itself be viewed as a global interstate system of regulations and guarantees" (Rev. Der. Penal (Criminal Law Review), No. 20, c. 146 p. 574).

These principles have been enumerated in a number of treaties, which enshrine the obligation of States to grant an extradition when the conditions set forth therein have been met, for example, as in the United Nations Model Treaty on Extradition, approved by the General Assembly of the United Nations on April 3, 1991, the 1988 Vienna Convention against Illicit Traffic in Narcotic Drugs, the Treaty on Extradition and Cooperation in Penal Matters between the United States of America and the Oriental Republic of Uruguay, ratified in our country by Decree-Law No. 15.476, the Bilateral Extradition Treaty between Argentina and Uruguay ratified in our country by Law No. 17.to 225, and the Extradition Agreement between the States Parties of Mercosur ratified by Uruguay in Law No. 17.499.

Based on these treaties, there is unquestionably an international obligation to extradite persons for whom such a request has been presented, who meet the conditions set forth in applicable regulations and according to the principles that govern extradition proceedings generally.

2) The extradition regime is governed first of all by the Treaties ratified between countries, which constitute the "law between the parties". Where there is no Treaty, our internal legal order sets forth the extradition regime in Art 13 of the C.P. (Código Penal [Penal Code]) and Art 32 of the C.P.P. (Código del Proceso Penal [Criminal Penal Code]) (Langon, op. cit., Ed. 2003, p. 128-129).

In the case before us, the applicable Treaty is the Treaty on Extradition and Cooperation in Penal Matters between the United States of America and the Oriental Republic of Uruguay, signed in Washington on April 6, 1973, and approved in our country by Decree-Law No. 15.476 on October 26, 1983. This is without prejudice to the application of the general principles of due process and specifically the principles governing extradition.

The Treaty does not establish the proceedings to be followed when an extradition request is presented, which is governed instead by *lex fori*, meaning the law of the nationality of the judge seized of the matter: in this case, the legislation of Uruguay.

The Criminal Procedural Code in effect in our legal system does not govern the extradition process either, and because of this, it is practically unanimous in jurisprudence to apply the procedures provided in the Montevideo Treaties of 1989 and 1940, by analogy.

Based on the aforementioned, in these case files the procedure established in Chapter IV of the Montevideo Treaty of 1989 were adhered to, which the parties agreed to, having refrained from filing any objection to this.

We must however note that jurisprudence is currently speaking with one voice in understanding that the sentence to be handed down is final in nature, given that it brings an end to the extradition proceedings, which are the main and sole proceedings. As expressed by the Appeals Tribunal of the First Circuit, "an extradition trial is a legal proceeding in the presence of both parties whose main and exclusive goal is to hand down a ruling declaring the admissibility or inadmissibility of the request submitted by the foreign country" (Rev. Der. Penal (Criminal Law Review), No. 11, c. 453, p. 319). Therefore, the term for it to be handed down is the term set forth in Art. 90 Sec. 2 Lit. A of the C.P.P.

3) The object of the extradition process is to monitor the formal legality of the request, and it is not the place of the State Court before whom the matter has been brought to examine and validate the merits of the case, which would constitute an infringement of the powers of the requesting authority - without prejudice to any potential analysis of the fulfillment of the *non bis in idem* requirement, as applicable. As our doctrine and jurisprudence has stated on numerous occasions, the extradition process is not an endorsement of the proof of guilt, it does not determine whether the conduct of the person whose extradition has been requested was unlawful, nor does it settle the merits of the case, but rather the entire examination is reduced to simply verifying the legality of the extradition request, in light of international and domestic legal provisions that apply in each case.

This has been the consistent position of the Supreme Court of Justice, affirming as it did in Sentence No. 51/2010 the following: "… During extradition proceedings, the only thing that must be evaluated is the formal legitimacy of the request, because any other consideration regarding the merits, meaning the elements to define the crime or crimes based on which the extradition request has been made, are an absolute violation of the principle of competence of the requesting authorities. The courts in the country where the extradition is being requested, that accept or deny the request for extradition, have no jurisdiction to judge the merits of the case. Along these lines, De Olarte has said in his treatise on "Extradition", p. 49, that the Judge involved in the case is not called to make a statement on the innocence or guilt of the accused, because "extradition does not imply a trial or punishment"; its function is limited to verifying whether the request meets the formal requirements and substantive demands of the International Treaty ratified by the two States…" (See Supreme Court of Justice Sentences No. 154/999, No. 184/001, No. 216/003, No. 191/005, No. 41/006, No. 219/007, No. 32/2010, among others).

