```
                  UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
   * * * * * * * * * * * * * * * *
UNITED STATES OF AMERICA,            ) Criminal Action
                                     ) No. 16-065
vs.                                  )
                                     )
GERARDO GONZALEZ VALENCIA,           )
          Defendant.                 )
* * * * * * * * * * * * * * * * * )   Criminal Action
UNITED STATES OF AMERICA             ) No. 16-192
                                     )
vs                                   )
                                     ) November 19, 2021
JOSE GONZALEZ VALENCIA,              ) 10:51 a.m.
          Defendant.                 ) Washington, D.C.
   * * * * * * * * * * * * * * *
```

**TRANSCRIPT OF MOTION HEARING**
**BEFORE THE HONORABLE BERYL A. HOWELL,**
**UNITED STATES DISTRICT COURT CHIEF JUDGE**

**APPEARANCES:**

FOR THE UNITED STATES:

                    KATE M. NASEEF
                    BRETT REYNOLDS
                    KAITLIN JULIA SAHNI
                    KIRK KENNETH HANDRICH
                    U.S. Department of Justice
                    Narcotics and Dangerous Drug Section
                    45 N Street, NE
                    Washington, DC 20530
                    (202) 353-8810
                    Email: kate.naseef@usdoj.gov


FOR GERARDO GONZALEZ VALENCIA:

                    STEPHEN A. BEST
                    TIFFANY BROOK LIETZ
                    DAVID ROSENTHAL
                    Brown Rudnick, LLP
                    601 Thirteenth Street, NW
                    Washington, DC 20005
                    (202) 536-1737
                    Email: sbest@brownrudnick.com

***(Appearances continued)***

**APPEARANCE (continued)**:


FOR GERARDO GONZALEZ VALENCIA:

                        LILLY ANN SANCHEZ
                        Four Seasons Tower, Suite 1200
                        1441 Brickell Avenue
                        Miami, FL 33131
                        (305) 503-5503
                        Email: lsanchez@thelsfirm.com


FOR JOSE GONZALEZ VALENCIA:

                        ALFRED GUILLAUME III
                        6305 Ivy Lane
                        Greenbelt, MD 20770
                        (301) 377-2158
                        Email: ag3law@gmail.com


ALSO PRESENT:      TERESA SALAZAR,
                   TERESA ROMAN,
                   Spanish Language Interpreters


Court Reporter:    Elizabeth Saint-Loth, RPR, FCRR
                   Official Court Reporter


        Proceedings reported by machine shorthand, transcript
             produced by computer-aided transcription.

1                        **P R O C E E D I N G S**

2              THE COURT:  Let's call the case, both cases.

3              THE COURTROOM DEPUTY:  Yes, Your Honor.

4              Matter before the Court, Criminal Case Nos. 16-065

5      and 16-192, United States of America versus Gerardo Gonzalez

6      Valencia and Jose Gonzalez Valencia.

7              Counsel, please state your names for the record --

8      and come forward -- starting with the government.

9              MS. NASEEF:  Good morning, Your Honor.

10     Kate Naseef for the United States --

11             THE COURT:  Good morning.

12             MS. NASEEF:  -- with Kaitlin Sahni, Kirk Handrich,

13     and Brett Reynolds.

14             THE COURT:  Good morning.

15             Wait just one second.

16             MR. BEST:  Stephen Best --

17             THE COURT:  Ms. Salazar, is everything good with

18     the translation?

19             THE INTERPRETER:  Yes.  It is, Your Honor.

20             THE COURT:  Let's proceed.

21             For Mr. Gerardo Gonzalez Valencia.

22             MR. BEST:  Stephen Best, from the law firm of

23     Brown Rudnick; we're here for Mr. Gonzalez Valencia --

24     Mr. Gerardo Gonzalez Valencia, along with Lilly Sanchez from

25     the Sanchez law firm in Miami; and my colleagues David

1    Rosenthal and Tiffany Lietz, who are sitting in the first

2    row of the --

3              THE COURT:  Okay.  And could Mr. Gerardo Gonzalez

4    Valencia raise his hand so I can see -- which one is that?

5              All right.  Good morning.

6              MS. SANCHEZ:  Thank you, Your Honor.  Good morning.

7              THE COURT:  And then for Mr. Jose Gonzalez

8    Valencia?

9              MR. GUILLAUME:  Good morning, Your Honor.

10   My name is Alfred Guillaume, and I represent Mr. Jose

11   Gonzalez Valencia, who is seated behind me.

12             THE COURT:  Okay.  Good morning.

13             I know you have made a motion to withdraw as

14   counsel because you have been advised by your client that he

15   has retained counsel but no retained counsel has filed a

16   notice of appearance --

17             MR. GUILLAUME:  Correct.

18             THE COURT:  -- so you are not going to be

19   surprised that your motion to withdraw is not going to be

20   granted.

21             MR. GUILLAUME:  Correct, Your Honor.

22             It is my understanding that counsel -- private

23   counsel will enter within the next week.  But, for today's

24   purposes, I will be acting as Mr. Gonzalez Valencia's

25   attorney.  Thank you.

1          THE COURT:  All right.  Perfect.  Thank you.

2          Okay.  So we're here this morning, as I alerted

3   all counsel to that -- until I resolve the government's

4   motion for consolidation, it makes little sense to decide

5   the over ten pending pretrial motions; so I really just want

6   to focus today on the consolidation motion.  So who is going

7   to be arguing in favor of that motion for the government?

8          MS. NASEEF:  I will, Your Honor.

9          THE COURT:  Okay.  So let me just ask some

10  clarifying questions, just to make sure I am understanding

11  all of the papers that have been filed in connection with

12  this motion to consolidate.

13         The government says it remains prepared to proceed

14  to trial on February 7, 2022.  Does that mean that even if

15  the motion to consolidate were granted the government would

16  be prepared to proceed to trial on February 7?

17         MS. NASEEF:  Yes, Your Honor.

18         THE COURT:  Okay.  And just give me a sense of --

19  if Mr. Gerardo Gonzalez Valencia's trial proceeded

20  separately and Mr. Jose Gonzalez Valencia's trial proceeded

21  separately, would there be a difference in how long each one

22  would be, or would they both essentially be the same length?

23         MS. NASEEF:  They would essentially be the same

24  length.  So far the government has only identified one

25  witness that would vary between the two trials, an Uruguayan

1    law enforcement officer who was present for Gerardo Gonzalez

2    Valencia's arrest.  All of the other witnesses in both

3    trials would be the same, the Title III wiretaps the same,

4    the seizures the same.

5                    THE COURT:  Okay.  That's interesting.

6                    Okay.  So in some ways, the Gerardo -- I am just

7    going to call them by their first name --

8                    MS. NASEEF:  Yes.

9                    THE COURT:  -- for brevity purposes; I mean no

10   disrespect.  So Gerardo's trial might be a little bit longer

11   than Jose's because of that one particular witness?

12                    MS. NASEEF:  Yes.  But that is expected to be very

13   brief testimony just about the circumstances at the time of

14   arrest.

15                    THE COURT:  Okay.  But otherwise pretty much the

16   same?

17                    MS. NASEEF:  Exactly, Your Honor.

18                    THE COURT:  Now, the government also has indicated

19   in its papers -- and I think in some pretrial motions

20   also -- that there is a coconspirator of the defendants,

21   Nemesio Oseguera Cervantes, also known as "Mencho."

22                    MS. NASEEF:  Yes.

23                    THE COURT:  Who is also indicted in this

24   District --

25                    MS. NASEEF:  Yes.

1              THE COURT:  -- and is a fugitive in Mexico?

2              And is that still on fugitive status?

3              MS. NASEEF:  Yes, he is still a fugitive.

4              You may be thinking also of Gerardo and Jose's

5      brother Abigael, who is also a coconspirator but is in

6      custody in Mexico.  He actually was arrested before Gerardo

7      or Jose, but his extradition has been pending with Mexico, I

8      think, for over five years now; and we have no indication

9      that that extradition is going to be happening in the near

10     future.

