# EXHIBIT I

238

Sentencia Nro. 13/2017                                                                                                    IUE 474-76/2016

Montevideo, 28 de Agosto de 2017

**VISTOS:**

Para sentencia definitiva de primera instancia estos autos caratulados **"GONZÁLEZ VALENCIA, Gerardo.- EXTRADICIÓN IUE 474-76/2016**, con la intervención del sr. Fiscal Letrado Nacional en lo Penal Especializado en Crimen Organizado de Segundo Turno Dr. Luis Pacheco y la Defensa de Confianza Dr. Víctor Della Valle y Dr. Carlos Balbi.-

**RESULTANDO:**

1) El 16 de junio de 2016 se recibió en esta sede solicitud de extradición de Gerardo González Valencia remitida vía diplomática por el Departamento de Justicia de Estados Unidos de América (fs. 1-107).

Previa vista del Ministerio Público, por providencia n° 701/2016 del 27 de junio de 2016, la sede realizó objeción a la solicitud por inobservancia de presupuestos de admisibilidad dispuestos por el art. 10 numeral 5 literal a) del Tratado de Asistencia Mutua en materia Penal y Extradición (ley n° 15.476) y exigió al Estado requirente el cumplimiento de tales requisitos así como información complementaria de acuerdo al art. 11 primer párrafo in fine del mismo Tratado (fs. 108-114).

2) El 2 de febrero de 2017 se recibió documentación remitida vía diplomática por el Estado requirente (fs. 125-131).

Por dictamen n° 156/2017 del 23 de febrero de 2017, el representante del Ministerio Público entendió cumplidos los requisitos necesarios para dar trámite a la solicitud de extradición (fs. 132 vto.-135).

Por resolución n° 181/2017 del 3 de marzo de 2017 y de conformidad con el dictamen fiscal, se dio inicio al proceso de extradición de acuerdo a las previsiones de los Tratados de Montevideo, específicamente los arts. 33 a 37 del Tratado de Derecho Penal Internacional de 1940 -aplicables por analogía en el caso de acuerdo a los principios del debido proceso y reglas que informan el proceso en general, en lo que no estuviere expresamente previsto (fs. 136-137).

00054527

3) En audiencia convocada –la cual fuera prorrogada en dos oportunidades a solicitud del propio requerido- y en presencia de su defensor, Gerardo González Valencia no aceptó la extradición solicitada (fs. 141-160).

Conferida vista del requerimiento formulado por las autoridades estadounidenses, la Defensa de Confianza del requerido compareció a deducir oposición, por las razones que se exponen en fundado escrito presentado en tiempo y forma, con documentación adjunta (fs. 161-220).

4) Por su parte, por dictamen nº 682/2017 del 12 de junio de 2017 el representante del Ministerio Público abogó por acoger la solicitud de extradición supeditada a las condiciones que establece (fs. 222-227).

5) Por auto nº 682/2017 del 15 de junio de 2017 la Jueza subrogante de la sede citó a las partes para resolución, habiendo subido los autos al despacho con fecha 23 de junio de 2017 (fs. 228-230 vto.).

**CONSIDERANDO:**

1) Se sustancia en estos obrados el proceso de la extradición solicitada por las autoridades competentes de los Estados Unidos de América respecto de Gerardo González Valencia a fin de ser sometido a proceso penal en dicho país por cargos de narcotráfico.

La extradición constituye un instituto de cooperación jurídica penal internacional, entendida como "toda aquella actividad de naturaleza procesal realizada en un Estado al servicio de un proceso penal promovido o a promoverse ante extraña jurisdicción". Cooperación que se hace efectiva "cuando el aparato jurisdiccional de un Estado, que no tiene imperio sino dentro de su territorio, recurre a la colaboración que le pueden prestar otros Estados a través de su actividad jurisdiccional" (Vieira, M., García Altolaguirre, C.- Extradición, FCU, ps. 108-109). Por su parte, sostiene el Prof. Miguel Langón que la extradición es la máxima expresión del principio de cooperación jurídica internacional entre los Estados en la lucha contra la delincuencia, consagrándose una verdadera obligación del Estado requerido de acceder al pedimento respectivo, dentro de los límites convencionales y legales en su caso (Curso de Der. Penal y Procesal Penal, ed. Del Foro, año 2003, ps. 119-121; Cfme. Cairoli, M. La cooperación penal internacional, la asistencia mutua y la Extradición, FCU, año 2000, p. 59).

