UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GERARDO GONZÁLEZ-VALENCIA,<br><br>Defendant. | Criminal Action No. 16-65-1 (BAH)<br><br>Chief Judge Beryl A. Howell |

**MEMORANDUM AND ORDER**

Pending before the Court is defendant Gerardo González-Valencia's motion to dismiss the single-count indictment charging him with conspiracy to distribute five kilograms or more of cocaine and five hundred grams or more of methamphetamine for importation into the United States, in violation of 21 U.S.C. §§ 959(a), 960, and 963 and 18 U.S.C. § 2, on grounds that his extradition from Uruguay to the United States was unlawful. *See generally* Def.'s Mot. to Dismiss and Mem. of Points and Authorities ("Def.'s Mem."), ECF No. 95.[1]  Specifically, defendant argues that the government "presented no evidence to support a probable cause determination for extradition" and that "the uncontroverted Uruguayan court record shows that the foreign court applied the wrong legal standard in determining to grant extradition." *Id.* at 13-14.  This argument is without basis and defendant's motion must be denied, as further explained below.[2]

---

[1] All references to the parties' briefs and associated exhibits reflect the enumeration generated automatically by the Court's Case Management/Electronic Case Filing ("CM/ECF") system.

[2] Defendant alternatively requests "an evidentiary hearing to determine the true extent of the Government's misconduct and to perform an *in camera* review of the evidentiary proof . . . submitted to the grand jury" in the event "the Court wishes to review the entire record before ruling on this Motion." Def.'s Mem. at 3-4; *see also* Def.'s Request for Oral Argument or *In Camera* Review, ECF No. 106.  This alternative request is denied as moot since defendant has aduced no evidence of any government misconduct and nothing precludes adjudication, on the papers, of defendant's pending motion to dismiss the indictment.

1

I.     BACKGROUND

Defendant, who faces trial on January 23, 2023 alongside his brother and co-defendant José González-Valencia, was indicted by a grand jury sitting in this District on April 19, 2016, *see* Indictment, ECF No. 1, and an arrest warrant issued that same day by another Judge of this Court, *see* Min. Entry (April 19, 2016).  Defendant's indictment resulted from "an extensive, long-term . . . investigation conducted by the Drug Enforcement Administration ('DEA') into the operations of two, interrelated large-scale drug trafficking organizations ('DTOs') based in Jalisco, Mexico known as the Cartel de Jalisco Nueva Generaci[ó]n ['CJNG'] . . . and Los Cuinis Drug Trafficking Organization," which the government alleges was headed by defendant, his co-defendant brother, and other members of their family.  Gov't's Mem. Opp'n Def.'s Mot. to Dismiss ("Gov't's Opp'n"), at 3, ECF No. 99.  According to the government, CJNG and Los Cuinis "operate together under a close alliance[,] . . . form[ing] one of the largest, most dangerous, and prolific drug cartels in the world," and "are responsible for trafficking ton quantities of illegal drugs into the United States and employing extreme violence to further that objective." *Id.*

On June 1, 2016, the government requested that defendant be extradited from Uruguay pursuant to a bilateral treaty between that country and the United States.  *See* Treaty on Extradition and Cooperation in Penal Matters ("Extradition Treaty"), U.S.-Uruguay, Apr. 6, 1973, T.I.A.S. No. 10850.  This request was supported by a 51-page extradition package, which included, *inter alia*, copies of the indictment returned and arrest warrant issued in this Court; excerpts of relevant statutes; and two affidavits executed by a Department of Justice prosecutor and a DEA agent, respectively, explaining the grand jury process and providing a summary of the facts of the case.  *See generally* Def.'s Mem., Ex. A, Extradition Package, ECF No. 95-1.

Defendant, with the assistance of counsel, spent the next four years vigorously and unsuccessfully contesting the government's extradition request before the Uruguayan courts.

