**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | ) **CRIMINAL NO.: 16-CR-65** |
| | ) |
| **GERARDO GONZALEZ-VALENCIA,** | ) |
| also known as "Lalo," "Flaco," "Silver," | ) |
| "Silverio," "Eduardo," and "Laline," | ) |
| | ) |
| **and** | ) |
| | ) |
| | ) |
| **JOSE GONZALEZ-VALENCIA,** | ) |
| also known as "Jafett Arias-Becerra," | ) |
| "Chepa," "Camaron," "Santy," | ) |
| | ) |
| **Defendants.** | ) |

**GOVERNMENT'S OPPOSITION TO DEFENDANT GERARDO GONZALEZ-
VALENCIA'S MOTION TO STAY PROCEEDINGS**

The United States respectfully submits this Opposition to Defendant Gerardo Gonzalez-Valencia's Motion to Stay Proceedings ("Motion" or "Mot."). Docket ("Dkt.") No. 111. In the Motion, Defendant Gerardo Gonzalez-Valencia ("Defendant") requests a stay of the instant District Court proceedings pending the resolution of his interlocutory appeal of this Court's July 5, 2022 Memorandum and Order ("Order"), Dkt. No. 108, denying his Motion to Dismiss ("Motion to Dismiss"), Dkt. No. 97. The Court should deny the Motion because the Order is not immediately appealable, and the interests of the Government, co-defendant Jose Gonzalez-Valencia, and the public in a prompt trial weigh in favor of continued District Court proceedings pending the Defendant's improper appeal.

## I.       BACKGROUND

On April 19, 2016, a federal grand jury sitting in the District of Columbia returned an

indictment charging the Defendant with conspiracy to distribute five kilograms or more of a

mixture or substance containing a detectable amount of cocaine, and five hundred grams or more

of a mixture or substance containing a detectable amount of methamphetamine, knowing and

intending that such substances would be unlawfully imported into the United States from a place

outside thereof, in violation of 21 U.S.C. §§ 959(a), 963, and 960 and 18 U.S.C. § 2.  *See*

Indictment, Dkt. No. 1.[1]

Based on the charges, the United States District Court for the District of Columbia issued

a warrant for the Defendant's arrest on April 19, 2016.  Dkt. No. 12.  The Defendant was

arrested in Uruguay on local money-laundering charges on April 21, 2016, and, following

lengthy and contested extradition proceedings, he was extradited from Uruguay to the District of

Columbia on May 14, 2020.  The Defendant made his initial appearance and was arraigned on

May 15, 2020.  *See* Min. Entry (5/15/2020).  The Defendant remains detained pending trial,

jointly with co-defendant and brother Jose Gonzalez-Valencia, currently scheduled to begin on

January 23, 2023.  *See* Min. Order (6/6/2022).

On April 15, 2022, the Defendant filed a Motion to Dismiss based on allegedly faulty

extradition proceedings.  Dkt. No. 97.  The Defendant argued that the Uruguayan courts

improperly granted the U.S. extradition request because the Uruguayan Courts did not apply the

probable cause legal standard, the extradition request was not supported by probable cause, and

the Government committed alleged "misconduct" during the extradition proceedings.  *Id.* at 1–3,

15–39, 46–48.  The Defendant further requested, in the alternative to dismissal, that the Court

---

[1] The Government does not intend to pursue the methamphetamine charge at trial.

conduct an *in camera* review of the grand jury record because the Defendant suspected that the Government had presented insufficient evidence of his conduct within the statute of limitations period to the grand jury. *Id.* at 3–4, 39, 48–50. On April 29, 2022, the Government filed an opposition to the Motion to Dismiss, *see* Dkt. No. 99, and, on May 12, 2022, the Defendant filed a reply, *see* Dkt. No. 103. On June 7, 2022, the Defendant filed a separate Request for Oral Hearing on His Motion to Dismiss or, in the Alternative, for *In Camera* Review. Dkt. No. 106.

On July 5, 2022, the Court issued an Order denying the Defendant's Motion to Dismiss and denying as moot his motion for a hearing. Dkt. No. 108. The Court rejected each of the Defendant's arguments. First, the Court found that "the government's extradition request was indisputably predicated on probable cause, as reflected in the indictment returned by a grand jury sitting in this District upon determining that there was probable cause to charge defendant with committing the conspiracy charged." *Id.* at 5. Second, the Court found that the Treaty permitted but did not require that Uruguayan courts review the U.S. extradition request for probable cause and that "[t]he multiple Uruguayan courts that reviewed defendant's challenge to his extradition correctly applied the controlling standard under the Extradition Treaty." *Id.* at 6. Finally, in denying the Defendant's alternative request for an *in camera* review of the grand jury records, the Court found that the "[D]efendant has adduced no evidence of any government misconduct" warranting such review. *Id.* at 1 n.2.

