**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal Action No. 16-65-1 (BAH) |
| v. | Chief Judge Beryl A. Howell |
| GERARDO GONZÁLEZ-VALENCIA, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is defendant Gerardo González-Valencia's emergency motion to stay

proceedings in this case, Def. Gerardo González-Valencia's Emergency Mot. to Stay

Proceedings and Incorporated Mem. of Points & Authorities ("Def.'s Mem."), ECF No. 111,

pending resolution of his appeal of this Court's denial of his Motion to Dismiss, Mem. and Order

Denying Def.'s Mot. to Dismiss ("MTD Denial Decision"), ECF No. 108.  *See generally* Def.'s

Mem. at 1, 41.[1]  If defendant's requested stay were granted, defendant's trial with his co-

defendant, currently scheduled for January 23, 2023—a date this defendant did not previously

oppose, *see* Def. Jose González-Valencia Unopposed Motion to Continue Trial at 1, ECF No.

104—would be indefinitely suspended.

Despite defendant's pending appeal, the Court will retain jurisdiction because denial of

defendant's Motion to Dismiss does not meet the requirements of the collateral order doctrine to

permit appellate jurisdiction over his interlocutory challenge.  Defendant also has not met the

high threshold to warrant a stay of proceedings.  He is highly unlikely to succeed on the merits of

his extradition challenge before the D.C. Circuit, he has not shown that he will be irreparably

---

[1]     All references to the parties' briefs and associated exhibits reflect the enumeration generated automatically
by the Court's Case Management/Electronic Case Filing ("CM/ECF") system.

harmed without a stay while the risk of harm to other parties in this matter is significant, and public interest weighs against further delaying his trial. As explained below, this emergency motion to stay proceedings is denied.

## I.      BACKGROUND

The history underlying this litigation has been recounted in the denial of defendant's Motion to Dismiss. *See* MTD Denial Decision at 2–3. Only the factual and procedural developments relevant to resolving defendant's instant motion are addressed here.

On April 18, 2022, defendant moved to dismiss the single count indictment charging him with conspiracy to distribute cocaine and methamphetamine for importation into the United States, in violation of 21 U.S.C. §§ 959(a), 960, and 963, and 18 U.S.C. § 2, on grounds that his extradition from Uruguay to the United States was unlawful. *See generally* Def.'s Mot. to Dismiss and Mem. of Points and Authorities ("Def.'s MTD Mem."), ECF No. 95; Indictment, ECF No. 1. The Court found those challenges to be without basis. *See generally* MTD Denial Decision.

On July 19, 2022, defendant filed a notice of interlocutory appeal from the denial of his motion to dismiss, arguing, *inter alia*, that his extradition was not proper. Notice of Appeal at 1, ECF No. 110. The government plans to oppose that appeal. *Id.* at 1 n.1. Defendant now requests a stay, which would result in delaying his January trial date, pending disposition of his appeal. Def.'s Mem. at 1. The government opposes defendant's request. *See generally* Gov't's Opp'n to Def. Gerardo Gonzalez-Valencia's Mot. to Stay Proceedings ("Gov't's Opp'n"), ECF No. 118. Defendant's request is now ripe.

## II.     LEGAL STANDARD

"[T]he filing of a notice of appeal, including interlocutory appeal, confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case

involved in the appeal" except when a party "frivolously appeals . . . or takes an interlocutory appeal from a non-appealable order." *United States v. DeFries*, 129 F.3d 1293, 1302–03 (D.C. Cir. 1997) (internal citations omitted).  Only "final decisions" of district courts, which include "a judgment of guilt, that terminates a criminal proceeding," *Sell v. United States*, 539 U.S. 166, 176 (2003), are reviewable and thus appealable, 28 U.S.C. § 1291.  The Supreme Court, however, crafted an exception to finality that allows a party to appeal "a preliminary or interim decision" when that decision "(1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." *Sell*, 539 U.S. at 176 (cleaned up).  That exception deemed the collateral order doctrine is interpreted "with the utmost strictness" in criminal cases. *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 799 (1989) (internal citations omitted).

