```
                       UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF COLUMBIA

    *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
UNITED STATES OF AMERICA,          )  Criminal Action
                                   )  No. 16-65-1
vs.                                )
                                   )
GERARDO GONZALEZ-VALENCIA,         )  December 22, 2022
              Defendant.           )  1:33 p.m.
                                   )  Washington, D.C.

    *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

                   **TRANSCRIPT OF PLEA COLLOQUY**
                **BEFORE THE HONORABLE BERYL A. HOWELL,**
                **UNITED STATES DISTRICT COURT CHIEF JUDGE**

<u>**APPEARANCES**</u>:

```
FOR THE GOVERNMENT:
                    KAITLIN SAHNI
                    KIRK HANDRICH
                    U.S. Department of Justice
                    145 N Street NE
                    Two Constitution Square
                    Washington, DC 20530
                    (202) 598-2950
                    Email:  kaitlin.sahni@usdoj.gov


FOR THE DEFENDANT:
                    STEPHEN A. BEST
                    RACHEL WOLKINSON
                    GEOFFREY COLL
                    Brown Rudnick
                    601 Thirteenth Street, NW, Suite 600
                    Washington, DC 20005
                    (202) 536-1737
                    Email:  sbest@brownrudnick.com


ALSO PRESENT:  TERESA SALAZAR,
               Spanish Language Interpreter


Court Reporter: Elizabeth Saint-Loth, RPR, FCRR
                Official Court Reporter

              Proceedings reported by machine shorthand.
            Transcript produced by computer-aided transcription.
```

**P R O C E E D I N G S**

1    THE COURTROOM DEPUTY:  Matter before the Court,

Criminal Case No. 16-65-1, United States of America versus

Gerardo Gonzalez-Valencia.

        Counsel, please come forward and state your names

for the record.

        MS. SAHNI:  Good afternoon, Your Honor.

Kaitlin Sahni for the United States.  I am joined by my

co-counsel, Kirk Handrich.

        THE COURT:  Good afternoon.

        MR. BEST:  Good afternoon, Your Honor.

Stephen Best on behalf of Mr. Gonzalez-Valencia.  Along with

me is Ms. Rachel Wolkinson and Mr. Geoffrey Coll, C-O-L-L.

        THE COURT:  All right.  Good afternoon.

        Good afternoon, Mr. Gonzalez-Valencia.

        Are you able to hear?

        THE INTERPRETER:  Your Honor, the defendant needs

to use the microphone, otherwise the interpreter can't hear

him.  Those are only receivers.

        THE COURT:  Is that right?

        Well, can you move the microphone over to him?

        THE DEFENDANT:  Hello.  I say good afternoon.

        THE COURT:  Okay.  Thank you.

        All right.  So I understand that the purpose of

Mr. Gonzalez-Valencia's appearance here today is to enter a

1    plea of guilty to Count 1 of the indictment that charges him

2    with conspiracy to distribute five kilograms or more of

3    cocaine for importation into the United States, in violation

4    of 21 U.S.C. Sections 959, 960, and 963.

5              Is that correct, Mr. Best?

6              MR. BEST:  Yes, Your Honor.

7              THE COURT:  All right.  So I am just going to have

8    you sit there, close to the microphone.  That keeps us all

9    away from each other as COVID continues to spread.

10              Mr. Gonzalez-Valencia, I have to ask you a number

11    of questions during this hearing.  I have to assure myself

12    that you understand what you are doing by entering a plea of

13    guilty today, that your entry of a plea of guilty is knowing

14    and voluntary, you understand the penalties you are facing,

15    the nature of the charges, and so on.  And, also, I have to

16    assure myself that you understand the rights that you are

17    giving up.

18              Do you understand all of that?

19              THE DEFENDANT:  Yes.  I understand that perfectly.

20              THE COURT:  So if at any time I ask you a question

21    that you want me to repeat before you respond or if you want

22    to talk to one of your lawyers before you respond, just let

23    me know; I will either repeat it or I will give you time to

24    talk to your lawyers.

25              Do you understand?

```
1                THE DEFENDANT:  Okay.  That's fine.

