# <u>EXHIBIT S</u>



**Sentencia Nro. 13/2017**                                      IUE 474-76/2016

Montevideo, 28 de Agosto de 2017

**VISTOS:**

Para sentencia definitiva de primera instancia estos autos caratulados **"GONZÁLEZ VALENCIA, Gerardo.- EXTRADICIÓN IUE 474-76/2016,** con la intervención del sr. Fiscal Letrado Nacional en lo Penal Especializado en Crimen Organizado de Segundo Turno Dr. Luis Pacheco y la Defensa de Confianza Dr. Víctor Della Valle y Dr. Carlos Balbi.-

**RESULTANDO:**

1) El 16 de junio de 2016 se recibió en esta sede solicitud de extradición de Gerardo González Valencia remitida vía diplomática por el Departamento de Justicia de Estados Unidos de América (fs. 1-107).

Previa vista del Ministerio Público, por providencia n° 701/2016 del 27 de junio de 2016, la sede realizó objeción a la solicitud por inobservancia de presupuestos de admisibilidad dispuestos por el art. 10 numeral 5 literal a) del Tratado de Asistencia Mutua en materia Penal y Extradición (ley n° 15.476) y exigió al Estado requirente el cumplimiento de tales requisitos así como información complementaria de acuerdo al art. 11 primer párrafo in fine del mismo Tratado (fs. 108-114).

2) El 2 de febrero de 2017 se recibió documentación remitida vía diplomática por el Estado requirente (fs. 125-131).

Por dictamen n° 156/2017 del 23 de febrero de 2017, el representante del Ministerio Público entendió cumplidos los requisitos necesarios para dar trámite a la solicitud de extradición (fs. 132 vto.-135).

Por resolución n° 181/2017 del 3 de marzo de 2017 y de conformidad con el dictamen fiscal, se dio inicio al proceso de extradición de acuerdo a las previsiones de los Tratados de Montevideo, específicamente los arts. 33 a 37 del Tratado de Derecho Penal Internacional de 1940 -aplicables por analogía en el caso de acuerdo a los principios del debido proceso y reglas que informan el proceso en general, en lo que no estuviere expresamente previsto (fs. 136-137).



3) En audiencia convocada –la cual fuera prorrogada en dos oportunidades a solicitud del propio requerido- y en presencia de su defensor, Gerardo González Valencia no aceptó la extradición solicitada (fs. 141-160).

Conferida vista del requerimiento formulado por las autoridades estadounidenses, la Defensa de Confianza del requerido compareció a deducir oposición, por las razones que se exponen en fundado escrito presentado en tiempo y forma, con documentación adjunta (fs. 161-220).

4) Por su parte, por dictamen n° 682/2017 del 12 de junio de 2017 el representante del Ministerio Público abogó por acoger la solicitud de extradición supeditada a las condiciones que establece (fs. 222-227).

5) Por auto n° 682/2017 del 15 de junio de 2017 la Jueza subrogante de la sede citó a las partes para resolución, habiendo subido los autos al despacho con fecha 23 de junio de 2017 (fs. 228-230 vto.).

**CONSIDERANDO:**

1) Se sustancia en estos obrados el proceso de la extradición solicitada por las autoridades competentes de los Estados Unidos de América respecto de Gerardo González Valencia a fin de ser sometido a proceso penal en dicho país por cargos de narcotráfico.

La extradición constituye un instituto de cooperación jurídica penal internacional, entendida como "toda aquella actividad de naturaleza procesal realizada en un Estado al servicio de un proceso penal promovido o a promoverse ante extraña jurisdicción". Cooperación que se hace efectiva "cuando el aparato jurisdiccional de un Estado, que no tiene imperio sino dentro de su territorio, recurre a la colaboración que le pueden prestar otros Estados a través de su actividad jurisdiccional" (Vieira, M., García Altolaguirre, C.- Extradición, FCU, ps. 108-109). Por su parte, sostiene el Prof. Miguel Langón que la extradición es la máxima expresión del principio de cooperación jurídica internacional entre los Estados en la lucha contra la delincuencia, consagrándose una verdadera obligación del Estado requerido de acceder al pedimento respectivo, dentro de los límites convencionales y legales en su caso (Curso de Der. Penal y Procesal Penal, ed. Del Foro, año 2003, ps. 119-121; Cfme. Cairoli, M. La cooperación penal internacional, la asistencia mutua y la Extradición, FCU, año 2000, p. 59).

En el mismo sentido se ha pronunciado la jurisprudencia nacional, afirmando pacíficamente que "la extradición como tal instituto se ubica modernamente dentro de la cooperación judicial penal internacional, la cual necesariamente debe ser encarada como un estatuto global integrado de solidaridad y garantías y a su vez habilita a visualizar a aquélla como un estatuto global de auxilio interetático y de garantías" (Rev. Der. Penal, n° 20, c. 146, p. 574).

Estos principios han sido recogido por numerosos tratados, los que consagran la obligación de los Estados de conceder la extradición cuando se cumplan las condiciones que se establecen, a modo de ejemplo: el Tratado Modelo de Extradición aprobado por la Asamblea General de las Naciones Unidas el 3 de abril de 1991, la Convención de Viena de 1988 sobre tráfico internacional de drogas, el Tratado de Extradición y Cooperación en Materia Penal entre la República Oriental del Uruguay y los Estados Unidos de América ratificado por nuestro país por dec-ley n° 15.476, el Tratado de Extradición entre Argentina y Uruguay ratificado por nuestro país por ley n° 17.225, el Acuerdo de Extradición entre los Estados partes del Mercosur ratificado por Uruguay por ley n° 17.499.

En mérito a todo ello, es indiscutible que existe una obligación internacional de extraditar a las personas reclamadas que se encuentren en las condiciones previstas en la normativa aplicable y de acuerdo a los principios que rigen la extradición.

2) El régimen de la extradición se regula en primer lugar por los Tratados ratificados entre los países, los cuales son "ley entre las partes". En defecto de Tratado, nuestro ordenamiento interno prevé el régimen de extradición en el art. 13 del C.P. y el art. 32 del C.P.P (Langón, ob. cit., ed. 2003, p. 128-129).

En el caso de autos es de aplicación el Tratado de Extradición y Cooperación en Materia Penal entre la República Oriental del Uruguay y los Estados Unidos de América, suscrito en Washington el 6 de abril de 1973 y aprobado por nuestro país por el dec-ley n°15.476 del 26 de octubre de 1983. Ello sin perjuicio de la aplicación de los principios generales del debido proceso y específicamente los principios que rigen la extradición.

El Tratado no establece el procedimiento a seguir ante el pedido de extradición sino que éste se rige por la *lex fori*, esto es, la de la nacionalidad del juez que conoce en el asunto: en la especie, la legislación uruguaya. El Código del Proceso Penal vigente en nuestro ordenamiento tampoco regula el proceso de extradición, por lo cual la jurisprudencia, en forma prácticamente unánime, aplica el procedimiento previsto en los Tratados de Montevideo de 1989 y 1940, en vía analógica.

En mérito a ello, en estos obrados se dio cumplimiento al procedimiento establecido en el capítulo IV del Tratado de Montevideo de 1989, lo cual fue consentido por las partes quienes no formularon objeción al respecto.

Solamente cabe agregar que es actualmente unánime la jurisprudencia en entender que la sentencia a dictarse tiene naturaleza definitiva, desde que pone fin al proceso de extradición, proceso principal y único. Según expresara el Tribunal de Apelaciones de Primer Turno, "el juicio extraditorio configura un procedimiento contradictorio cuyo objeto principal y exclusivo es un fallo declarando la procedencia o improcedencia del requerimiento del país extranjero"

(Rev. Der. Penal, nº11, c. 453, p. 319). Por lo tanto, el plazo para su dictado es el previsto en el art. 90 inc. 2º lit. A del C.P.P.

