# **<u>EXHIBIT U</u>**

317



PODER JUDICIAL

Sentencia Nro. 208

**Ministra Redactora:**

**Doctora Gabriela Merialdo Cobelli**

Montevideo, 2 de octubre de 2018.

**VISTOS:**

Para Sentencia definitiva de Segunda Instancia, estos autos caratulados: **"GONZÁLEZ VALENCIA, Gerardo – Extradición" - IUE 474-76/2016,** venidos a conocimiento del Tribunal, en mérito al recurso de apelación interpuesto por la Defensa del encausado, Dr. Víctor Della Valle, contra la sentencia definitiva Nº 13, de fecha 28 de agosto de 2017, dictada por la Sra. Jueza Letrada en lo Penal de Crimen Organizado de 1er. Turno, Dra. Beatriz Larrieu De Las Carreras, con intervención del Sr. Fiscal Letrado en lo Penal de Crimen Organizado de 2º Turno, Dr. Luis Pacheco.

**RESULTANDO:**

**1)** Aceptando y dando por reproducida la relación de antecedentes procesales de la apelada, pues se ajusta a las resultancias del proceso.

Por la misma se concedió la extradición de Gerardo González Valencia solicitada por las autoridades competentes de Estados Unidos bajo las siguientes condiciones:

1) Se difiere la entrega hasta que el requerido obtenga su excarcelación provisional o libertad definitiva en la causa que se le sigue en Uruguay ante esta sede IUE: 2-37467/2016

2) se condiciona la extradición concedida a que las autoridades del Estado requirente aseguren que no se juzgará ni condenará al requerido por delitos distintos a los que se refiere la solicitud de extradición, a excepción de los supuestos consagrados en los numerales 1 y 2 del citado artículo;

3) se condiciona la extradición concedida a que las autoridades requirentes otorguen garantías consideradas suficientes por las autoridades nacionales intervinientes en este proceso, que en caso que Gerardo González Valencia resulte condenado en el proceso penal que se le pretende iniciar en el país requirente, no se le impondrá pena de muerte ni pena de prisión perpetua;

4) las autoridades competentes del Estado requirente deberán expresar si aceptan las condiciones dispuestas en los numerales anteriores, dentro del plazo de cuarenta días a partir de la notificación del presente fallo.

**2)** Se alzó la Defensa del encausado agraviándose en cuanto considera que la a-quo ordenó en forma errónea la extradición de Gerardo González Valencia. Manifiesta que si bien se identificó correctamente los principios jurídicos de control, ignoró esos principios al ordenar la extradición sujeta a condiciones inadecuadas. En tal sentido sostuvo lo siguiente:

1- que las garantías exigidas a Estados Unidos son inadecuadas para proteger los principios uruguayos.

2- que la solicitud de extradición es sustancial y formalmente defectuosa y debe ser denegada. Sostuvo que la a-quo se equivocó al afirmar que no se permite una revisión del contenido de la solicitud de extradición para determinar si procede o no la misma. Sin ningún examen de fondo no se

Protected Material



PODER JUDICIAL

hace más que someterse a las conclusiones de Estados Unidos. El Tratado contiene una serie de disposiciones que demuestran que se requiere un examen de fondo. Los Tribunales uruguayos deben realizar un examen de fondo de los hechos para determinar si la solicitud está respaldada por prueba que demuestre una causa probable. Afirmó que el delito ha prescrito.

3- la petición no entra en el Tratado porque el presunto delito no ocurrió dentro del territorio estadounidense, por ello la solicitud de extradición debe denegarse.

4- no existe doble incriminación. González Valencia es acusado de conspiración para distribuir cocaína y metanfetamina para su importación en Estados Unidos. No existe en el Código Penal uruguayo el delito de distribución de narcotráfico.

5- no se proporciona prueba para demostrar una causa probable según lo requiere el Tratado.

6- la solicitud es formalmente defectuosa. Señaló que la declaración jurada está viciada formal y fundamentalmente porque contiene una carátula que hace referencia a un caso que no existe y fue firmada por el Juez en forma incorrecta en el Tribunal incorrecto.