As a consequence, this sentence must be handed down exclusively in respect of the formal acceptability of the extradition request, analyzing the Trees that apply to the case in order to do so.

4) Having analyzed the results of these proceedings in light of the aforementioned Treaty on Extradition and Cooperation in Penal Matters between the United States of America and the Oriental Republic of Uruguay, it has come to light that the request fulfils the formalities required by Art. 10, as follows:

a) The request was processed by diplomatic channels, given that the extradition of González Valencia was formally requested by the appropriate judicial authorities of the United States of America before the Foreign Ministry of our country and the Supreme Court of Justice (folios 1-8 and 100-107);

b) The request contains a grounded recounting of the alleged crime (folios 12-18 and folios 32-35 and their respective translations on folios 57-63 and folios 77-80);
c) An arrest warrant or order for imprisonment handed down by the appropriate authority of the requesting State is attached (folios 37, translated, to folio 82).

d) A translation into Spanish of all of the documents submitted is attached, as stated in previous sections.

Regarding the provision of Art 10.5 section a of the Treaty, the documents have been signed by the appropriate authorities and have the seal and certification of the State Department of the United States of America (folio 9, translated in folio 54). Even though they are not legalized by a diplomatic or consular agent of the Oriental Republic of Uruguay in the United States of America, it is understood pursuant to Order No. 156/2017 of the Office of the Prosecutor General that the aforementioned requirement is not mandatory according to the provisions of the Hague Convention Abolishing the Requirement of Legalization for Foreign Public Documents, otherwise known as the Apostille Convention, signed in the Hague in 1961 and approved in our country by Law No. 18.836 on November 15, 2011. Without prejudice to the aforementioned, it is appropriate to note that this point was not challenged by the Defense of the party for whom the extradition request has been submitted.

5) Similarly, it is clear that the conditions set forth in Arts. 1 and 2 of the Treaty have been met, which set forth the general principles for extradition: jurisdiction of the requesting State, double incrimination and severity of the crime. As follows:

a) The extradition of Gerardo González Valencia is being requested for crimes perpetrated in the requesting country (folios 77-78), according to the provisions of Art. 1 of the Treaty, meaning that the jurisdiction of the appropriate authorities of that country has been established without a doubt.

b) The party whose extradition is being requested is accused of having committed the crimes of drug trafficking, specifically conspiracy to import and distribute substances with a detectable amount of cocaine and methamphetamine, into the United States (folios 77-78), which is consistent with the provisions of Art. 2 No. 17 of the Treaty. Crimes that are also described in our domestic legal order, according to the conditions established in Arts. 31 to 33, and 59 of Decree-Law No. 14.294 (in its current form, with its wording as per Law No. 17.016).

The condition mentioned in this section enshrines the principle of double incrimination, which requires that "the reason for which the extradition is requested must also be classified as a crime in the domestic legal order of the State where the request has been filed, a condition that must be evaluated with appropriate flexibility, and even if the crimes do not have the same *nomen iuris* within the legal order of the two countries. This means that the grounds for the extradition are the fact and manner of participating in the crime, for which the person is being prosecuted, which must be acknowledged as a crime by the laws of the two contracting parties, even if the offences have different names and even if the classification of the crime may potentially lead to protecting assets that are defined in a different manner in legal terms in the legislations of both countries… The description of the conduct must be made within the framework of the agreed provisions according to the will of the parties, or in other words, *in ordinem* as Alfonsin taught" (Viera et al, op. cit., p. 427).

c) The crimes for which the extradition of the accused has been requested are punishable in both countries with a minimum prison term of more than one year, as required by the relevant section of Art. 2 of the Treaty: in our country, Arts. 31 and 34 of Decree-Law No. 14.294; in the requesting country, the behavior of which the subject of the extradition is accused is punishable by detention of not less than 10 years (folios 71-72). The principle of the seriousness of the penalty has therefore been met.

6) Finally, the extradition request is not consistent with the description of any of the situations set forth in Art 5 of the Treaty, situations in which extradition is not appropriate.