11             THE COURT:  So he has been fighting extradition

12     through the courts?

13             MS. NASEEF:  Yes.

14             THE COURT:  Do you know what stage in the court

15     system in Mexico that is now sitting?

16             MS. NASEEF:  I don't, Your Honor.

17             The Mexican amparo process is very complicated,

18     and I am not sure what stage of the process it is; but I do

19     know that we're not expecting him to be extradited in the

20     near future.  There has been no final decision on the part

21     of the Mexican courts with regard to his extradition.

22             THE COURT:  Okay.  Has he been detained in Mexico?

23             MS. NASEEF:  Yes.  He is in custody in Mexico,

24     yes.

25             THE COURT:  All right.  And I understand, from the

 1    government's briefing, that, in addition to the wiretap

 2    evidence from Blackberry Messenger devices in 2013 and 2014,

 3    there is also going to be evidence from an August 2000

 4    seizure of approximately 280 kilograms of cocaine that will

 5    be -- the government intends to introduce against both

 6    defendants.

 7              Could you just give me a little bit more detail

 8    about that 280-kilogram seizure, like where it was, and what

 9    were the general circumstances?

10              MS. NASEEF:  Yes, it was in the eastern Pacific

11    Ocean; there is a semi-submersible vessel --

12              THE COURT:  Oh.  So this is a submersible vessel?

13              MS. NASEEF:  Yes, Your Honor.  There was a whole

14    set of pretrial motions in Gerardo's case about the

15    submersible; it has a lot of details --

16              THE COURT:  Right.

17              MS. NASEEM:  -- but that is the seizure at issue.

18              THE COURT:  Okay.  I just want to make sure.

19              And what about the 2009 shark -- stuffed-shark

20    incident --

21              MS. NASEEF:  Yes, Your Honor.

22              THE COURT:  -- is that going to be presented

23    against just Gerardo or against both defendants?

24              MS. NASEEF:  So that is, I would say, different in

25    kind than the seizure evidence because what that is is we

1    have cooperating witnesses that will testify that that is

2    one way that they moved cocaine, was hidden in shark

3    carcasses.  If one of those cooperating witnesses was able

4    to identify the photograph from press reporting, then

5    perhaps that photograph would be admissible; but otherwise

6    that is cooperating witness testimony, not exactly the same

7    type of evidence as a U.S. law enforcement seizure.  So...

8            THE COURT:  But the evidence about the transport

9    of cocaine in shark carcasses is evidence that the

10   government would seek to introduce not only against Gerardo

11   but also against Jose?

12           MS. NASEEF:  Your Honor, we are still preparing

13   cooperating witnesses.  So we do need to ask a few more

14   questions about whether Jose was also involved in that

15   particular shipment method.

16           THE COURT:  Okay.  So there might be some

17   evidence -- it's not coextensively overlapping in terms of

18   the evidence against both?

19           MS. NASEEF:  Yes.  So there may be some specific

20   loads that a cooperating witness would discuss that --

21           THE COURT:  You can confer with your counsel

22   before you --

23           MS. NASEEF:  It's okay.  There is only one word on

24   the piece of paper, so I am good.

25           THE COURT:  Okay.

1          MS. NASEEF:  So there may be some individual loads

2     that a cooperator would discuss that one brother or the

3     other invested in.  But, overall, all of those loads are

4     part of the same conspiracy that both brothers participated

5     in; and all of the witnesses would testify about them being

6     involved in that same conspiracy and working together.

7          THE COURT:  Okay.  So the defendants have pointed

8     out certainly Jose's counsel in a very fairly succinct,

9     direct way that the Gerardo conspiracy starts in 2003,

10    whereas the Jose conspiracy starts three years later, in

11    2006.  And I appreciate that the government says that the

12    vast majority of the evidence against Gerardo, even though

13    it starts in 2003, comes after 2006.  So is there going to

14    be -- how much time would you estimate it's going to take up

15    at trial, if you can, to deal with the evidence against

16    Gerardo between 2003 and 2006?

17         MS. NASEEF:  Your Honor, at most it would be a

18    couple of questions of certain witnesses of the seizures

19    obviously after that time period --

20         THE COURT:  So it's not like it's going to add a

21    week to cover what happened in -- during that three-year

22    period?

23         MS. NASEEF:  No.  I would be surprised if it added

24    even hours, plural, to the trial.

25         THE COURT:  Okay.  All right.  So the government,

1   of course, has charged Gerardo in the indictment with not

2   only dealing with a cocaine conspiracy but, also, the

3   methamphetamine aspect of the conspiracy; and says that it

4   doesn't intend to proceed on the methamphetamine aspect.

5   But the government does still leave the door open to

6   pursuing the meth portion of the charge; but it does say it

7   will promptly notify defense counsel if it decides to do so.

8           You know, Jose, of course, argues that evidence of

9   Gerardo's involvement in methamphetamine conspiracy in the

10  trafficking would cause him substantial prejudice or spill

11  over the evidence about cocaine trafficking against him into

12  methamphetamine.

13          So when is the government, number one, going to be

14  able to make a final decision about the meth?

15          Two, how do you respond to that concern of Jose's

16  about unfair prejudice if you do decide to proceed with the

17  methamphetamine evidence?

18          MS. NASEEF:  I believe the government will be able

19  to make a final decision on the meth within the next couple

20  of weeks.  We were working through the -- finishing our

21  trial prep before making that final decision.

22          But if, for some reason, we were to change our

23  plan -- which we have no reason to believe we will at this

24  point -- any potential prejudice that would result could be

25  dealt with with jury instructions from Your Honor

1    instructing the jury to consider each defendant separately

2    and considering, with that case, you have very distinct

3    drugs, different names; it's almost easier to very clearly

4    instruct a jury:  Methamphetamine only applies to Gerardo;

5    cocaine applies to both of them.  So we think the jury

6    instructions would solve it if that did -- to accomplish

7    that.

8              THE COURT:  Just the normal standard practice of

9    jury instructions in telling the jury what to consider and

10   what not to?

11             MS. NASEEF:  Yes.  Yes, Your Honor.

12             THE COURT:  Okay.  So then Gerardo -- reiterating

13   some of his pretrial motion arguments -- says that he

14   intends to present a withdrawal defense that he withdrew

15   from the conspiracy in 2009; and it would be unduly

16   prejudicial if his case is joined with his brother's and

17   then the government introduces evidence of Jose's

18   participation in the conspiracy after 2009, when Gerardo

19   allegedly withdrew.

20             So let me just ask you a couple of questions.

21             First, I think -- if I'm understanding the

22   government's briefing on the pretrial motion correctly --

23   and I don't really want to get into that too much; but isn't

24   the government planning on introducing evidence of Gerardo's

25   participation in the conspiracy after 2009?

1           MS. NASEEF:  Yes, Your Honor.

2           The entire Title III wiretap is after 2009, as

3    well as cooperating witness testimony of his activities

4    after 2009.

5           THE COURT:  Right, okay.  So -- okay.  That's

6    basically it.  Is there anything else you want to add to

7    your papers?

8           MS. NASEEF:  No, Your Honor.

9           I would just say that we are prepared to address

10   the jurisdiction extradition issue further whenever Your

11   Honor feels that that is necessary.

12          THE COURT:  Yeah.  Well, you can do it in

13   rebuttal --

14          MS. NASEEF:  Okay.  Thank you, Your Honor.

15          THE COURT:  -- depending on how this comes up.

16          Okay.  Let's start with Mr. Best.

17          I mean, I have to say, when I picked up your

18   brief, I expected to see lots of discussion about unfair

19   prejudice, which is the normal course.  So to start reading

20   16 pages about how I lacked jurisdiction was a bit of a

21   surprise, Mr. Best.