En el mismo sentido se ha pronunciado la jurisprudencia nacional, afirmando pacíficamente que "la extradición como tal instituto se ubica modernamente dentro de la cooperación judicial penal internacional, la cual necesariamente debe ser encarada como un estatuto global integrado de solidaridad y garantías y a su vez habilita a visualizar a aquélla como un estatuto global de auxilio interetático y de garantías" (Rev. Der. Penal, nº 20, c. 146. p. 574).

00054528

Estos principios han sido recogido por numerosos tratados, los que consagran la obligación de los Estados de conceder la extradición cuando se cumplan las condiciones que se establecen, a modo de ejemplo: el Tratado Modelo de Extradición aprobado por la Asamblea General de las Naciones Unidas el 3 de abril de 1991, la Convención de Viena de 1988 sobre tráfico internacional de drogas, el Tratado de Extradición y Cooperación en Materia Penal entre la República Oriental del Uruguay y los Estados Unidos de América ratificado por nuestro país por dec-ley n° 15.476, el Tratado de Extradición entre Argentina y Uruguay ratificado por nuestro país por ley n° 17.225, el Acuerdo de Extradición entre los Estados partes del Mercosur ratificado por Uruguay por ley n° 17.499.

En mérito a todo ello, es indiscutible que existe una obligación internacional de extraditar a las personas reclamadas que se encuentren en las condiciones previstas en la normativa aplicable y de acuerdo a los principios que rigen la extradición.

2) El régimen de la extradición se regula en primer lugar por los Tratados ratificados entre los países, los cuales son "ley entre las partes". En defecto de Tratado, nuestro ordenamiento interno prevé el régimen de extradición en el art. 13 del C.P. y el art. 32 del C.P.P (Langón, ob. cit., ed. 2003, p. 128-129).

En el caso de autos es de aplicación el Tratado de Extradición y Cooperación en Materia Penal entre la República Oriental del Uruguay y los Estados Unidos de América, suscrito en Washington el 6 de abril de 1973 y aprobado por nuestro país por el dec-ley n°15.476 del 26 de octubre de 1983. Ello sin perjuicio de la aplicación de los principios generales del debido proceso y específicamente los principios que rigen la extradición.

El Tratado no establece el procedimiento a seguir ante el pedido de extradición sino que éste se rige por la *lex fori*, esto es, la de la nacionalidad del juez que conoce en el asunto: en la especie, la legislación uruguaya. El Código del Proceso Penal vigente en nuestro ordenamiento tampoco regula el proceso de extradición, por lo cual la jurisprudencia, en forma prácticamente unánime, aplica el procedimiento previsto en los Tratados de Montevideo de 1989 y 1940, en vía analógica.

En mérito a ello, en estos obrados se dio cumplimiento al procedimiento establecido en el capítulo IV del Tratado de Montevideo de 1989, lo cual fue consentido por las partes quienes no formularon objeción al respecto.

Solamente cabe agregar que es actualmente unánime la jurisprudencia en entender que la sentencia a dictarse tiene naturaleza definitiva, desde que pone fin al proceso de extradición, proceso principal y único. Según expresara el Tribunal de Apelaciones de Primer Turno, "el juicio extraditorio configura un procedimiento contradictorio cuyo objeto principal y exclusivo es un fallo declarando la procedencia o improcedencia del requerimiento del país extranjero"

(Rev. Der. Penal, n°11, c. 453, p. 319). Por lo tanto, el plazo para su dictado es el previsto en el art. 90 inc. 2° lit. A del C.P.P.

3) El objeto del proceso extraditorio consiste en controlar la regularidad formal de la demanda, no correspondiendo al Tribunal del Estado requerido proceder a la valoración del fondo del asunto, lo cual constituiría una invasión de las atribuciones de la autoridad requirente –sin perjuicio del eventual análisis del cumplimiento del requisito *non bis in idem* si correspondiere. Como ha señalado reiteradamente nuestra doctrina y jurisprudencia, el proceso de extradición no valora las pruebas de culpabilidad, no decide la antijuridicidad de la conducta del requerido ni resuelve el fondo del asunto, sino que todo el examen se reduce a la simple verificación de la regularidad de la demanda de extradición, a la luz de las disposiciones internacionales y nacionales aplicables en cada caso.