Between 2017 and 2020, three different Uruguayan courts, all the way up to Uruguay's highest court, the Supreme Court of Justice, examined defendant's challenges to the government's request and each authorized his extradition. *See* Def.'s Mem., Ex. I, August 28, 2017 Uruguay First Instance Special Criminal Court Judgment ("Uruguay Criminal Court Decision"), ECF No. 95-9; Ex. J, February 11, 2020 Uruguay Supreme Court of Justice Judgment ("Uruguay Supreme Court Decision"), ECF No. 95-10; *id.* at 13 (noting that, on October 2, 2018, "the Criminal Court of Appeals 4th Rotation" affirmed the First Instance Special Criminal Court's August 2017 judgment authorizing defendant's extradition); *see also* Gov't's Opp'n at 24 (noting that granting defendant's motion "would overturn the findings and orders of three Uruguayan courts"). Notably, both the Uruguay Criminal Court and the Uruguay Supreme Court considered—and rejected—the same argument, raised again by defendant in the instant motion to dismiss the indictment: that the government's extradition request was not supported by probable cause. In this regard, the Uruguay Criminal Court found that "the evidential elements referred to reach[] the evidentiary standard required by the Treaty." Uruguay Criminal Court Decision at 23. The Uruguay Supreme Court likewise rejected defendant's argument that the extradition package did "not satisfy the requirements of the Treaty in order to prove probable cause for extradition." *See* Uruguay Supreme Court Decision at 17-22.[3]

After exhaustion of judicial review in Uruguay, defendant was extradited to the United States on May 14, 2020, *see* Min. Entry (May 14, 2020), and arraigned the next day, *see* Min. Entry (May 15, 2020).

---

[3] As explained *infra*, the government's extradition request was based on probable cause and, in any event, the Extradition Treaty did not require the Uruguayan courts to make any probable cause determination.

## II.     DISCUSSION

Under its supervisory powers, a district court generally retains authority to dismiss an indictment, but because doing so "'directly encroaches upon the fundamental role of the grand jury,' dismissal is granted only in unusual circumstances." *United States v. Ballestas*, 795 F.3d 138, 148 (D.C. Cir. 2015) (quoting *Whitehouse v. U.S. Dist. Court*, 53 F.3d 1349, 1360 (1st Cir. 1995)).  The D.C. Circuit has had "no occasion" to determine "whether dismissal would be an appropriate remedy" when a defendant succeeds in establishing that his extradition was unlawful.  *United States v. Trabelsi*, 845 F.3d 1181, 1193 (D.C. Cir. 2017).  Nevertheless, the Circuit has held that once "an individual has been extradited pursuant to a treaty," United States courts can only engage in a "highly deferential" review and must "defer to the extradition decision of the extraditing country." *Id.* at 1186; *see also Casey v. Dep't of State*, 980 F.2d 1472, 1477 (D.C. Cir. 1992) ("[A]n American court must give great deference to the determination of the foreign court in an extradition proceeding.").[4]  This "narrow" review, *Trabelsi*, 845 F.3d at 1188, requires a court, "absent evidence to the contrary," to "presume . . . that the extraditing nation has complied with its obligations under the treaty and that the extradition is lawful," *id* at 1186.  This presumption of lawful extradition "is not irrebuttable" and may be rebutted through: (1) "[e]vidence [of] . . . misconduct on the part of the United States in procuring an extradition;" (2) "the absence of review of the extradition request by the requested party;" (3) or a "showing that the requested state or party did not apply the correct legal standard adopted in the Treaty." *Id.* at 1189.

---

[4]     In *Trabelsi*, the D.C. Circuit also held, as a threshold matter, that federal courts retain jurisdiction to review a foreign sovereign's extradition decision although "extradition implicates the sovereignty of a nation to control its borders and to enforce its treaties" and thus "judicial review of such a decision could implicate concerns of international comity." 845 F.3d at 1187 (cleaned up).  The government does not dispute the Court's jurisdiction to review defendant's extradition from Uruguay. *See* Gov't's Opp'n at 7-8.

Here, after "his objections to extradition received multiple layers of review by" Uruguayan courts, defendant does not—and cannot—argue that the government's extradition request was insufficiently reviewed "by the requested party." *See id.* Defendant instead contends, first, that "the [g]overnment engaged in misconduct in procuring [his] extradition," Def.'s Mem. at 15, because the government "knew when it submitted its Extradition Package that there was insufficient evidence to determine probable cause," Def.'s Reply Supp. Mot. to Dismiss ("Def.'s Reply"), at 24, ECF No. 102, and, second, that "the record is unequivocal that the Uruguayan court did not comply with its obligations under the Treaty insofar as it did not apply the correct legal standard adopted by the Treaty with respect to probable cause," Def.'s Mem. at 15; *see also* Def.'s Mem. at 37 ("Uruguay failed to apply the correct legal standard by granting the Government's extradition request without assessing the evidence to determine probable cause. Accordingly, any presumption under *Trabelsi* that the extradition is lawful is clearly and conclusively rebutted."). Both challenges to the extradition are unavailing.