On July 20, 2022, the Defendant filed a notice of interlocutory appeal of the Order, Dkt. No. 113, and a Motion to stay the District Court proceedings, Dkt. No. 111. In the instant Motion, the Defendant argues that the Order falls within the "collateral order" exception to the final judgment rule, and therefore is immediately appealable. *Id.* at 2.

## II.    LEGAL STANDARD

In considering a motion for a stay pending appeal, courts must consider the following factors: (1) the likelihood that the moving party will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the possibility that others will be harmed if the court grants the stay; and (4) the public interest in granting a stay. *United States v. E-Gold Ltd.*, No. 07-109 (RMC), 2007 WL 2103602, at *1 (D.D.C. July 20, 2007) (citing *Va. Petroleum Jobbers Assn v. FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958)); *see also* D.C. Cir. R. 8(a)(1).  When, as here, the government is the party opposing a stay, the third and fourth of "[t]hese factors merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).  On a motion to stay, "it is the movant's obligation to justify the court's exercise of such an extraordinary remedy." *Cuomo v. U.S. Nuclear Regulatory Comm'n,* 772 F.2d 972, 978 (D.C. Cir. 1985).

Naturally, for an appeal to succeed on the merits, the appellate court must have jurisdiction to entertain the appeal. *See United States v. Ginyard*, 511 F.3d 203, 208 (D.C. Cir. 2008) (recognizing Courts of Appeals' "independent obligation to consider" its jurisdiction to hear interlocutory appeal before addressing merits); *see also Munaf v. Geren*, 553 U.S. 674, 690 (2008) (explaining that "[a] difficult question as to jurisdiction . . . says nothing about the 'likelihood of success on the merits,' other than making such success more *unlikely* due to potential impediments to even reaching the merits").  "Congress has limited the jurisdiction of the Courts of Appeals to 'final decisions of the district courts.'" *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 264–65 (1982) (citing 28 U.S.C. § 1291).  "This insistence on finality and prohibition of piecemeal review discourage undue litigiousness and leaden-footed administration of justice, particularly damaging to the conduct of criminal cases." *Di Bella v.*

*United States*, 369 U.S. 121, 124 (1962) (citing *Cobbledick v. United States*, 309 U.S. 323, 324–26 (1940)).

In *Cohen v. Beneficial Indus. Loan Corp.*, the Supreme Court carved out an exception to the rule of finality known as the "collateral order" exception.  337 U.S. 541, 545–47 (1949). Such collateral orders must: (1) "conclusively determine the disputed question," (2) "resolve an important issue completely separate from the merits of the action," and (3) "be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978).  "Because of the compelling interest in prompt trials, the Court has interpreted the requirements of the collateral-order exception to the final judgment rule with the utmost strictness in criminal cases." *Flanagan v. United States*, 465 U.S. 259, 265 (1984); *see also United States v. Cisneros*, 169 F.3d 763, 767 (D.C. Cir. 1999) (citing same).  Since *Cohen* was decided in 1949, the Supreme Court has identified only four types of motions to be immediately appealable in criminal cases: (1) motions to reduce bail, *Stack v. Boyle*, 342 U.S. 1 (1951); (2) motions to dismiss on double jeopardy grounds, *Abney v. United States*, 431 U.S. 651 (1977); (3) motions to dismiss under the Speech or Debate Clause, *Helstops v. Meanor*, 442 U.S. 500 (1979); and (4) motions contesting involuntary administration of medication to restore competency for trial, *Sell v. United States*, 539 U.S. 166 (2003).  *See Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989) (identifying pre-*Sell* exceptions).  Moreover, "[t]he Supreme Court has repeatedly rejected efforts to expand the range of pretrial orders that are immediately appealable in criminal cases." *United States v. Bodye*, 182 F. Supp. 3d 1, 4 (D.D.C. 2016) (collecting cases).