## III.    DISCUSSION

Defendant claims that the D.C. Circuit has jurisdiction over his appeal because, although no final judgment has issued in this case, the challenge to his extradition is collateral to the offenses at issue in the trial.  Def.'s Mem. at 2–3, 17–21.  That argument fails because defendant's appeal does not meet the second and third requirements for collateral review. Setting aside the un-appealability of the denial of dismissal, the Court, in its discretion, sees no reason to grant defendant's stay request.

### A.    Jurisdiction over the Interlocutory Appeal

While the denial of defendant's motion to dismiss was a conclusive determination on defendant's extradition, MTD Denial Decision at 5–7; Def.'s Mem. at 18, this decision did not resolve an important issue of the lawfulness of the extradition separate from the drug trafficking charges defendant faces at trial.  Instead, defendant's challenge to his extradition rests on the

3

argument that no probable cause sufficient to support the charges brought against him by the U.S. government was presented. *Id.* at 17–39. Such a challenge before the appellate court would trigger a fact-intensive inquiry that is not just intertwined with but is at the heart of determining whether defendant committed various drug trafficking crimes. *Cf. Midland Asphalt Corp.*, 489 U.S. at 800 (holding that district court's order denying plaintiff's motion to dismiss an indictment was "not immediately appealable" because it "involve[d] considerations enmeshed in the merits of the dispute . . . and [such order] would affect or be affected by the decision on the merits of the case") (cleaned up). The D.C. Circuit does not engage in such interlocutory inquiries when the facts are not yet established or are of controlling relevance. *See U.S. Ass'n of Reptile Keepers, Inc. v. Zinke*, 852 F.3d 1131, 1135 (D.C. Cir. 2017).

Furthermore, defendant's challenge is reviewable on appeal. The Supreme Court has permitted collateral review for motions raising "an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial," such as motions to reduce bail, motions to dismiss on double jeopardy grounds, and motions to dismiss under the Speech or Debate Clause. *Midland Asphalt Corp.*, 489 U.S. at 799; *see also Sell*, 530 U.S. at 175–77 (permitting interlocutory review to decide whether "forced administration of antipsychotic drugs to render Sell competent to stand trial unconstitutionally deprive[s] him of his 'liberty' to reject medical treatment" under the Fifth Amendment). Acknowledging that this case does not involve any of those motions, defendant asks the Court to extend collateral review to his extradition challenge because this context, too, "rel[ies] on a specific constitutional guarantee, [] that the right in question must be vindicated before trial." Def.'s Mem. at 19; *see also id.* at 20–21. That right, he argues, is his "constitutional due process right" and his "right under the Treaty not to be extradited." *Id*. at 20. Defendant asserts that his "due process right to an extradition based on probable cause is directly analogous to the right of a defendant against double jeopardy that this

Circuit already recognizes supports interlocutory appeal in an extradition case," citing *United States v. Trabelsi*, 845 F.3d 1181 (D.C. Cir. 2017).  Def.'s Mem. at 21.  That argument is unavailing.

The "right not to be tried" that defendant creates ventures into the category of "word games" that the Supreme Court cautioned against—that virtually "any legal rule can be said to give rise to a 'right not to be tried' if failure to observe it requires the trial court to dismiss the indictment or terminate the trial." *Midland Asphalt Corp.*, 489 U.S. at 801.  As the Court in *Midland Asphalt Corp.* further explained, the "right not to be tried" must hinge on a "statutory or constitutional guarantee that trial will not occur," *id.* at 801, and neither the U.S.-Uruguay treaty implicated in this case nor the Fourth Amendment's Due Process Clause offers that kind of protection.  *Trabelsi* is distinguishable on this ground.  Trabelsi moved to dismiss his indictment for violating a provision of the U.S.-Belgium treaty that promises not to extradite "when the person sought has been found guilty, convicted or acquitted in the Requested State for the offense for which extradition is requested."  845 F.3d at 1184 (quoting the treaty directly).  The district court denied the motion, holding that Trabelsi was not charged and convicted with the same offenses in the United States and in Belgium after applying the *Blockburger* test.  *Id.* at 1185.  The D.C. Circuit permitted interlocutory review because the treaty's prior-prosecution provision that guards against "being twice put in jeopardy" fulfilled the requirements for collateral review.  *Id.* at 1185–86.  Absent a similar treaty provision here, defendant points to no other constitutional or statutory hook on which a "right not to be tried" attaches.  Consequently, defendant may assert his extradition challenge on appeal following trial, as the defendant did in *United States v. Sensi*, 879 F.2d 888 (D.C. Cir. 1989), in which the Circuit decided on the validity of Sensi's indictment that supported his extradition from the United Kingdom following Sensi's trial and jury verdict of guilt on the underlying offenses.  *Id.* at 892.