2                THE COURT:  All right.

3                (Whereupon, the Court and staff confer.)

4                (Whereupon, GERARDO GONZALEZ-VALENCIA, sworn.)

5                THE DEFENDANT:  I so swear.

6                THE COURT:  All right.  Thank you.

7                Mr. Gonzalez-Valencia, you are now under oath.

8     This means if you do not answer my questions truthfully --

9     you can put your hand down -- you can be prosecuted for

10    perjury or for making a false statement, and any false

11    answers you give to me can be used against you in that

12    prosecution.

13                Do you understand?

14                THE DEFENDANT:  Yes, I understand.

15                THE COURT:  All right.  Mr. Gonzalez-Valencia,

16    what is your full name?

17                THE DEFENDANT:  Gerardo Gonzalez-Valencia.

18                THE COURT:  How old are you, Mr. Gonzalez-Valencia?

19                THE DEFENDANT:  45.

20                THE COURT:  How far did you go in school?

21                THE DEFENDANT:  Preparatory school, high school.

22                THE COURT:  And do you have any difficulty reading

23    or writing?

24                THE DEFENDANT:  No, none.

25                THE COURT:  Okay.  He is sort of responding in
```

```
1    English, I think.  But I can't hear you because you are not

2    speaking very loudly into the microphone.

3              Could you speak up.

4              THE DEFENDANT:  Okay.

5              THE COURT:  Just say "test, test, test."

6              THE DEFENDANT:  Test, test, test.

7              THE COURT:  That I could hear.  Perfect.  Okay.

8              Mr. Gonzalez-Valencia, where were you born?

9              THE DEFENDANT:  In Santa Clara County, in

10   California.

11             THE COURT:  In California?

12             THE INTERPRETER:  In Santa Clara County,

13   California.

14             That was in English, Your Honor.

15             THE COURT:  Thank you.  You are hearing better

16   than I am.

17             If you are not a U.S. citizen, do you understand

18   that conviction of this offense may result in your

19   deportation, exclusion from the United States, or denial of

20   citizenship under our immigration laws?

21             THE DEFENDANT:  Yes.  I understand.

22             THE COURT:  Have you taken any alcohol or drugs in

23   the last 48 hours or any medicine that could affect your

24   ability to understand what you are doing here today?