3) El objeto del proceso extraditorio consiste en controlar la regularidad formal de la demanda, no correspondiendo al Tribunal del Estado requerido proceder a la valoración del fondo del asunto, lo cual constituiría una invasión de las atribuciones de la autoridad requirente –sin perjuicio del eventual análisis del cumplimiento del requisito *non bis in idem* si correspondiere. Como ha señalado reiteradamente nuestra doctrina y jurisprudencia, el proceso de extradición no valora las pruebas de culpabilidad, no decide la antijuridicidad de la conducta del requerido ni resuelve el fondo del asunto, sino que todo el examen se reduce a la simple verificación de la regularidad de la demanda de extradición, a la luz de las disposiciones internacionales y nacionales aplicables en cada caso.

Esta ha sido la posición constante de la Suprema Corte de Justicia, afirmando en sentencia nº 51/2010 que: "...En el procedimiento de extradición, lo único que debe valorarse es la legitimidad formal del pedido, puesto que toda otra consideración acerca del fondo, es decir de la tipicidad del o de los delitos por los que se cursa la solicitud, son absolutamente violatorias del principio de competencia de las autoridades requirentes. Los tribunales del país requerido que aceptan o no el pedido de extradición no son competentes para juzgar el mérito de la causa. En tal sentido De Olarte en su tratado sobre 'Extradición', pág. 49, afirmaba que el Juez que interviene no es convocado para declarar la inocencia o culpabilidad, porque 'la extradición no importa juicio ni castigo', limitándose su función a verificar si la solicitud es ajustada a las formalidades y exigencias sustanciales del Tratado Internacional ratificado por los dos Estados..." (Cf. sentencias de la Suprema Corte de Justicia nº 154/999, nº 184/001, nº 216/003, nº 191/005, nº 41/006, nº 219/007, nº 32/2010 entre otras).

En consecuencia, esta sentencia deberá pronunciarse exclusivamente respecto de la procedencia formal de la solicitud de extradición, analizándose para ello los Tratados aplicables en el caso.

4) Analizadas las resultancias de las presentes actuaciones a la luz del citado Tratado de Extradición y Cooperación en materia penal que vincula a nuestro país con Estados Unidos de América, resulta que la solicitud cumplió las formalidades exigidas por el art. 10, a saber:

a) se tramitó por vía diplomática, desde que González Valencia fue requerido formalmente por las correspondientes autoridades judiciales de losEstadosUnidosde América ante la Cancillería de nuestro País y la Suprema Corte de Justicia (fs. 1-8 y 100-107);

b) la petición contiene una relación circunstanciada del hecho incriminado (fs. 12-18 y fs. 32-35 y las respectivas traducciones a fs. 57-63 y fs. 77-80);

c) se adjunta la documentación necesaria para la identificación del requerido (fs. 46-53 y

00054530

traducción a fs. 91-99) y la normativa aplicable (fs. 20-30 y traducción a fs. 77-80);

c) se acompaña la orden de detención o de prisión dictada por la autoridad competente del Estado requirente (fs. 37 traducida a fs. 82).

d) se acompaña traducción al español de toda la documentación remitida, según se detallara en literales anteriores.

En relación a la previsión del art. 10.5 literal a del Tratado, los documentos se encuentran firmados por las autoridades competentes y cuentan con la certificación y el sello del Departamento de Estado de los Estados Unidos de América (fs. 9, traducido a fs. 54). Si bien no cuentan con la legalización por agente diplomático o consular de la República Oriental del Uruguay en los Estados Unidos de América, se entendió, de conformidad con el dictamen fiscal n° 156/2017, que dicho requisito no es exigible de acuerdo a lo dispuesto por el Convenio Suprimiendo la Exigencia de Legalización de Documentos Públicos Extranjeros, suscrito en la Haya en el año 1961 y aprobado por nuestro país por ley n° 18.836 del 15 de noviembre de 2011. Sin perjuicio de lo expuesto, cabe señalar que este punto no fue cuestionado por la Defensa del requerido.

5) Asimismo resulta de se cumplen los presupuestos exigidos en los arts. 1 y 2 del Tratado, que consagran los principios generales en materia de extradición: jurisdicción del Estado requirente, doble incriminación y gravedad de la pena. A saber:

a) Gerardo González Valencia es requerido por la comisión de delitos perpetrados en el país requirente (fs. 77-78), de acuerdo a lo previsto en el art. 1° del Tratado, por lo cual es indiscutible la jurisdicción de las autoridades competentes de dicho país.

b) El requerido es acusado por la comisión de delitos de narcotráfico, específicamente conspiración para introducir y distribuir sustancias que contenían cantidad detectable de cocaína y metanfetamina en Estados Unidos (fs. 77-78), lo que encuadra en la previsión del art. 2 n° 17 del Tratado. Delitos que también están previstos en nuestro ordenamiento nacional, de acuerdo a las tipificaciones establecidas en los arts. 31 a 33 y 59 del dec-ley n° 14.294 (en su actual redacción dada por la ley n° 17.016).

La condición referida en este literal consagra el principio de doble incriminación, el cual exige que "la imputación por la cual se solicita la extradición, esté también tipificada como delito, en el orden jurídico del Estado requerido, apreciándose ello con la debida flexibilidad y aun cuando no existiera el mismo *nomen iuris* en los tipos. Es decir, lo que lo exigible, es que el hecho y la forma de participación en el mismo, por el que la persona es reclamada, debe estar previsto como delito por la ley de las dos partes contratantes, aunque tengan distinta denominación y aunque el tipo delictivo tienda eventualmente a proteger distintos bienes jurídicos en ambas legislaciones

00054531



… la calificación de la conducta, debe realizarse en el marco de las disposiciones convencionales creadas por la voluntad de las partes, dicho de otra manera, *in ordinem* como enseñaba Alfonsín" (Viera y otro,ob. cit., p. 427).

c) Los delitos por los que se lo reclama son castigados en ambos países con pena mínima de prisión superior a un año, tal como exige el acápite del art. 2 del Tratado: en nuestro país, los arts. 31 y 34 del dec-ley nº 14.294; en el país requirente, se sanciona la conducta que se pretende imputar al requerido con penas no menores a diez años de privación de libertad (fs. 71-72). Se cumple así entonces el principio de gravedad de la pena.

6) Por último, la solicitud de extradición no encuadra en ninguna de las hipótesis previstas en el art. 5 del Tratado en las cuáles la extradición no es procedente.

En relación a la hipótesis prevista en el literal a del art. 5, la mísma consagra el principio *ne bis in ídem*. Este principio significa que nadie puede ser juzgado ni condenado dos veces por el mismo delito. Así expresó el Dr. Armando Tommasino: "La disposición impide el doble enjuiciamiento, y aunque no lo expresa, naturalmente también … la condena reiterada a un mismo individuo, por atribución del mismo hecho penal" (Principios, Derechos y Garantías en el Proceso, p. 63). El mismo principio vigente en el Derecho Nacional ha sido recogido en los Tratados de Extradición y aun cuando así no sea, se ha entendido que está "implícitamente consagrado en las disposiciones del art. 14.7 del Pacto Universal de los Derechos Civiles y Políticos que expresa: 'nadie podrá ser juzgado o condenado ni sancionado por un delito por el cual haya sido condenado o absuelto, por una sentencia firme de acuerdo con la Ley y el procedimiento penal de cada país'. Norma que ha sido tomada, aunque con algunas variantes, en el Pacto de San José de Costa Rica (art. 8.4) y constituye en nuestra opinión el de ser una norma de *ius cogens* internacional (Viera-Altolaguirre, "Extradición", Pág. 200).

El Tratado de Extradición celebrado entre Estados Unidos y Uruguay recoge en el principio mencionado, al disponer que no se concederá la extradición: "a) cuando la persona cuya entrega se gestiona ya hubiera sido juzgada y condenada o absuelta o estuviere siendo juzgada en el territorio del Estado requerido por el delito por el cual se solicita la extradición".