En definitiva reclamó que no se haga lugar a la solicitud de extradición. Previamente el Tribunal debe exigir a Estados Unidos que presente pruebas reales que apoyen su solicitud. Que de no compartirse esto se exija a las autoridades de Estados Unidos que previamente a conceder la extradición otorgue garantías suficientes que no aplicara pena de muerte ni

Protected Material

cadena perpetua ni pena superior a los 18 años de penitenciaría (máxima pena de la Ley uruguaya) ni agregar delitos o cargos de idéntica naturaleza.

**3)** El Ministerio Público evacuó el traslado conferido, abogando fundadamente por el mantenimiento de la recurrida.

**4)** Se franqueó la alzada. En esta Sede, citadas las partes, pasaron los autos a estudio, acordándose sentencia en legal forma.

**CONSIDERANDO:**

**I)** La Sala, con la unánime voluntad de sus miembros naturales, procederá a confirmar la sentencia en examen, descartando los agravios de la Defensa que no logran conmover los sólidos fundamentos de la apelada.

**II)** Formalmente la causa se desarrolló correctamente.

**III)** Sustancialmente se coincide con las conclusiones de la sentencia en estudio, por lo que se confirmará.

**IV)** Por la impugnada, se dispuso conceder la extradición de Gerardo González Valencia a los EEUU, sujeta a las condiciones que fueron impuestas en la misma.

**V)** La solicitud de extradición, cumple con los requisitos legales previstos en el Tratado de Extradición y Cooperación en Materia Penal suscrito entre la República Oriental del Uruguay y los Estados Unidos de América del año 1973, que vincula a nuestro país con EE.UU., que fuera ratificado por Dec. Ley 15.476:

* La solicitud formal de extradición, luce agregada en estos autos de fs. 5 a 8.

319



PODER JUDICIAL

* En la misma se consigna que Gerardo González Valencia es requerido para ser sometido a juicio por cargos de narcotráfico.

* Se indica, que con fecha 19 de abril de 2016, el Tribunal de Distrito de los Estados Unidos para el Distrito de Columbia emitió una orden para el arresto del mismo la que se mantiene válida y ejecutable.

* Se señala, además, que dentro de los elementos relevantes de la investigación, se encuentran evidencias que desde enero de 2003 hasta el 19 de abril de 2016, González Valencia, habría sido el presunto líder de una organización de narcotráfico radicada en México, desde donde habría transportado varios envíos de varias toneladas de cocaína y metanfetaminas con fines de importación y distribución en Estados Unidos. Para ello, González Valencia, habría coordinado la importación y el traslado de la sustancia estupefaciente (cocaína) desde Colombia hasta México, utilizando para ellos camiones con remolque, lanchas, submarinos, etc. y desde allí a Estados Unidos, que era el destino final. A su vez, los precursores químicos, los habría trasladado desde Honduras hasta México, para producir metanfetaminas, las cuales luego habría transportado en aviones privados desde México hasta Estados Unidos para su distribución.

**VI)** Luego de presentada la solicitud de extradición, fundada en la eventual participación de González Valencia, en esos hechos, se convocó al mismo a la audiencia de precepto, la que luego de algunas prórrogas se cumplió el 29 de mayo de

2017 (fs. 160), en la que manifestó que no aceptaba la solicitud de extradición (procedimiento abreviado de extradición).

Para la tramitación de la referida solicitud, no estando previsto en el Tratado de Extradición y Cooperación en Materia Penal suscrito entre la República Oriental del Uruguay  y los Estados Unidos  de América del año 1973 ratificado por el Dec. Ley 15.476, normas procesales para su tramitación, la Sede "a quo" por aplicación analógica aplicó las normas procesales previstas al Tratado de Montevideo de 1940.

VII) Los agravios de la Defensa no son de recibo:

a.- Así en lo que hace al primer agravio, esto es que no existen garantías que se han de cumplir las condiciones impuestas en la sentencia, no se comparte, se entiende que son adecuadas, pues las mismas están fijadas en la sentencia y deben ser aceptadas por el estado requirente para que se haga efectiva la entrega del requerido.

Se estableció, como condición que no se le imponga pena de muerte o cadena perpetua.

La Defensa, pretende que se imponga como condición al Estado requirente, que no se puede fijar una pena que supere los 18 años, por ser ésta la pena máxima en nuestro país.