In regards to the hypothetical situation set forth in Section a of Art. 5, it discusses the *ne bis in idem* principle. This principle means that nobody can be judged or sentenced twice for the same crime. This was described in the following terms by Dr. Armando Tommasino: "This provision prevents a person from being the victim of double jeopardy, and even though this is not stated, it obviously also prevents the same person from being convicted twice for the same crime" (Principles, Rights and Guarantees in Trials, p. 63). The same principle in effect in Domestic Law has been reproduced in Extradition Treaties, and even if this were not the case, it has been understood as a given that this "is implicitly enshrined in the provisions of Art. 14.7 of the Universal Pact on Civil and Political Rights, which states the following: "nobody can be judged or sentenced or punished for a crime for which he has been sentenced or absolved, in a final sentence according to the Law and the criminal proceedings of each country". This is a principle that has been included in the San Jose Agreement (Art. 8.4), and in our opinion, it constitutes a principle of international *ius cogens* (Vieira-Altolaguirre, "Extradition", p. 200).

The Extradition Treaty signed between the United States and Uruguay includes the aforementioned principle, stating that extradition will not be granted: "a) When the person whose extradition is being processed has already been judged and sentence or absolved, or is being judged in the territory of the country from which he is being extradited, for the crime for which the extradition is being requested".

In that regard it is appropriate to note that although in fact there is a criminal case underway against Gerardo González Valencia in our country, the extradition request is not a breach of the *ne bis in idem* principle, because it does not pertain to the same events regarding which the subject of the extradition is being tried in our country. In effect, the subject of the extradition is currently in the midst of a criminal trial before this Specialized Illustrious Tribunal for Organized Crime of the First Circuit, in the case captioned IUE 2-37467/2016, accused of committing the crime of money laundering as set forth in Art. 54 of Decree-Law No. 14.294, in its current version as found in Art. 2 of Law No. 18.494. In this trial, he is not accused of any type of drug trafficking. Therefore, this situation does not correspond to the provisions of Art. 5, Section a of the Treaty.

Regarding the provision of Art. 5 Section c, which states that extradition will not be approved "when the action or penalty is time-barred according to the laws of the State presenting or receiving the extradition request", we share the opinion of the Office of the Prosecutor inasmuch as the crimes of which González Valencia is accused are not time-barred. Without prejudice to what may be said below on analyzing the objections filed by the Defense of the subject of the extradition.

It clearly follows from the case files that the extradition request pertaining to González Valencia is not consistent with any of the remaining situations set forth in the previously cited Art. 5.

7) In short, this court understands that the extradition requested meets the formal requirements of the Extradition Treaty that binds our country with the requesting State, and is not consistent with any of the aforementioned situations that would require the court to rule that the request is inadmissible.

Without prejudice to this, this sentence must settle the issues raised in the objections filed by the Defense of González Valencia, where they were clearly listed in the response from the Office of the Prosecutor, as follows: a) That the Extradition Treaty refers to persons being tried or sentenced, which is not the case here, and that this is a trial in absentia; b) That the sworn declaration submitted by the requesting country is vitiated; c) That the sworn declaration contains no evidence to support that any crime has occurred within five years of the date of the prosecution, meaning that it is time-barred; d) That the sworn declaration presents no evidence and only contains witness statements from cooperating witnesses, regarding whom information to support their credibility is missing; e) That the subject of the extradition could be sentenced to death or life in prison.

8) First of all, as stated by the Defense, Art. 2 of the Treaty states that "persons will be rendered who are being tried or sentenced for any of the following crimes…". Furthermore, Art. 10.3 establishes among the requirements for an extradition request that "when the request refers to a person who has not yet been sentenced, an arrest warrant or order for imprisonment or the case files for an equivalent legal proceeding must be attached, issued by the appropriate authority of the requesting Party".

In this sense, we share the position of the Office of the Prosecutor, and believe that an extradition request is admissible when the person has not yet been "tried", as long as there is an arrest warrant for the trial and taking into account that the term "tried" can have a different meaning in each procedural system.

We also disagree with the Defense in that, in the opinion of the undersigned, no trial in absentia in the requesting country has taken place involving the subject of the extradition. The documents received show that on April 19, 2016, a grand jury in the District of Columbia filed charges against González Valencia for conspiracy to import and distribute narcotics in the United States (folios 77-80). Finding that there were grounds for these charges, the District Court of the United States for the District of Columbia issued the corresponding arrest warrant (folio 82).