22          Now, the government says the motion -- that

23   motion -- your prior motion to dismiss the indictment --

24   emphatically did not raise the issues now asserted for the

25   first time in Gerardo's opposition to the government's

1    joinder motion.  One can search Gerardo's previous motion in

2    vain for any mention of jurisdiction, any mention of the

3    U.S.-Uruguay extradition treaty, any mention of foundational

4    extradition principle of the role of specialty, or any

5    citation whatsoever to the primary cases in which Gerardo

6    now relies; and then it goes on to state -- to cite those

7    cases.  Isn't the government right?

8            MR. BEST:  It was mentioned more than 20 times in

9    our pleading on October 6th, Your Honor; so the government

10   is not right.  I can go through -- I have the motion; I can

11   read it to you.  It was as a subset of our motion to dismiss

12   the overall indictment; but to say that it was not mentioned

13   is inaccurate.

14           THE COURT:  All right.  I am not going to get into

15   details about this.  I actually think --

16           MR. BEST:  And, with all due respect, I don't know

17   if that's relevant to a standing argument as to when it

18   should be brought.  I don't know if you can waive by not

19   pleading it with the particularity that the government has

20   so demanded; and you seem to be bringing up, you know,

21   through the government's motion a constitutional due process

22   argument.

23           But so -- I am here to address -- we clearly

24   addressed it.  I can go through in detail how it was

25   addressed; I can show you the specifics.

1    THE COURT:  No.  I don't want to spend anymore

2    time on it because I think your principle that I don't have

3    the jurisdiction to even consider a motion for consolidation

4    is just unsupportable.  And I see nothing in your papers

5    that says or cites to any case that the Court cannot decide

6    a procedural matter like a consolidation motion without

7    first establishing and going through this whole

8    jurisdictional analysis.

9    MR. BEST:  I am happy --

10    THE COURT:  So -- so I see no place in your papers

11    that cites a case for that proposition.

12    MR. BEST:  It is our position --

13    THE COURT:  What case does cite that position?

14    MR. BEST:  It is our position that the defendant

15    is here illegally, through an illegal extradition; as such,

16    the Court has standing to -- with all due respect, to only

17    consider or first consider that motion.

18    If Your Honor wishes to consider everything else

19    and hold that motion in abeyance, we're fine with that

20    approach.  But --

21    THE COURT:  Good, because that's the approach I am

22    going to take.

23    MR. BEST:  That's fine.

24    THE COURT:  So let's move on.

25    So the government says that it's amenable to

1      delaying the start of the trial date if the cases are

2      joined.  And -- you know, so how is it, when the government

3      is prepared to go forward on February 7th -- keep the same

4      trial date -- that it's your view that it would deprive each

5      defendant of their individual right to a fair trial?

6              MR. BEST:  You are absolutely right.  I expect

7      that when counsel gets substituted there will be a motion

8      for continuance past that trial date by Jose Gonzalez

9      Valencia's counsel; but at this point, Your Honor, you are

10     absolutely right.

11             What is before us is presuming that everybody is

12     going to trial in February.  And so I am just alerting the

13     Court what I expect to have happen, and we can take it up

14     then.

15             THE COURT:  Well, I mean, if -- if these lawyers

16     were, like, really anxious about trial rights, why haven't

17     they entered an appearance now and be ready to go and appear

18     here in front of me?  I mean, do you know whether they have

19     been retained, or you have no idea?

20             MR. BEST:  They are waiting retention.  They are

21     not formally retained.

22             THE COURT:  So --

23             MR. BEST:  So the likelihood, as somebody who has

24     done this for a long time, that they're going to be ready to

25     go to trial in February is remote.

1            THE COURT:  I agree.

2            MR. BEST:  Right.

3            THE COURT:  That's probably unlikely.

4            One of the things that you argue -- and you

5     criticize the government for, you know, making its joinder

6     motion now.  And -- I mean, and the government, of course,

7     responds that had the government made a trial joinder motion

8     while Gerardo was in custody in this District but Jose was

9     still in Brazil awaiting extradition, it would have amounted

10    to a motion for an indeterminant delay of Gerardo's trial.

11    The government is right on that, don't you agree?

12            MR. BEST:  Yes.

13            THE COURT:  They made their joinder motion as

14    promptly as they could as soon as Jose made it here.

15            MR. BEST:  With that, I am not here -- I am here

16    to have a rational discussion and tell you you are right on

17    this.  And this comes down to a basic deliberation, on one

18    side, of economies of the Court, one; and two, the

19    government's interest in not burning their witnesses, right?

20    So that's on one side of the equation of the rule -- the

21    rule --

22            THE COURT:  And it's not just the convenience of

23    the Court; it's the convenience of all of the citizens in

24    the District of Columbia who will be called upon to serve as

25    jurors --

1          MR. BEST:  Yes.

2          THE COURT:  -- you know, to do this efficiently,

3    as opposed to having two different trials; the expense to

4    the government of calling in witnesses from all around the

5    world, depending on where they're coming from, to transport

6    them here, I think you would agree, judicial economy-wise it

7    makes -- and --

8          MR. BEST:  I put that all under the umbrella --

9          THE COURT:  -- the resources that would be

10   expended on having two duplicate trials, it all makes sense

11   to consolidate -- you would agree with that then, if we're

12   going to be talking, having a rational discussion?

13         MR. BEST:  With the exception that the rule is

14   there is presumptive prejudice to the defendant.  And --

15   now, it's your discretion, in reviewing everything to make a

16   determination given that, but you are right.

17         So everything you said I agree with.  But there is

18   a presumption of prejudice and --

19         THE COURT:  Well, the standard is it's unfair

20   prejudice.

21         MR. BEST:  It is.  And so the question is they

22   could have indicted everybody together at the outset; they

23   didn't.  He was brought forth -- and this is important

24   because we learned new stuff today that we haven't heard in

25   over a year from the government.

1    We have gotten tens of thousands of documents of

2    discovery.  Only in the past week have we learned that the

3    government believes that Jose was involved in the 2007

4    cocaine narco sub incident.

5    In fact, and importantly, the DEA agents -- both

6    in declaration and the extradition, as well as the evidence

7    that we received to date -- nothing has stated that Jose

8    Gonzalez Valencia was involved in that incident.

9    Two, in all of the documents we have received in

10   discovery so far, there is nothing that connects these two

11   defendants.  So I was sitting here -- we filed a bill of

12   particulars; we have had reverse proffers.  We have had

13   multiple discussions with the government, they have never

14   brought up Jose Gonzalez Valencia's name as connected with

15   Gerardo Gonzalez Valencia; so I am going to be learning a

16   new fact -- new facts of this case, and it's almost

17   December, when we have a February trial date.

18   THE COURT:  But when was -- wasn't Jose -- hasn't

19   Jose been fighting extradition from Brazil for some time?

20   MR. BEST:  Abigael.  I'm sorry.  Jose may have

21   been, but we haven't received any discovery about Jose

22   that -- in our discovery materials with Gerardo, Jose is

23   barely mentioned except for being on, allegedly, some of the

24   wiretaps, but not having any conversations with Gerardo

25   Gonzalez Valencia.

1          So I am going to have to learn a new case before

2     February.  And this is all -- this is basically all new

3     information that's coming in.  There is clear

4     cross-examination obviously of the DEA agents' declaration

5     not listing Jose as part of a conspiracy which I will find

6     interesting.

7          I'd like -- we have asked -- we asked for a bill

8     of particulars to know what the allegations are so we can

9     properly prepare for trial.  None of this has ever come out

10    until he has come back into the country and wants to join,

11    and now we're hearing it for the first time; that is clear

12    prejudice.