Esta ha sido la posición constante de la Suprema Corte de Justicia, afirmando en sentencia n° 51/2010 que: "...En el procedimiento de extradición, lo único que debe valorarse es la legitimidad formal del pedido, puesto que toda otra consideración acerca del fondo, es decir de la tipicidad del o de los delitos por los que se cursa la solicitud, son absolutamente violatorias del principio de competencia de las autoridades requirentes. Los tribunales del país requerido que aceptan o no el pedido de extradición no son competentes para juzgar el mérito de la causa. En tal sentido De Olarte en su tratado sobre 'Extradición', pág. 49, afirmaba que el Juez que interviene no es convocado para declarar la inocencia o culpabilidad, porque 'la extradición no importa juicio ni castigo', limitándose su función a verificar si la solicitud es ajustada a las formalidades y exigencias sustanciales del Tratado Internacional ratificado por los dos Estados..." (Cf. sentencias de la Suprema Corte de Justicia n° 154/999, n° 184/001, n° 216/003, n° 191/005, n° 41/006, n° 219/007, n° 32/2010 entre otras).

En consecuencia, esta sentencia deberá pronunciarse exclusivamente respecto de la procedencia formal de la solicitud de extradición, analizándose para ello los Tratados aplicables en el caso.

4) Analizadas las resultancias de las presentes actuaciones a la luz del citado Tratado de Extradición y Cooperación en materia penal que vincula a nuestro país con Estados Unidos de América, resulta que la solicitud cumplió las formalidades exigidas por el art. 10, a saber:

a) se tramitó por vía diplomática, desde que González Valencia fue requerido formalmente por las correspondientes autoridades judiciales de los Estados Unidos de América ante la Cancillería de nuestro País y la Suprema Corte de Justicia (fs. 1-8 y 100-107);

b) la petición contiene una relación circunstanciada del hecho incriminado (fs. 12-18 y fs. 32-35 y las respectivas traducciones a fs. 57-63 y fs. 77-80);

c) se adjunta la documentación necesaria para la identificación del requerido (fs. 46-53 y

traducción a fs. 91-99) y la normativa aplicable (fs. 20-30 y traducción a fs. 77-80);

c) se acompaña la orden de detención o de prisión dictada por la autoridad competente del Estado requirente (fs. 37 traducida a fs. 82).

d) se acompaña traducción al español de toda la documentación remitida, según se detallara en literales anteriores.

En relación a la previsión del art. 10.5 literal a del Tratado, los documentos se encuentran firmados por las autoridades competentes y cuentan con la certificación y el sello del Departamento de Estado de los Estados Unidos de América (fs. 9, traducido a fs. 54). Si bien no cuentan con la legalización por agente diplomático o consular de la República Oriental del Uruguay en los Estados Unidos de América, se entendió, de conformidad con el dictamen fiscal n° 156/2017, que dicho requisito no es exigible de acuerdo a lo dispuesto por el Convenio Suprimiendo la Exigencia de Legalización de Documentos Públicos Extranjeros, suscrito en la Haya en el año 1961 y aprobado por nuestro país por ley n° 18.836 del 15 de noviembre de 2011. Sin perjuicio de lo expuesto, cabe señalar que este punto no fue cuestionado por la Defensa del requerido.

5) Asimismo resulta de se cumplen los presupuestos exigidos en los arts. 1 y 2 del Tratado, que consagran los principios generales en materia de extradición: jurisdicción del Estado requirente, doble incriminación y gravedad de la pena. A saber:

a) Gerardo González Valencia es requerido por la comisión de delitos perpetrados en el país requirente (fs. 77-78), de acuerdo a lo previsto en el art. 1° del Tratado, por lo cual es indiscutible la jurisdicción de las autoridades competentes de dicho país.

b) El requerido es acusado por la comisión de delitos de narcotráfico, específicamente conspiración para introducir y distribuir sustancias que contenían cantidad detectable de cocaína y metanfetamina en Estados Unidos (fs. 77-78), lo que encuadra en la previsión del art. 2 n° 17 del Tratado. Delitos que también están previstos en nuestro ordenamiento nacional, de acuerdo a las tipificaciones establecidas en los arts. 31 a 33 y 59 del dec-ley n° 14.294 (en su actual redacción dada por la ley n° 17.016).