To begin, the government's extradition request was indisputably predicated on probable cause, as reflected in the indictment returned by a grand jury sitting in this District upon determining that there was probable cause to charge defendant with committing the conspiracy charged. This is hornbook law. *See Kaley* v. *United States*, 571 U.S. 320, 328 (2014) ("The grand jury gets to say—without any review, oversight, or second-guessing— whether probable cause exists to think that a person committed a crime"). The extradition package that the government submitted to Uruguay included copies of this indictment and the arrest warrant issued based on that indictment. *See* Extradition Package at 33-36 (copy of indictment), 38 (copy of arrest warrant). Defendant's first argument suggesting that the

government engaged in some form of misconduct by seeking his extradition without a probable cause determination, *see* Def.'s Reply at 24, is thus made up out of whole cloth.

Defendant's second argument is also without merit. The multiple Uruguayan courts that reviewed defendant's challenge to his extradition correctly applied the controlling standard under the Extradition Treaty. "The interpretation of a treaty, like the interpretation of a statute, begins with its text." *Medellin v. Texas*, 552 U.S. 491, 506 (2008). Article 10 of the Extradition Treaty outlines the requirements for extraditions between the United States and Uruguay. *See generally* Extradition Treaty, art. X.

As relevant here, Article 10 commands that an extradition request relating "to a person who has not yet been convicted . . . *must be* accompanied by a warrant of arrest issued by a judge or other judicial officer of the requesting Party." *Id.*, art. X, ¶ 3 (emphasis added). Next, it provides that the "requested Party *may* require the requesting Party to produce evidence to establish probable cause that the person claimed has committed the offense for which extradition is requested." *Id.* (emphasis added). Finally, the Extradition Treaty contemplates that the "requested Party *may* refuse the extradition request if an examination of the case in question shows that the warrant is manifestly ill-founded." *Id.* (emphasis added). The text of Article 10—through its use of *may*—therefore makes plain that the Extradition Treaty does not require the courts of Uruguay to make a probable cause determination before ordering extradition. *See* Gov't's Opp'n at 10 ("When Article 10 is read in its entirety, it is clear that the provision of the Treaty related to probable cause is discretionary, not mandatory.").[5] In considering—and

---

[5] Under Article 10 of the Extradition Treaty, the government was also required to make its request for extradition "through diplomatic channel" and to include in its extradition package: a "statement of the facts of the case;" "[t]he data necessary to prove the identity of the person whose extradition is sought;" and the "text of the applicable laws." Extradition Treaty, art. X, ¶¶ 1-2. The government's compliance with these additional requirements before securing defendant's extradition from Uruguay is undisputed.

rejecting—defendant's challenge to his extradition on this basis, the Uruguayan courts reached the same conclusion and determined that the government had fulfilled its obligations under Article 10 while requesting defendant's extradition. *See* Uruguay Criminal Court Decision at 22 ("It is then not appropriate to assess the evidence produced by the requesting State, but rather only to assess it to determine that the extradition request and the arrest warrant are not manifestly unfounded, in accordance with the provisions of Art. 10.3 . . . of the Treaty."); *id.* at 23 ("[T]he evidential elements referred to reach[] the evidentiary standard required by the Treaty, and it cannot be concluded that the arrest warrant issued by the requesting State Court is clearly unfounded."); Uruguay Supreme Court Decision at 18 (defendant "seeks to ignore that [his] arguments concerning the sufficiency of the evidentiary elements, in order to prove the commission of the offense, are the subject of the trial to be held in the United States of America, but outside the scope of this jurisdictional proceeding"); *id.* ("[I]t is not possible to observe, from the examination of the extradition request, that the arrest warrant issued by the authorities of the requesting State is 'manifestly unfounded.'").

In short, no basis has been presented by defendant to rebut the presumption of lawful extradition that generally applies, *see Trabelsi*, 845 F.3d at 1186, or to depart from the reasoned judgment of the three Uruguayan courts, including that country's Supreme Court, which consecutively reviewed the government's extradition package and approved defendant's extradition to the United States.

### III.    CONCLUSION AND ORDER

For the foregoing reasons, defendant has proffered no evidence sufficient to rebut the presumption that Uruguay complied "with its obligations under the treaty and that the extradition is lawful," *id.*, and it is hereby

7

**ORDERED** that defendant's Motion to Dismiss the Indictment, ECF No. 95, is **DENIED**; and it is further

**ORDERED** that defendant's Motion for Oral Argument or *In Camera* Review, ECF No. 106, is **DENIED AS MOOT.**

**SO ORDERED.**

Date:  July 5, 2022

_____
BERYL A. HOWELL
Chief Judge