### III.    ARGUMENT

The Defendant cannot establish a likelihood of success on appeal because the Order does not meet the strict requirements of the collateral order exception, and therefore the Court of Appeals is without jurisdiction to reach the merits at this time.  In any event, the Defendant's challenges to the Order lack merit for the reasons explained in the Court's Order and the Government's Opposition to the Motion to Dismiss.  Moreover, the Defendant will not be harmed by proceeding to trial pending his improper appeal, and the interests of co-defendant Jose Gonzalez-Valencia, the Government, and the public in a prompt trial weigh against a stay.

### 1.  The Defendant's Appeal Will Not Prevail on the Merits.

The Court of Appeals does not now have jurisdiction to entertain the Defendant's appeal because the Order is neither a final judgment nor subject to the collateral order exception.  To start, the Order is not a final decision appealable under Section 1291 because the final judgment in a criminal case is the issuance of the Judgment and Commitment after the court imposes a sentence following a finding of guilt, *see Corey v. United States*, 375 U.S. 169, 174 (1963), and the Defendant has neither been adjudicated guilty nor been sentenced.

Nor is the Order appealable under the collateral order doctrine.  To the contrary, denials of motions to dismiss based on allegedly flawed extraditions to the United States generally are not immediately appealable under that doctrine.  *See, e.g.*, *United States v. Alagbada*, No. 21-1079, 2022 WL 1793024, at *1 (3d Cir. June 2, 2022) (holding that appellate court lacked jurisdiction over interlocutory appeal challenging propriety of extradition); *United States v. Saccoccia*, 18 F.3d 795, 801 (9th Cir. 1994) (holding that order denying motion to dismiss for alleged violations of rules of specialty and dual criminality in extradition was not subject to interlocutory review); *United States v. Levy*, 947 F.2d 1032, 1033 (2d Cir. 1991) (holding that

order denying motion to dismiss counts of indictment for alleged violation of rule of specialty in

extradition was not subject to interlocutory review); *Cf. United States v. Sorren*, 605 F.2d 1211,

1213–15 (5th Cir. 1979) (holding that challenge to district court's personal jurisdiction, based on

claim that defendant's expulsion from Panama and transfer to United States was unlawful, was

not appealable under collateral order exception).

    "An order rejecting a defendant's challenge to the extradition process generally falls

outside the scope of the collateral order doctrine because 'the purpose of the extradition process

is to obtain a court's personal jurisdiction over a defendant.'" *Alagbada*, 2022 WL 1793024, at

*1 (quoting *S.E.C. v. Eurobond Exch., Ltd.*, 13 F.3d 1334, 1337 (9th Cir. 1994)).  "Challenges to

the extradition process are thus challenges to district court jurisdiction; and courts 'have

uniformly held that challenges to district court jurisdiction can be fully vindicated on post-

judgment appeal.'"  *Id.* (quoting *Saccoccia*, 18 F.3d at 800–01).

    Courts of appeals have found the denial of a motion to dismiss challenging the extradition

process to be immediately appealable only where the defendant claimed that the extradition

violated treaty provisions that confer protections analogous to double jeopardy restrictions in

U.S. law.  *E.g., United States v. Trabelsi*, 845 F.3d 1181, 1186 (D.C. Cir. 2017) (*non bis in idem*

provision of extradition treaty); *United States v. Duarte-Acero*, 208 F.3d 1282, 1284 (11th Cir.

2000) (double jeopardy provision of the International Covenant on Civil and Political Rights);

*see also United States v. Kashamu*, 656 F.3d 679, 681–82 (7th Cir. 2011) (finding appellate

jurisdiction where the defendant invoked "the doctrine of collateral estoppel," which has been

"incorporate[d]" into "the double jeopardy clause").  Although the challenges in some of these

cases relied on a treaty provision, rather than the Double Jeopardy Clause of the Fifth

Amendment, the Circuit Courts found that the treaty challenges involved the same type of double

jeopardy claims that *Abney* recognized as immediately appealable. *Trabelsi*, 845 F.3d at 1186; *Duarte-Acero*, 208 F.3d at 1284. In other words, the orders denying the motions to dismiss in *Trabelsi* and *Duarte-Acero* fell within one of the four narrow categories of challenges that the Supreme Court has already recognized as appealable under the collateral order doctrine in criminal cases.