The absence of a final order of this Court and thus the inapplicability of the collateral order doctrine results in the D.C. Circuit lacking jurisdiction over defendant's pending interlocutory appeal.  The Court thus retains jurisdiction over defendant's case and may proceed to consider whether a discretionary stay of proceedings is warranted.

### B.      Consideration of a Stay

"The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  "'A stay is not a matter of right, even if irreparable injury might otherwise result,'" *Nken v. Holder*, 556 U.S. 418, 433 (2009) (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)), and "[a] stay pending appeal is always an extraordinary remedy, and it is no less so when extraordinary jurisdiction must be asserted as a prerequisite," *Bhd. of Ry. & S.S. Clerks, Freight Handlers, Express & Station Emps. v. Nat'l Mediation Bd.*, 374 F.2d 269, 275 (D.C. Cir. 1966).

Courts considering a stay request pending an appeal must "'weigh competing interests,'" *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732 (D.C. Cir. 2012) (quoting *Landis*, 299 U.S. at 254–55), by balancing the following factors as applied to the specific facts of the case: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies," *Nken*, 556 U.S. at 434 (internal citations omitted).  The third and fourth factors "merge" when the stay applicant so moves against the government. *Id.* at 435.  The party seeking the stay bears the burden of "mak[ing] out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 255.

To support his stay request, defendant argues that he is likely to succeed on the merits of his appeal because of "reversible error[s]" in the Court's denial of his Motion to Dismiss.  Def.'s Mem. at 4–5.  Defendant then fears irreparable injury if trial proceeds at this stage while his co-defendant and the U.S. government, he argues, face no similar risk, and he adds that the public has an interest in conserving the judicial resources of a potentially unnecessary trial.  *Id*. at 3–4. These arguments are not persuasive.

    1.    *Likelihood of Success on the Merits*

In support of his instant motion, defendant merely regurgitates his arguments challenging his extradition that he provided in his Motion to Dismiss.  *Compare* Def.'s Mem. at 21–39, *with* Def.'s MTD Mem. at 13–39.  Defendant's lengthy stay request provides no reason to change the disposition denying dismissal of the indictment, *see* MTD Denial Decision at 4–7, and as this is not a motion for reconsideration, the Court has no obligation to reengage in that analysis. Nonetheless specific arguments in defendant's extradition challenge are addressed to demonstrate further the lack of merit in the original motion and confirm the unlikelihood of defendant's appeal on the merits.

Defendant's stay request faults the Court for "failing to apply the correct standard of review by not reviewing *de novo* the sufficiency of the evidence to establish probable cause to support extradition as required by *Sensi*."  Def.'s Mem. at 22.  Defendant then argues that the Court should not have deferred to the Uruguayan courts, including the Uruguayan Supreme Court of Justice—the country's highest court—in its extradition decision because those bodies failed to require probable cause for extradition as the treaty mandates and the U.S. government provided misleading information to support extradition on which the Uruguayan courts should not have relied.  *Id*. at 25.  Both positions are plainly incorrect.

First, defendant's extradition was supported by probable cause.  The 51-page package of documentation the U.S. government sent to Uruguay supporting defendant's extradition included, among other things, "copies of the indictment returned and arrest warrant issued in this Court" and "two affidavits executed by a Department of Justice prosecutor and a DEA agent, respectively, explaining the grand jury process and providing a summary of the facts of the case."  MTD Denial Decision at 2; *see also* Def.'s MTD Mem., Ex. A, Extradition Package at 33–36 (copy of indictment), 38 (copy of arrest warrant), ECF No. 95-1.  "[T]he indictment [was] returned by a grand jury sitting in this District upon determining that there was probable cause to charge defendant with committing the conspiracy charged."  MTD Denial Decision at 5.  It is "hornbook law" that federal grand juries determine whether there is probable cause to indict individuals for criminal felonies.  *Id.* (citing *Kaley v. United States*, 571 U.S. 320, 328 (2014)); *see also United States v. Scantlebury*, 921 F.3d 241, 250 (D.C. Cir. 2019) (quoting *Kaley*).