25             THE DEFENDANT:  No.
```

```
 1              THE COURT:  Have you received any treatment
 2    recently for any type of mental illness or emotional
 3    disturbance or addiction to narcotic drugs of any kind?
 4              THE DEFENDANT:  No.
 5              THE COURT:  Are you completely satisfied with the
 6    services of your attorneys in this case?
 7              THE DEFENDANT:  Yes.
 8              THE COURT:  Have you had enough time to talk to
 9    your attorneys and discuss the case, the evidence against
10    you, the plea agreement, and whether or not you should
11    accept the plea agreement and plead guilty?
12              THE DEFENDANT:  Yes.  I've reviewed everything
13    with them.
14              THE COURT:  Is there a plea agreement in this case?
15              MR. BEST:  No, Your Honor.
16              THE COURT:  No plea agreement.
17              Okay.  I'm sorry.  That's typically -- there is
18    usually a plea agreement in the case, but there isn't a plea
19    agreement in this case.
20              Is that right, Mr. Best?
21              MR. BEST:  That is correct, Your Honor.  There
22    isn't.  It's a plea straight up.
23              THE COURT:  Right.  He's pleading straight up to
24    the sole count in the indictment, correct?
25              MR. BEST:  Yes, Your Honor.
```

1        There is some agreement on a joint stipulation of

2    facts.  There is an agreement that there is going to be a

3    two-point enhancement for the use of a submarine device.

4    Other than that, there is no agreement to any other

5    enhancements.  There is an agreement, a two-point reduction,

6    and a possible three-point reduction.  But past that, there

7    is -- it's just a plea straight up.

8        THE COURT:  Okay.  Well, that is -- I think that

9    that -- I knew that there was some sort of estimated

10    guideline --

11        MR. BEST:  Correct.

12        THE COURT:  -- workout or -- I don't know whether

13    it's a full agreement, and I wanted to flesh that out here.

14        MR. BEST:  I don't know what to characterize it as

15    either.

16        THE COURT:  I wasn't sure how to characterize it,

17    but we're going to get into the details of that shortly.

18        MR. BEST:  Yes.

19        THE COURT:  Mr. Best, do you have any question as

20    to Mr. Gonzalez-Valencia's competency to enter a guilty plea

21    today?

22        MR. BEST:  No, Your Honor.

23        THE COURT:  Does the government have any issue or

24    question about his competency to enter a plea today?

25        MS. SAHNI:  No, Your Honor.

1          THE COURT:  Well, Mr. Gonzalez-Valencia appears to

2     be following my questions and responding appropriately.  He

3     appears capable and competent of entering an informed plea

4     today, so I will proceed with the rest of the hearing.

5          At the next part of this hearing,

6     Mr. Gonzalez-Valencia, I am going to be explaining to you

7     certain rights that you hold under our Constitution and

8     laws.  Some of these questions may sound a bit legalistic,

9     and so I want to remind you that:  If you would like me to

10     repeat any question, just let me know and I will do so; or,

11     if you want a moment to speak to Mr. Best or one of your

12     other lawyers before you respond, I will give you that

13     opportunity.

14          Do you understand?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  Now, you have a right to plead not

17     guilty and to have a jury trial on the charge in this case.

18     And that would mean that 12 citizens from the District of

19     Columbia would sit in the jury box to my left and listen to

20     the evidence presented by the government and decide your

21     guilt or innocence based on that evidence.

22          Do you understand that you have a right to a jury

23     trial in this case?

24          THE DEFENDANT:  Yes, I do understand the