Al respecto corresponde señalar que si bien Gerardo González Valencia registra causa penal abierta en nuestro país, la solicitud de extradición no incurre en violación del principio *ne bis in idem*, desde que no refiere a los mismos hechos por los cuales está siendo juzgado en nuestro país. En efecto, el requerido se encuentra sometido a proceso penal ante este Juzgado Letrado Penal Especializado en Crimen Organizado de Primer Turno en autos IUE 2-37467/2016, imputado de la comisión de un delito de Lavado de activos previsto en el art. 54 del dec-ley nº 14.294, en su actual redacción dada por el art. 2 de la ley nº 18.494. No se le imputa en dicho proceso la comisión de delito de narcotráfico en ninguna de sus modalidades. Por lo cual la hipótesis no encuadra en la previsión del art. 5 literal a del Tratado.

En relación a la previsión del art. 5 literal c, que dispone que no se concederá la extradición "cuando la acción o la pena haya prescrito según las leyes del Estado requerido o requirente", se comparten las consideraciones de la Fiscalía en cuanto entiende que no ha operado la prescripción de los delitos por los cuales se requiere a González Valencia. Sin perjuicio de lo que se dirá más adelante al analizar las objeciones formuladas por la Defensa del requerido.

Resulta claramente de autos que la solicitud de extradición de González Valencia no encuadra en ninguna de las restantes hipótesis previstas en el art. 5 ya citado.

7) En suma, entiende la sentenciante que la extradición solicitada reúne los requisitos formales exigidos por el Tratado de Extradición que vincula a nuestro país con el Estado requirente y no encuadra en ninguna de las hipótesis de improcedencia de la solicitud antes mencionadas.

Sin perjuicio de ello, esta sentencia deberá resolver las cuestiones planteadas en la oposición formulada por la Defensa de Confianza de González Valencia, que fueran claramente reseñadas en la contestación del Ministerio Público, a saber: a) que el Tratado de Extradición refiere a personas procesadas o condenadas, lo cual no se configura en la especie y se trata de un juicio en rebeldía; b) que la declaración jurada presentada por el país requirente está viciada; c) que la declaración jurada no presenta evidencia que respalde ningún delito ocurrido dentro de los cinco años de la fecha del procesamiento por lo que ha operado la prescripción; d) que la declaración jurada no presenta evidencia y solo contiene afirmaciones de dos testigos colaboradores, respecto de los cuales omite información sobre su credibilidad; e) que el requerido enfrenta riesgos de ser condenado a muerte o a cadena perpetua.

8) En primer lugar, tal como señala la Defensa, el art. 2 del Tratado dispone que "serán entregadas las personas procesadas o condenadas por cualquiera de los delitos siguientes ......". Por otra parte, el art. 10.3 establece, entre los requisitos exigidos a la solicitud de extradición, que "cuando el requerimiento se refiera a una persona que aún no ha sido condenada, deberá ser acompañado de una orden de detención o de prisión o del auto de procesamiento judicial equivalente, emanado de la autoridad competente de la Parte requirente".

En este sentido, se comparte la posición de la Fiscalía, entendiendo que es admisible la solicitud de extradición cuando la persona aún no se encuentra "procesada" desde que alcanza para su requisitoria la orden de detención y teniendo en cuenta que el término "procesado" puede tener significado diverso en cada sistema procesal.

También se discrepa con la Defensa desde que, a juicio de la suscrita, no se ha cumplido respecto del requerido un juicio en rebeldía en el país requirente. De la documentación recibida resulta que con fecha 19 de abril de 2016 un jurado indagatorio del Distrito de Columbia presentó una acusación contra González Valencia por el cargo de conspiración para la introducción y distribución de sustancias estupefacientes en Estados Unidos (fs. 77-80). En mérito a dicha

acusación, el Tribunal de Distrito de Estados Unidos para el Distrito de Columbia libró la orden de detención correspondiente (fs. 82).

La declaración jurada de la Fiscal Litigante de la Unidad contra Narcóticos y Drogas Peligrosas de la División Penal del Departamento de Justicia de Estados Unidos Amanda Liskamm reseña claramente cuál es el procedimiento a seguir por el jurado indagatorio: el mencionado jurado examina las pruebas presentadas por las autoridades del orden público y en caso de entender que existen indicios suficientes para determinar que el hecho delictivo se ha cometido y que el acusado es el autor, dicta una "resolución de acusación" (fs. 58 numeral I). Ese fue el procedimiento seguido respecto de González Valencia, de acuerdo a lo reseñado en el párrafo anterior.

Esto en modo alguno significa que se haya sustanciado un proceso penal contra el requerido, sino que como se especifica en la declaración de la Fiscal Litigante "para que se profiera una sentencia condenatoria en contra de González Valencia ...... Estados Unidos debe demostrar en el juicio que González Valencia llegó a un acuerdo ...." , esto es, el Estado deberá acreditar en juicio los hechos invocados en la acusación (fs. 61 nº 17). A fin de llevar a cabo el juicio es que se solicita la extradición (fs. 62 nº 20).

8) En segundo lugar, respecto de la declaración jurada del Agente Especial Kyle Mori de la Agencia de Control de Drogas, no es de relevancia en este proceso de extradición el control de las observaciones formales esgrimidas por la Defensa, tales como la competencia del Tribunal ante el cual se rindió la declaración. Por el contrario la declaración reseña las actividades delictivas que se pretenden imputar al requerido González Valencia y a las pruebas recolectadas a tal fin, siendo éstos sí los extremos relevantes para el dictado de la presente sentencia.

En este sentido, tampoco se comparte que la prueba mencionada por el Agente Especial Kyle Mori sea insuficiente para respaldar la acusación y que ésta se funde casi exclusivamente en la declaración de dos testigos colaboradores.

Cabe reiterar los conceptos vertidos en el considerando nº 3 de esta sentencia, según los cuales en materia de extradición el juez lo único que tiene que hacer es controlar la regularidad formal de la solicitud y el cumplimiento de los requisitos exigidos por el Tratado aplicable al caso.

No corresponde entonces valorar la prueba producida por el Estado requirente sino que únicamente apreciarla para determinar que el pedido de extradición y la orden de arresto no sean manifiestamente infundados, de acuerdo a lo previsto por el art. 10.3 in fine del Tratado, que establece que "la parte requerida podrá solicitar que la requirente presente pruebas suficientes para establecer *prima facie* que la persona reclamada ha cometido el delito por el cual la extradición se formula. La parte requerida puede denegar la extradición si un examen del caso demuestra que la orden de arresto es manifiestamente infundada".

240

En el caso, la solicitud de extradición adjunta recaudos a fin de acreditar los hechos que se imputan a González Valencia, a saber: declaración jurada de la Fiscal Litigante de la Unidad contra Narcóticos y Drogas Peligrosas de la División Penal del Departamento de Justicia de Estados Unidos, declaración del Agente Especial Kyle Mori y resolución de acusación del jurado indagatorio del Distrito de Columbia presentada ante el Tribunal de Distrito de Estados Unidos para el Distrito de Columbia. Los recaudos reseñan los hechos investigados y los medios de prueba recolectados, en mérito a lo cual el Tribunal mencionado libró la orden de detención correspondiente.

A juicio de la sentenciante, los elementos de convicción referidos alcanzan el estándar probatorio exigido por el Tratado, no pudiendo concluirse que la orden de arresto librada por el Tribunal del Estado requirente sea manifiestamente infundada. Tal como ha expresado la Suprema Corte de Justicia en consideraciones trasladables al caso de autos, "más allá del resultado que recaiga oportunamente en el proceso a llevarse a cabo en el Estado requirente, es evidente que el pedido de extradición no tiene, ni cercanamente, la nota de manifiestamente infundado que requiere la norma al no surgir de la documentación presentada ningún elemento de juicio que haga suponer que - en realidad - el requerido no cometió los delitos de los que se lo acusa" (Sentencia n° 145/2002).

9) En tercer lugar, en cuanto a la prescripción de los delitos invocada por la Defensa, la suscrita ya se ha pronunciado en el considerando n° 6 compartiendo la conclusión del Ministerio Público.