Dicho agravio es de franco rechazo, pues el quantum punitivo, dependerá del juicio a llevarse a cabo en el Estado requirente y las condiciones que no se pueden vulnerar son las antes indicadas, pero entre ellas no se encuentran un máximo legal de pena (siempre que no sea perpetua).

b.- En lo que hace al segundo agravio se entiende que tampoco es de recibo. En el aspecto sustancial, se tiene en





PODER JUDICIAL

cuenta que la S.C.J ha dicho que en el procedimiento de extradición lo único que debe valorarse en la legitimidad formal del pedido, puesto que toda otra consideración acerca del fondo, es decir de la tipicidad del o de los delitos por lo que se cursa la solicitud son absolutamente violatorios del principio de competencia de las autoridades requirentes. Los tribunales del país requerido que aceptan o no el pedido de extradición no son competentes para juzgar el mérito de la causa (Sentencia Nº 125 del 2015).

En el aspecto formal se entiende que no ha operado la prescripción. En tal sentido se comparte la posición de la Fiscalía y la a-quo respecto a que los hechos habrían ocurrido hasta la presentación de la acusación lo que tuvo lugar el 19 de abril de 2016 sin que corresponda entrar a considerar los eventuales elementos de prueba obrantes en tal sentido (Mensaje de textos, declaración de testigos protegidos). Esto tendrá que elucidarse en el juicio a llevarse a cabo ante las autoridades del estado requirente.

c.- Tampoco es de recibo el agravio relativo a que el delito no fue cometido en el territorio de los EEUU. En efecto entre los delitos a que se hace referencia en el pedido de extradición de fs. 6, es que el requerido habría transportado varios envíos con varias toneladas de cocaína y metanfetaminas desde México hacia EE.UU., destino final para la distribución tanto de la cocaína como de las metanfetaminas.

Por lo tanto no es posible rechazar a priori la solicitud, en la fundamentación que pretende la Defensa, quien argumenta que el delito no se cometió en el territorio del estado requirente,

de acuerdo a la solicitud de extradición, ello no es así, pues la misma se funda en el ingreso al territorio del Estado requirente de varias toneladas de cocaína y metanfetaminas (transporte, importación y distribución de las mismas) y existiendo, objeción de la Defensa, dicha circunstancia se tendrá que resolver en el respectivo juicio a llevarse a cabo en el Estado requirente.

d.- El agravio de la doble incriminación tampoco es de recibo, la distribución de narcotráficos está tipificada como delito en nuestro país en el art. 31 del Dec. Ley 14.294 concordantes y modificativas, uno de cuyos verbos nucleares es precisamente distribuir (además, del transporte e importación).

**VIII)** En suma, en autos se cumplieron con los requisitos adjetivos y sustanciales previstos en el Tratado de Extradición y Cooperación en Materia Penal suscrito entre la República Oriental del Uruguay y los Estados Unidos de América, el 6 de abril de 1973, en vigencia desde el 11 de abril de 1984.

Ha de recordarse que la extradición es un acto de asistencia judicial interetático en materia penal que versa sobre el envío de un individuo penalmente inculpado o requerido, de la esfera de soberanía de un Estado a la de otro.

En efecto, desde el ámbito extradicional existen cada vez más tratados bi y multilaterales, tendientes a reafirmar la cooperación internacional en materia de persecución de la criminalidad.

Así, la entrega de delincuentes ya no es más para los países un acto de cortesía internacional "comitas gentium" sino

321



PODER JUDICIAL

una imposición que emerge de los acuerdos, pasible de crear responsabilidad internacional para el Estado que no cumpla.

Concomitantemente a este avance incesante de la cooperación interetática, hoy es absolutamente incontrastable que la extradición entroniza el instrumento más gravoso y extremo en sede de cooperación internacional. Y ello es así, por los daños irreparables a los que puede enfrentarse el sujeto extraído.

Por ello, como contrapartida, de la flexibilización en la cooperación y el latente riesgo de daño de la entrega es que irremediablemente deberá ser contrarrestado con un fuerte valladar de principios tutelares que protejan al extraído, como se realizó en la recurrida al disponerse en el fallo condiciones que el estado requirente debe cumplir para hacerse efectiva la entrega del requerido.