The sworn declaration of the Prosecuting Attorney and Acting Deputy Chief, Narcotic and Dangerous Drug Section, U.S. Department of Justice, Amanda Liskamm, clearly describes the procedures to be followed by the grand jury: the aforementioned jury examines the evidence submitted by the authorities and if it finds that there are sufficient indications to determined that the crime has been committed and that the accused is the perpetrator, it issues an "indictment" with formal charges (folio 58, numeral I). This was the procedure that was followed in respect of González Valencia, according to what is set forth in the previous paragraph.

In no way does this mean that it has been substantiated that there is a criminal trial against the accused, but rather as specified in the declaration of the Prosecuting Attorney, "in order for a sentence condemning González Valencia to be handed down… The United States must demonstrate in the trial that González Valencia reached an agreement…", meaning that the State must prove the events mentioned in the charges in a trial (folio 61 No. 17). The reason that the extradition is being requested is to conduct the trial (folio 62 No. 20).

8) Secondly, regarding the sworn declaration of Special Agent Kyle Mori of the Drug Enforcement Agency, any oversight of the formal comments made by the Defense are irrelevant to these extradition proceedings, such as comments on the jurisdiction of the Court before which the declaration was made. To the contrary, the declaration shows the criminal activities of which the subject of the extradition, González Valencia, is accused, and the evidence gathered to support the accusation, factors which in fact are the relevant considerations in handing down this sentence.

As such, we do not share the opinion that the evidence mentioned by Special Agent Kyle Mori is insufficient to support the accusation and that the accusation is almost exclusively grounded in the declaration of two cooperating witnesses.

It is appropriate to reiterate the concepts put forward in Whereas Statement No. 3 of this Sentence, such that in extradition proceedings the only thing that the judge must do is monitor the formal legality of the request and the fulfillment of the requirements that apply according to the Treaty governing the case.

It is therefore not the purview of this court to evaluate the evidence submitted by the requesting State; rather, it must only evaluate the evidence to determine whether the extradition request and arrest warrant are manifestly lacking in grounds, according to the provisions of Art. 10.3 *in fine* of the Treaty, which establishes that "The requested Party may require the requesting Party to produce evidence to establish probable cause that the person claimed has committed the offense for which extradition is requested. The requested Party may refuse the extradition request if an examination of the case in question shows that the warrant is manifestly ill-founded."

In this case, the extradition request is accompanied by evidence gathered in order to provide support for the alleged actions of González Valencia, as follows: sworn declaration of the Prosecuting Attorney and Acting Deputy Chief, Narcotic and Dangerous Drug Section, U.S. Department of Justice; Declaration of Special Agent Kyle Mori; and indictment by the Grand Jury of the District of Columbia presented before the District Court of the United States for the District of Columbia. These items describe the events being investigated and the evidence gathered, and serve as the grounds for the corresponding arrest warrant issued by the aforementioned Court.

In the opinion of this court, the aforementioned elements assembled to seek a conviction meet the evidentiary standards required by the Treaty; it is not possible to conclude that the arrest warrant issued by the Court of the requesting State is manifestly ill-founded. As expressed by the Supreme Court of Justice in statements of reasoning that can be applied to the case before us, "over and above the results that appropriately flow from the proceedings to be undertaken in the requesting State, it is obvious that the extradition request is not even close to being able to be characterized as manifestly ill-founded, as required by the relevant regulations, because the documents submitted and evaluated with sobriety have no elements that could cause one to have any real reason to believe that the subject of the extradition did not commit the crimes of which he is accused" (Sentence No. 145/2002).

9) Thirdly, regarding the time-barring of the crimes raised by the Defense, the undersigned has already issued a statement regarding this matter in Whereas Clause No. 6, and is in agreement with the conclusions of the Office of the Prosecutor.

In effect, according to the events described in the documents submitted, the offences of which González Valencia is accused in the charges allegedly occurred beginning in January 2003, and have been ongoing until the accusation was filed, on April 19, 2016 (folios 77-80), which is further supported in the remaining documents attached, which similarly indicate that in 2013, a telephone call involving the accused and whose topic was a drug deal was detected. On that same date, the competent Court issued the corresponding arrest warrant (folio 82).

In light of the aforementioned facts and according to the regulations pertaining to the request (folios 67-73), these crimes are not time-barred in the requesting State.

In addition, no time-barring applies pursuant to the legislation of our country, more specifically Art. 117 of the Criminal Code.