13         Secondly, this absurdity that -- we're sitting

14    here -- they have walked away from the meth case against our

15    client, but they're still considering whether they're

16    actually going to walk away from it -- I mean, they have

17    told us that they are not proceeding to trial on any

18    evidence involving methamphetamines in Gonzalez Valencia --

19    in our client.  To hear today that they really haven't

20    committed to that position is a bit terrifying, so I don't

21    know what to do.  So clarity on that point really should be

22    made immediately.

23         I don't know how to take the government's

24    representations to us a month ago that they're walking away

25    from that aspect of the case, but it could come up later if

1    more evidence comes up; and then here, today, they haven't

2    made that determination.

3              THE COURT:  Well, I know that their notice on the

4    methamphetamine was a little puzzling to me; they didn't

5    totally close the door on it.

6              MR. BEST:  That would be great.

7              THE COURT:  So, for all we know, perhaps they are

8    going to try and move in some parts of it as 404(b) in front

9    of their pretrial motions; I am not sure.

10             I think that that's -- you know, the government

11   has said that they're going to be providing assurance, I

12   think -- when did you say, in the next few weeks about the

13   methamphetamine, and exactly what you are going to do with

14   it?

15             MS. NASEEF:  Yes, Your Honor.  We'll resolve it.

16             THE COURT:  And I am not sure in what form that is

17   going to be.

18             As I understand what the government is saying, is

19   they are not proceeding to seek -- you know, to present

20   perhaps in their -- well, I am not even going to try and

21   explain what I understand what they said.  They said what

22   they said.

23             Is there anything else you want to add?

24             MR. BEST:  Indulgence, Your Honor.

25             Only to add that we are not waiving our speedy

1    trial right going forward in this case.  And that -- and we

2    can bring this up at another time; but at least I want to

3    say, when the new counsel comes in and asks for a year's

4    continuance in this case, the prejudice will be clear that

5    our client will be incarcerated but -- for another year,

6    when you are going to have to confront the issue of his

7    request and our demand for speedy trial.  Thank you very

8    much.

9              THE COURT:  Okay.

10             Mr. -- how do you say your last name?

11             MR. GUILLAUME:  It's Guillaume, Your Honor.

12             THE COURT:  Guillaume.

13             MR. GUILLAUME:  Yes.

14             THE COURT:  Mr. Guillaume.  Okay.  So one of the

15   reasons you put forward for why consolidating the cases

16   would be prejudicial is because of the meth aspect in the

17   conspiracy charge against Gerardo.

18             Given what the government has said, to the extent

19   that you understand it, about the meth charge, would you

20   agree that that mitigates the prejudice to Jose, at least,

21   from proceeding in a consolidated manner on both these

22   charges?

23             MR. GUILLAUME:  Well, Your Honor, I think I will

24   echo what my cocounsel said a moment ago with respect to the

25   meth charge, and even what Your Honor has said, is that --

1    the decision has not been made with respect to if it can or

2    cannot come up.

3              Now, granted, this is a little bit of an academic

4    argument because I probably will not be the attorney who has

5    to deal with this at trial.  However, my client thinks it's

6    important that I preserve this right and bring up before the

7    Court -- the fact of that matter is, Your Honor, that the

8    government's case seems to be driven largely by cooperating

9    witnesses, especially with respect to this meth count.  And

10   the fact that the door is still open is a bit troubling

11   because if we were to trust their judgment, what's to say

12   that they won't change their mind later on down the line;

13   and that if Your Honor wishes to join these cases, I think

14   that's a very -- the fact that my client is not charged at

15   all with this particular drug or in any way involved in it,

16   I think is a very big deal -- for lack of a better term --

17   and I think that the Court should force the government to

18   make a decision, sooner rather than later, before the Court

19   were to rule on this particular joinder motion.

20             As far as the length of time of the conspiracy,

21   Your Honor, the government indicates one witness and a

22   couple of questions.  I don't have any reason to disbelieve

23   them; however, at the same time, they are still preparing

24   for trial, and things -- we all know that in trial

25   preparation, things come up that are not anticipated.  So if

1    one witness turns into two, and if a couple of questions

2    turns into ten questions, that's also problematic.

3             And even if it stays as is, as the government

4    proffered, with the couple of questions, those may be very

5    significant questions that could significantly prejudice my

6    client.

7             Now, I am not in a position to argue the

8    discovery, and what is there and what is not -- I have

9    received some, but I am not -- that was a few days ago.  I

10   am not versed in it at all, so I am not going to pretend

11   that I can make that -- those arguments, Your Honor.

12            But just anecdotally speaking, from the evidence

13   that -- the proffer that the government has put out there

14   with respect to those issues, I don't know that the Court

15   has enough assurance from them to, in fact, grant their

16   motion for joinder at this juncture, Your Honor.

17            THE COURT:  All right.  Is there anything else you

18   want to add?

19            MR. GUILLAUME:  One other thing, Your Honor.

20   Again, this is a bit academic because I am not going to be

21   counsel at trial.  I think the fact of the matter remains

22   that even if I were to remain counsel there is no way that I

23   could be prepared -- based on what I have seen from the

24   discovery that I have received this week -- ready for a

25   February --

1          THE COURT:  And how much discovery have you

2     received so far?

3          MR. GUILLAUME:  I received a disk drive --

4     external disk drive.  It's got a lot of documents.  I

5     haven't been able to count all of the documents.  Cocounsel

6     mentioned, a moment ago, over 50,000 pages, or a big number

7     like that.  I have not been able to determine that amount

8     because I was preparing to write the opposition; and I did

9     not have a chance to look through as much as I wanted to.  I

10    received it on Monday, but I didn't pick it up until Tuesday

11    from my office; so there is a lot that is there.  And I

12    don't know if there are additional disclosures as well, but

13    it's overwhelming what I have seen.

14          And just the type of case that this is, Your

15    Honor -- any time you have a codefendant case, you are going

16    to, by definition, have more evidence because there is two

17    people.  Joined or not, you know, there is going to be a lot

18    of information if they were solo or if they were joined.  I

19    would not have time to be ready by the 7th.

20          Counsel indicated he is not waiving speedy trial.

21    And I am pretty sure -- I can't speak for counsel that's

22    coming in, but they probably will request a continuance as

23    well.

24          Other than that, I have no further argument, Your

25    Honor.

1           THE COURT:  Okay.  Thank you very much.

2           All right.  Does the government want to respond?

3           MS. NASEEF:  Yes.

4           THE COURT:  So what do you say to Mr. Best's

5    argument that he has never seen Jose's name on any of this

6    discovery so far; so this is a big surprise that Jose is a

7    member of the conspiracy here?

8           MS. NASEEF:  Yes, Your Honor.  I mean, the only

9    place that a codefendant's name would have appeared in the

10   discovery is the Title III wiretap; and, obviously, there

11   you are talking about screen names and BBM PIN numbers that

12   are not in anyone's true name.  Jose is intercepted on that

13   Title III wiretap.

14          However, counsel have known the entire time he has

15   been here this is a cooperator-heavy case.  That is the

16   nature of a cooperator-heavy case, is you do not know their

17   exact testimony a year and a half ahead of trial.

18          The fact -- there would have been no reason in

19   attorney reverse proffers to mention anyone else that the

20   cooperating witnesses -- any other coconspirators the

21   cooperating witnesses had any information about, simply was

22   not relevant until Jose arrived in the United States and a

23   motion for joinder was filed.

24          THE COURT:  Well, actually, with the cooperator s,

25   don't you do a full debriefing so you know who they can

1    offer evidence against?

2              MS. NASEEF:  I'm sorry, Your Honor.  I can't hear

3    you.