La condición referida en este literal consagra el principio de doble incriminación, el cual exige que "la imputación por la cual se solicita la extradición, esté también tipificada como delito, en el orden jurídico del Estado requerido, apreciándose ello con la debida flexibilidad y aun cuando no existiera el mismo *nomen iuris* en los tipos. Es decir, que lo exigible, es que el hecho y la forma de participación en el mismo, por el que la persona es reclamada, debe estar previsto como delito por la ley de las dos partes contratantes, aunque tengan distinta denominación y aunque el tipo delictivo tienda eventualmente a proteger distintos bienes jurídicos en ambas legislaciones

... la calificación de la conducta, debe realizarse en el marco de las disposiciones convencionales creadas por la voluntad de las partes, dicho de otra manera, *in ordinem* como enseñaba Alfonsín" (Viera y otro,ob. cit., p. 427).

c) Los delitos por los que se lo reclama son castigados en ambos países con pena mínima de prisión superior a un año, tal como exige el acápite del art. 2 del Tratado: en nuestro país, los arts. 31 y 34 del dec-ley nº 14.294; en el país requirente, se sanciona la conducta que se pretende imputar al requerido con penas no menores a diez años de privación de libertad (fs. 71-72). Se cumple así entonces el principio de gravedad de la pena.

6) Por último, la solicitud de extradición no encuadra en ninguna de las hipótesis previstas en el art. 5 del Tratado en las cuáles la extradición no es procedente.

En relación a la hipótesis prevista en el literal a del art. 5, la misma consagra el principio *ne bis in ídem*. Este principio significa que nadie puede ser juzgado ni condenado dos veces por el mismo delito. Así expresó el Dr. Armando Tommasino: "La disposición impide el doble enjuiciamiento, y aunque no lo expresa, naturalmente también ... la condena reiterada a un mismo individuo, por atribución del mismo hecho penal" (Principios, Derechos y Garantías en el Proceso, p. 63). El mismo principio vigente en el Derecho Nacional ha sido recogido en los Tratados de Extradición y aun cuando así no sea, se ha entendido que está "implícitamente consagrado en las disposiciones del art. 14.7 del Pacto Universal de los Derechos Civiles y Políticos que expresa: 'nadie podrá ser juzgado o condenado ni sancionado por un delito por el cual haya sido condenado o absuelto, por una sentencia firme de acuerdo con la Ley y el procedimiento penal de cada país'. Norma que ha sido tomada, aunque con algunas variantes, en el Pacto de San José de Costa Rica (art. 8.4) y constituye en nuestra opinión el de ser una norma de *ius cogens* internacional (Vieira-Altolaguirre, "Extradición", Pág. 200).

El Tratado de Extradición celebrado entre Estados Unidos y Uruguay recoge en el principio mencionado, al disponer que no se concederá la extradición: "a) cuando la persona cuya entrega se gestiona ya hubiera sido juzgada y condenada o absuelta o estuviere siendo juzgada en el territorio del Estado requerido por el delito por el cual se solicita la extradición".

Al respecto corresponde señalar que si bien Gerardo González Valencia registra causa penal abierta en nuestro país, la solicitud de extradición no incurre en violación del principio *ne bis in idem*, desde que no refiere a los mismos hechos por los cuales está siendo juzgado en nuestro país. En efecto, el requerido se encuentra sometido a proceso penal ante este Juzgado Letrado Penal Especializado en Crimen Organizado de Primer Turno en autos IUE 2-37467/2016, imputado de la comisión de un delito de Lavado de activos previsto en el art. 54 del dec-ley nº 14.294, en su actual redacción dada por el art. 2 de la ley nº 18.494. No se le imputa en dicho proceso la comisión de delito de narcotráfico en ninguna de sus modalidades. Por lo cual la hipótesis no encuadra en la previsión del art. 5 literal a del Tratado.

00054532

En relación a la previsión del art. 5 literal c, que dispone que no se concederá la extradición "cuando la acción o la pena haya prescrito según las leyes del Estado requerido o requirente", se comparten las consideraciones de la Fiscalía en cuanto entiende que no ha operado la prescripción de los delitos por los cuales se requiere a González Valencia. Sin perjuicio de lo que se dirá más adelante al analizar las objeciones formuladas por la Defensa del requerido.

Resulta claramente de autos que la solicitud de extradición de González Valencia no encuadra en ninguna de las restantes hipótesis previstas en el art. 5 ya citado.

7) En suma, entiende la sentenciante que la extradición solicitada reúne los requisitos formales exigidos por el Tratado de Extradición que vincula a nuestro país con el Estado requirente y no encuadra en ninguna de las hipótesis de improcedencia de la solicitud antes mencionadas.