Here, the Defendant's claim that he was extradited without a sufficient showing of probable cause does not fit within any of the recognized categories of decisions immediately appealable under the collateral order doctrine. Rather, the Defendant will be asking the Court of Appeals for the D.C. Circuit to recognize an entirely new class of immediately appealable decisions under the collateral order doctrine and to split from the other Circuits, which have found emphatically and unanimously that challenges to extradition proceedings other than double jeopardy challenges are not subject to interlocutory appeal. The need for the D.C. Circuit to take that step presents, at the very least, a serious jurisdictional obstacle to the Defendant's appeal. And as the Supreme Court has made clear, such serious jurisdictional obstacles make ultimate success on the merits "more unlikely due to the potential impediments to even reaching the merits." *Munaf*, 553 U.S. at 690.

The Defendant tacitly acknowledges that his challenge is not one previously recognized under the collateral order doctrine, instead arguing that his challenge is "fundamentally a right not to be tried" and "directly analogous to the right of a defendant against double jeopardy." Mot. at 20–21 (internal citations and quotations omitted). It is not. Although an order rejecting an alleged "right not to be tried" can fit within the collateral order doctrine, *see, e.g., Abney*, 431 U.S. at 659–62, the Defendant is advocating for a broad interpretation of the "right not to be tried," which the Supreme Court has expressly cautioned against.

One must be careful, however, not to play word games with the concept of a "right not to be tried."  In one sense, any legal rule can be said to give rise to a "right not to be tried" if failure to observe it requires the trial court to dismiss the indictment or terminate the trial.  But that is assuredly not the sense relevant for purposes of the exception to the final judgment rule.

*Midland Asphalt Corp.*, 489 U.S. at 801.  Rather, "[a] right not to be tried in the sense relevant to the *Cohen* exception rests upon an explicit statutory or constitutional guarantee that trial will not occur"—as in the Double Jeopardy Clause or the Speech or Debate Clause.  *Id.*  The Defendant has not, and cannot, point to any such statutory or constitutional right that would preclude him from standing trial.

The Defendant's claim, as he describes it, is "[a]t the most basic level, . . . that he should never have been extradited to stand trial in the first place."  Mot. at 2, 20.  Although the Defendant has not expressly framed his Motion to Dismiss as a jurisdictional challenge, the Defendant's argument that he is not properly before the Court due to perceived deficiencies in the extradition process is, in essence, a challenge to this Court's personal jurisdiction.  *See Alagbada*, 2022 WL 1793024, at *1.  Therefore, the challenge can be fully vindicated on post-judgment appeal and is not subject to interlocutory appeal.  *See Saccoccia*, 18 F.3d at 801.

In fact, one of the Defendant's main case authorities—*United States v. Sensi*, 878 F.2d 888 (D.C. Cir. 1989) (cited at Mot. at 4, 14, 22)—confirms that challenges such as his are readily reviewable on appeal from a final judgment.  In *Sensi*, a defendant extradited from the United Kingdom argued in his post-conviction appeal, among other things, that the district court had erred in denying a pre-trial motion to dismiss the indictment based on alleged violation of the doctrine of specialty and supposed inadequacies in the evidence submitted with the United States' extradition request.  879 F.2d at 894–96.  The D.C. Circuit rejected those arguments, *id.*,

but the fact that the defendant in *Sensi* could have received relief for those contentions confirms that the Defendant's challenges here can be fully vindicated in a post-conviction appeal.

Even in the unlikely event that the D.C. Circuit Court finds that it has jurisdiction to entertain the interlocutory appeal, the Defendant will not prevail on the merits.  The Court correctly applied the "highly deferential" standard of review required by *Trabelsi*, 845 F.3d at 1186, and the Court was not required to conduct a *de novo* review under *Sensi*, as the Defendant argues.  *Sensi* did not lay down a global rule requiring all foreign courts to apply a probable cause standard in evaluating an extradition request.  Rather, *Sensi* addressed a narrow rule of specialty claim, and the court's evaluation of probable cause was based on a specific provision of the extradition treaty between the United States and the United Kingdom related to specialty. *Sensi*, 879 F.2d at 895–96; *see also United States v. Tajideen*, 319 F. Supp. 3d 445, 471 (D.D.C. 2018) (declining to find violation of rule of specialty under Moroccan law and noting that "the Circuit in *Sensi* emphasized this [same conduct] requirement as part of its analysis of whether the rule of specialty was violated, given the explicit language of the treaty pursuant to which the defendant in *Sensi* was extradited.").  *Sensi* is not controlling in this case because the Defendant did not assert a rule of specialty claim, and as the Court correctly concluded, the plain text of the extradition treaty between the United States and Uruguay "does not require the courts of Uruguay to make a probable cause determination before ordering extradition."  Order at 6.  For these reasons, and the reasons articulated in the Order and in the Government's Opposition to the Motion to Dismiss, Dkt. No. 99, which are incorporated herein by reference, the Defendant is unlikely to prevail on the merits, and the first factor weighs heavily against a stay of the District Court proceedings.