Defendant's request for *de novo* review suggests that the Court must second-guess the grand jury's finding of probable cause undergirding its return of the indictment and a magistrate judge's issuance of an arrest warrant.  Def.'s Mem. at 21–25.  That is clearly impermissible.  *See Kaley*, 571 U.S. at 328 ("The grand jury gets to say—without any review, oversight, or second-guessing—whether probable cause exists to think that a person committed a crime.").  *Sensi* is not to the contrary.  At the outset, nowhere in *Sensi* does the Circuit demand *de novo* review of extradition materials.  Rather, the treaty at play in *Sensi* was between the United States and the United Kingdom and that treaty included a specific provision geared towards the doctrine of specialty "set[ting] out the two requirements that must be met for each count of the indictment" submitted in support of extradition.  879 F.2d at 895.  The latter requirement was that the criminal charge described in the indictment "must be established by the facts in respect of which the defendant's extradition has been granted."  *Id.* (cleaned up).  In analyzing this requirement,

the D.C. Circuit considered "whether the evidence submitted with the United States' request for extradition sufficiently established the facts underlying Sensi's prosecution." *Id.* at 896.  The Circuit then only performed a factual review of the indictment because such review is what the U.S.-U.K. treaty mandated under its doctrine of specialty provision.  The U.S.-Uruguay treaty contains no such a requirement, rendering defendant's reliance on *Sensi* to support *de novo* review, with no other persuasive authority, inapposite.

Second, defendant's evidence challenging the Uruguayan courts' review of his extradition is conclusory, insufficient, and misleading.  Courts' review of extradition decisions made pursuant to a treaty must be "highly deferential."  *Trabelsi*, 845 F.3d at 1186.  "In light of this deference, [the D.C. Circuit] presume[s], absent evidence to the contrary, that the extraditing nation has complied with its obligations under the treaty and that the extradition is lawful."  *Id.* (citing *United States v. Campbell*, 300 F.3d 202, 209–10 (2d Cir. 2002)).  A party may rebut the presumption of deference with evidence showing "misconduct on the part of the United States in procuring an extradition" or "that the requested state or party did not apply the correct legal standard adopted in the Treaty."  *Id.* at 1189.

Defendant's evidence that the U.S. government engaged in misconduct to procure his extradition falls flat.  In seeking dismissal and a stay, defendant claims that the U.S. government made "intentional misrepresentations" stating that the charges against defendant are not barred by the statute of limitations period and the Uruguayan courts' reliance on those statements was in error.  Def.'s Mem. at 24–25; *see also* Def.'s MTD Mem. at 2, 47–48.  Not only are defendant's statements regarding the U.S. government's intent wholly conclusory, but his claim of reliance is also incorrect:  In upholding the lower court decisions to extradite defendant, the Uruguayan Supreme Court of Justice held that defendant's statute of limitations argument was "groundless" after its careful review of defendant's communications regarding drug trafficking occurring

during the limitations period.  Def.'s MTD Mem., Ex. J, February 11, 2020 Uruguay Supreme

Court of Justice Judgment ("Uruguay Supreme Court Decision") at 20, ECF No. 95-10.[2]  In

short, defendant has not shown that any alleged government misconduct rebuts the deference

owed to the Uruguayan courts.

Uruguay also applied the correct legal standards.  Despite defendant's arguments to the

contrary, Def.'s Mem. at 25–39, which this Court already rejected, MTD Denial Decision at 6–7,

the fact bears repeating that, according to the plain text of the treaty, probable cause *may* suffice

for extradition, but is not required.  *See* Treaty on Extradition and Cooperation in Penal Matters,

U.S.-Uruguay ("Extradition Treaty"), art. X, ¶ 3, Apr. 6, 1973, T.I.A.S. No. 10850 ("[The]

requested Party *may* require the requesting Party to produce evidence to establish probable cause

that the person claimed has committed the offense for which extradition is requested.")