25     proceedings.

1            THE COURT:  If you had a trial, you would have a

2    right to be represented by your lawyer at the trial and at

3    every other stage of the proceedings and, if necessary, have

4    the Court appoint counsel for you.

5            Do you understand that?

6            THE DEFENDANT:  Yes, Your Honor.  I do understand.

7            THE COURT:  Thank you.

8            If you had a trial, you would have a right through

9    your lawyer to confront, meaning to cross-examine, any

10   witnesses against you.

11           Do you understand that?

12           THE DEFENDANT:  Yes.  I do understand that, Your

13   Honor.

14           THE COURT:  If you had a trial, you would also

15   have a right to present your own witnesses and the right to

16   subpoena witnesses, requiring them to come to court to

17   testify in your defense.

18           You would also have the right to testify and

19   present evidence on your own behalf if you wanted to.

20           Do you understand that?

21           THE DEFENDANT:  Yes, Your Honor.  I do understand

22   that.

23           THE COURT:  You would not have to testify or

24   present any evidence at the trial if you did not want to

25   because you cannot be forced to incriminate yourself or

1    present evidence of your own guilt, and that cannot be used

2    against you.

3              Do you understand that?

4              THE DEFENDANT:  I understand that, Your Honor.

5              THE COURT:  You are presumed by the law to be

6    innocent.  And if you chose to go to trial, it would be the

7    government's burden alone to prove your guilt beyond a

8    reasonable doubt.

9              Do you understand that?

10             THE DEFENDANT:  Yes.  I do understand that, Your

11   Honor.

12             THE COURT:  If you went to trial on the charge in

13   the indictment against you and were convicted, you would

14   have the right to appeal your conviction of guilt to the

15   Court of Appeals and to have your lawyer help you prepare

16   your appeal.

17             Do you understand that?

18             THE DEFENDANT:  Yes.  I do understand that, Your

19   Honor.

20             THE COURT:  Do you understand that by entering a

21   plea of guilty to the offense in the indictment against you,

22   you are giving up your right to appeal your conviction of

23   guilt in this case except in some very limited

24   circumstances, such as if you claim ineffective assistance

25   of counsel in entering your guilty plea.

1              Do you understand that?

2              THE DEFENDANT:  Yes.  I do understand that, Your

3     Honor.

4              THE COURT:  Now, the offense to which you are

5     pleading guilty is a felony offense.  If I accept your

6     guilty plea and find you guilty of that offense, it may

7     deprive you not just of the constitutional rights I have

8     just reviewed with you, but also valuable civil rights, such

9     as:  The right to vote, the right to hold public office, the

10    right to serve on a jury, and the right to possess a firearm

11    in this country.

12             Do you understand that?

13             THE DEFENDANT:  Yes.  I do understand that, Your

14    Honor.

15             THE COURT:  Do you understand that by entering a

16    plea of guilty and being convicted of this felony offense

17    you may also face enhanced or increased punishment if you

18    are convicted of another crime in the future?

19             THE DEFENDANT:  Yes.  I understand that, Your Honor.

20             THE COURT:  Okay.  So I have reviewed the

21    statement of facts that's been provided -- I have been

22    provided with a statement of facts, and it's docketed at

23    139; it's not stipulated to or signed by the government, and

24    it's not signed by the defendant.

25             Just by counsel for Mr. Gonzalez-Valencia, what