En efecto, de acuerdo a los hechos reseñados en los documentos remitidos, los hechos delictivos que se imputan a González Valencia en la resolución de acusación, habrían ocurrido desde enero de 2003 y de forma permanente hasta la presentación de dicha acusación, esto es, el 19 de abril de 2016 (fs. 77-80), lo cual resulta reiterado en los restantes recaudos adjuntos, de los que surge asimismo que en el año 2013 se detectó una llamada telefónica del requerido referida a una transacción de narcotráfico. En la misma fecha antes mencionada, el Tribunal competente libró la orden de detención correspondiente (fs. 82).

Atendiendo a los hechos referidos y de acuerdo a las normas que acompañan la solicitud (fs. 67-73), no ha operado la prescripción de los delitos en el Estado requirente.

Tampoco ha operado la prescripción de acuerdo a las normas de nuestro país, específicamente el art. 117 del Código Penal.

Por lo cual también corresponde desestimar la oposición de la Defensa en esta cuestión, desde que no se adecua a la previsión del art. 5 literal c, como se señalara anteriormente.

No obstante ello, cabe señalar que según ha entendido nuestra jurisprudencia, "por más que el derecho extranjero debe probarse y surge en el caso de la documentación remitida, no

corresponde a los tribunales del Estado requerido -Uruguay- profundizar sobre dicho extremo y considerar o no la procedencia del pedido en función de un instituto que a los ojos del Tratado es una cuestión de mérito" (sentencia n° 380/2008 del Tribunal de Apelaciones en lo Penal de Primer Turno).

10) Finalmente, la Defensa solicita el rechazo de la extradición desde que entiende que González Valencia corre el riesgo que las autoridades competentes del Estado requerido le impongan condenas de cadena perpetua o pena de muerte.

Asiste razón a la Defensa en cuanto las penas previstas en Estados Unidos para los delitos que se imputan al requerido son mucho más severas que las establecidas en nuestro país. Esta circunstancia queda a la vista ante la simple lectura de las normas que acompañan la solicitud de extradición, de las que resultan que los delitos por los cuales se lo requiere se sancionan con penas de "privación de libertad no menos de diez años y no mayor de pena de reclusión a perpetuidad" y pena de encarcelamiento de "no más de veinte años" (fs. 72). Penas notoriamente más gravosas que las previstas en los arts. 31 a 35 y 59 del dec-ley n° 14.294 (en la actual redacción dada por la ley n° 17.016), cuyos guarismos máximos no superan los dieciocho años de penitenciaría.

En relación al riesgo que plantea la Defensa, tal como señala la Fiscalía, el art. 7 del Tratado prevé que "cuando el delito por el que se solicita la extradición fuera punible con la pena de muerte según la legislación de la Parte requirente, y las leyes del Estado requerido no admitieren esa pena para ese delito, este último podrá supeditar el otorgamiento de la extradición a que la Parte requirente otorgue garantías consideradas suficientes por la Parte requerida en el sentido que no será impuesta dicha sanción o que, de ser impuesta, la misma no será aplicada".

De conformidad a lo dispuesto por el art. 26 de la Constitución de la República, según el cual "a nadie se le aplicará la pena de muerte", es indudable que nuestro país está habilitado para supeditar el otorgamiento de la extradición a que el requirente otorgue garantías suficientes que no será impuesta o aplicada la pena de muerte.

Por el contrario, nada dispone el Tratado en relación a la eventual condena a prisión perpetua, la cual está prevista como tope máximo en la normativa agregada por el requirente (fs. 72).

Sin perjuicio de ello y compartiendo la posición del Ministerio Público, entiende la sentenciante que es admisible imponer al Estado requirente la condición prevista en el art. 7 del Tratado también en relación a la pena de prisión perpetua, desde que la misma no está prevista en nuestro orden público interno y contraviene nuestro orden público internacional (Cfme. Sentencia n° 135/2003 de la Suprema Corte de Justicia).

En efecto, la Convención de Naciones Unidas contra la Tortura (aprobada por ley n° 15798) y la

268

Convención Interamericana para prevenir y sancionar la tortura (aprobada por ley n° 16.294) establecen que los Estados Partes tomarán medidas efectivas para prevenir y sancionar, todos aquellos actos que –sin llegar a la tortura- constituyan penas crueles, inhumanas o degradantes (art. 16 y 6 de las convenciones citadas, respectivamente). Puede concluirse que la prisión perpetua constituye una pena inhumana y por lo tanto inadmisible para nuestro orden público internacional. Asimismo, la reclusión a perpetuidad está consagrada como supuesto que excluye la extradición en otros instrumentos internacionales firmados por nuestro país, tales como el Tratado de Extradición entre Uruguay y España (aprobado por ley n° 16.799) y el Tratado de Extradición entre Uruguay y Argentina (aprobado por ley n° 17.225). Ambas tratados establecen que no procederá la extradición cuando los hechos en que se funda la solicitud estuvieren castigados con pena de muerte o pena privativa de libertad a perpetuidad en el Estado requirente, pudiendo concederse en caso que el Estado requirente otorgare seguridades suficientes que la pena a cumplir será la máxima admitida en la ley penal del Estado requerido (arts. 9 y 8 respectivamente).

Como se señalara en considerandos anteriores, la cooperación internacional constituye un deber entre los Estados en la lucha por el combate del delito –especialmente la delincuencia organizada trasnacional. Sin embargo, es pertinente en este punto recordar las palabras del Profesor Raúl Cervini quien expresa: "En ese frágil equilibrio dinámico entre eficacia de la prestación asistencial y garantías de los concernidos, se encuentra precisamente la funcionalidad legitimante de la moderna cooperación penal internacional, la cual debe ser concebida en base a un concepto de Derecho de raíz antropocéntrica y garantizador de los Derechos Humanos. Eso es así porque en el ámbito de la cooperación judicial penal internacional está superada la época en que se asociaba su funcionamiento con el poder negociador de los Estados, con la igualmente difusa cortesía internacional e inclusive más modernamente con la concepción meramente instrumental del respeto y continuidad del proceso. Hoy día, estas últimas fundamentaciones vinculadas al trato entre Estados Soberanos deben estar también acompañadas por el imperioso reconocimiento de los derechos del concernido (sujeto afectado por las medidas de cooperación). Con ello se estará observando la función legitimante del derecho penal, tal como deber ser inexorablemente comprendido a partir de la concepción del pensamiento garantista" (Cervini, Raúl.- Principios de cooperación judicial penal internacional en el MERCOSUR, p. 13, Publicaciones del Instituto de Derecho Penal, Facultad de Derecho, UDELAR).

En conclusión y compartiendo la posición sustentada por la Fiscalía, entiende la sentenciante que es procedente condicionar la entrega de González Valencia a que el Estado requirente preste garantías suficientes que en caso de resultar condenado en el proceso penal que se le pretende iniciar, no se le impondrá pena de muerte ni pena de prisión perpetua.

11) En el mismo sentido, por los mismos fundamentos expuestos en el considerando anterior en referencia a las garantías del extraditado que deben respetarse en la cooperación internacional y

de acuerdo a lo previsto en el art. 13 del Tratado, se accederá a la solicitud fiscal disponiendo que el Estado requirente deberá asegurar que no se juzgará ni condenará al requerido por delitos distintos a los que se refiere la solicitud de extradición, a excepción de los supuestos consagrados en los numerales 1 y 2 del citado artículo.

12) Por todo lo expuesto, se concluye que la solicitud de extradición de Gerardo González Valencia ha cumplido los requisitos exigidos por el Tratado de Extradición suscrito entre Uruguay y Estados Unidos, así como los principios jurídicos que rigen la extradición (doble incriminación, especialidad, legalidad) y que corresponde desestimar la oposición formulada por la Defensa de Confianza, con la salvedad referida en el numeral anterior.

En su mérito, se procederá a conceder la extradición de Gerardo González Valencia para ser sometido a proceso penal ante las autoridades competentes de Estados Unidos por los delitos referidos en la solicitud, con las condiciones que se indicarán a continuación.

En primer lugar, de acuerdo a lo peticionado por el Ministerio Público, la entrega se hará efectiva una vez que el requerido obtenga su excarcelación provisional o libertad definitiva en la causa que se le sigue en Uruguay ante esta sede IUE 2-37467/2016.