Ese conjunto de principios tutelares, consignados vía condiciones para la entrega en la recurrida, en definitiva otorgan legitimidad tanto a la actuación del Tribunal requirente como a la del requerido. (Joao Marcelo de Araujo Junior -Concepto y naturaleza jurídica de la extradición en Curso de Cooperación Penal Internacional -Ed. Carlos Álvarez -Año 1994- Pág. 151; Jorge Pereyra Schurmann- La extradición como instituto garantizador de los Derechos Humanos en Rev. Ciencias Penales. Nº 1 -Año 1995- Pág. 92, Carlos Alvarez Cozzi -Extradición- El caso de los militares argentinos "carapintadas" En Rev. Jca. del CED Nº 11 -Año 1996- Pág. 109)".

Procesed Wext Urd

En suma, los agravios de la Defensa carecen no sólo de virtualidad jurídica, sino de poder convictivo como para modificar los sólidos fundamentos en que reposa la recurrida, por lo que se irá al rechazo de los mismos y a la confirmación de la apelada.

Por los fundamentos expuestos, lo dispuesto en Tratado de Extradición y Cooperación en Materia Penal suscrito entre la República Oriental del Uruguay y los Estados Unidos de América de 1973, ratificado por el Dec. Ley 15.476, Tratado de Montevideo de 1940, art. 31 del Dec. Ley 14.294 concordantes y modificativas y arts. 253 y ss. del C.P.P., **el Tribunal,** _FALLA_:

*CONFÍRMASE LA SENTENCIA DE PRIMERA INSTANCIA APELADA.*

*OPORTUNAMENTE, DEVUÉLVASE A LA SEDE DE ORIGEN.*

Dr. Ángel Cal Shabán
Ministro

Dra. Gabriela Merialdo Cobelli
Ministra

**Dr. LUIS CHARLES**
Ministro Tribunal de Apelaciones
Penal de 4to. Turno

Esc. FERNANDO DURAN SANCHEZ
SERETARIO I
TRIBUNAL DE APELACIONES
PENAL 4to TURNO

Protected Material

00053254

322



**PODER JUDICIAL**

# *C E D U L Ó N*

**Tribunal de Apelaciones en lo Penal de 4° Turno**
Yi 1523 ps.2°   Tel 2900 3922   Fax 29089659

**Fiscalía de Crimen Organizado**

**Domicilio: Su Despacho**

**En autos: "GONZALEZ VALENCIA, Gerardo" (IUE: 474-76/2016)**
**notifico a Ud. la Sentencia N° 208 de fecha 02/10/2018, cuya copia se**
**adjunta.-**

Habiéndome constituido en su domicilio, dejo el presente Cedulón

el día ............ 2 5 OCT 2018 ....................

Por comisión de secretaría

.......................................
**Notificador.**

00053255

Judgment No. 208

[emblem:]
JUDICIAL
BRANCH

**Drafting Judge:**

**Doctor Gabriela Merialdo Cobelli**

Montevideo, October 2, 2018.

[seal:] [Criminal
Court of Appeals
4th Rotation]

### RECITALS:

For a final Judgment of the Second Instance, these proceedings are entitled: **"GONZÁLEZ VALENCIA, Gerardo - Extradition" - IUE (***Identificación Unica de Expedientes* **[Unique Case Identification]) 474-76/2016,** brought to the attention of the Court, based on the appeal filed by the Defense of the Defendant, Dr. Víctor Della Valle, against the final judgment No. 13, dated August 28, 2017, issued by the Judge of the Criminal Court on Organized Crime of the 1st Rotation, Dr. Beatriz Larrieu De Las Carreras, with the intervention of the Federal Prosecutor Criminal Court on Organized Crime of the 2nd Rotation, Dr. Luis Pacheco.

### RESULTING:

**1)** Accepting and deeming as reproducing the details of the procedural record of the appellee, as it conforms to the results of the process.