It is therefore also appropriate to dismiss the arguments of the Defense objecting to this matter, because the provisions of Art. 5 Section c have not been met, as stated already.

Notwithstanding the foregoing, it is appropriate to note that according to our jurisprudence, "even though it cannot be denied that the right of the foreign country must be substantiated, and this comes to the fore regarding the documents submitted, it is not the place of the courts of the Country before whom the request for extradition is submitted – Uruguay – to go deeper into such matters and consider or refrain from considering the appropriateness of the request based on an institution which in the eyes of the Treaty is a question of merit" (Sentence No. 380/2008 of the Appeals Court for Penal Matters of the First Circuit).

10) Finally, the Defense is requesting that the extradition be denied because it believes that González Valencia is exposed to a risk that the competent authorities of the requesting State will sentence him to life in prison or execution.

The defense is correct in that the penalties provided for in the United States, for the crimes of which the party whose extradition is requested is accused, are much more severe than those that have been established in our country. This circumstance can be easily observed by simply reading the information on the relevant regulations attached to the extradition request, which shows that the crimes for which the extradition of the accused is being requested are punishable by penalties including "custody of no fewer than 10 years and no more than life in prison", and imprisonment of "no more than 20 years" (folio 72). These penalties are significantly more serious than those provided for in Arts. 31 to 35 and 59 of Decree-Law No. 14.294 (current text as per Law No. 17.016), which do not extend beyond 18 years of prison time.

In regards to the risk raised by the Defense Counsel, as stated by the Office of the Prosecutor, Art. 7 of the Treaty provides that "When the offense for which the extradition is requested is punishable by death under the laws of the requesting Party, and the laws of the requested Country do not permit the death penalty for that offense, extradition may be refused unless the requesting Party provides such assurances as the requested Party considers sufficient that the death penalty shall not be imposed, or, if imposed, shall not be executed."

According to the provisions of Art. 26 of the Constitution of the Republic, which state that "no one shall be sentenced to death", there is no doubt that our country has the capability to refuse the extradition unless the requesting state provides sufficient guarantees that the death penalty will not be imposed or applied.

To the contrary, the Treaty has no provisions regarding any potential sentencing of the subject of an extradition request to life in prison, which is the maximum penalty provided in the regulations attached by the requesting party (folio 72).

Without prejudice to the aforementioned, this court shares the position of the Office of the Prosecutor, and believes that it is acceptable to impose upon the requesting State the condition provided for in Art. 7 of the Treaty in regards to life in prison as well, because our internal legal system does not provide for such a penalty and it is a contravention of our international public order (See Sentence No. 135/2003 of the Supreme Court of Justice).

In effect, the United Nations Convention against Torture (approved by Law No. 15,798) and the Inter-American Convention to Prevent and Punish Torture (approved by Law No. 16.294) establish that States Parties shall take effective measures to prevent and punish any action that - although it may not extend to torture - constitutes cruel, inhuman or degrading punishment (Arts. 16 and 6 of the aforementioned Conventions, respectively). It can be concluded that life in prison is an inhuman penalty and therefore, it is inadmissible for our international public order. Similarly, incarceration with no time limit is enshrined as a situation where extradition will not be permitted, according to other international instruments signed by our country, such as the Extradition Treaty between Uruguay and Spain (approved by Law No. 16.799), and the Extradition Treaty between Uruguay and Argentina (approved by Law No. 17.225). Both treaties establish that extradition is not acceptable when the facts serving as grounds for the extradition request are punishable by the death penalty or life in prison in the requesting State; the extradition may be granted only where the requested country receives sufficient guarantees that the penalty to be applied will not exceed the maximum penalty that is acceptable in the requested country (Arts. 9 and 8 respectively).

As stated above, international cooperation is a duty between States in the battle against crime - especially organized transnational crime. Nevertheless, on this point it is relevant to recall the words of Professor Rául Cervini, who says, "the fragile and dynamic balance between effectiveness in providing the assistance and the guarantees offered to those involved specifically rests in the legitimizing functionality of modern international criminal cooperation, which must be conceived as being based on a concept of the Law that is anthropocentric and provides guarantees of Human Rights. This is true because in the sphere of international judicial penal cooperation, the time is past when its functioning was associated with the negotiating power of States, with a now also disputed international courtesy, and in an even more modern way, with the merely instrumental notion of respect and continuity of proceedings. Nowadays, these latest considerations that are linked with relations between in States must also be accompanied by a mandatory acknowledgement of the rights of the subject (the subject of the extradition who is affected by the cooperation measures). In so doing, the legitimizing function of penal law will be respected, as it absolutely must be understood based on the concept of guarantees" (Cervini, Raul –Principles of International Penal Judicial Cooperation within MERCOSUR) p. 13, publications of the Instituto de Derecho Penal, Faculty of Law, UDELAR).