4              THE COURT:  I mean -- I'm sorry.  If you have a

5    cooperator and you do a full debriefing, don't you know who

6    they were involved with and who they can offer testimony

7    against?  And so why would you --

8              MS. NASEEF:  Yes.  We would, Your Honor.

9              But we wouldn't share with one defendant's

10   attorney every other potential coconspirator that -- well,

11   let me say, we have cooperators who will testify about "X"

12   event, your client's involvement, and why.  We wouldn't say

13   they'd also testify about this conspirator or that

14   coconspirator.  We try to be -- to protect the identities of

15   our cooperating witnesses and to be providing information

16   about a coconspirator who is not at issue in this trial, it

17   wouldn't be something that we would be providing to defense

18   counsel until the time when they are joined for trial.

19             THE COURT:  So Mr. Best is right; Jose is like a

20   whole new aspect of this investigation for him?

21             MS. NASEEF:  No, Your Honor.  I don't think

22   Jose -- it's the same conspiracy; they were involved in the

23   same conspiracy.  The witnesses are going to be testifying

24   about the same conspiracy.  They are going to be testifying

25   about all of the same players in the same conspiracy.  The

1    Title III wiretap has both Jose and Gerardo talking to some

2    of the same people.

3              THE COURT:  And in the discovery that you have

4    provided about the wiretap evidence, have you identified, in

5    the discovery to Gerardo's counsel, those participants in

6    the intercepted communications who are Jose, in addition to

7    who has been identified as Gerardo?

8              MS. NASEEF:  Let me double-check exactly whose

9    screen name has been identified because I am not exactly

10   sure.

11             (Whereupon, government counsel confer.)

12             MS. NASEEF:  Your Honor, we have not identified

13   the screen names of other -- like, put them with true names

14   of individuals for any of the other people intercepted on

15   the wiretap for defense counsel, nor have they asked us to;

16   but they do have the entirety of the wiretap, not just

17   Gerardo's messages.  They have the entirety of the Title III

18   wiretap investigation in this conspiracy.

19             THE COURT:  And would you -- and in that wiretap,

20   how would you -- what's the percentage of communications

21   that have been intercepted from Gerardo and the percentage

22   of communications intercepted for Jose, in a general

23   estimate?

24             MS. NASEEF:  All right.  So I am trying to think

25   of the best way to answer that.

1          THE COURT:  Because I am confronted with --

2     counsel says:  Look, we know we've got all of this wiretap

3     evidence.  We have gone through it for our client, Gerardo;

4     now we have to expand it for Jose.

5          Is Jose only on a couple of conversations, or is

6     it a really substantial amount so I have more than Gerardo?

7          MS. NASEEF:  I don't -- I don't believe it's

8     significantly more than Gerardo, if it is more than him at

9     all.  I think the way I would say it is both Jose and

10    Gerardo were intercepted incidentally, like speaking to

11    targets of the wiretap, so neither of them -- neither of

12    their devices were targets of the wiretap.

13         So I think we would expect -- where as if you had

14    someone who was a target and someone who wasn't, you might

15    expect a vast disparity.  Since neither was, there should

16    not be a great disparity in the quantity of the

17    conversations.  I'm sorry.  I misspoke.

18         There was one time where Gerardo's device was a

19    target, but no communications were actually intercepted when

20    it was a target; so all of the actual interceptions were

21    incidental.

22         THE COURT:  Okay.

23         All right.  Anything further that you want to

24    respond to?  Both sides.

25         And what are -- and given the volume of the

1       discovery in this case, you know, would you agree that it

2       be -- it would be unfair if this trial is postponed from

3       February 7th, 2022, to February 7th, 2023?

4               MS. NASEEF:  No, Your Honor.

5               I don't believe -- I don't agree that it would be

6       unfair.  I think the Speedy Trial Act clearly contemplates

7       situations where codefendants are joined and that -- in that

8       provision, it actually talks about where one of the

9       defendant's speedy trial clock has not been tolled.

10              In this case, Gerardo Gonzalez Valencia has agreed

11      to all of the tolling of the speedy trial clock up until the

12      trial date, and joined the government in the request for all

13      of that tolling; so neither defendant's speedy trial clock

14      has run.  So I do not agree that it would be unfair for

15      there to be a continuance if Jose Gonzalez Valencia's

16      counsel were to ask for one.

17              THE COURT:  Have you -- are you familiar with

18      these -- the lawyers who anticipate being retained for Jose

19      Gonzalez Valencia?

20              MS. NASEEF:  I just met them this morning, Your

21      Honor.

22              THE COURT:  So you have met these lawyers?

23              MS. NASEEF:  Just outside the courtroom on our way

24      in, Your Honor.

25              THE COURT:  Oh.  They're here?

 1          MS. NASEEF:  Yes, Your Honor.

 2          THE COURT:  Okay.  All right.  Well, I am glad

 3     that the prospective attorneys are here because they may be

 4     working full-time on this case once they enter an appearance

 5     because I would be concerned if this trial were postponed

 6     from February 2022 to February 2023, and that is not going

 7     to happen; so there you go.  The government should be aware

 8     of that --

 9          MS. NASEEF:  Yes, Your Honor.

10          THE COURT:  -- and new counsel coming in should be

11     aware of that; and there you go.

12          All right.  Mr. Best, you look like you are on the

13     edge of your seat.

14          MR. BEST:  I am.

15          If I may just briefly -- this is tangential to the

16     joinder issue.  But to be told that -- I have just heard the

17     government's explanation to your very precise question as to

18     whether or not I am accurate, that I haven't seen any

19     evidence that's connected the two.

20          And to be heard with -- to hear in the courtroom

21     that the first explanation was:  Well, we have interviewed

22     this cooperating witness a couple of times and we're just

23     learning now that Jose may be involved, which prompted your

24     question:  Don't you -- wasn't there one debriefing where

25     you got all of this information?  And maybe counsel is not

1    current with the file, which is understandable.

2             But in my multiple conversations with the

3    government in our bill of particulars, nothing has come out

4    about Jose being involved in the 2007 incident.  And it's

5    outrageous because I have to know the full facts of what the

6    government has, particularly when I am being given a reverse

7    proffer and I've asked for a bill of particulars on these

8    points.  And then to hear the government say:  Well, we are

9    not -- well, it was only about Gerardo Gonzalez Valencia,

10   and that's why we limited the information is -- I have never

11   heard of anything like that in my life -- knowing that I

12   have to know the facts -- to be able to represent my

13   client -- that the government intends on presenting -- that

14   I had particularly asked about.  That's all I want to bring

15   up.

16             Thank you, Your Honor.

17             I apologize.  They did mention a brother that has

18   not been extradited from Mexico, Abigael, in that

19   debriefing --

20             THE COURT:  This is Abigael who has been awaiting

21   extradition --

22             MR. BEST:  Correct.

23             THE COURT:  -- for five years, I think, by the

24   government's estimate?

25             MR. BEST:  Correct.  So his name did come up, but

1    Jose's never came up.

2            THE COURT:  Well, I am sympathetic to the fact

3    that the contours of this case have changed with Jose's

4    arrival and the motion for consolidation.  And I would

5    anticipate that the government -- which, as I understand it

6    from its briefing and conversations in this case before, has

7    had conversations with defense counsel in pointing out in

8    reverse proffers, the nature of the evidence, and so on --

9    will step up to the plate to proceed to assist both counsel

10   for Jose and Gerardo in understanding any new contours of

11   the case to help facilitate focused examination of pertinent

12   discovery so that this case will be tried if not in February

13   2022, but not too much longer after that.

14           But I am not unsympathetic to the changing

15   contours of the case, and the government has started its

16   trial preparations for the February 7th, 2022, trial.  And

17   so I would just anticipate that they learn new things as

18   they're preparing those witnesses for trial, that they're

19   going to be providing that information on a prompt

20   turnaround basis to counsel for both the defendants to avoid

21   surprises at trial as much as possible.

22           All right.  Mr. Best, you may sit down.

23           Government, anything else to add?  You were

24   standing up.

25           MS. NASEEM:  Yes, Your Honor.  I just wanted to

1      correct the record.