Sin perjuicio de ello, esta sentencia deberá resolver las cuestiones planteadas en la oposición formulada por la Defensa de Confianza de González Valencia, que fueran claramente reseñadas en la contestación del Ministerio Público, a saber: a) que el Tratado de Extradición refiere a personas procesadas o condenadas, lo cual no se configura en la especie y se trata de un juicio en rebeldía; b) que la declaración jurada presentada por el país requirente está viciada; c) que la declaración jurada no presenta evidencia que respalde ningún delito ocurrido dentro de los cinco años de la fecha del procesamiento por lo que ha operado la prescripción; d) que la declaración jurada no presenta evidencia y solo contiene afirmaciones de dos testigos colaboradores, respecto de los cuales omite información sobre su credibilidad; e) que el requerido enfrenta riesgos de ser condenado a muerte o a cadena perpetua.

8) En primer lugar, tal como señala la Defensa, el art. 2 del Tratado dispone que "serán entregadas las personas procesadas o condenadas por cualquiera de los delitos siguientes ......". Por otra parte, el art. 10.3 establece, entre los requisitos exigidos a la solicitud de extradición, que "cuando el requerimiento se refiera a una persona que aún no ha sido condenada, deberá ser acompañado de una orden de detención o de prisión o del auto de procesamiento judicial equivalente, emanado de la autoridad competente de la Parte requirente".

En este sentido, se comparte la posición de la Fiscalía, entendiendo que es admisible la solicitud de extradición cuando la persona aún no se encuentra "procesada" desde que alcanza para su requisitoria la orden de detención y teniendo en cuenta que el término "procesado" puede tener significado diverso en cada sistema procesal.

También se discrepa con la Defensa desde que, a juicio de la suscrita, no se ha cumplido respecto del requerido un juicio en rebeldía en el país requirente. De la documentación recibida resulta que con fecha 19 de abril de 2016 un jurado indagatorio del Distrito de Columbia presentó una acusación contra González Valencia por el cargo de conspiración para la introducción y distribución de sustancias estupefacientes en Estados Unidos (fs. 77-80). En mérito a dicha

acusación, el Tribunal de Distrito de Estados Unidos para el Distrito de Columbia libró la orden de detención correspondiente (fs. 82).

La declaración jurada de la Fiscal Litigante de la Unidad contra Narcóticos y Drogas Peligrosas de la División Penal del Departamento de Justicia de Estados Unidos Amanda Liskamm reseña claramente cuál es el procedimiento a seguir por el jurado indagatorio: el mencionado jurado examina las pruebas presentadas por las autoridades del orden público y en caso de entender que existen indicios suficientes para determinar que el hecho delictivo se ha cometido y que el acusado es el autor, dicta una "resolución de acusación" (fs. 58 numeral I). Ese fue el procedimiento seguido respecto de González Valencia, de acuerdo a lo reseñado en el párrafo anterior.

Esto en modo alguno significa que se haya sustanciado un proceso penal contra el requerido, sino que como se especifica en la declaración de la Fiscal Litigante "para que se profiera una sentencia condenatoria en contra de González Valencia ...... Estados Unidos debe demostrar en el juicio que González Valencia llegó a un acuerdo ...." , esto es, el Estado deberá acreditar en juicio los hechos invocados en la acusación (fs. 61 nº 17). A fin de llevar a cabo el juicio es que se solicita la extradición (fs. 62 nº 20).

8) En segundo lugar, respecto de la declaración jurada del Agente Especial Kyle Mori de la Agencia de Control de Drogas, no es de relevancia en este proceso de extradición el control de las observaciones formales esgrimidas por la Defensa, tales como la competencia del Tribunal ante el cual se rindió la declaración. Por el contrario la declaración reseña las actividades delictivas que se pretenden imputar al requerido González Valencia y a las pruebas recolectadas a tal fin, siendo éstos sí los extremos relevantes para el dictado de la presente sentencia.

En este sentido, tampoco se comparte que la prueba mencionada por el Agente Especial Kyle Mori sea insuficiente para respaldar la acusación y que ésta se funde casi exclusivamente en la declaración de dos testigos colaboradores.

Cabe reiterar los conceptos vertidos en el considerando nº 3 de esta sentencia, según los cuales en materia de extradición el juez lo único que tiene que hacer es controlar la regularidad formal de la solicitud y el cumplimiento de los requisitos exigidos por el Tratado aplicable al caso.