### 2.   The Defendant Will Not Be Irreparably Harmed Without a Stay.

The Defendant will not suffer irreparable injury by the continuation of the District Court proceedings because his rights can be well protected on appeal if the case goes forward to trial as scheduled.  The Defendant contends that if this case were to proceed to trial prior to a final decision on his interlocutory appeal, he will be forced to "waive his Fifth Amendment right, unfairly and unnecessarily implicating himself and others who are currently standing trial" by asserting a withdrawal defense.  Mot. at 39.  But if the Defendant proceeds to trial, even before his appeal is decided, the Defendant will not be *forced* to waive any constitutional right.  His Fifth Amendment protections will still apply, and he may choose whether to waive them as part of his trial strategy.  Moreover, without a stay, the Defendant will receive his constitutional guarantee of a prompt trial, and if convicted, he may properly raise his objections to the Order before the Court of Appeals following the imposition of his sentence.

### 3.   The Possibility of Harm to Others and the Public Interest Weigh Against a Stay.

Co-defendant Jose Gonzalez-Valencia, the Government, and the public all have an interest in the timely disposition of this case.  Jose Gonzalez-Valencia, who has been detained pending trial since December 2017, has a Sixth Amendment right to a speedy trial, which may be impaired by a stay.  The Government also has an interest in the prompt resolution of this case. The Defendant is charged with participation in a conspiracy from January 2003 through April 2016, and the Government intends to introduce evidence of events, including drug shipments and seizures, that happened over a decade ago.  The Government witnesses' ability to recall details about those events is likely to decrease with time.  Additionally, "there is a societal interest in providing a speedy trial which exists separate from, and at times in opposition to, the interests of the accused."  *Barker v. Wingo*, 407 U.S. 514, 519 (1972).  Together, the interests of co-

defendant Jose Gonzalez-Valencia, the Government, and the public are significant, and "[i]t does not take much to outweigh [a defendant's] interest in pursuing an appeal doomed to fail at the outset**."** *Bodye*, 182 F. Supp. 3d at 4.

Finally, the Court retains jurisdiction to conduct normal pre-trial and trial proceedings in this case.  Ordinarily, the filing of a notice of interlocutory appeal "'confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal.'" *United States v. DeFries*, 129 F.3d 1293, 1302 (D.C. Cir. 1997) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (*per curiam*)).  However, "Courts have carved out a few narrow exceptions to this rule, such as where the defendant frivolously appeals, *see United States v. LaMere,* 951 F.2d 1106, 1109 (9th Cir. 1991) (*per curiam*), or takes an interlocutory appeal from a non-appealable order, *see United States v. Green,* 882 F.2d 999, 1001 (5th Cir. 1989)." *DeFries*, 129 F.3d at 1302–03 (citing exceptions approvingly in dictum; *see also Bodye*, 182 F. Supp. 3d at 2 (D.D.C. 2016) (quoting 16A Charles Alan Wright et al., Federal Practice and Procedure § 3949.1, at 64 (4th ed. 2008)) ("The weight of authority . . . holds that an appeal from a clearly non-appealable order fails to oust district court authority.").  Here, this Court can and should continue the orderly administration of justice pending the Defendant's frivolous appeal of a non-appealable order.

## IV.     CONCLUSION

Accordingly, the Government respectfully requests that this Court deny Defendant

Gerardo Gonzalez-Valencia's Motion to Stay Proceedings.


Respectfully Submitted,

ARTHUR G. WYATT, Chief
Narcotic and Dangerous Drug Section
Criminal Division
United States Department of Justice


_____/s/_____
Kaitlin Sahni
Kate Naseef
Kirk Handrich
Trial Attorneys
Narcotic and Dangerous Drug Section
Criminal Division
United States Department of Justice
Washington, D.C. 20530
202-514-0917
Kaitlin.Sahni@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was sent via the Electronic Case Filing

(ECF) system with the United States District Court for the District of Columbia to counsel of

record for the defendants, this 29th day of July 2022.


By:      /s/   *Kaitlin Sahni*
                  Kaitlin Sahni
                  Trial Attorney
                  Narcotic and Dangerous Drug Section
                  Criminal Division,
                  United States Department of Justice