(emphasis added); *see also Trabelsi*, 845 F.3d at 1189 ("The interpretation of a treaty, like the

interpretation of a statute, begins with its text." (quoting *Medellin v. Texas*, 522 U.S. 491, 506

(2008))).  While defendant may cite cases in which courts reviewing extraditions mentioned the

probable cause standard, nothing in the U.S.-Uruguay treaty would prevent those courts from

requiring something more or less than probable cause to support extradition.[3]   Regardless, that is

---

[2]      Defendant asserts two related arguments that are both dispelled by this excerpt of the Supreme Court of Justice Decision.  First, he argues that the Uruguayan courts did not independently assess whether he "had a valid limitations defense."  Def.'s Mem. at 28–29.  Second, he claims, as he did in his Motion to Dismiss, that a 2013 Blackberry Messenger exchange used by the government as its "sole evidence," *id.* at 6, to support probable cause within the limitations period was insufficient and thus is proof of the government's "misconduct" rebutting the high deference owed to the Uruguayan courts' extradition decision, *id.* at 24; *see also* Def.'s MTD Mem. at 22.  The Uruguay Supreme Court Decision plainly shows otherwise on both scores, *see* Uruguay Supreme Court Decision at 20, and so they are not grounds to rebut the presumption of deference.

[3]      Defendant also cites legislative history of the U.S.-Uruguay treaty and interpretations of the U.S.-Argentina treaty that he claims show that the treaty at issue requires probable cause.  *See* Def.'s Mem. at 32–39.  That argument is unpersuasive because it, like defendant's other arguments, does not overcome the text of the U.S.-Uruguay treaty, *see Medellin v. Texas*, 522 U.S. at 506, which definitively states that the Uruguayan courts "*may*" consider probable cause.

not at issue here because defendant's extradition was based on probable cause.  *See supra* p. 8–9.[4]

Defendant then accuses the Uruguayan courts of wrongly applying the "'manifestly unfounded' standard."  Def.'s Mem. at 25, 31.  This argument is likewise meritless.  The treaty states that the "requested Party," here Uruguay, *may* refuse the extradition request if an examination of the case in question shows that the warrant is *manifestly ill-founded*."  Extradition Treaty, art. X, ¶ 3 (emphasis added).  That inquiry is separate from the country's consideration of whether there is probable cause to support extradition.  *Id.*  According to the treaty, Uruguayan courts may consider both whether the extradition materials support probable cause *and* whether the "warrant of arrest issued by a judge or other judicial officer of the requesting party" is "manifestly ill-founded."  *Id.*  The two inquiries are not mutually exclusive, and the Uruguay courts, including the highest court in that country, were satisfied that granting the U.S. extradition request comported with the laws in that country.

Defendant has now challenged his extradition twice before this Court, and neither time presented more than bald assertions and claims out of whole cloth.  At the core of defendant's arguments is an assertion of innocence—that the existing facts are insufficient to prove beyond a reasonable doubt that he is guilty of the charged offenses—and disposition of such an argument is the purpose of trial.  As such, defendants' claims are unlikely to succeed before the D.C. Circuit and weigh against his stay request.

---

[4]     In asserting another challenge to this Court's interpretation of the treaty, defendant argues that the interpretation violates the Fourth Amendment's right against unlawful seizure, incorporated through the Fifth Amendment, which supersedes the treaty.  Def.'s Mem. at 30–31.  This argument need not be addressed because defendant's extradition was predicated on an indictment and therefore supported by probable cause and, because his Fourth Amendments rights were not injured, he lacks standing to assert a Fourth Amendment challenge.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 563–64 (1992) (describing the injury-in-fact requirement for standing).

**2.**     *Irreparable Harm to Defendant*

Defendant next argues that he will be irreparably harmed without a stay because "he will be forced to go to trial" before his appeal on violations of his constitutional rights is heard. Def.'s Mem. at 39.  The government counters that defendant may properly raise his objections on appeal after his trial without waiving any constitutional rights, and so he faces no irreparable harm.  Gov't's Opp'n at 11.  The government is correct.