```
 1    kind of stipulation or statement of facts is this?  Can

 2    somebody explain this to me?

 3              Is the government agreeing to this statement of

 4    facts?  And, if so, why isn't it signed by the government?

 5              MS. SAHNI:  Your Honor, the government is agreeing

 6    to this statement of facts.  However, the government intends

 7    to produce more evidence at sentencing that goes beyond what

 8    is in this joint statement of facts -- in this defendant's

 9    statement of facts.  Excuse me.

10              THE COURT:  I see.  So the government is not

11    signing off on this because the government doesn't want to

12    be criticized -- if not by this Court, by the Court of

13    Appeals -- for presenting evidence beyond what's in a

14    signed statement of facts?

15              MS. SAHNI:  Your Honor, the government has

16    reviewed this and believes that it is legally sufficient for

17    what the defendant intends to plead to today.

18              THE COURT:  Okay.  So I have on the record that

19    the government agrees to this statement of facts.

20              Okay.  Is there any reason why you didn't just say

21    that in a signed document so I could avoid going through

22    this at the plea hearing?

23              MS. SAHNI:  No, Your Honor.  There is no reason.

24              THE COURT:  I mean, this is a little bit unusual

25    enough because there is no plea agreement that lays out
```

1    fully all of the terms.  Okay.

2           Now I'm going to turn to Mr. Best.  Why isn't

3    Mr. Gonzalez-Valencia's acknowledgment that everything in

4    this statement of facts is true and accurate -- why hasn't

5    he signed off on this?

6           This is -- I mean, it's all fine and good for you,

7    Mr. Best, to have signed off on it.  But what I really need

8    is the defendant's signature.

9           MR. BEST:  I have no explanation.  My co-counsel

10   is not here.  I apologize.

11          He was moved from the Alexandria detention

12   facility to Rappahannock, and we have not had access to him;

13   that may have been part of the confusion.

14          THE COURT:  All right.  Well, I am just going to --

15          MR. BEST:  He has reviewed it.

16          THE COURT:  Well, I am just going to have to go

17   through each of these on the record --

18          MR. BEST:  I understand.

19          THE COURT:  -- and he is under oath.

20          Okay.  Mr. Gonzalez-Valencia, I am looking at the

21   document with the number at the top, document 139.

22          MR. BEST:  For the record, he has the document in

23   front of him.

24          THE COURT:  Okay.  Good.  Thank you, Mr. Best.

25          Mr. Gonzalez-Valencia, have you reviewed this

1    document with your lawyer?

2              THE DEFENDANT:  Yes.  I reviewed everything.

3              THE COURT:  And does this document truly and

4    accurately reflect what you did in this case?

5              THE DEFENDANT:  Yes, ma'am.

6              THE COURT:  From, at least, in or about 2003, and

7    continuing up to and including April 19th, 2016, within

8    Mexico, the United States, and elsewhere, did you

9    unlawfully, knowingly, willfully, and intentionally conspire

10   and agree with others, both known and unknown, to commit the

11   offense against the United States of distribution more than

12   five kilograms of cocaine, which is a Schedule II controlled

13   substance, intending and knowing that it would be unlawfully

14   imported into the United States?

15             THE DEFENDANT:  Yes, Your Honor.

16             THE COURT:  And in furtherance, and during the

17   course of this conspiracy, did you personally invest your

18   own funds in connection with the purchase of more than five

19   kilograms of cocaine from Colombia and the transportation of

20   cocaine to Central America and Mexico, and the illegal

21   importation of the cocaine into the United States and Europe

22   for further distribution?

23             THE DEFENDANT:  Yes, Your Honor.

24             THE COURT:  And do you agree that in,

25   approximately, 2007 you invested in a shipment of cocaine

1    that you knew would be transported from Colombia to a

2    location off the coast of Guatemala, in the Pacific Ocean

3    using a semi-submersible vessel?

4            THE DEFENDANT:  Yes, Your Honor.

5            THE COURT:  Did you understand that that cocaine

6    would be transported from the semi-submersible vessel to

7    Mexico via go-fast boats?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  Do you also understand or know that

10    the U.S. Coast Guard interdicted the semi-submersible vessel

11    carrying the cocaine in which you invested in the Pacific

12    Ocean on about August 21, 2007?

13            THE DEFENDANT:  Yes, Your Honor.

14            THE COURT:  And do you know that the crew scuttled

15    the semi-submersible vessel and the Coast Guard then

16    recovered from the water where the semi-submersible vessel

17    sank, about 280 kilograms of cocaine?

18            THE DEFENDANT:  Yes, Your Honor.

19            THE COURT:  And did you know and intend that the

20    cocaine on board the semi-submersible vessel would be

21    imported into the United States?

22            THE DEFENDANT:  Yes, Your Honor.

23            THE COURT:  And did you participate in this

24    conspiracy through at least April 19, 2016?

25            THE DEFENDANT:  Yes, Your Honor.