A tales efectos, debe tenerse presente que la causa IUE 2-37467/2016 se encuentra en etapa de sumario y Gerardo González Valencia está recluido desde su procesamiento en prisión preventiva a disposición de la misma. Por tal razón no ha cumplido arresto administrativo en el presente proceso de extradición.

En segundo lugar, de acuerdo a lo previsto por el art. 13 del Tratado, se condiciona la extradición concedida a que las autoridades del Estado requirente aseguren que no se juzgará ni condenará al requerido por delitos distintos a los que se refiere la solicitud de extradición, a excepción de los supuestos consagrados en los numerales 1 y 2 del citado artículo.

En tercer lugar, de acuerdo a lo previsto por el art. 7 del Tratado y de conformidad con nuestro orden público interno e internacional y el respeto de las garantías del requerido emergentes del derecho internacional de los derechos humanos, se condiciona la extradición concedida a que las autoridades requirentes otorguen garantías consideradas suficientes por las autoridades nacionales intervinientes en este proceso, que en caso que Gerardo González Valencia resulte condenado en el proceso penal que se le pretende iniciar en el país requirente, no se le impondrá pena de muerte ni pena de prisión perpetua.

Finalmente, se solicitará al Estado requirente que exprese si acepta las condiciones en que se admite la extradición dentro del plazo de cuarenta días a partir de la notificación de la presente sentencia.

**FALLO:**



Concédese la extradición de Gerardo González Valencia solicitada por las autoridades competentes de Estados Unidos, bajo las siguientes condiciones: I) se difiere la entrega hasta que el requerido obtenga su excarcelación provisional o libertad definitiva en la causa que se le sigue en Uruguay ante esta sede IUE 2-37467/2016; II) se condiciona la extradición concedida a que las autoridades del Estado requirente aseguren que no se juzgará ni condenará al requerido por delitos distintos a los que se refiere la solicitud de extradición, a excepción de los supuestos consagrados en los numerales 1 y 2 del citado artículo; III) se condiciona la extradición concedida a que las autoridades requirentes otorguen garantías consideradas suficientes por las autoridades nacionales intervinientes en este proceso, que en caso que Gerardo González Valencia resulte condenado en el proceso penal que se le pretende iniciar en el país requirente, no se le impondrá pena de muerte ni pena de prisión perpetua; IV) las autoridades competentes del Estado requirente deberán expresar si aceptan las condiciones dispuestas en los numerales anteriores, dentro del plazo de cuarenta días a partir de la notificación del presente fallo.

Líbrense las comunicaciones correspondientes a la autoridad requirente vía diplomática, con las formalidades que correspondan.-

Notifíquese y ejecutoriada, cúmplase.-

Dra. Beatriz LARRIEU DE LAS CARRERAS
Juez Ldo.Capital

Esc. ANDRES ROMANO TRINIDAD
ACTUARIO ADJUNTO

[hw:] 238

IUE (*Identificación Unica de*
*Expedientes* [Unique Case
Identification]) 474-76/2016

**Judgment No. 13/2017**

Montevideo, August 28, 2017

**RECITALS:**

For the final judgment of the first instance, these proceedings entitled **"GONZÁLEZ VALENCIA, Gerardo.-
EXTRADITION IUE 474-76/2016,** with the intervention of Mr. Federal Criminal Prosecutor Specialized in
Organized Crime of the Second Rotation, Dr. Luis Pacheco and the Personal Attorneys Dr. Víctor Della Valle
and Dr. Carlos Balbi.-

**RESULTING:**

1) On June 16, 2016, a request for the extradition of Gerardo González Valencia was received at this Court,
sent by diplomatic channels by the Department of Justice of the United States of America (pages 1-107).

Upon the hearing by the Public Prosecutor's Office, by order No. 701/2016 of June 27, 2016, the court objected
to the request given that the admissibility provisions provided for by Article 10 number 5 letter a) of the Mutual
Assistance Treaty in Criminal Matters and Extradition (Law No. 15,476) were not met, and required the
requesting State to comply with such requirements, as well as the complementary information in accordance
with Article 11 of the first paragraph in fine of the same Treaty (pages 108-114).

2) On February 2, 2017, the documentation sent was received via diplomatic channels by the requesting State
(pages 125-131).

By advisory opinion No. 156/2017 of February 23, 2017, the representative of the Public Prosecutor's Office
deemed that the necessary requirements had been met to process the extradition request (p. 132 overleaf -135).

By ruling No. 181/2017 of March 3, 2017, and in accordance with the prosecution advisory opinion, the
extradition process was initiated in accordance with the provisions of the Treaties of Montevideo, specifically
Articles 33 to 37 of the Treaty of International Criminal Law of 1940 - applicable by analogy to the case in
accordance with the principles of due process and the rules that report the process in general, in what is not
expressly provided for (pages 136-137).

[hw:] 239

3)  In a convened hearing - which was delayed on two occasions at the request of the party subject to the extradition request himself - and in the presence of his defense counsel, Gerardo González Valencia did not accept the extradition requested (pages 141-160).

Having seen the request made by the U.S. authorities, the Personal Attorneys of the party subject to the extradition request appeared to file an objection, for the reasons set out in a written grounds submitted in due time and proper form, with attached documentation (pages 161-220).

4)  For its part, by advisory opinion No. 682/2017 of June 12, 2017, the representative of the Public Prosecutor's Office recommended that the extradition request be accepted subject to the conditions established (pages 222-227).

5)  By order No. 682/2017 of June 15, 2017, the subrogating Judge of the court summoned the parties for resolution, having referred the proceedings to the office on June 23, 2017 (pages 228-230 overleaf).

**WHEREAS:**

1)  The extradition process requested by the competent authorities of the United States of America with respect to Gerardo González Valencia in order to be subject to criminal proceedings in that country for drug trafficking charges is substantiated herein.

Extradition constitutes a legal concept of international criminal legal cooperation, understood as "any activity of a procedural nature carried out in a State at the service of a criminal proceeding brought or to be brought before a foreign jurisdiction. Cooperation that becomes effective "when the jurisdictional apparatus of a State, which has authority only within its territory, resorts to the collaboration that other States can provide through their jurisdictional activity" (Vieira, M., García Altolaguirre, C.-Extradition, FCU, pages 108-109). For his part, Prof. Miguel Langón argues that extradition is the maximum expression of the principle of legal international cooperation between the States in the fight against crime, establishing a true obligation of the State required to access the respective request, within the conventional and legal limits, where appropriate (Curso de Der. Penal y Procesal Penal [Course of Criminal Law and Criminal Procedure], ed. Del Foro, year 2003, pages 119-121; Cfme. Cairoli, M. La cooperación penal internacional, la asistencia mutua y la Extradición [International criminal cooperation, mutual assistance, and Extradition], FCU, year 2000, p. 59).

In the same sense, national case law has been pronounced, peacefully affirming that "extradition as a legal concept is modernly located within international criminal legal cooperation, which must necessarily be addressed as an integrated global statute of solidarity and guarantees and, in turn, enables it to be viewed as a global statute of inter-State aid and of guarantees" (Rev. Der Penal [Criminal Law Rev.], No. 20, c. 146. p. 574).

[hw:] 240

These principles have been collected by numerous treaties, those that enshrine the obligation of the States to grant extradition when the conditions that are established are met, as an example: the Model Treaty of Extradition approved by the United Nations General Assembly on April 3, 1991, the 1988 Vienna Convention on International Drug Trafficking, the Treaty on Extradition and Cooperation in Penal Matters between the Oriental Republic of Uruguay and the United States of America ratified by our country by decree law No. 15,476, the Extradition Treaty between Argentina and Uruguay ratified by our country by law No. 17,225, the Extradition Agreement between the States that are parties to Mercosur ratified by Uruguay by Law No. 17,499.

In view of all this, it is indisputable that there is an international obligation to extradite the persons subject to extradition who fall within the conditions provided for in the applicable regulations and in accordance with the principles governing extradition.

2) The extradition regime is regulated first by the Treaties ratified between the countries, which are "law between the parties". In the absence of a Treaty, our internal law provides for the extradition regime in Article 13 of the Criminal Code and Article 32 of the Code of Criminal Procedure (Langón, op. cit., ed. 2003, p. 128-129).