The extradition of Gerardo González Valencia requested by the competent authorities of the United States was granted under the following conditions:

1) The handing over is deferred until the party subject to the extradition request obtains his provisional release or definitive

Protected Material

release in the case that is followed in Uruguay before this IUE headquarters: 2-37467/2016

2)   the extradition granted is made upon condition that the authorities of the requesting state ensure that the party subject to the extradition request will not be judged or convicted for offenses other than those referred to in the request for extradition, with the exception of the cases enshrined in numbers 1 and 2 of the aforementioned article;

3)   the extradition granted is made upon condition that the requesting authorities grant guarantees considered sufficient by the national authorities involved in this proceeding, that, in the event that Gerardo González Valencia is convicted in the criminal proceeding that is intended to be initiated in the requesting country, a death penalty or a life in prison sentence will not be imposed on him;

4)   the competent authorities of the requesting State shall state [signature] whether they accept the conditions set forth in the previous numbers within forty days from the notification of this ruling.

**2)**   The defense of the defendant filed an appeal as it considers that the a-quo erroneously ordered the extradition of Gerardo González Valencia. It states that, although the legal principles of control were correctly identified, it ignored those principles by ordering extradition subject to inadequate conditions. In this regard, it argued the following:

1-   that the guarantees required from the United States are inadequate to protect Uruguayan principles.

2-   that the extradition request is substantially and formally defective and must be denied. It maintained that the a

[emblem:]
JUDICIAL
BRANCH

[seal:] [illegible]

quo was wrong in stating that a review of the content of the extradition request is not allowed to determine whether or not it is admissible. Without any in-depth examination, there is nothing more than submitting to the conclusions of the United States. The Treaty contains a number of provisions that demonstrate that an in-depth examination is required. The Uruguayan courts must conduct an in-depth examination of the facts to determine whether the application is supported by evidence showing probable cause. He stated that the crime his time-barred.

3-      the request does not enter into the Treaty because the alleged crime did not occur within the United States, therefore, the extradition petition must be denied.

4-      there is no double criminality. González Valencia is accused of conspiracy to distribute cocaine and methamphetamine for importation into the United States. There is no Uruguayan Criminal Code for the crime of drug distribution.

5-      there is no evidence provided to demonstrate a probable cause as required by the Treaty.

6-      the request is formally defective. It pointed out that the affidavit is formally and fundamentally defective because it contains a cover sheet that refers to a case that does not exist and was signed incorrectly by the Judge in the incorrect Court.

It ultimately claimed that the extradition request would not be made. The Court must previously ask the United States to present real evidence to support its request. That, if this is not granted, the United States authorities be required to grant sufficient guarantees prior to granting the extradition that the

death penalty, life in prison, or a penalty of more than 18 years of prison (the maximum penalty under Uruguayan law) will not be applied, nor will they add offenses or charges of an identical nature.

**3)**   The Public Prosecutor's Office answered the court's request, advocating with grounds for the maintenance of the appeal.

**4)**   The appeal was granted. The parties being summoned, the proceedings were under review in this Court, with the judgment being legally agreed upon.

**WHEREAS:**

**I)**   The Chamber, with the unanimous will of its natural members, will proceed to uphold the judgment under review, dismissing the grievances of the Defense that failed to disprove the solid grounds of the appellee.

**II)**   Formally, the case was developed correctly.

[signature]

**III)**   It is substantially consistent with the conclusions of the judgment under review, so it will be upheld.

**IV)**   By the appealed ruling, it was ordered to grant the extradition of Gerardo González Valencia to the US, subject to the conditions that were imposed therein.

**V)**   The extradition request complies with the legal requirements set forth in the Treaty on Extradition and Cooperation in Penal Matters signed between the Oriental Republic of Uruguay and the United States of America in 1973, which links our country to the US, which was ratified by Dec. Law 15,476:

   *   The formal extradition request appears to be added in

[hw:] *319*

these proceedings on pages 5 to 8.

[emblem:]
JUDICIAL
BRANCH

[seal:] [illegible]

> \* It is stated therein that Gerardo González Valencia is requested to be submitted to trial for charges of drug trafficking.

> \* It is indicated that, on April 19, 2016, the United States District Court for the District of Columbia issued an arrest warrant for him, which remains valid and enforceable.