In conclusion, and in agreement with the position upheld by the Office of the Prosecutor, this court understands that it is appropriate to put conditions on the rendering of González Valencia such that the requesting State provide sufficient guarantees that if he is sentenced in the criminal trial that that country wishes to begin, he will not be sentenced to the death penalty or life in prison.

11) Similarly, based on the same foundations set forth in the previous whereas clauses, referring to the guarantees pertaining to the person being extradited which must be respected in international cooperation, and in accordance with the provisions of Art. 13 of the Treaty, the request of the prosecutor will be granted provided that the requesting State ensures that the accused will not be judged or sentenced for crimes other than those mentioned in the extradition request, except for the situations set forth in numerals 1 and 2 of the aforementioned article.

12) Based on all of the foregoing, we conclude that the extradition request for Gerardo González Valencia has fulfilled the requirements mandated by the Extradition Treaty signed between Uruguay and the United States, as well as the legal principles that govern extradition (double incrimination, specialty, legality), and that it is appropriate to dismiss the appeal filed by the Defense Counsel, with the caveat referred to in the previous section.

And on these grounds, we proceed to grant the request for the extradition of Gerardo González Valencia so that he may face a criminal trial before the appropriate authorities of the United States for the crime is referred to in the request, subject to the following conditions.

First of all, according to the petition of the Office of the Prosecutor, the subject will be effectively rendered for extradition once the subject is released from jail on bail or definitively, in the context of the trial currently underway against him in Uruguay before this court, captioned IUE 2-37467/2016.

For these purposes, we must keep in mind that case IUE 2-37467/2016 is in the pre-trial phase and Gerardo González Valencia was remanded to pre-trial custody when the trial began, and will remain so according to the requirements of that trial. Therefore, no administrative arrest has been performed in the context of these extradition proceedings.

Secondly, according to the provisions of Art. 13 of the Treaty, the granting of the extradition is subject to the condition that the authorities of the requesting State provide guarantees that the subject of the extradition will neither be sentenced nor condemned for crimes that are distinct from those referred to in the extradition request, except for the situations set forth in numerals 1 and 2 of the aforementioned article.

Thirdly, according to the provisions of Art. 7 of the treaty, and pursuant to our internal and international public order and in compliance with the fundamental guarantees of the subject of the extradition as they flow from international human rights, the extradition will be granted subject to the condition that the authorities of the requesting state provide guarantees that are deemed sufficient by the national authorities involved in these proceedings, whereby if Gerardo González Valencia is sentenced in the criminal trial that is expected to go forward against him in the requesting country, he will not be sentenced either to the death penalty or to life in prison.

Finally, the requesting State is asked to declare whether it accepts the conditions based upon which the extradition will be permitted within a term of 40 days from the time that notice of the sentence is issued.

**RULING**:

The extradition of Gerardo González Valencia as requested by the appropriate authorities of the United States is hereby granted, subject to the following conditions: I) The rendering will be delayed until the subject is released from prison on bail or definitively released from prison in the case against him before this Court in Uruguay, captioned IUE 2-37467/2016; II) The granting of the extradition request is conditional and the requesting State must provide assurances that the subject will neither be tried nor sentenced for crimes other than those referred to in the extradition request, except for the situations set forth in numerals 1 and 2 of the aforementioned article; III) The granting of the extradition request is conditional and the requesting authorities must provide guarantees that are deemed to be sufficient by the national authorities involved in these proceedings, such that if Gerardo González Valencia is sentenced in the criminal trial that is expected to go forward against him in the requesting country, he will not be sentenced either to the death penalty or to life in prison; IV) The competent authorities of the requesting State must declare whether they accept the conditions set forth in the previous numbers within a term of 40 days after receiving notice of this ruling.

The court orders that the corresponding communications be sent to the requesting authority via diplomatic dispatch, with the appropriate formalities.

Notice shall be issued; the sentence is enforceable, and shall be enforced.-

Beatriz LARRIEU DE LAS CARRERAS