2              I never said that the government just found out

3      about Jose's involvement.  I concede we did not discuss

4      Jose's involvement with Mr. Best or Sanchez.  But that is

5      not that accurate, that we just found out about his

6      involvement.  We've always represented that Gerardo (sic)

7      was an investor in that load, among other investors.

8              THE COURT:  Okay.  All right.  Well, I am going to

9      rule on the consolidation motion.

10             The government seeks to consolidate Gerardo

11     Gonzalez Valencia's case, 16-CR-065, with that of the

12     defendant's brother, Jose Gonzalez Valencia, case

13     No. 16-CR-192, pursuant to Federal Rules of Criminal

14     Procedure 8, which relates to joinder of offenses or

15     defendants, and 13, which relates to joint trial of separate

16     cases and consolidation.  See the government's motion,

17     docketed at ECF 72, in 16-CR-065, and ECF No. 14, in the

18     case 16-CR-192.

19             The government supports this motion with three

20     arguments that this Court finds persuasive over the

21     defendants' objections.  I will review these reasons

22     strongly militating in favor of consolidation of these two

23     cases shortly, after reviewing the applicable legal

24     standard.

25             In evaluating the motion for consolidation, the

1    Court first notes that Rule 13 permits consolidation where,

2    quote, all offenses and all defendants could have been

3    joined in a single indictment or information under Rule 8

4    which, in turn, permits the joinder of defendants and

5    charges where the charges arise from, quote, transactions

6    connected together or constituting part of a common scheme

7    or plan -- see Federal Rule of Criminal Procedure 8(a) --

8    and where the defendants are alleged to have participated

9    in, quote, the same series of acts or transactions

10   constituting an offense or offenses; see Federal Rule of

11   Criminal Procedure 8(b).

12        The joint trial of defendants who have or could

13   have been indicted together as preferred for a variety of

14   sound reasons, including that joinder expedites the

15   administration of justice; reduces the congestion of trial

16   dockets; conserves judicial time; lessens the burdens on

17   citizens who must sacrifice both time and money to serve

18   upon juries; and avoids the necessity of re-calling

19   witnesses who otherwise would be called upon to testify only

20   once; see *U.S. v Glover*, 583 F. Supp 2d 5, jump cite 16

21   D.D.C. 2008.

22        The Supreme Court has also observed that a joint

23   trial reduces the risk of inconsistent verdicts, stating in

24   *Buchanan v Kentucky*, 483 U.S. 402, jump cite 418, from 1987,

25   that, quote:  In joint trials, the jury obtains a more

complete view of all the facts -- of all the acts underlying

the charges than would be possible in separate trials.  From

such a perspective, it may be able to arrive more reliably

at its conclusions regarding the guilt or innocence of a

particular defendant, close quote.

Joint trials are particularly favored in

conspiracy cases that require the presentation of much of

the same evidence, the testimony of the same witnesses, and

involve defendants charged with participating in the same

illegal acts, even if some substantive charges may differ

among defendants.  See *U.S. v Richardson*, 167 F.3d 621, jump

cite 624, D.C. Circuit 1999.  See, also, *U.S. v Sutton*,

801 F.2d 1346, jump cite 1365, D.C. Circuit 1986.

D.C. Circuit has upheld consolidation of cases

where the indictments demonstrate, quote, The necessary

relationship between joined offenses, close quote,

concluding that an indictment alone may provide sufficient

support for joinder of two cases.  See *U.S. v Wilson*,

26 F.3d, 142, jump cite 153, D.C. Circuit 1994, quoting

*U.S. v Perry*, 731 F.2d 985, jump cite 990, D.C. Circuit

1984.

Nevertheless, in evaluating a motion for

consolidation under Rule 13, a court should consider the

effect of consolidation on judicial economy and weigh any

possible prejudice to the defendants.  See *U.S. v Briscoe*,

1   798 F. Supp. 28, jump cite 32 through 33, D.D.C. 1992,

2   citing *U.S. v Burkley*, 591 F.2d 903, jump cite 919, D.C.

3   Circuit from 1978.  See, also, *U.S. v McGill*, 815 F.3d 846,

4   jump cite 905, D.C. Circuit 2016.

5           When a defendant objects to consolidation, as

6   here, on the basis that admission of the evidence against

7   one defendant will prejudice the other, the court will need

8   to consider whether evidence of each kind could be admitted

9   in a separate trial of the other; see *Burkley,* at pin cite

10  920.  Yet, even if certain evidence could not have been

11  admissible against one codefendant, as long as there is

12  independent and substantial evidence against that

13  codefendant, he has not been unfairly prejudiced.  See

14  *U.S. v Halliman,* 923 F.2d 873, jump cite 884, D.C. Circuit

15  1991.

16          As the D.C. Circuit recently observed, quote:  The

17  varying roles played by members of a conspiracy will not

18  render a joint trial inappropriate as long as the jury can

19  reasonably compartmentalize the substantial and independent

20  evidence against each defendant through appropriate jury

21  instructions or other remedial measures taken by the

22  district court.  See *U.S. v Tucker*, 12 F.4th 804, jump cite

23  825, D.C. Circuit 2021, citing *U.S. v Straker*, 800 F.3d 570,

24  jump cite 628, D.C. Circuit 2015, a per curiam decision.

25          Set against this legal standard, consolidation of

1   the two pending cases against defendants is both warranted

2   and fully appropriate.

3           First, defendants could have been joined together

4   in a single indictment under Rule 8, as required by Rule 13

5   for consolidation, because they are both charged with

6   participating in the same conspiracy.  The defendants are

7   charged with participating in the same conspiracy,

8   specifically to distribute cocaine for importation into the

9   United States for over a decade, from 2006 through April

10  2006 (sic), as reflected by similar indictments.

11          Second, joinder would save the Court significant

12  time and would promote the efficient use of judicial

13  resources because most of the witnesses, according to the

14  government's proffer, would be the same if the Court were to

15  hold two separate trials of the defendants.

16          Conserving substantial and limited judicial

17  resources, as well as the time of jurors called upon to hear

18  the cases at trial, is a very strong reason for

19  consolidation.

20          The government has detailed the significant

21  overlap between the evidence and witnesses to be used in the

22  two cases should they proceed to trial.

23          This is the precise circumstance when

24  consolidation is warranted.  As the D.C. Circuit has

25  instructed, quote:  The joinder presumption is especially

1   strong where, as here, the respective charges require

2   presentation of much of the same evidence, testimony of the

3   same witnesses, and involve two defendants who are charged

4   *inter alia*, with participating in the same illegal acts.

5   See *U.S. v Ford*, 820 F.2d 729, jump cite 731, D.C. Circuit

6   from 1989.

7           Finally, defendants have not established that they

8   will suffer undue and unfair prejudice if they proceed to

9   trial jointly, and have thus failed to rebut the strong

10  presumption in favor of consolidation that applies in this

11  context.

12          Defendant Jose Gonzalez objects to the use of the

13  same evidence against the two defendants on the grounds

14  that:  One, any evidence presented against Gerardo Gonzalez

15  that occurred during the three years that Jose Gonzalez was

16  not involved in the alleged conspiracy would substantially

17  prejudice the case of Jose Gonzalez and prevent the jury

18  from making a reliable judgment about his guilt; see his

19  opposition, at page 3.  And two, the government would offer

20  witnesses at trial that would testify about Gerardo

21  Gonzalez's involvement with methamphetamine, although the

22  indictment against Jose does not allege he was involved with

23  methamphetamine.

24          Well, first with respect to the evidence that

25  Gerardo's role in the conspiracy between 2003 and 2006 --

1    the government has stated that the vast majority of the

2    evidence it will introduce at trial against both defendants

3    comes from 2006 and later, during the same period of the

4    charged conspiracy against Jose; thus, the varying roles

5    played by Gerardo and Jose -- to the extent that Gerardo

6    joined the conspiracy three years earlier than Jose, and the

7    government introduces limited evidence to establish that

8    fact -- will not render joint trial inappropriate because

9    the vast majority of the evidence introduced at trial will

10   come from the period after 2006, during which both

11   defendants were allegedly involved in the same conspiracy;

12   see *Tucker*, 12 F.4th, at pin cite 825.