No corresponde entonces valorar la prueba producida por el Estado requirente sino que únicamente apreciarla para determinar que el pedido de extradición y la orden de arresto no sean manifiestamente infundados, de acuerdo a lo previsto por el art. 10.3 in fine del Tratado, que establece que "la parte requerida podrá solicitar que la requirente presente pruebas suficientes para establecer *prima facie* que la persona reclamada ha cometido el delito por el cual la extradición se formula. La parte requerida puede denegar la extradición si un examen del caso demuestra que la orden de arresto es manifiestamente infundada".

00054534

En el caso, la solicitud de extradición adjunta recaudos a fin de acreditar los hechos que se imputan a González Valencia, a saber: declaración jurada de la Fiscal Litigante de la Unidad contra Narcóticos y Drogas Peligrosas de la División Penal del Departamento de Justicia de Estados Unidos, declaración del Agente Especial Kyle Mori y resolución de acusación del jurado indagatorio del Distrito de Columbia presentada ante el Tribunal de Distrito de Estados Unidos para el Distrito de Columbia. Los recaudos reseñan los hechos investigados y los medios de prueba recolectados, en mérito a lo cual el Tribunal mencionado libró la orden de detención correspondiente.

A juicio de la sentenciante, los elementos de convicción referidos alcanzan el estándar probatorio exigido por el Tratado, no pudiendo concluirse que la orden de arresto librada por el Tribunal del Estado requirente sea manifiestamente infundada. Tal como ha expresado la Suprema Corte de Justicia en consideraciones trasladables al caso de autos, "más allá del resultado que recaiga oportunamente en el proceso a llevarse a cabo en el Estado requirente, es evidente que el pedido de extradición no tiene, ni cercanamente, la nota de manifiestamente infundado que requiere la norma al no surgir de la documentación presentada ningún elemento de juicio que haga suponer que – en realidad – el requerido no cometió los delitos de los que se lo acusa" (Sentencia nº 145/2002).

9) En tercer lugar, en cuanto a la prescripción de los delitos invocada por la Defensa, la suscrita ya se ha pronunciado en el considerando nº 6 compartiendo la conclusión del Ministerio Público.

En efecto, de acuerdo a los hechos reseñados en los documentos remitidos, los hechos delictivos que se imputan a González Valencia en la resolución de acusación, habrían ocurrido desde enero de 2003 y de forma permanente hasta la presentación de dicha acusación, esto es, el 19 de abril de 2016 (fs. 77-80), lo cual resulta reiterado en los restantes recaudos adjuntos, de los que surge asimismo que en el año 2013 se detectó una llamada telefónica del requerido referida a una transacción de narcotráfico. En la misma fecha antes mencionada, el Tribunal competente libró la orden de detención correspondiente (fs. 82).

Atendiendo a los hechos referidos y de acuerdo a las normas que acompañan la solicitud (fs. 67-73), no ha operado la prescripción de los delitos en el Estado requirente.

Tampoco ha operado la prescripción de acuerdo a las normas de nuestro país, específicamente el art. 117 del Código Penal.

Por lo cual también corresponde desestimar la oposición de la Defensa en esta cuestión, desde que no se adecua a la previsión del art. 5 literal c, como se señalara anteriormente.

No obstante ello, cabe señalar que según ha entendido nuestra jurisprudencia, "por más que el derecho extranjero debe probarse y surge en el caso de la documentación remitida, no

00054535

corresponde a los tribunales del Estado requerido -Uruguay- profundizar sobre dicho extremo y considerar o no la procedencia del pedido en función de un instituto que a los ojos del Tratado es una cuestión de mérito" (sentencia n° 380/2008 del Tribunal de Apelaciones en lo Penal de Primer Turno).

10) Finalmente, la Defensa solicita el rechazo de la extradición desde que entiende que González Valencia corre el riesgo que las autoridades competentes del Estado requerido le impongan condenas de cadena perpetua o pena de muerte.

Asiste razón a la Defensa en cuanto las penas previstas en Estados Unidos para los delitos que se imputan al requerido son mucho más severas que las establecidas en nuestro país. Esta circunstancia queda a la vista ante la simple lectura de las normas que acompañan la solicitud de extradición, de las que resultan que los delitos por los cuales se lo requiere se sancionan con penas de "privación de libertad no menos de diez años y no mayor de pena de reclusión a perpetuidad" y pena de encarcelamiento de "no más de veinte años" (fs. 72). Penas notoriamente más gravosas que las previstas en los arts. 31 a 35 y 59 del dec-ley n° 14.294 (en la actual redacción dada por la ley n° 17.016), cuyos guarismos máximos no superan los dieciocho años de penitenciaría.