A showing of irreparable harm sufficient to stay proceedings requires an injury "both certain and great" that is "actual and not theoretical."  *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).  "[S]imply showing some possibility of irreparable injury fails to satisfy" this test.  *Nken*, 556 U.S. at 434–35.   "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough" and the possibility of "corrective relief . . . at a later date . . . weighs heavily against a claim of irreparable harm."  *Wis. Gas Co.*, 758 F.2d at 674 (citing *Va. Petroleum Jobbers Ass'n v. Fed. Power Comm'n*, 259 F.2d 921, 925 (D.C. Cir. 1958)).

Irreparable harm is far from "certain" or "actual" in defendant's case.  As discussed, defendant may challenge his extradition on appeal after trial without waiving any Fifth Amendment rights.  *See, e.g.*, *Sensi*, 879 F.2d at 892.  While defendant alleges that review of his constitutional rights cannot wait, *see* Def.'s Mem. at 39, he has not come to terms with the fact that denial of his Motion to Dismiss is an un-appealable order.[5]  Preparing for trial also does not

---

[5]     Defendant cites *Gilliam v. Foster*, 61 F.3d 1070 (4th Cir. 1995) (en banc), to argue that "issuance of a stay is the only means available to protect [his] constitutional right."  *Id.* at 1074.  That case is inapposite because it concerns a criminal defendant's request to temporarily enjoin state criminal proceedings that would otherwise violate his double jeopardy rights.  *Id.* at 1073.  Motions to dismiss on double jeopardy grounds are one such motion for which the collateral order exception applies, *see Midland Asphalt Corp.*, 489 U.S. at 799, but as explained above, defendant's extradition challenge does not raise similar rights not to be tried for which collateral review is appropriate.

suffice as grounds for delay.  Defendant has not proven that irreparable harm is certain, or even possible, at this junction.

    **3.**    ***Irreparable Harm to Others and Public Interest***

Defendant finally contends that the "possibility of harm faced by the government or co-defendant Jose Gonzalez-Valencia does not outweigh the potential harm faced by [defendant] if he is forced to face trial."  Def.'s Mem. at 40.  He also posits that public interest favors a stay because the public seeks to "protect[]" defendant's constitutional and treaty rights.  *Id.* Defendant adds that "it is a waste of public resources and time to begin a trial when there is a substantial likelihood of success on the issues being raised on interlocutory appeal."  *Id.* at 41. He is incorrect on all points.

As proffered by the government, Govt's Opp'n at 11–12, co-defendant Jose González-Valencia has been detained since December 2017 waiting adjudication of his charges, *see United States v. González-Valencia*, No. 16-192, Gov't's Mot. for Pretrial Detention at 3, ECF No. 11, and delaying this trial pending defendant Gerardo González-Valencia's meritless appeal risks certain, great, actual, and imminent harm to co-defendant Jose González-Valencia, who is entitled to a speedy trial.  U.S. CONST. amend. VI.  The government also faces irreparable harm because, as more time passes, the government's almost decade-old evidence continues to age, which hurts witnesses' ability to recollect those events clearly at trial.  Public interest also favors speedy trials and does not favor wasting judicial resources with meritless appeals, let alone appeals on constitutional issues that could be raised after trial.  Coupled with the highly unlikely chance of defendant's success on the merits, a review of irreparable harm to the co-defendant and the government as well as the public interest heavily weighs against a stay.

## IV.    CONCLUSION AND ORDER

The Court's denial of defendant's Motion to Dismiss is a non-appealable order that does not divest the Court of jurisdiction.  Furthermore, competing interests do not weigh in favor of a stay of proceedings and defendant has failed to prove significant hardship for such relief.  For the foregoing reasons, it is hereby

**ORDERED** that defendant Gerardo González-Valencia's Emergency Motion to Stay Proceedings, ECF No. 111, is **DENIED**.

**SO ORDERED.**

Date:  September 1, 2022

_____
BERYL A. HOWELL
Chief Judge