```
 1              THE COURT:  Was your participation in the
 2      conspiracy in the acts that I have just reviewed with you
 3      knowing, intention, and willful, reflecting an intention and
 4      deliberation to do something the law forbids that was not,
 5      in any way, the product of any accident, mistake of law or
 6      fact, duress, entrapment, or public authority?
 7              THE DEFENDANT:  Yes, Your Honor.
 8              THE COURT:  And are you pleading guilty because
 9      you are, in fact, guilty?
10              THE DEFENDANT:  Yes, Your Honor.  That is so.
11              THE COURT:  Could the government please state the
12      elements of the charge against Mr. Gonzalez-Valencia?
13              MS. SAHNI:  Yes, Your Honor.
14              First, from at least January 2003 through
15      April 19, 2016, the defendant agreed with one or more
16      persons to accomplish a common and unlawful plan, namely, to
17      distribute five kilograms or more of a mixture or substance
18      containing a detectable amount of cocaine; second, the
19      defendant knew or intended that the cocaine would be
20      unlawfully imported into the United States; and, third, the
21      defendant joined the agreement with the intent to further
22      its unlawful purpose.
23              THE COURT:  Mr. Best, do you agree that those are
24      the elements of the offense?
25              MR. BEST:  Yes, Your Honor.
```

1          THE COURT:  Mr. Gonzalez-Valencia, do you have any

2     questions about the charge against you, or do you fully

3     understand it?

4          THE DEFENDANT:  I understand it completely, Your

5     Honor.  I have no doubt.

6          THE COURT:  All right.  Mr. Gonzalez-Valencia, I

7     know you have reviewed -- I am sure quite thoroughly with

8     your lawyers -- what the penalties are that you are facing

9     if I accept your guilty plea here today.  But this is such

10     an important part of what I have to make sure you

11     understand, I am obligated to review with you the penalties

12     you may face if I accept your guilty plea today.

13          So the statutes to which you are entering a plea

14     of guilty set the penalty you could receive as a maximum

15     sentence of life imprisonment, a mandatory minimum sentence

16     of ten years, a supervised release term of at least five

17     years, a maximum fine of $10 million; a special assessment

18     of $100, and a fine sufficient to pay the federal government

19     the cost of any imprisonment, term of supervised release, or

20     period of probation.

21          Do you understand that those are the statutory

22     penalties that apply in your case?

23          THE DEFENDANT:  Yes.  I do understand that, Your

24     Honor.

25          THE COURT:  And you understand that you have no

1    option of a probationary sentence in this case?

2            THE DEFENDANT:  Yes.  I do understand that, Your

3    Honor.

4            THE COURT:  Do you understand that because of your

5    conviction you may be subject to forfeiture of any property

6    that is sufficiently connected to your offense or proceeds

7    derived from your offense?

8            THE DEFENDANT:  Yes.  I do understand that.

9            THE COURT:  Now, in determining your sentence, in

10    addition to considering the statutory penalties that apply

11    in your case, I am also obligated to consider how the

12    federal guidelines manual applies in your case for a person

13    with your criminal history and your offense conduct.

14            I understand that the parties do dispute how to

15    calculate the guidelines here with the government's position

16    that the guidelines provide a more severe sentence for you

17    than what, on your behalf, your lawyers say should apply

18    under the guidelines, and some of that may depend on facts

19    that are not presented to me in the statement of facts that

20    the government is going to be prepared to prove at the time

21    of sentencing.

22            I am going to review with you the government's

23    position about what the most severe sentencing range may be

24    and that the government is going to argue before me at the

25    time of sentencing that applies in your case.

19

1          I want you to understand that, in making any

2     necessary findings of fact about how the guidelines apply in

3     your case, the government must establish those facts by what

4     is called the preponderance of the evidence, which is a

5     lower standard of proof than beyond a reasonable doubt that

6     would apply if the government had to prove facts at trial.

7          Do you understand that?

8          THE DEFENDANT:  Yes.  I do understand that, Your

9     Honor.

10         THE COURT:  So the government's position as to how

11    the guidelines should apply in your case is that your

12    Criminal History Category is III because you have one prior

13    felony conviction, which gives you three criminal history

14    points, plus you committed the instant -- the offense to

15    which you are pleading guilty today while on escape status,

16    which would add another two points, which results in a

17    criminal history score of 5, which puts you in a Criminal

18    History Category III.  There may be some dispute about that,

19    I don't know, but that's what the government's position is

20    going to be.

21         As to your estimated guidelines offense level, the

22    government's position is that your offense conduct, as part

23    of the conspiracy to which you are entering a guilty plea,

24    would be that you imported -- the conspiracy imported over