In the case at hand, the Treaty on Extradition and Cooperation in Penal Matters between the Oriental Republic of Uruguay and the United States of America, signed in Washington on April 6, 1973, and approved by our country by decree law No. 15,476 of October 26, 1983, is applicable. This notwithstanding the application of the general principles of due process and specifically the principles governing extradition.

The Treaty does not establish the procedure to be followed before the extradition request, but rather, it is governed by the *lex fori,* that is, that of the nationality of the judge who hears the case: in the case in question, Uruguayan legislation. The Code of Criminal Procedure in force in our legal system does not regulate the extradition process and, therefore, case law, practically unanimously, applies the procedure provided for in the Treaties of Montevideo of 1989 and 1940, by an analogue path.

In view of this, these proceedings complied with the procedure established in chapter IV of the Treaty of Montevideo of 1989, which was agreed upon by the parties, which did not make any objection in this regard.

It is only worth adding that case law is currently unanimous in understanding that the judgment to be issued is definitive in nature, since it puts an end to the extradition process, the main and unique process. According to the Court of Appeals of the First Rotation, "the extradition trial establishes an adversarial proceedings whose main and exclusive purpose is a ruling declaring the admissibility or inadmissibility of the request of the foreign country" (Criminal Law Rev., No. 11, c. 453, p. 319). Therefore, the term for its issuance is that provided for in Article 90 section 2 letter A of the Code of Criminal Procedure

00054529

3) The purpose of the extradition process consists of controlling the formal regularity of the claim, and the Court of the requested State is not responsible for proceeding to the assessment of the merits of the case, which would constitute an invasion of the powers of the requesting authority - without prejudice to the eventual analysis of the fulfillment of the requirement *non bis in idem*, if applicable. As our doctrine and case law have repeatedly pointed out, the extradition process does not assess evidence of guilt, it does not decide on the unlawfulness of the conduct of the party subject to the extradition request, nor does it resolve the merits of the matter, but rather the entire examination is subject to the simple verification of the regularity of the extradition claim in light of the international and national provisions applicable in each case.

This has been the constant position of the Supreme Court of Justice, affirming in judgment No. 51/2010 that: "...In the extradition procedure, the only thing that must be assessed is the formal legitimacy of the request, since any other consideration regarding the merits, which is to say, the classification of the crime or crimes for which the request is made, are absolutely violated of the principle of competence of the requesting authorities. The courts of the requested country that accept or do not accept the request for extradition are not competent to rule on the merit of the case. In this sense, De Olarte, in his treatise on 'Extradition', p. 49, stated that the Judge involved is not summoned to declare innocence or guilt, because 'extradition does not matter to trial or punishment', limiting his function to verifying whether the request is in accordance with the substantial formalities and requirements of the International Treaty ratified by the two States..." (Cf. Supreme Court of Justice Judgments No 154/999, No 184/001, No. 216/003, No. 191/005, No. 41/006, No. 219/007, No 32/2010, among others).

Consequently, this judgment must be issued exclusively with respect to the formal admissibility of the extradition request, analyzing for this purpose the Treaties applicable in the case.

4) Having analyzed the results of these proceedings considering the aforementioned Treaty on Extradition and Cooperation in Penal Matters that links our country to the United States of America, it results that the request complied with the formalities required by Article 10, namely:

a) it was processed through the diplomatic channels, since González Valencia was formally requested by the corresponding judicial authorities of the United States of America before the Ministry of Foreign Affairs of our Country and the Supreme Court of Justice (pages 1-8 and 100-107);

b) the request contains a detailed list of the incriminated event (pages 12-18 and page 32-35 and the respective translations on page 57-63 and page 77-80);

c) the necessary documentation is attached for the identification of the party subject to the extradition request (page 46-53 and translation on page 91-99) and the applicable regulations (page 20-30 and translation on page 77-80);

[hw:] 242

c)  it includes the bench warrant or arrest warrant issued by the competent authority of the requesting State (page 37 translated to pages 82).

d)  a translation into Spanish of all the documentation submitted is attached, as detailed in the previous subsections.

In relation to the provision of Art. 10.5 letter a of the Treaty, the documents are signed by the competent authorities and have the certification and seal of the Department of State of the United States of America (page 9, translation on page 54). Although they do not have the legalization by a diplomatic or consular agent of the Oriental Republic of Uruguay in the United States of America, it was understood, in accordance with the prosecution advisory opinion No. 156/2017, that said requirement is not necessary in accordance with the provisions of the Agreement Suppressing the Requirement of Legalization of Foreign Public Documents, signed in the Hague in 1961 and approved by our country under Law No. 18,836 of November 15, 2011. Notwithstanding the foregoing, it should be noted that this point was not questioned by the Defense of the party subject to the request.

5)  Likewise, it results that the presumptions required in Articles 1 and 2 of the Treaty are complied with, which enshrine the general principles of extradition: jurisdiction of the requesting State, double criminality, and severity of the penalty. Namely:

a)  Gerardo González Valencia is required for the commission of offenses perpetrated in the requesting country (pages 77-78), in accordance with the provisions of Article 1 of the Treaty, so the jurisdiction of the competent authorities of that country is undisputed.

b)  The party subject to the extradition request is accused of committing drug trafficking offenses, specifically conspiracy to introduce and distribute substances containing detectable amounts of cocaine and methamphetamine in the United States (pages 77-78), which falls within the provisions of Article 2 No. 17 of the Treaty. Offenses that are also provided for in our national regulations, in accordance with the classifications established in Articles 31 to 33 and 59 of Decree Law No. 14,294 (in its current wording given by Law No. 17,016).

The condition referred to in this subsection enshrines the principle of double criminality, which requires that "the accusation for which extradition is requested is also classified as an offense under the laws of the requested State, with due flexibility and even when the same *nomen iuris* does not exist in the classifications. In other words, what is required is that the act and the form of participation in it, for which the person is claimed, must be provided for as an offense by the law of the two contracting parties, even if they have different names and even if the type of offense may tend to protect different legal assets in both legislations.

[hw:] 243

... the qualification of the conduct must be made within the framework of the conventional provisions created by the will of the parties, in other words, *in ordinem* as Alfonsín taught" (Viera et al. op. cit., p. 427).

c)  The offenses for which it he is requested in extradition are punished in both countries with a minimum prison term of more than one year, as required by the paragraph of Article 2 of the Treaty: in our country, Articles 31 and 34 of decree law No. 14,294; in the requesting country, the conduct that is intended to be imputed to the party subject to the extradition request is punished with sentences of no less than ten years (page 71-72). The principle of punishment severity is thus met.

6)  Finally, the request for extradition does not fall within any of the cases provided for in Article 5 of the Treaty in which extradition is not appropriate.

In relation to the hypothesis provided for in letter a of art. 5, it enshrines the principle *ne bis in idem*. This principle means that no one can be tried or convicted twice for the same crime. This is how Dr. Armando Tommasino stated it: "The provision prevents double prosecution, and although it does not express it, naturally also... the repeated conviction to the same individual, for attribution of the same criminal act" (Principios, Derechos y Garantías en el Proceso [Principles, Rights, and Guarantees in the Process], p. 63). The same principle in force in National Law has been set out in the Extradition Treaties and, even if it is not, it has been understood that it is "implicitly enshrined in the provisions of Article 14.7 of the Universal Covenant on Civil and Political Rights that states that 'no one may be tried or convicted or punished for a crime for which he has been convicted or acquitted by a final judgment in accordance with the Law and the criminal procedure of each country.' This rule has been taken, although with some variations, in the Pact of San José in Costa Rica (Article 8.4) and it constitutes, in our opinion, an international *ius cogens* rule (Vieira-Altolaguirre "Extradición [Extradition]," Page 200).

The Extradition Treaty entered into between the United States and Uruguay includes in the aforementioned principle, by providing that extradition will not be granted: "a) when the person whose handing over is being processed has already been tried and convicted or acquitted or is being tried in the territory of the requested State for the crime for which the extradition is requested."