> \* It is also noted that, among the relevant elements of the investigation, there is evidence that, from January 2003 to April 19, 2016, González Valencia had been the alleged leader of a drug trafficking organization based in Mexico, from which he would have transported several tons of cocaine and methamphetamines for import and distribution purposes in the United States. To do this, González Valencia would have coordinated the import and transfer of the narcotic substance (cocaine) from Colombia to Mexico, using for this trucks with trailers, boats, submarines, etc. and from there to the United States, which was the final destination. In turn, the chemical precursors would have moved them from Honduras to Mexico to produce methamphetamines, which would then have been transported in private planes from Mexico to the United States for distribution.

> **VI)** After submitting the request for extradition, based on the possible participation of González Valencia, in these events, the same was convened to the legal hearing, which after some extensions was fulfilled on May 29, 2017 (p. 160), in which he stated that he did not accept the request for extradition (abbreviated extradition procedure).

For the processing of the aforementioned application, not being provided for in the Treaty on Extradition and Cooperation in Criminal Matters signed between the Oriental Republic of Uruguay and the United States of America of 1973 ratified by Dec. Law 15,476, procedural rules for processing, the "a quo" Court, by analogous application, applied the procedural rules provided for the Treaty of Montevideo of 1940.

**VII)**   The grievances of the Defense are not admissible:

a.-   As regards the first grievance, that is, that there are no guarantees that must meet the conditions imposed in the judgment, it is not shared, as it is understood that they are adequate, since they are set in the judgment and must be accepted by the requesting state for the handing over of the party subject to the extradition request to be effective.

It was established as a condition that a death penalty or a life in prison sentence will not be imposed on him.

[signature]

The Defense intends to set as a condition on the requesting State, that a penalty that exceeds 18 years cannot be imposed, as this is the maximum penalty in our country.

This grievance is clearly to be rejected, since the punitive quantum will depend on the trial to be carried out in the requesting State and the conditions that cannot be violated are those indicated above, but among them, there is no legal maximum penalty (provided it is not life in prison).

b.-   With regard to the second grievance, it is understood that it cannot be admitted either. In the substantive aspect, it is taken into account that the S.C.J. has said that in the extradition procedure the only thing that must be assessed is the formal

Protected Material

[emblem:]
JUDICIAL
BRANCH

[seal:] [illegible]

legitimacy of the request, since any other consideration regarding the substance, i.e. the criminality of the offense or offenses for which the request is made, absolutely violates the principle of competence of the requesting authorities. The courts of the requested country that accept or reject the request for extradition are not competent to judge the merit of the case (Judgment No. 125 of 2015).

In the formal aspect, it is understood that the statute of limitations has not elapsed. In this sense, the position of the Public Prosecutor's Office and the a-quo are shared in that the facts would have occurred until the presentation of the accusation, which took place on April 19, 2016, without it being necessary to consider the possible evidence found in this sense (Text message, declaration of protected witnesses). This will have to be clarified in the trial to be carried out before the authorities of the requesting state.

c.-    The grievance relating to the fact that the offense was not committed within the territory of the United States is also not admissible. In effect, among the offenses referred to in the extradition request on page 6, the party subject to the extradition request would have transported several shipments with several tons of cocaine and methamphetamines from Mexico to the US, the final destination for the distribution of both cocaine and methamphetamines.

Therefore, it is not possible to reject a priori the request, in the grounds that the Defense claims, who argues that the crime was not committed in the territory of the requesting State, according to the extradition request, this is not so, since it is

Protected Material

based on the entry into the territory of the requesting State of several tons of cocaine and methamphetamines (transportation, importation and distribution of the same) and if there is an objection from the Defense, such circumstance will have to be resolved in the respective trial to be carried out in the requesting State.

d.- The grievance of double criminality is also not admissible, as the distribution of drug trafficking is classified as a crime in our country in Article 31 of Dec. Law 14.294, concordant and modifying, one of whose nuclear verbs is precisely to distribute (in addition, of transport and import).

**VIII)** In summary, the adjective and substantial requirements provided for in the Treaty on Extradition and Cooperation in Penal Matters signed between the Oriental Republic of Uruguay and the United States of America, on April 6, 1973, in force since April 11, 1984, were met in the [signature] proceedings.

It must be remembered that extradition is an act of inter-State judicial assistance in criminal matters that deals with the sending of a criminally charged or requested individual, from the sphere of sovereignty of one State to that of another.

Indeed, from the extradition scope, there are more and more bilateral and multilateral treaties, aimed at reaffirming international cooperation on the subject of the persecution of criminality.