13           This would provide the jury with substantial and

14   independent evidence of Jose's own involvement in the

15   conspiracy such that he would not be unfairly prejudiced by

16   the introduction of limited evidence establishing that

17   Gerardo was already part of the conspiracy since 2003.

18           Next, with respect to evidence establishing

19   defendant Gerardo's involvement in the trafficking of

20   methamphetamine, the Court finds that risk of unfair

21   prejudice with respect to methamphetamine evidence is

22   dissipated by the government's representation that it does

23   not intend to proceed at trial on the methamphetamine

24   element of the indictment as to Gerardo in order to narrow

25   the issues before the jury and streamline the trial

1    presentation.

2           For his part, Gerardo Gonzalez's only objection to

3    the presentation of the same evidence against both

4    defendants is that he will assert as a defense that he

5    withdrew from the alleged conspiracy in 2009 when he moved

6    from Mexico to Argentina, and that evidence of Jose's

7    involvement in the conspiracy from 2009 to 2016 may prevent

8    the jury from properly considering such a withdrawal

9    defense.

10          The Court is unable to understand how the evidence

11   of Jose's involvement in the conspiracy after 2009 would be

12   unduly prejudicial for Gerardo if he asserts a withdrawal

13   defense given that the near-complete overlap of witnesses

14   and evidence between both defendants -- this resulting

15   absence of a dramatic disparity of evidence between the

16   defendants means that the government is -- will be, as

17   confirmed at the hearing today, introducing independent

18   evidence concerning Gerardo's own connection to the

19   conspiracy after 2009 when he asserts that he withdrew.

20          Apart from the possibility of suffering undue

21   prejudice because of the evidence introduced against both

22   defendants, Gerardo also objects that consolidation would

23   contravene the "rule of specialty" principle applicable to

24   extradition requests.

25          The rule of specialty is an international law

1    doctrine establishing that:  An internationally extradited

2    defendant may be tried only for the offenses specified in

3    the warrant of extradition; see *Day v Trump*, 860 F.3d 686,

4    jump cite 689, D.C. Circuit 2017, quoting 18 U.S.C.

5    Section 3192, and citing *U.S. v Rauscher*, 119 U.S. 407, jump

6    cite 423 through 24, 1886; see, also, *U.S. v Kember*, 685

7    F.2d 451, jump cite 458, D.C. Circuit case from 1982,

8    explaining that the rule of specialty requires that a

9    requisitioning state may not, without the permission of the

10   asylum state, try or punish a fugitive for any crimes

11   committed before the extradition except the crimes for which

12   he was extradited.

13        Here, Gerardo Gonzalez asserts that joinder would

14   violate the rule of specialty simply because Uruguay was not

15   made aware, prior to his extradition, that the U.S. would

16   seek to try Gerardo together with his brother.

17        At the outset, the government points out Gerardo

18   may not even have standing to raise the challenge under the

19   rule of specialty since the D.C. Circuit has declined to

20   resolve conflicting authority and opine -- quote, as to

21   whether a criminal defendant, as opposed to the extraditing

22   state, has standing to assert the doctrine of specialty; see

23   *U.S. v -- United States v Lopesierra-Gutierrez*, 708 F.3d

24   193, jump cite 206, D.C. Circuit from 2013; see, also,

25   *U.S. v Todd*, 287 F.3d 1160, jump cite 1165, D.C. Circuit

1    from 2002.

2              Even assuming that the Court may properly reach

3    the merits of this argument, it is evident that the rule of

4    specialty has no bearing over the instant motion to

5    consolidate since joinder -- a procedural mechanism -- does

6    not alter the specific charge for which Gerardo Gonzalez was

7    indicted and extradited from Uruguay to the United States;

8    see *Apodaca* -- one of my own cases -- at 275 F. Supp. 3d,

9    at 141.

10             Gerardo Gonzalez also objects to the likely delay

11   in trial date resulting from the differing preparedness of

12   his legal team and Jose's, who is still awaiting his

13   retained counsel to appear -- to file a notice of appearance

14   on his behalf, as well as the government's timing in

15   requesting joinder.  These arguments are also unavailing.

16             The Speedy Trial Act specifically provides for

17   exclusion of a reasonable period of delay when the defendant

18   is joined for trial with a codefendant as to whom the time

19   for trial has not run and no motion for severance has been

20   granted; see 18 U.S.C. Section 3161(h)(6).

21             Thus, the D.C. Circuit has determined that, under

22   the Speedy Trial Act, upon the addition of a new

23   codefendant, all defendants' speedy trial clocks are reset;

24   see *U.S. v. Van Smith*, 530 F.3d 967, jump cite 970, D.C.

25   Circuit 2008; see, also, *U.S. v. Sutton*, 801 F.2d 1346, jump

1    cite 1365, D.C. Circuit case from 1986, explaining that the

2    exclusion of time for the addition of a codefendant ensures

3    that the government is not forced to choose between

4    prosecuting defendants separately and violating the Speedy

5    Trial Act; nor can Gerardo Gonzalez Valencia reasonably

6    claim that he would have -- he would have preferred for the

7    government to move to join these defendants at any point

8    during the last five years as defendant Jose Gonzalez

9    Valencia was just extradited to the United States a week ago

10   and, as the government explains, filing a motion to

11   consolidate while Jose was still in Brazil awaiting

12   extradition would have amounted to a motion for an

13   indeterminate delay of Gerardo's trial; that would have been

14   unacceptable.

15          Here, the government promptly moved for

16   consolidation on the same day that defendant Jose Gonzalez

17   Valencia made his initial appearance in this District; that

18   was timely.

19          I will take a moment to address briefly the

20   jurisdictional argument that defendant Gerardo Gonzalez

21   presents in his opposition based on alleged defects and

22   irregularities in the process by which he was extradited

23   from Uruguay to the United States.

24          As the government emphasizes in its reply, Gerardo

25   spends the first 15 or 16 pages of his 22-page filing

1    focusing on everything but the government's motion for

2    joinder; see the government's reply at page 2.

3            Gerardo Gonzalez Valencia, indeed, leads his

4    opposition to the government's request for joinder not by

5    explaining how consolidation will cause him undue prejudice

6    but, instead, with the bold assertion that this Court lacks

7    jurisdiction to decide any motion in this case besides one

8    of his several motions to dismiss the indictment, docketed

9    at ECFs 63 and 64, where he argues, in support of those

10   motions to dismiss the indictment, that his extradition from

11   Uruguay to the United States was completely without probable

12   cause and in violation of his constitutional right to due

13   process.

14           Gerardo Gonzalez Valencia is correct that this

15   Court has jurisdiction to conduct a highly deferential

16   review of another country's decision to extradite someone to

17   the United States.

18           As the D.C. Circuit explained in *United States v.*

19   *Trabelsi*, 845 F.3d 1181, jump cite 1186, D.C. Circuit 2017,

20   where an individual has been extra- -- stating:  Where an

21   individual has been extradited pursuant to a treaty, we

22   defer to the extradition decision of the extraditing

23   country.  In light of this deference, we presume, absent

24   evidence to the contrary, that the extraditing nation has

25   complied with its obligations under the treaty and that the

1      extradition is lawful.

2              The defendant's briefing, however, invokes no

3      legal authority in support of its bold assertion that this

4      Court is divested of jurisdiction to consider a motion for

5      consolidation -- or any other motion -- if it first doesn't

6      rule on his motion to dismiss the indictment alleging that

7      his extradition from Uruguay to the United States was

8      *ultra vires*.

9              This Court is unaware of authority supporting

10     defense's jurisdictional argument.

11             Accordingly, the Court construes defendant Gerardo

12     Gonzalez's jurisdictional argument in opposition to the

13     government's joinder motion as nothing but an improper nudge

14     for the Court to prioritize resolution of one of his pending

15     pretrial motions over the instant motion to consolidate.

16             To the extent the jurisdictional and related

17     arguments presented in the first 16 pages of his opposition

18     are the same that he articulates in his motion to dismiss,

19     at ECF Nos. 63 and 64, the Court defers consideration of

20     those arguments until -- as indicated in the Court's

21     November 16th minute order -- the instant motion for joinder

22     is resolved, which I am doing now.

23             Defendant will simply not be allowed to dictate

24     the Court's schedule by presenting arguments that lack legal

25     foundation; and the Court will, in due course, rule on

1     defendant's motion to dismiss, docketed at ECF Nos. 63

2     and 64.

3            In sum, the defendants could have been charged in

4     a single indictment under Rule 8 and have not demonstrated

5     sufficient -- prejudice sufficient to render consolidation,

6     with its ample benefits to judicial economy, inappropriate.

7            Thus, the government's motion to consolidate,

8     docketed at ECF 72, in CR-16-065, and at ECF 14, at

9     16-CR-192 is granted.

10           I now want to talk to the parties about timing for

11    them to confer and present to the Court jointly

12    consideration of a new schedule.

13           I will hear from the government.  How much time do

14    you need?

15           MS. NASEEF:  Your Honor --

16           THE COURT:  And just so you know, the timing --

17           MS. NASEEF:  -- how much time we need to confer,

18    or to respond to the motion on jurisdiction and extradition?

19           THE COURT:  What?

20           MS. NASEEF:  Your Honor, are you asking how much

21    time we need to confer?

22           THE COURT:  No.  No.  To confer about a new

23    schedule, a proposed new schedule.

24           MS. NASEEF:  Your Honor, we can --

25           THE COURT:  I was going to suggest November 29th.

1          MS. NASEEF:  That's plenty of time, Your Honor.

2          THE COURT:  And hopefully there will be new

3    counsel.  Otherwise, Mr. Guillaume -- am I saying that

4    right?

5          MR. GUILLAUME:  Guillaume.

6          THE COURT:  Guillaume?

7          MR. GUILLAUME:  Yes, Your Honor.  Yes, ma'am.

8          THE COURT:  -- it's going to be you conferring on

9    a schedule.  Okay?

10          MR. GUILLAUME:  Yes, Your Honor.

11          THE COURT:  And I'd like that proposal put in by

12    November 29th.  And we do have -- I would like to see you

13    all again.

14          I think we have already our pretrial conference

15    date that was set for January 21 at 11 a.m., so why don't we

16    just keep that as our next status date so I can see how

17    everything is coming along.

18          All right.  Is that -- I know that January 21 date

19    is convenient for all of you because you were expecting to

20    be in front of me anyway.

21          MR. BEST:  If I may, just one --

22          THE COURT:  Yes, Mr. Best.

23          MR. BEST:  -- point of clarity.

24          We're setting a new schedule which includes new

25    motions dates.  Is it your preference that we file a new

1    motion with respect to the points about jurisdiction and

2    extradition or can I beg your indulgence that it just be

3    heard in the course of the new motions, or would you like --

4           THE COURT:  I was not going to get into the

5    details of that.  I was going to have you confer with --

6           MR. BEST:  I will take care of it.

7           THE COURT:  -- the government counsel.

8           You have already filed 12, or maybe -- I know I

9    have got 12 pending motions; you may want to supplement

10   given the new contours --

11          MR. BEST:  Absolutely.

12          THE COURT:  -- of the case.  So I am just going to

13   leave that to you to think about.

14          MR. BEST:  Yes.

15          THE COURT:  I am not going to hold you to anything

16   today, and I am not going to impose a schedule on you today

17   because, as I said, I am sympathetic that you've got some

18   new contours here of the evidence.  And so you will make

19   your decisions about which of the pending motions you

20   already have that you want to either supplement or withdraw

21   and produce something entirely new; I will leave that to

22   your professional judgment.

23          MR. BEST:  Thank you very much.

24          MR. REYNOLDS:  One more thing, Your Honor.  If I

25   may, briefly.

1          Brett Reynolds also for the United States.

2          THE COURT:  Yes, Mr. Reynolds.

3          MR. REYNOLDS:  Your Honor, this is, of course, a

4    hearing on the motion for joinder.  So if the Court wishes

5    to defer a colloquy, that's fine with the government.  I

6    would like to represent, though, for *Frye* and *Lafler*

7    purposes, that we have extended, at various points, two plea

8    offers to Gerardo Gonzalez Valencia which have either, in

9    the first instance, been rejected or, in the second

10   instance, lapsed.

11         THE COURT:  All right.  I usually do that at the

12   pretrial conference --

13         MR. REYNOLDS:  I understand, Your Honor.

14         THE COURT:  -- and do my *Missouri v Frye* colloquy

15   at that point.

16         MR. REYNOLDS:  That's fine with the government.

17   I just wanted to make a record, as early as possible, while

18   we were in court.

19         THE COURT:  Right.  Okay.  So the plea offers that

20   you have extended to Gerardo Gonzalez Valencia have lapsed?

21         MR. REYNOLDS:  One was affirmatively rejected.

22   And the other the timing has lapsed and we take as rejected

23   given our informal conversations with counsel.

24         THE COURT:  Right.  Okay.  Well, I mean, we have a

25   consolidated case now, it's a whole new day.

1           MR. REYNOLDS:  It is.  And that's why I wanted to

2    take this opportunity.

3           THE COURT:  The government will make its own

4    decisions about plea offers that I do not need to get

5    involved in.

6           MR. REYNOLDS:  Of course; and I appreciate that,

7    Your Honor.

8           THE COURT:  All right.  So there is nothing

9    further from the government other than that?

10          MR. REYNOLDS:  No.  Thank you.

11          THE COURT:  Okay.  From the defense?

12          MS. SANCHEZ:  Just one thing, Your Honor.

13          THE COURT:  Please speak at the microphone.

14          MS. SANCHEZ:  Yes, Your Honor.

15          I just want to make clear, is the Court converting

16   the status conference for the trial -- January 21st now is a

17   status conference.  Are you removing the February 7th trial

18   date from the calendar at this point?

19          THE COURT:  Well, the government is prepared to

20   go.  I am not vacating that yet.  I am waiting until I get

21   the proposed schedule from the parties --

22          MS. SANCHEZ:  Okay.  That's what I wanted to make

23   sure of, the February 7 --

24          THE COURT:  -- which is going to be due jointly

25   November 29th.

1          MS. SANCHEZ:  Yes.  I just wanted to make sure the

2    February 7th date is still on the calendar.

3          THE COURT:  It is.

4          MS. SANCHEZ:  Thank you.

5          THE COURT:  All right.  Anything further for

6    Mr. Gerardo Gonzalez Valencia?

7          MR. BEST:  No, Your Honor.

8          THE COURT:  And anything further for Mr. Jose

9    Gonzalez Valencia?

10          MR. GUILLAUME:  No, Your Honor.

11          THE COURT:  All right.  You are all excused.

12          Thank you.

13          (Whereupon, the proceeding concludes, 12:00 p.m.)

14                          **CERTIFICATE**

15          I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby
     certify that the foregoing constitutes a true and accurate
16   transcript of my stenographic notes, and is a full, true,
     and complete transcript of the proceedings to the best of my
17   ability.

18          This certificate shall be considered null and void
     if the transcript is disassembled and/or photocopied in any
19   manner by any party without authorization of the signatory
     below.

20

21          Dated this 23rd day of November, 2021.

22
     /s/ Elizabeth Saint-Loth, RPR, FCRR
23   Official Court Reporter

24

25