En relación al riesgo que plantea la Defensa, tal como señala la Fiscalía, el art. 7 del Tratado prevé que "cuando el delito por el que se solicita la extradición fuera punible con la pena de muerte según la legislación de la Parte requirente, y las leyes del Estado requerido no admitieren esa pena para ese delito, este último podrá supeditar el otorgamiento de la extradición a que la Parte requirente otorgue garantías consideradas suficientes por la Parte requerida en el sentido que no será impuesta dicha sanción o que, de ser impuesta, la misma no será aplicada".

De conformidad a lo dispuesto por el art. 26 de la Constitución de la República, según el cual "a nadie se le aplicará la pena de muerte", es indudable que nuestro país está habilitado para supeditar el otorgamiento de la extradición a que el requirente otorgue garantías suficientes que no será impuesta o aplicada la pena de muerte.

Por el contrario, nada dispone el Tratado en relación a la eventual condena a prisión perpetua, la cual está prevista como tope máximo en la normativa agregada por el requirente (fs. 72).

Sin perjuicio de ello y compartiendo la posición del Ministerio Público, entiende la sentenciante que es admisible imponer al Estado requirente la condición prevista en el art. 7 del Tratado también en relación a la pena de prisión perpetua, desde que la misma no está prevista en nuestro orden público interno y contraviene nuestro orden público internacional (Cfme. Sentencia n° 135/2003 de la Suprema Corte de Justicia).

En efecto, la Convención de Naciones Unidas contra la Tortura (aprobada por ley n° 15798) y la

00054536

Convención Interamericana para prevenir y sancionar la tortura (aprobada por ley n° 16.294) establecen que los Estados Partes tomarán medidas efectivas para prevenir y sancionar, todos aquellos actos que –sin llegar a la tortura- constituyan penas crueles, inhumanas o degradantes (art. 16 y 6 de las convenciones citadas, respectivamente). Puede concluirse que la prisión perpetua constituye una pena inhumana y por lo tanto inadmisible para nuestro orden público internacional. Asimismo, la reclusión a perpetuidad está consagrada como supuesto que excluye la extradición en otros instrumentos internacionales firmados por nuestro país, tales como el Tratado de Extradición entre Uruguay y España (aprobado por ley n° 16.799) y el Tratado de Extradición entre Uruguay y Argentina (aprobado por ley n° 17.225). Ambas tratados establecen que no procederá la extradición cuando los hechos en que se funda la solicitud estuvieren castigados con pena de muerte o pena privativa de libertad a perpetuidad en el Estado requirente, pudiendo concederse en caso que el Estado requirente otorgare seguridades suficientes que la pena a cumplir será la máxima admitida en la ley penal del Estado requerido (arts. 9 y 8 respectivamente).

Como se señalara en considerandos anteriores, la cooperación internacional constituye un deber entre los Estados en la lucha por el combate del delito –especialmente la delincuencia organizada trasnacional. Sin embargo, es pertinente en este punto recordar las palabras del Profesor Raúl Cervini quien expresa: "En ese frágil equilibrio dinámico entre eficacia de la prestación asistencial y garantías de los concernidos, se encuentra precisamente la funcionalidad legitimante de la moderna cooperación penal internacional, la cual debe ser concebida en base a un concepto de Derecho de raíz antropocéntrica y garantizador de los Derechos Humanos. Eso es así porque en el ámbito de la cooperación judicial penal internacional está superada la época en que se asociaba su funcionamiento con el poder negociador de los Estados, con la igualmente difusa cortesía internacional e inclusive más modernamente con la concepción meramente instrumental del respeto y continuidad del proceso. Hoy día, estas últimas fundamentaciones vinculadas al trato entre Estados Soberanos deben estar también acompañadas por el imperioso reconocimiento de los derechos del concernido (sujeto afectado por las medidas de cooperación). Con ello se estará observando la función legitimante del derecho penal, tal como deber ser inexorablemente comprendido a partir de la concepción del pensamiento garantista" (Cervini, Raúl.- Principios de cooperación judicial penal internacional en el MERCOSUR, p. 13, Publicaciones del Instituto de Derecho Penal, Facultad de Derecho, UDELAR).

En conclusión y compartiendo la posición sustentada por la Fiscalía, entiende la sentenciante que es procedente condicionar la entrega de González Valencia a que el Estado requirente preste garantías suficientes que en caso de resultar condenado en el proceso penal que se le pretende iniciar, no se le impondrá pena de muerte ni pena de prisión perpetua.

11) En el mismo sentido, por los mismos fundamentos expuestos en el considerando anterior en referencia a las garantías del extraditado que deben respetarse en la cooperación internacional y

de acuerdo a lo previsto en el art. 13 del Tratado, se accederá a la solicitud fiscal disponiendo que el Estado requirente deberá asegurar que no se juzgará ni condenará al requerido por delitos distintos a los que se refiere la solicitud de extradición, a excepción de los supuestos consagrados en los numerales 1 y 2 del citado artículo.

12) Por todo lo expuesto, se concluye que la solicitud de extradición de Gerardo González Valencia ha cumplido los requisitos exigidos por el Tratado de Extradición suscrito entre Uruguay y Estados Unidos, así como los principios jurídicos que rigen la extradición (doble incriminación, especialidad, legalidad) y que corresponde desestimar la oposición formulada por la Defensa de Confianza, con la salvedad referida en el numeral anterior.

En su mérito, se procederá a conceder la extradición de Gerardo González Valencia para ser sometido a proceso penal ante las autoridades competentes de Estados Unidos por los delitos referidos en la solicitud, con las condiciones que se indicarán a continuación.

En primer lugar, de acuerdo a lo peticionado por el Ministerio Público, la entrega se hará efectiva una vez que el requerido obtenga su excarcelación provisional o libertad definitiva en la causa que se le sigue en Uruguay ante esta sede IUE 2-37467/2016.

A tales efectos, debe tenerse presente que la causa IUE 2-37467/2016 se encuentra en etapa de sumario y Gerardo González Valencia está recluido desde su procesamiento en prisión preventiva a disposición de la misma. Por tal razón no ha cumplido arresto administrativo en el presente proceso de extradición.

En segundo lugar, de acuerdo a lo previsto por el art. 13 del Tratado, se condiciona la extradición concedida a que las autoridades del Estado requirente aseguren que no se juzgará ni condenará al requerido por delitos distintos a los que se refiere la solicitud de extradición, a excepción de los supuestos consagrados en los numerales 1 y 2 del citado artículo.

En tercer lugar, de acuerdo a lo previsto por el art. 7 del Tratado y de conformidad con nuestro orden público interno e internacional y el respeto de las garantías del requerido emergentes del derecho internacional de los derechos humanos, se condiciona la extradición concedida a que las autoridades requirentes otorguen garantías consideradas suficientes por las autoridades nacionales intervinientes en este proceso, que en caso que Gerardo González Valencia resulte condenado en el proceso penal que se le pretende iniciar en el país requirente, no se le impondrá pena de muerte ni pena de prisión perpetua.

Finalmente, se solicitará al Estado requirente que exprese si acepta las condiciones en que se admite la extradición dentro del plazo de cuarenta días a partir de la notificación de la presente sentencia.

**FALLO:**

Concédese la extradición de Gerardo González Valencia solicitada por las autoridades competentes de Estados Unidos, bajo las siguientes condiciones: I) se difiere la entrega hasta que el requerido obtenga su excarcelación provisional o libertad definitiva en la causa que se le sigue en Uruguay ante esta sede IUE 2-37467/2016; II) se condiciona la extradición concedida a que las autoridades del Estado requirente aseguren que no se juzgará ni condenará al requerido por delitos distintos a los que se refiere la solicitud de extradición, a excepción de los supuestos consagrados en los numerales 1 y 2 del citado artículo; III) se condiciona la extradición concedida a que las autoridades requirentes otorguen garantías consideradas suficientes por las autoridades nacionales intervinientes en este proceso, que en caso que Gerardo González Valencia resulte condenado en el proceso penal que se le pretende iniciar en el país requirente, no se le impondrá pena de muerte ni pena de prisión perpetua; IV) las autoridades competentes del Estado requirente deberán expresar si aceptan las condiciones dispuestas en los numerales anteriores, dentro del plazo de cuarenta días a partir de la notificación del presente fallo.

Líbrense las comunicaciones correspondientes a la autoridad requirente vía diplomática, con las formalidades que correspondan.-

Notifíquese y ejecutoriada, cúmplase.-

Dra. Beatriz LARRIEU DE LAS CARRERAS
Juez Ldo.Capital

Esc. ANDRES ROMANO TRINIDAD
ACTUARIO ADJUNTO

00054539