25    450 kilograms of cocaine, 450 kilograms or more of cocaine

1    which would, under the applicable guideline at 2D1.1(c)(1),

2    give you a starting point of 38 offense levels.  This

3    base-offense level could be increased by various specific

4    offense characteristics including two offense levels because

5    you unlawfully imported a controlled substance under

6    circumstances in which a semi-submersible vessel, as

7    described in 18 U.S.C. Section 2285, was used.  That's under

8    the guideline at 2D1.1(b)(3)(B); another four offense levels

9    because the government will seek to prove that you were an

10    organizer or a leader in the criminal activity, which

11    involved five or more participants under the guideline at

12    3B1.1 B; another two offense levels for possession of a

13    firearm in connection with the offense under the guideline

14    at Section 2D1.1(b)(1), and two offense levels for using

15    violence and making a credible threat to use violence or

16    directing the use of violence, under the guideline at

17    2D1.1(b)(2), with a decrease of three offense levels for

18    acceptance of responsibility and entering a plea of guilty

19    under Section 3E1.1.

20          The government's estimation is that this would

21    result in a total offense level of 45, which would be

22    reduced to a total offense level of 43 because that's the

23    cap which, in combination with a Criminal History Category

24    of III, would result in an advisory guideline range of life

25    imprisonment.

1    Do you understand that this is only an estimate of

2    how the guidelines will apply to your case, and that this

3    estimate is what the government has already said it's going

4    to urge me to adopt?

5    Do you understand that?

6    THE DEFENDANT:  Yes, Your Honor, I understand

7    that.  But, nevertheless, we are not in agreement with that

8    which the prosecution is saying; I believe it's ridiculous

9    and unjustified.

10    THE COURT:  And do you understand that the

11    sentence imposed may be different from any estimate that

12    your attorney or the government has said it may be?

13    THE DEFENDANT:  Yes.  I do understand that, Your

14    Honor.

15    THE COURT:  So in addition to looking at what the

16    statutory penalties are and what the sentencing guidelines

17    recommend, I am also required to consider certain sentencing

18    factors that are set out in a statute codified at 18 U.S.C.

19    Section 3553(a).  And that statute requires that I consider:

20    The nature and circumstances of the offense; your history

21    and characteristics, Mr. Gonzalez-Valencia; the need for the

22    sentence imposed to reflect the seriousness of the offense;

23    promote respect for the law; provide just punishment; afford

24    adequate deterrence; the kinds of sentences available; the

25    need to avoid unwarranted sentence disparities among

1    defendants found guilty of similar conduct with similar

2    criminal history, and the need to provide restitution.

3              Do you understand that I have to consider all of

4    those sentencing factors in determining the appropriate

5    sentence in your case?

6              THE DEFENDANT:  Yes, that's right.  The attorneys

7    explained that all to me.

8              THE COURT:  Now, has anyone including your

9    attorney, any law enforcement officers, the prosecutor, any

10   other person with whom you have come into contact since your

11   arrest promised or suggested to you that merely because you

12   are pleading guilty that I will give you a lighter sentence?

13             THE DEFENDANT:  No.  No one.

14             THE COURT:  Has anyone forced, threatened, or

15   coerced you in any way into entering a plea of guilty?

16             THE DEFENDANT:  No, no one.

17             THE COURT:  Are you entering this plea of guilty

18   voluntarily and of your own free will because you are guilty

19   and for no other reason?

20             THE DEFENDANT:  Yes.  That's right, Your Honor.

21             THE COURT:  Mr. Gonzalez-Valencia, how do you now

22   plead to the charge in Count 1 of conspiring to distribute

23   five kilograms or more of cocaine, knowing and intending

24   that the cocaine would be unlawfully imported into the

25   United States; guilty or not guilty?

1              THE DEFENDANT:  I plead guilty.

2              THE COURT:  All right.  I am satisfied that

3    Mr. Gonzalez-Valencia appears to be fully competent and

4    capable of entering an informed plea today.  He understands

5    the nature of the charge, the consequences of the plea, and

6    there does appear to be a factual basis for the plea and,

7    therefore, I do accept his plea.  He is now adjudged guilty

8    of the offense, Count 1 of the indictment.

9              So, Counsel, I would suggest for a sentencing

10   date:  Friday, March 17th, at 9:30.  Could you check your

11   calendars as to whether that's convenient for you?

12             MR. BEST:  Can I beg your indulgence for a date in

13   April?

14             THE COURT:  Of course.

15             MR. BEST:  Thank you.  It's my kid's last spring

16   break.

17             THE COURT:  That's special.

18             Ms. Gumiel, I didn't bring my calendar, of course.

19             Give me a date in April.

20             THE COURTROOM DEPUTY:  April 1 or April 8, Your

21   Honor.

22             THE COURT:  Both are Fridays?

23             THE COURTROOM DEPUTY:  Yes.

24             THE COURT:  We can do Friday, April 8, at 9:30.

25             MR. BEST:  That's great.

```
 1                  THE COURT:  Does that work?

 2                  How about for the government?

 3                  MS. SAHNI:  Yes, Your Honor.  Yes, Your Honor.

 4                  THE COURT:  I will set that down then for the

 5      sentencing date.

 6                  Is there anything further to address today?

 7                  MR. BEST:  I believe April 8th is a Saturday.

 8                  THE COURT:  Is it?  Ms. Gumiel?

 9                  THE COURTROOM DEPUTY:  Sorry, Your Honor.

10                  MR. BEST:  April 7 is a Friday.

11                  THE COURT:  Let me see what my schedule is like

12      that day.

13                  April 7, 2023?  We're almost there.

14                  Okay.  We'll set it down for April 7, at 9:30.

15                  MR. HANDRICH:  If I may.

16                  THE COURT:  Yes.

17                  MR. HANDRICH:  That is a good date for the

18      government.

19                  I think we just want to make you aware, there is a

20      possibility it could take more than a full day.  We are

21      calling several witnesses.  Obviously, I can't speak to what

22      the defense may want to present, Your Honor.  So we just

23      wanted to make the Court aware of that, that it is possible.

24                  THE COURT:  So maybe we should have the sentencing

25      hearing then --
```

1          THE COURTROOM DEPUTY:  On the 6th?

2          THE COURT:  Why don't we do it on a Thursday?

3          THE COURTROOM DEPUTY:  On the 6th?

4          (Whereupon, the Court and staff confer.)

5          THE COURT:  Let's set it for April 6th, which is a

6   Thursday.  That way, I won't have lots of other matters

7   backed up.

8          MR. BEST:  That is great.

9          MR. HANDRICH:  That works for the government.

10          MR. BEST:  Speaking through you, we don't have any

11   documentary evidence of any conduct that is at issue, other

12   than the submarine which he just pled to.  So if we can have

13   some guidance from the Court as to discovery before that,

14   that would be great.

15          THE COURT:  All right.  Why don't we say at least

16   a month before the sentencing hearing the government will

17   produce to the defense information about what you are

18   planning on presenting.  And at least two weeks before the

19   hearing -- I hope my law clerk is writing all this down so

20   she can enter a scheduling order -- two weeks beforehand, I

21   am going to want from the government a witness list and a

22   summary of what the witnesses are testifying to.

23          MR. HANDRICH:  Yes.

24          THE COURT:  And that would be helpful, I think, to

25   all of us.  Two weeks before the sentencing hearing I will

```
1    want the same from the defense.

2              MR. BEST:  Yes, Your Honor.

3              THE COURT:  All right.  Do you need more of a

4    schedule than that?

5              MR. BEST:  That's great.

6              THE COURT:  I am here to schedule.

7              MR. BEST:  We're good.

8              THE COURT:  All right.  If there is nothing

9    further, you are all excused.

10             THE COURTROOM DEPUTY:  Your Honor, vacate the

11   trial date?

12             THE COURT:  I will vacate the trial date in this

13   case, and any pretrial motions scheduled.

14             MR. BEST:  Thank you, Your Honor.

15             MS. SAHNI:  Your Honor, if I may.

16             Just one thing so the record is clear.  I know the

17   government has indicated before that it did not intend to

18   pursue the methamphetamine portion of Count 1, but I would

19   just like to formally move to dismiss that portion of Count 1.

20             THE COURT:  Granted.

21             MS. SAHNI:  Thank you.

22             MR. BEST:  The last housekeeping matter is:  When

23   the Northern District of California sends its files, we

24   can -- we're on the Court's convenience to come back and

25   address that.
```

1          THE COURT:  Well, you will just let me know.  But

2     I think there was an extradition treaty issue with that.  I

3     think he was extradited on one charge, and that's a totally

4     different charge.

5          MR. BEST:  Yes.

6          THE COURT:  You know that's Northern District of

7     California's particular issue; they didn't piggyback on your

8     extradition request.

9          MS. SAHNI:  No, they did not, Your Honor.

10          MR. BEST:  Okay.

11          THE COURT:  So we're moving forward.

12          MR. BEST:  Sounds great.

13          THE COURT:  Okay.

14          MR. BEST:  Happy holidays.

15          THE COURT:  Okay.  Same to you.

16          (Whereupon, the proceeding concludes, 2:12 p.m.)

17                              *  *  *  *  *

18                              **CERTIFICATE**

19          I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby
      certify that the foregoing constitutes a true and accurate
20    transcript of my stenographic notes, and is a full, true,
      and complete transcript of the proceedings to the best of my
21    ability.
            This certificate shall be considered null and void
22    if the transcript is disassembled and/or photocopied in any
      manner by any party without authorization of the signatory
23    below.

24    Dated this 14th day of February, 2023.

25    /s/ Elizabeth Saint-Loth, RPR, FCRR
      Official Court Reporter