In this regard, it should be noted that, although Gerardo González Valencia has a criminal case open in our country, the request for extradition does not violate the principle *ne bis in idem,* since it does not refer to the same facts for which he is being judged in our country. Indeed, the party subject to the extradition request is subject to criminal proceedings before this Criminal Trial Court Specialized in Organized Crime of the First Rotation in proceedings IUE 2-37467/2016, charged with the commission of an offense of Money Laundering provided for in Article 54 of decree law No. 14,294, in its current wording given by Article 2 of Law No. 18,494. He is not accused of committing drug trafficking crimes in any of its modalities in said proceedings. Therefore, the hypothesis does not fall within the provision of art. 5 letter a of the Treaty.

[hw:] 244

In relation to the provision of art. 5 letter c, which provides that extradition will not be granted "when the action or penalty has expired according to the laws of the required or requesting State," the considerations of the Public Prosecutor's Office are shared as long as it is deemed that the statute of limitations for which González Valencia is requested in extradition has not elapsed. Without prejudice to what will be said below when analyzing the objections made by the Defense of the party subject to the request.

It is clear in the proceedings that González Valencia's extradition request does not fall within any of the remaining hypotheses provided for in Article 5 cited above.

7)  In summary, the judge understands that the extradition requested meets the formal requirements demanded by the Extradition Treaty that links our country to the requesting State *and* does not fall within any of the aforementioned hypotheses of inadmissibility of the request.

Notwithstanding this, this judgment must resolve the issues raised in the opposition filed by the Personal Attorneys of González Valencia, which were clearly outlined in the reply from the Public Prosecutor's Office, namely: a) that the Extradition Treaty refers to persons who have been processed or convicted, which does not occur in the case in question and is a trial in absentia; b) that the affidavit submitted by the requesting country is defective; c) that the affidavit does not show evidence supporting any crime occurring within five years of the date of the prosecution, and therefore, the statute of limitations has elapsed; d) that the affidavit does not contain evidence and only contains statements from two collaborating witnesses, for which it omits information about its credibility; e) that the party subject to the request faces risks of being sentenced to death or life in prison.

8)  In the first place, as the Defense points out, Article 2 of the Treaty provides that "the persons who are prosecuted or convicted for any of the following offenses shall be handed over...." On the other hand, Art. 10.3 establishes, among the requirements necessary in the extradition request, that "when the request refers to a person who has not yet been convicted, it must be accompanied by a bench warrant or arrest warrant or an equivalent indictment, issued by the competent authority of the requesting Party."

In this sense, the position of the Public Prosecutor's Office is shared, understanding that the request for extradition is admissible when the person is not yet "processed," since the arrest warrant suffices for its requirement and taking into account that the term "processed" may have different meaning in each procedural system.

It also disagrees with the Defense since, in the opinion of the undersigned, a trial in absentia in the requesting country has not been carried out regarding the party subject to the request. From the documentation received, it can be seen that. on April 19, 2016, an Grand Jury from the District of Columbia filed an accusation against González Valencia for the charge of conspiracy for the introduction and distribution of narcotic substances in

the United States (page 77-80). On the basis of said indictment, the United States District Court for the District of Columbia issued the corresponding bench warrant (page 82).

The affidavit of the Trial Attorney of the Narcotic and Dangerous Drug Section of the Criminal Division of the United States Department of Justice, Amanda Liskamm, clearly outlines the procedure to be followed by the grand jury: the aforementioned jury examines the evidence submitted by the public order authorities and, if it is understood that there are sufficient indications to determine that the criminal act was committed and that the accused is the perpetrator, it issues an "indictment" (page 58 numeral I). That was the procedure followed with respect to González Valencia, as outlined in the previous paragraph.

This in no way means that a criminal proceeding has been substantiated against the party subject to the request, but, as is specified in the statement of the Trial Attorney, "for a judgment to be issued against González Valencia…The United States must prove at trial that Gonzalez Valencia reached an agreement ...." , that is, the State must prove at trial the facts alleged in the indictment. (page 61 No 17). Extradition is requested in order to carry out the trial (page 62 No. 20).

8) Secondly, with respect to the affidavit of the Special Agent Kyle Mori of the Drug Control Agency, the control of the formal observations made by the Defense, such as the competence of the Court before which the affidavit was submitted, is not relevant in this extradition process. On the contrary, the statement outlines the criminal activities that are intended to be charged to the party subject to the request, González Valencia, and the evidence collected for this purpose, these being the relevant elements for the issuance of this judgment.

In this sense, it is also not shared that the evidence mentioned by the Special Agent Kyle Morí is insufficient to support the indictment and that it is based almost exclusively on the statement of two collaborating witnesses.

It is worth reiterating the concepts set out in recital No. 3 of this judgment, according to which, in matters of extradition, the only thing that the judge has to do is control the formal regularity of the request and compliance with the requirements of the Treaty applicable to the case.

It is then not appropriate to assess the evidence produced by the requesting State, but rather only to assess it to determine that the extradition request and the arrest warrant are not manifestly unfounded, in accordance with the provisions of Art. 10.3 in fine of the Treaty, which establishes that "the party subject to the request may ask that the requesting party to submit sufficient evidence to establish *prima facie* that the person subject to the request has committed the crime for which the extradition is made. The requested party may deny extradition if an examination of the case shows that the arrest warrant is manifestly unfounded."

In the case at hand, the extradition request attaches supporting documents in order to prove the facts that are imputed to González Valencia, namely: affidavit of the Trial Attorney of the Narcotic and Dangerous Drug Section of the Criminal Division of the Department of Justice of the United States, testimony of the Special Agent Kyle Morí, and the indictment issued by the grand jury of the District of Columbia, filed in the United States District Court for the District of Columbia. The records outline the facts investigated and the means of evidence collected, based on which the aforementioned Court issued the corresponding bench warrant.

In the opinion of the judge, the evidential elements referred to reaches the evidentiary standard required by the Treaty, and it cannot be concluded that the arrest warrant issued by the requesting State Court is clearly unfounded. As the Supreme Court of Justice has expressed in recitals transferable to the case at hand, "beyond the outcome achieved in the process to be carried out in the requesting State, it is evident that the extradition request does not have, even remotely, the note of being manifestly unfounded, which the rule requires, since no element of judgment arises from the documentation presented that makes it assume that - in reality - the party subject to the request did not commit the offenses of which he is accused" (Judgment No. 145/2002).

9)  Thirdly, with regard to the statute of limitations for the offenses invoked by the Defense, the undersigned has already pronounced itself in clause no. 6 sharing the conclusion of the Public Prosecutor's Office.

Indeed, in accordance with the facts outlined in the documents submitted, the criminal acts that are attributed to González Valencia in the indictment, would have occurred since January 2003 and permanently until the filing of said indictment, this is, April 19, 2016 (pages 77-80), which is reiterated in the rest of the attached records, from which it appears that, in 2013, a telephone call was detected from the person subject to the request in relation to a drug trafficking transaction. On the same date mentioned above, the competent Court issued the corresponding bench warrant (page 82).

In accordance with the facts referred to and in accordance with the rules that accompany the request (pages 67-73), the statute of limitations for the offenses has not elapsed in the requesting State.

Nor has the statute of limitations elapsed in accordance with the rules of our country, specifically Article 117 of the Criminal Code.

Therefore, it is also appropriate to dismiss the opposition of the Defense in this matter, since it does not comply with the provisions of Art. 5 letter c, as noted above.

Notwithstanding this, it should be noted that, as our case law has understood, "even though foreign law must be proven and arises in the case of the documentation submitted, it is not the case of the courts of the requested State – Uruguay – to delve deeper into said point and consider whether or not the request is admissible based on an institute that, in the view of the Treaty, is a matter of merit" (judgment No. 380/2008 of the Criminal

Court of Appeals of the First Rotation).                                           [hw:] 247

10)   Finally, the Defense requests the rejection of the extradition, since it understands that González Valencia runs the risk that the competent authorities of the requested State impose sentences with life sentences or the death penalty.

The Defense is right in saying that the penalties provided in the United States for the crimes attributed to the party subject to the request are much more severe than those established in our country. This circumstance remains in view of the simple reading of the rules that accompany the extradition request, from which it results that the offenses for which he is required are punished with "imprisonment of no less than ten years and no greater than a life sentence" and a prison sentence of "no more than twenty years" ([pg]. 72). Penalties clearly more onerous than those provided for in Articles 31 to 35 and 59 of decree law No. 14,294 (in the current wording given by Law No. 17,016), whose maximum terms do not exceed eighteen years of prison.

In relation to the risk posed by the Defense, as indicated by the Public Prosecutor's Office, art. 7 of the Treaty provides that, "when the crime for which the extradition is requested is punishable with the death penalty according to the legislation of the requesting Party, and the laws of the requested State do not allow that penalty for that crime, the latter may subject the admission of the extradition to the requesting Party to the granting guarantees considered sufficient by the requested Party in the sense that said penalty will not be imposed or that, if it is imposed, it will not be applied."

In accordance with the provisions of Article 26 of the Constitution of the Republic, according to which "no one shall be subject to the death penalty," it is possible without a doubt that our country is authorized to subject the granting of the extradition to the requesting party granting sufficient guarantees that the death penalty will not be imposed or applied.

On the contrary, the Treaty does not have any provisions in relation to the eventual sentence to life in prison, which is provided for as the maximum limit in the regulations added by the requesting party (page 72).

Without prejudice to this, and sharing the position of the Public Prosecutor's Office, the judge understands that it is admissible to impose on the requesting State the condition provided for in Article 7 of the Treaty also in relation to the sentence of life in prison, since it is not provided for in our internal public order and contravenes our international public order (Pursuant to Judgment No. 135/2003 of the Supreme Court of Justice).

Indeed, the United Nations Convention against Torture (approved by Law No. 15,798) and the Inter-American Convention on the Prevention and Sanction of Torture (approved by Law No. 16,294) establish that the Member States shall take effective measures to prevent and sanction, respectively, all those acts that - without reaching torture - constitute cruel, inhuman, or degrading penalties (Article 16 and 6 of the aforementioned conventions,

00054536

respectively). It can be concluded that life in prison constitutes an inhumane and, therefore, inadmissible penalty for our international public order. Likewise, life in prison is enshrined as an assumption that excludes extradition in other international instruments signed by our country, such as the Extradition Treaty between Uruguay and Spain (approved by Law No. 16,799) and the Extradition Treaty between Uruguay and Argentina (approved by Law No. 17,225). Both treaties establish that extradition shall not proceed when the facts on which the request is based are punished with the death penalty or life in prison in the requesting State, and may be granted in the event that the requesting State grants sufficient assurances that the penalty to be fulfilled shall be the maximum allowed in the criminal law of the requested State (Articles 9 and 8, respectively).

As noted in previous recitals, international cooperation constitutes a duty among States in the fight against crime —especially transnational organized crime. However, it is relevant at this point to remember the words of Professor Raúl Cervini, who states: "The legitimate functionality of modern international criminal cooperation is found precisely in this fragile dynamic balance between the effectiveness of the provision of aid and the guarantees of the concerned parties, which must be conceived on the basis of a concept of anthropocentric and guaranteeing root right of human rights. This is because, in the field of international criminal judicial cooperation, the period in which its functioning was associated with the negotiating power of the States is exceeded, with the equally diffuse international courtesy and, even more modernly, with the merely instrumental conception of respect and continuity of the process. Today, these latter grounds linked to the treatment between Sovereign States must also be accompanied by the essential recognition of the rights of the concerned party (subject affected by cooperation measures). With this, the legitimate function of criminal law will be observed, as must be inexorably understood from the conception of the guaranteeing thought" (Cervini, Raúl.- Principios de cooperación judicial penal internacional en el MERCOSUR [Principles of international criminal judicial cooperation in MERCOSUR], p. 13, Publications of the Institute of Criminal Law, Faculty of Law, UDELAR).

In conclusion and sharing the position supported by the Public Prosecutor's Office, the judge understands that it is appropriate to subject the delivery of González Valencia to the condition that the requesting State provide sufficient guarantees that, in the event of being convicted in the criminal proceedings that are intended to be initiated, the death penalty or a life in prison sentence will not be imposed.

11)   In the same sense, for the same grounds set forth in the previous recital in reference to the extradited party guarantees that must be respected in international cooperation, and in accordance with the provisions of art. 13 of the Treaty, the public prosecutor's request will be accepted, stating that the requesting State must ensure that the party subject to the request will not be tried or convicted for crimes other than those referred to in the request for extradition, with the exception of the assumptions enshrined in numbers 1 and 2 of the aforementioned article.

[hw:] 249

12)   Based on the foregoing, it is concluded that the extradition request of Gerardo González Valencia has met the requirements of the Extradition Treaty signed between Uruguay and the United States, as well as the legal principles governing extradition (double criminality, specialty, legality) and that it is appropriate to dismiss the opposition made by the Personal Attorneys, with the exception referred to in the previous section.

Based on the above, the extradition of Gerardo González Valencia will be granted to be subject to criminal proceedings before the competent authorities of the United States for the crimes referred to in the request, with the conditions indicated below.

Firstly, according to the request made by the Public Prosecutor's Office, the delivery will take effect once the party subject to the request obtains his provisional release or final freedom in the case that is followed in Uruguay before this court IUE 2-37467/2016.

For such purposes, it should be borne in mind that the case IUE 2-37467/2016 is in the summary stage and Gerardo González Valencia has been held since his indictment in pretrial detention at the disposal of the same. For this reason, he has not fulfilled the administrative detention in this extradition process.

Secondly, in accordance with the provisions of Article 13 of the Treaty, the extradition granted is conditional on the authorities of the requesting State ensuring that the party subject to the request will not be judged or convicted for crimes other than those referred to in the extradition request, with the exception of the cases enshrined in paragraphs 1 and 2 of the aforementioned article.

Thirdly, in accordance with the provisions of Article 7 of the Treaty, and in accordance with our internal and international public order and the respect for the guarantees of the party subject to the request emerging from international human rights law, the extradition granted is made upon the conditions that the requesting authorities granting guarantees considered sufficient by the national authorities intervening in this process, that, in the event that Gerardo González Valencia is convicted in the criminal proceedings that are intended to be initiated in the requesting country, a death penalty or a life in prison sentence will not be imposed on him.

Finally, the requesting State will be asked to express whether it accepts the conditions under which extradition is admitted within forty days as of the notification of this judgment.

**RULING:**

[hw:] 250

It is ordered to grant the extradition of Gerardo González Valencia requested by the competent authorities of the United States, under the following conditions: I) the handing over is deferred until the party subject to the request obtains his provisional release or definitive release in the case that is followed in Uruguay before this court, IUE 2 - 37467/2016, II) the extradition granted is made upon conditions that the authorities of the requesting State ensure that the party subject to the request will not be judged or convicted for crimes other than those referred to in the request for extradition, with the exception of the cases enshrined in numbers 1 and 2 of the aforementioned article; III) the extradition granted is made upon the conditions that the requesting authorities granting guarantees considered sufficient by the national authorities involved in this process, that, in the event that Gerardo González Valencia is convicted in the criminal proceedings that are intended to be initiated in the requesting country, he shall not be punished with the death penalty or a life in prison sentence; IV) the competent authorities of the requesting State must state whether they accept the conditions set forth in the previous sections within forty days of the notification of this ruling.

It is ordered that the communications corresponding to the requesting authority be submitted via diplomatic channels, with the corresponding formalities.-

It is ordered that it be notified and executed. It is ordered that be enforced. -

[signature]

Dr. Beatriz LARRIEU DE LAS CARRERAS

Professional Judge, Capital

[signature]
[stamp:]Mr. ANDRES ROMANO TRINIDAD
DEPUTY CLERK

00054539



City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document " **00054527-00054539**" is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English.

_____
Dan McCourt

Sworn to before me this
June 29, 2023

_____
Signature, Notary Public



_____
Stamp, Notary Public