Thus, the handing over of criminals is no longer an act of international courtesy "comitas gentium," but an imposition that emerges from the agreements, which could engage

international responsibility for the State that does not comply.

[emblem:]
JUDICIAL
BRANCH

[seal:] [illegible]

Concurrently with this incessant advancement of inter-State cooperation, it is absolutely incontrovertible today that extradition introduces the most burdensome and extreme instrument in the headquarters of international cooperation. And this is so due to the irreparable damages that the extradited subject may face.

Therefore, as a counterpart of the flexibility in cooperation and the latent risk of harm of the delivery is that it must be irremediably counteracted with a strong protection of the guardianship principles that protect the extradited person, as was done in the appealed ruling when conditions were set with which the requesting state must comply to make the handing over of the requested effective.

This set of guardianship principles, consigned through conditions for delivery found in the appealed ruling, ultimately grants legitimacy to both the action of the requesting Court and that of the party subject to the request. (Joao Marcelo de Araujo Junior - *Concepto y naturaleza jurídica de la extradición* [Concept and legal nature of the extradition] in *Curso de Cooperación Penal Internacional* [Course of International Criminal Cooperation] - Ed. Carlos Álvarez -Year 1994- Page 151; Jorge Pereyra Schurmann- *La extradición como instituto garantizador de los Derechos Humanos* [Extradition as a Human Rights Guarantee Institute] in *Rev. Ciencias Penales* [Criminal Sciences Rev.] No. 1 -Year 1995- Page 92, Carlos Alvarez Cozzi - *Extradición- El caso de los militares argentinos "carapintadas"* [Extradition- The case of Argentine military right-

Protected Material

wing ultranationalists] In *Rev. Jca. del CED* [CED Legal Rev.] No. 11 -Year 1996- Page 109)".

In summary, the grievances of the Defense lack not only legal virtuality, but also convictive power to modify the solid grounds on which the appealed ruling is based, and therefore, they will be rejected and the appealed ruling will be upheld.

On the basis of the foregoing, the provisions of the Treaty on Extradition and Cooperation in Criminal Matters signed between the Oriental Republic of Uruguay and the United States of America of 1973, ratified by Dec. Law 15.476, Treaty of Montevideo of 1940, art. 31 of Dec. Law 14.294, concordant and modifying, and Articles 253 and following of the CPP (Código del Proceso Penal [Code of Criminal Procedure]), **the Court, *RULES*:**

[signature]

***TO UPHOLD THE JUDGMENT OF THE FIRST INSTANCE UNDER APPEAL.***

***IT IS ORDERED THAT IT BE RETURNED TO THE COURT OF ORIGIN IN A TIMELY MANNER.***

[signature]                                   [signature]
Dr. Ángel Cal Shabán                Dr. Gabriela Merialdo Cobelli

Justice                                           Judge

[signature]
[stamp:] Dr. [LUIS] CHARLES [illegible]

[signature]
[stamp:] Mr. FERNANDO DURAN SANCHEZ
JUDGE OF THE COURT OF APPEALS
4th Rotation [illegible]

# *NOTIFICATION*

[emblem:]
JUDICIAL
BRANCH

> ### Criminal Court of Appeals 4th Rotation
> Yi 1523 ps.2º Tel 2900 3922 Fax 29089659

**Organized Crime Public Prosecutor's Office**

**Address: Delivered by Hand**

**In proceedings: "GONZALEZ VALENCIA, Gerardo" (IUE: 474-76/2016) notified you of Judgment No. 208 dated 02/10/2018, a copy of which is attached.-**

**Having been present at your home address, I hereby leave this**

**Notification on** [stamp:] OCT 25, 2018

**By court clerk**

.....................[signature].....................

**Notifier.**

[signature]

Protected Material



City of New York, State of New York, County of New York


I, Dan McCourt, hereby certify that the document "**00053245-00053255**" is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English.


_____
Dan McCourt


Sworn to before me this
June 29, 2023


_____
Signature, Notary Public




_____
Stamp, Notary Public


LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

1250 BROADWAY, 32ND FLOOR, NEW YORK, NY 10001  |  T 212.689.5555  |  F 212.689.1059  |  WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE