# **<u>EXHIBIT V</u>**

752



**SUPREMA CORTE
DE JUSTICIA**

//tencia No. 18                    MINISTRA REDACTORA:

DOCTORA ELENA MARTINEZ

Montevideo, once de febrero de dos mil veinte.

### VISTOS:

Para sentencia definitiva, estos autos caratulados: **"GONZALEZ VALENCIA, GERARDO. EXTRADICIÓN - CASACIÓN PENAL" - IUE: 474-76/2016.**

### RESULTANDO:

I) Por sentencia No. 13, de fecha 28 de agosto de 2017, el Juzgado Letrado de Primera Instancia en lo Penal Especializado en Crimen Organizado de 1° Turno, falló:

"*Concédese la extradición de Gerardo González Valencia solicitada por las autoridades competentes de Estados Unidos, bajo las siguientes condiciones: I) se difiere la entrega hasta que el requerido obtenga su excarcelación provisional o libertad definitiva en la causa que se le sigue en Uruguay ante esta Sede IUE 2-37467/2016; II) Se condiciona la extradición concedida a que las autoridades del Estado requirente aseguren que no se juzgará ni condenará al requerido por delitos distintos a los que refiere la solicitud de extradición, a excepción de los supuestos consagrados en los numerales 1 y 2 del citado artículo; III) se condiciona la extradición concedida a que las autoridades requirentes*

Protected Material

1

otorguen garantías consideradas suficientes por las autoridades nacionales intervinientes en este proceso, que en caso que Gerardo González Valencia resulte condenado en el proceso penal que se le pretende iniciar en el país requirente no se le impondrá pena de muerte ni pena de prisión perpetua; IV) las autoridades competentes del Estado requirente deberán expresar si aceptan las condiciones dispuestas en los numerales anteriores, dentro del plazo de cuarenta días a partir de la notificación del presente fallo (…)" (fs. 238/250).

II) Por sentencia No. 208, dictada el día 2 de octubre de 2018, por el Tribunal de Apelaciones en lo Penal de 4° Turno, se dispuso:

"Confirmase la sentencia de primera instancia apelada. (…)" (fs. 317/321 vta.).

III) Contra el antedicho fallo, la defensa de GONZALEZ VALENCIA interpuso el recurso de casación en estudio (fs. 334/344).

En tal sentido, sostuvo, en síntesis, lo siguiente.

a) Inicialmente, expresó que el Tribunal erró al aplicar el Tratado de Extradición y Cooperación en materia penal celebrado entre Estados Unidos de América y la República Oriental del Uruguay (de fecha 6 de abril de 1973 firmado en la ciudad de

2

00053801

353



**SUPREMA CORTE
DE JUSTICIA**

Washington), dado que tal acuerdo no refiere al caso de autos.

Recordó que GONZÁLEZ no se encuentra procesado o condenado, tal como exige el art. 1º "eiusdem".

Entendió que el Tratado aplicable a la causa es el de Asistencia Jurídica mutua en asuntos penales celebrado el 6 de mayo de 1991 y ratificado por nuestro país a través de la ley 16.431.

b) Alegó, como otro vicio del dispositivo atacado, que no se exigió prueba a los efectos de constatar los hechos narrados por el estado requirente.

Insistió en que el art. 10 del Tratado en su nral. 3 indica que "*la parte requerida podrá solicitar que la requirente presente pruebas suficientes para establecer 'prima facie' que la persona reclamada ha cometido el delito por el cual la extradición se formula, pudiendo la parte requerida denegar la extradición si un examen del caso demuestra que la orden de arresto es manifiestamente infundada*".

Mencionó que la simple declaración fiscal no es evidencia. Asimismo, cuestionó el rol que cumplen los testigos protegidos y el valor probatorio que las autoridades norteamericanas le otorgan a los mensajes de texto.

3

Protected Material

c) Indicó que a su criterio ha operado la prescripción de los delitos que se pretenden imputar.

Enfatizó que en el mejor de los casos el presunto ilícito ocurrió en el mes de agosto de 2007, mientras que la acusación data de fecha 19 de abril de 2016.

En consecuencia, aseveró que habiendo pasado más de cinco años el delito se encuentra prescripto, de acuerdo con las normas del país requirente.

d) Esgrimió peligro de violación de los derechos humanos en caso de concederse la extradición.

Mencionó -a vía de ejemplo- que el Tribunal Superior de Justicia de Irlanda rechazó la solicitud de los Estados Unidos de extraditar a un individuo que enfrenta un juicio debido a las severas condiciones de reclusión en dicho país.

Además, manifestó que para el caso de ser extraditado corre riesgo de ser condenado a cadena perpetua o incluso a la pena de muerte.

e) Refirió que debe considerarse también que GONZÁLEZ tiene una causa en Uruguay, donde la defensa al contestar la acusación fiscal solicitó la declaración ampliatoria del reo y sostuvo

4

00053803

754



**SUPREMA CORTE
DE JUSTICIA**

que corresponde a Derecho que esté en nuestro país a disposición de dicha causa hasta que sea condenado. Tal como surge del art. 8 de ambos Tratados en cuestión, el de 1973 y el de 1991, Uruguay tiene la facultad de aplazar la extradición en caso de que fuera concedida hasta la conclusión del proceso penal al que se encuentra sometido en nuestro país.

f) Finalmente, afirmó que la pena máxima a aplicar debería ser limitada al "quántum" más gravoso que establece el decreto-ley No. 14.294 y la ley No. 17.016, respecto al delito de análoga naturaleza, que es la establecida en el art. 31, o sea 18 años de penitenciaría. Entendió que se debe de agregar como condición, para el caso de que se haga lugar a la extradición, que la pena máxima a recaer sea de 18 años por ser el tope legal para un delito similar en nuestro país.

IV) Por providencia No. 219, de fecha 20 de febrero de 2019 (foja 357), se ordenó dar ingreso al recurso de casación movilizado.

V) Conferidos los respectivos traslados, compareció el Sr. Fiscal Letrado Especializado en Crimen Organizado, solicitando el rechazo de la impugnación (fs. 363/366); en igual sentido se pronunció el Sr. Fiscal de Corte (fs. 399/404).

00053804

5

VI) Por decreto No. 883, de 16 de mayo de 2019 (fojas 406), se dispuso el pasaje de los autos a estudio (fs. 406); concluido el estudio se acordó el dictado de sentencia para el día de hoy.

### CONSIDERANDO:

I) La Suprema Corte de Justicia, por unanimidad de sus miembros naturales, desestimará el recurso de casación interpuesto por el encausado, por los fundamentos jurídicos que se expresarán, pues los agravios articulados como sustento de la impugnación no resultan eficientes para resolver en sentido opuesto a lo decidido en segunda instancia.

II) De la extradición que tramita en autos y de los agravios articulados en casación.

La presente causa trata de la solicitud de extradición impetrada por Estados Unidos de América contra Gerardo GONZÁLEZ VALENCIA, a quien se le imputa la comisión de reiterados delitos vinculados con el tráfico de estupefacientes.

En dicho marco, recayeron sendas sentencias de mérito que habilitaron la entrega de GONZÁLEZ VALENCIA a las autoridades del Estado requirente, lo que motivó, por parte del nombrado, la presentación del recurso de casación en estudio.

En concreto, del libelo impugnativo se pueden identificar los siguientes

Protegido Material

6



SUPREMA CORTE
DE JUSTICIA

agravios:

1) agravios referidos a la aplicación en el caso del Tratado de Extradición y Cooperación en materia penal celebrado en el año 1973 entre la República Oriental del Uruguay y los Estados Unidos de América (ratificado en nuestro país por decreto-ley No. 15.476);

2) agravios relacionados con la alegada ausencia de prueba suficiente para conceder la extradición;

3) agravios relativos a la invocada prescripción de los delitos por los cuales se solicitó la extradición;

4) agravios vinculados al supuesto riesgo de violación a los derechos humanos en caso de concederse la extradición;

5) agravios asociados al invocado error al haberse diferido la entrega hasta la obtención de la excarcelación provisional o de la libertad definitiva; y

6) agravios ligados al pretendido error al no haberse condicionado la extradición a que la pena máxima a ser aplicada en el Estado requirente sea la de 18 años de penitenciaría.

En el orden propuesto, serán analizados en lo sucesivo.

Protected Material

7

III.1)   De los agravios referidos a la aplicación en el caso del Tratado de Extradición y Cooperación en materia penal celebrado en el año 1973 entre la República Oriental del Uruguay y los Estados Unidos de América (ratificado en nuestro país por decreto-ley nro. 15.476)

III.1.1)   Como primera línea de defensa, el recurrente señala que el Tribunal de Apelaciones incurrió en un error de derecho al sostener que el Tratado aplicable en relación a la solicitud de extradición incoada es el ratificado por el decreto-ley nro. 15.476.

Entiende que la solicitud se cursó a los efectos de someter a juicio al Sr. GONZÁLEZ VALENCIA y que dicha solicitud está basada en un Tratado que no resulta aplicable, por contravenir el estatuto jurídico del denunciado, quien al no haber sido procesado ni penado, no está sujeto al Tratado de 6 de abril de 1973.

Insiste en que, en la especie, el Tratado aplicable es el celebrado el 6 de mayo de 1991 entre el Estado Uruguayo y los Estados Unidos de América, sobre Asistencia Jurídica Mutua en Asuntos Penales, ratificado por ley No. 16.431.

A juicio de la Corte, el planteo recursivo no es  de recibo, pues el encuadre

8

00053807



**SUPREMA CORTE
DE JUSTICIA**

normativo del caso efectuado en ambas sentencias de mérito, resulta irreprochable.

En efecto, en el particular, se aplica el Tratado de Extradición y Cooperación en Materia Penal suscrito en Washington (EE.UU.), el 6 de abril de 1973, aprobado por decreto-ley No. 15.476 (en adelante: Tratado de 1973); en el entendido de que la situación jurídica de GONZÁLEZ VALENCIA se acopla perfectamente al supuesto previsto por la mentada norma bilateral.

Contra lo que dice el recurrente, el Tratado de 1973 no se ha visto derogado, modificado o sustituido por las previsiones del Tratado de Asistencia Jurídica Mutua en Asuntos Penales celebrado en Montevideo, el 6 de mayo de 1991, ratificado por ley No. 16.431 (en adelante: Tratado de 1991). Si bien dicho Tratado es posterior, ciertamente regula otro tipo de asistencia jurídica mutua en asuntos penales y no estrictamente a la extradición.

En verdad, las hipótesis que regula el Tratado de 1991 no refieren a la extradición de personas (la norma bilateral en ningún momento habla de extradición), sino que refiere a otro tipo de asistencia en materia penal.

En otras palabras: no resulta de aplicación el Tratado de 1991, por referir a grados

00053808

9

de cooperación de menor intensidad a la extradición, a saber: *"a. notificación de documentos; b. recepción de testimonios o declaraciones de personas, así como también la realización de peritajes y examen de objetos y lugares; c. localización o identificación de personas; d. notificación a testigos o peritos para la comparecencia voluntaria para prestar testimonios en el Estado requirente; e. traslado de personas sujetas a un proceso penal a efectos de comparecer como testigos o con otros propósitos expresamente indicados en la solicitud; f. Medidas cautelares o inmovilización de bienes; g. cumplimiento de solicitudes de registro y secuestro; h. entrega de documentos y otros elementos de prueba; i. inmovilización, confiscación o trasferencia de bienes confiscados, así como en materia de indemnizaciones y multas impuestas por sentencia penal; y j. cualquier otra forma de asistencia no prohibida por las leyes del Estado requerido para la investigación y enjuiciamiento de delitos"* (art. 2).

En este último sentido, la referencia a *"propósitos expresamente indicados en la solicitud"* (lit. e), como bien anota el Sr. Fiscal Letrado, *"no puede entenderse que pueda solicitarse por esta vía una extradición, pues se trata la extradición de un proceso sujeto a múltiples condiciones y requisitos, que deben estar expresamente previstos en la*

10

00053809



**SUPREMA CORTE
DE JUSTICIA**

*norma bilateral (delitos incluidos, delitos excluidos, plazos para cursar la solicitud, arresto preventivo, documentación exigible, formalidades, etc.) que no lo están en el Tratado de 1991"* (fs. 363 vta.).

Lo dicho resulta suficiente para repeler este primer sector del agravio.

III.1.2) En otro orden, como defensa subsidiaria, GONZÁLEZ VALENCIA aduce que no ha sido procesado ni condenado en los Estados Unidos de América, por lo que a su respecto no se verificarían los requisitos exigidos por el art. 1º del Tratado de 1973 para conceder la extradición.

Nuevamente, no le asiste razón.

A juicio de la Corte, el recurrente efectúa una lectura sesgada del art. 1º de la norma bilateral para sostener que hasta tanto no exista un procesamiento no se puede hacer lugar a la extradición.

En primer lugar, con criterio general, tal interpretación colide con los fundamentos y principios de la cooperación judicial internacional en materia penal.

No puede perderse de vista que a la hora de interpretar los Tratados (a diferencia de la interpretación que efectúa el impugnante) debe hacerse en la forma que favorezca el fin por el que

Protected Material

fueron convenidos, en el entendido de que deben regir las premisas de cooperación entre los estados y la tutela de la sociedad más allá del lugar físico en donde se encuentre el sujeto al cual se le pretende imputar el ilícito.

Tal como sobre el particular ha sostenido el Sr. Ministro de la Corte Dr. Tabaré SOSA AGUIRRE: "...*el criterio en materia de asistencia judicial internacional ha de ser de facilitarla, ampliarla y abreviar los trámites pertinentes en el aspecto procesal y reducir las condiciones en el plano sustantivo*" (cf. "Independencia judicial como condición para la cooperación internacional", publicado en "Curso de Cooperación Penal Internacional", Río de Janeiro 1994, Ed. Carlos Álvarez, Primera Edición, Montevideo, 1994, pág. 141).

En segundo lugar, en específica referencia a la interpretación de los términos "procesadas" y "condenadas", utilizados por el citado art. 1° del Tratado de 1973, estima la Corte que debe hacerse mediante la aplicación del criterio o método lógico-sistemático, conforme con el cual, corresponde acudir al contexto normativo, esto es, al resto del articulado del propio instrumento internacional en análisis (además del preámbulo y sus anexos), a efectos de indagar si el propio Tratado contiene alguna

12

00053811

758



**SUPREMA CORTE
DE JUSTICIA**

definición de los términos a ser interpretados (art.
31.1 de la Convención de Viena sobre el derecho de los
tratados).

De ahí que la defensa del
encausado se equivoca en pretender que el procesamiento
exigido por la norma debe entenderse en los términos
similares al ordenamiento doméstico.

En tal sentido, el propio
Tratado de 1973 refiere, en su art. 10 nral. 3, que
cuando "*el requerimiento se refiera a una persona que
aún no ha sido condenada, deberá ser **acompañado de una
orden de detención o de prisión o auto de procesamiento
judicial equivalente,** emanado de la autoridad competente
de la Parte requirente*" (tal como se verifica
"infolios").

Pretender sostener que se
requiera procesamiento o condena a la luz de los
términos que maneja nuestro ordenamiento es limitar la
cooperación en materia de extradición a sujetos que se
fugaron con anterioridad o posterioridad al
procesamiento, o a quienes se les realizó un juicio en
rebeldía en su contra.

Sucede que la interpretación
efectuada por la defensa choca con aristas básicas del
propio instituto de la extradición.

Al respecto, Manuel A. VIEIRA y

Protected Material

13

Carlos GARCÍA ALTOLAGUIRRE expresan: "...*cuando el indagado (persona contra la cual se ha reunido la prueba requerida por la ley interna para ser sometida a proceso y así lo ha requerido el Ministerio Público), el imputado (persona contra la cual se ha dictado un auto de procesamiento) o el condenado (persona contra la cual ha recaído una sentencia definitiva de condena) no se encuentra dentro de la jurisdicción territorial del juez que entienda en su causa, sino que se halla en otro país y no está dispuesto a comparecer voluntariamente ante el mismo, o sea, no tiene voluntad de acatar la sujeción procesal que le corresponde, dicho Magistrado cuenta con una herramienta tendiente a remediar esta dificultad, y asegurar el resultado del proceso a su cargo, que es el instituto de la extradición*" (cf. "Extradición", Ed. FCU, Primera Edición, Montevideo, 2001, pág.125).

Existe jurisprudencia constante de la Suprema Corte de Justicia en el entendido de que la exigencia debe limitarse a que el sujeto pueda ejercer su derecho de defensa en el proceso (v.gr.: sentencia No. 274/2002). En consecuencia, en numerosos fallos hizo lugar a extradiciones en causas cuyo procesamiento ocurrió en rebeldía.

En términos coincidentes, el Sr. Ministro de la Corte Dr. Tabaré SOSA AGUIRRE, siendo titular del Juzgado Letrado de Primera Instancia en lo

14

00053813





SUPREMA CORTE
DE JUSTICIA

Penal y de Menores de 2° Turno, por sentencia dictada el 19 de mayo de 1989, sentó las siguientes bases interpretativas:

"...*que la persona requerida nunca haya declarado ante una autoridad judicial es una petición de principio, pues no se puede poner como condición lo que es precisamente el objeto del proceso de extradición y que ello sea un presupuesto del enjuiciamiento en nuestro derecho, no cabe extenderlo a otras legislaciones. El único requisito (y considerado al ratificar el Tratado) es que existan en el Estado peticionante, en su caso, las garantías del debido proceso legal, pero las características o modalidades concretas que en cada país asume esta garantía es propio de cada Estado y en ello no cabe inmiscuirse*" (cf. LJU, caso individualizado con el No. 11.475).

Pues bien, con tales consideraciones en mente, corresponde abordar el análisis de esta fase del agravio.

La defensa de GONZÁLEZ VALENCIA interpreta que la referencia a personas que hayan sido "procesadas" implica el sometimiento al proceso penal en términos parangonables con el procesamiento regulado en el Código de Proceso Penal doméstico de 1980.

Sin embargo, como viene de decirse, la interpretación que formula es absolutamente

Protected Material

15

parcial y no responde al sentido natural y obvio que se infiere del análisis contextual de las disposiciones del Tratado.

En el caso, la conjunción disyuntiva "o" contenida en la norma última citada, indica la existencia de alternativas entre diversas opciones previstas en el Tratado, no exigiéndose que el sujeto objeto de la extradición haya sido derechamente sometido a proceso penal -en los términos definidos por la normativa vernácula-. La norma admite que la solicitud de extradición pueda estar acompañada de una orden de detención o de prisión, que son hipótesis más amplias al procesamiento, asociadas a un señalamiento por determinados delitos, que requieren la sujeción jurídica a un proceso penal.

Como bien señala el Sr. Fiscal de Corte: "El claro texto de la norma, no deja de dudas en cuanto a que resulta admisible la solicitud de extradición, aún cuando la persona no se encuentre "procesada", ya que para dar andamiento a esa petición, es suficiente la orden de detención.

Y tal extremo se cumple en las presentes actuaciones ya que, salvando las diferencias de terminología y procedimiento, surge agregada en autos, la formal orden de captura contra Gerardo González Valencia, emitida por el Tribunal de Distrito

16

00053815



SUPREMA CORTE
DE JUSTICIA

*de Estados Unidos para el Distrito de Colombia fechada el 19 de abril de 2016 (fs. 82)."* (fs. 402 vta.).

En la lógica del recurrente, únicamente podría requerirse la extradición de sujetos que hubieren sido -al menos- procesados en el país requerido, hipótesis que solo se podría dar en supuestos de procesos en rebeldía sin la presencia física del extraditable o en supuestos de fuga. Naturalmente, esta interpretación que formula el impugnante no resulta razonable, porque restringiría el campo de aplicación del Tratado.

En suma, en el marco del multicitado Tratado de 1973, no resulta compartible exigir el procesamiento o la condena por parte del Estado requirente para que nuestro país haga lugar a la extradición solicitada.

III.2) <u>De los agravios relacionados a la alegada ausencia de prueba suficiente para conceder la extradición.</u>

En este ámbito, el Tratado de 1973 requiere -como ya se vio- que cuando la persona cuya extradición se impetra no haya sido condenada, la solicitud deberá ser acompañada de: *"...una orden de detención o de prisión o del auto de procesamiento judicial equivalente, emanado de la autoridad competente de la Parte requirente."*. A esto añade que: *"La Parte*

Protected Material

*requerida podrá solicitar que la requirente presente pruebas suficientes para establecer 'Prima facie' que la persona reclamada ha cometido el delito por el cual la extradición se formula. La Parte requerida puede denegar la extradición si un examen del caso demuestra que la orden de arresto es manifiestamente infundada."* (art. 10.3).

En su expresión de agravios, GONZÁLEZ VALENCIA aseveró que el Tribunal ha aplicado incorrectamente esta norma, porque ha aceptado sin cuestionamiento el "decir" de fiscales y agentes del gobierno de Estados Unidos. Refirió que se consideraron como elementos probatorios los dichos de funcionarios gubernamentales del país requirente, que en estricto rigor no constituyen elementos de prueba. Insistió en que la opinión de estos agentes no es una evidencia.

La contrariedad a Derecho de la sentencia -según se afirma en la impugnación- derivaría de que el Tribunal aceptó que se extradite a GONZÁLEZ VALENCIA sin que previamente se haya demostrado que existen evidencias suficientes que conformen semiplena prueba para conceder la extradición. Reclama que Uruguay debe ser más exigente y solicitar al menos una ampliación de las evidencias presentadas, por no cumplir con el estándar de semiplena prueba. Reconoce que si bien en el juicio de extradición la jurisdicción

18

00053817



**SUPREMA CORTE
DE JUSTICIA**

requerida no debe examinar el mérito probatorio de la causa para determinar si el requerido es culpable o inocente, sí debe establecerse que existen elementos que configuran semiplena prueba, tal como lo exige la jurisprudencia uruguaya para dictar un auto de procesamiento.

En suma, refiere que la declaración jurada de funcionarios del gobierno del Estado requirente no satisfacen los requisitos del Tratado en orden a acreditar la causa probable de la extradición, pues se hace caudal de afirmaciones vagas y confusas como las que indican que el Sr. GONZÁLEZ VALENCIA es un narcotraficante, que no son evidencia, ni conforman indicios para justificar la decisión de extraditarlo a Estados Unidos de América.

Pues bien, en cuanto a este punto, tampoco le asiste razón a la recurrente.

De la lectura del Tratado de 1973 no emerge un apartamiento del sistema que, de regla, opera en nuestro país en materia de extradición, que es el llamado "sistema belga-holandés", según el cual solo cabe realizar un análisis formal de la solicitud de extradición, sin requerir un análisis sobre el fondo de la cuestión, ni la prueba de los hechos que se le atribuyen al sujeto extraditable. El juez no declara si el requerido es inocente o culpable, sino si

Protected Material

la solicitud cursada satisface los requisitos formales previstos en el Tratado.

En tal sentido, tal como recuerda el Sr. Fiscal Letrado (fs. 364 vta.), la Corte se ha pronunciado en múltiples oportunidades (sentencias Nos. 216/2003, 191/2005, 341/2006, 219/2007, 640/2012, 769/2012 y 125/2015).

En todo caso, como bien lo señala el Sr. Fiscal Letrado al evacuar el traslado del recurso, el Tratado faculta, pero no exige solicitar que el Estado requirente presente pruebas suficientes para establecer, "prima facie", que la persona reclamada ha cometido el delito por el cual la extradición se formula.

En efecto, la solicitud de prueba al amparo del art. 10 del Tratado de 1973 es una facultad que se le otorga al Juez al utilizar el verbo "podrá"; aserto que se verifica a partir de lo dispuesto en la parte final del precepto, donde se habilita la denegación de la extradición solo "*si un examen del caso demuestra que la orden de arresto es manifiestamente infundada*", concepto que no dice relación con el análisis y valoración de los elementos probatorios.

Por otra parte, como bien indica el Sr. Fiscal de Corte: "*La naturaleza discrecional de la norma, determina entonces que no*

20

00053819



**SUPREMA CORTE
DE JUSTICIA**

*pueda señalarse como error de derecho en esta instancia"*
(fs. 403).

En cualquier caso, no es posible advertir, a partir del examen de la solicitud de extradición, que la orden de arresto librada por las autoridades del Estado requirente sea "manifiestamente infundada", por lo que no se verifica ilegitimidad en el obrar de los órganos de mérito al haber concedido la extradición de marras.

El recurrente busca desconocer que los argumentos concernientes a la suficiencia de los elementos probatorios, en orden a acreditar la comisión del delito, son materia del juicio a desarrollarse en Estados Unidos de América, pero ajenos a este proceso jurisdiccional (cf. sentencia de la S.C.J. No. 145/2002, publicada en LJU, caso No. 14.492; y sentencia s/n, de fecha 26/12/1984, dictada por el TAP 3° T., publicada en la LJU, caso No. 10.356).

Sobre el punto, nuestra jurisprudencia ha dicho: "...*además, esa posibilidad de que el estado requirente presente pruebas suficientes es una potestad del Estado requerido, el texto dice 'la Parte requerida podrá solicitar que la requirente presente pruebas suficientes ...'.*

*La crítica que la recurrente hace de las pruebas de cargo en el num. 13 de fs. 202,*

en resumidas cuentas hablan de la seriedad de los procedimientos del requirente, y si finalmente no se prueba la participación del requerido en los ilícitos que se le atribuyen, seguramente al igual que los restantes involucrados en los hechos, saldrá indemne del juicio que se le siga.

La eficacia de las pruebas no es asunto en que deban pronunciarse nuestros tribunales sino que le corresponde hacerlo a los tribunales encargados de administrar justicia en el Estado requirente, lo contrario sería una intromisión inadmisible.

El conceder la extradición de ninguna manera significa que el extraditado vaya a ser condenado sino únicamente que será sometido a juicio con todas las garantías del debido con todas las seguridades que ello conlleva" (cf. sentencia No. 283/2000 del TAP 2° T., publicado en la LJU, caso No. 14.131).

Corolario de lo anterior es que no existe, a juicio de la Corte, reproche alguno a la labor jurisdiccional cumplida, en el entendido de que los requisitos formales (en especial los previstos en el artículo 10 del Tratado), fueron cumplidos. Los reproches que se efectúan a la prueba (fundamentalmente a la declaración de determinados testigos, evidencias que menciona el fiscal y mensaje de texto, entre otros),

22

00053821

763



**SUPREMA CORTE
DE JUSTICIA**

serán objeto de discusión ante la justicia estadounidense una vez que el sujeto sea extraditado.

Los Dres. VIEIRA y GARCÍA ALTOLAGUIRRE, en tal aspecto, sintetizaron: "...*la jurisprudencia uruguaya, en relación con la aportación de pruebas en el procedimiento de extradición es clara y uniforme en el sentido de mantener que en el sistema continental al que se afilia nuestro orden jurídico, no cabe la admisión de pruebas dirigidas a desvirtuar o a verificar los hechos relatados en la demanda extradicional. Esto quiere decir, que en el proceso de extradición no se puede juzgar, sobre el delito por el que se solicita al reclamado, ni realizar el control jurisdiccional sobre la consistencia de las pruebas en que se apoya la solicitud de extradición*" (ob. cit., pág. 430).

Asimismo, sobre la cuestión en análisis, este Colegiado ha dicho en sentencia No. 125/2015:

"*Corresponde tener presente que, como reiteradamente lo ha sostenido la Corporación, en el ámbito del proceso de extradición no corresponde ingresar al tratamiento de cuestiones de fondo, sino que el órgano jurisdiccional debe limitarse a controlar la regularidad formal del pedido y el cumplimiento de los requisitos establecidos en los tratados aplicables*

00053822

23

*(cfme. Sentencias de la Suprema Corte de Justicia Nos. 154/000 y 191/005, entre muchas otras).*

*Dicha premisa conceptual es consecuencia de la adopción por parte de la normativa convencional aplicable del sistema belga-holandés que, a diferencia de otros recogidos en derecho comparado, limita los poderes del Estado requerido impidiéndole pronunciarse sobre la probabilidad o verosimilitud de los hechos atribuidos.*

*En el procedimiento de extradición, lo único que debe valorarse es la legitimidad formal del pedido, puesto que toda otra consideración acerca del fondo, es decir de la tipicidad del o de los delitos por los que se cursa la solicitud, son absolutamente violatorios del principio de competencia de las autoridades requirentes. Los tribunales del país requerido que aceptan o no el pedido de extradición no son competentes para juzgar el mérito de la causa. En tal sentido De Olarte en su tratado sobre 'Extradición', pág. 49, afirmaba que el Juez que interviene no es convocado para declarar la inocencia o culpabilidad, porque 'la extradición no importa juicio ni castigo', limitándose su función a verificar si la solicitud es ajustada a las formalidades y exigencias sustanciales del Tratado Internacional ratificado por los dos Estados...' (cfme. Sentencia de la Suprema Corte*

24

00053823



**SUPREMA CORTE
DE JUSTICIA**

*de Justicia No. 154/999"* (ver además sentencia de la Corte No. 145/2002, publicada en LJU, caso No. 14.492).

Lo dicho justifica el rechazo de esta segunda fase de la impugnación.

III.3) <u>De los agravios relativos a la invocada prescripción de los delitos por los cuales se solicitó la extradición.</u>

El tercer planteo del recurrente refiere a la alegada prescripción de los delitos que se le pretenden imputar, en tanto -siempre a su criterio- emergería de la prueba aportada por los Estados Unidos de América que el presunto hecho delictivo habría tenido lugar el 20 de agosto de 2007, por lo que, a la fecha en que se realizó la acusación formal (19 de abril de 2016), había vencido el plazo de prescripción de cinco años previsto en la normativa vigente en el Estado requirente.

En concreto, afirma que en la prueba aportada por los Estados Unidos de América, existen dos testigos colaboradores, ex líderes de una organización de estupefacientes en México, que refieren a un cargamento de cocaína el 20 de agosto de 2007 e individualizan a GONZÁLEZ VALENCIA en ese accionar. Por lo tanto, en el caso, señala que la acusación formal data del 19 de abril de 2016, cuando ya habían transcurrido más de cinco años, por lo cual, el delito

00053824

25

prescribió.

Pues bien, a criterio de la Corte, el agravio resulta de rechazo, por la carencia de virtualidad jurídica y del escaso poder convictivo de su fundamentación.

Surge de la declaración jurada -en apoyo de la solicitud de extradición- prestada por la Fiscal Litigante de la Unidad Contra Narcóticos y Drogas Peligrosas de la División Penal del Departamento de Justicia de Estados Unidos que:

"*Debido a que la ley de prescripción aplicable es de cinco años, y a que la acusación, la cual alega violaciones penales que ocurrían entre enero de 2003 y abril de 2016, se presentó el 19 de abril de 2016, se le acusó a González Valencia dentro del plazo previsto de cinco años. De manera que la ley de prescripción no prohíbe la persecución penal en esta causa.*" (fs. 60).

Debe de verse que la Sección nro. 3282 del Título 18 del Código de Estados Unidos- Delitos no capitales, dispone que:

"*En general, con las excepciones expresamente previstas por la ley, ninguna persona será enjuiciada, o sancionada por ningún delito no capital, al menos que la acusación formal se funde o de la información se instituya dentro de los cinco años*

26

765



**SUPREMA CORTE
DE JUSTICIA**

siguientes después de que dicho delito se haya cometido." (fs. 67).

Entonces, si nos atenemos a la acusación formal realizada por el Jurado Indagatorio ante el Tribunal de Distrito de EE.UU., Distrito de Columbia, el requerido GONZÁLEZ VALENCIA: *"Desde aproximadamente enero de 2003, y de forma permanente a partir de entonces, hasta la fecha de presentación de esta Acusación, inclusive, siendo ambas fechas aproximadas e inclusive, en los países de México, Estados Unidos y otros lugares, el acusado, **GERARDO GONZÁLEZ VALENCIA, alias "Lalo", "Flaco", "Silver", "Silverio", "Eduardo", y "Laline"**, junto con otros, tanto conocidos como desconocidos al Jurado Indagatorio, conspiraron a consciente, intencionada y deliberadamente para: (1) de manera consciente e intencionada, distribuir cinco (5) kilogramos o más de una mezcla y sustancia que contenía una cantidad detectable de cocaína, una sustancia controlada de la Lista II; (2) de manera consciente e intencionada, distribuir (500) gramos o más de una mezcla o sustancia que contenía cantidad detectable de metanfetaminas, una sustancia controlada de la Lista II, pretendiendo y sabiendo que dichas sustancias serían introducidas ilícitamente en Estados desde un territorio externo…"* (fs. 77/78, el destacado está en el original).

00053826

27

Quiere decir que, como bien destacan tanto el Fiscal actuante, como el Sr. Fiscal de Corte, los cargos por los delitos que se le imputan refieren a hechos que se extienden desde el año 2003 hasta aproximadamente el momento en el que se cristaliza la acusación formal en Estados Unidos.

El recurrente, en forma parcializada, pretende ubicar la supuesta comisión de los delitos en el año 2007, a partir de las declaraciones testimoniales de los testigos colaboradores, pero ello se basa en una valoración aislada de los documentos que acompañan la solicitud de extradición.

Precisamente, porque el recurrente omite indicar que en la declaración jurada del Agente Especial de la DEA, Sr. Kyle J. MORI, se explica que: "*La investigación reveló que desde aproximadamente desde enero de 2003 hasta el 19 de abril de 2016, González Valencia, el dirigente de una organización de tráfico de estupefacientes basada en México, transportó cargamentos en cantidades de múltiples toneladas de cocaína y metanfetaminas desde México, para introducción y distribución en Estados Unidos…*" (fs. 85) y el investigador añadió que como parte de la investigación existieron comunicaciones electrónicas legalmente interceptadas.

28



SUPREMA CORTE
DE JUSTICIA

En efecto, el mentado Agente señaló que: "*Como parte de esta investigación, las autoridades del orden público legalmente interceptaron a González Valencia y sus co conspiradores por comunicaciones electrónicas. Lo que sigue a continuación es un resumen de unos mensajes de texto, legalmente interceptados en California, entre González Valencia y un co-conspirador.*

*El 26 de junio de 2013, en unos mensajes de texto legalmente interceptados, González Valencia y un co conspirador discutieron sobre si una transacción de narcotráfico fue consumada…González Valencia también habló sobre cantidades adicionales de drogas que se estaban preparando para enviar "allá arriba", lo cual creo que es una referencia a los Estados Unidos…*".

Por lo tanto, el argumento del recurrente de que la acción penal está prescripta, carece de todo asidero. En particular, porque los cargos no refieren exclusivamente a hechos que datan de agosto de 2007 (cargamento al que hacen referencia testigos colaboradores), sino a maniobras extendidas en el tiempo, en base a evidencia por interceptaciones telefónicas.

En el "sub-exámine", teniendo en consideración la evidencia sobre los intercambios por

29

00053828

mensajes de texto, entre GONZÁLEZ VALENCIA y un co-conspirador, que datan del año 2013, no puede razonablemente entenderse operada la prescripción de la acción penal, ya que la acusación formal fue presentada el 19 de abril de 2016, sin haber pasado los 5 años a los que refiere la normativa vigente en Estados Unidos.

De acuerdo al art. 5.3 del Tratado de 1973, no podrá concederse la extradición en ninguna circunstancia cuando la acción o la pena haya prescripto según las leyes del Estado requerido o requirente.

Por lo tanto, resta analizar si de acuerdo a la normativa interna de la República Oriental del Uruguay, la acción está (o no) prescripta.

El art. 117 del Código Penal, para supuestos como el de autos (que encuadraría en el art. 31 del Decreto-Ley 14.294), tiene un guarismo punitivo de dos a diez años de penitenciaría, por referir a un grupo delictivo organizado.

En función de ello, el literal c) del art. 117 del Código Penal prescribe que tratándose de delitos con una pena de penitenciaria cuyo máximo es mayor a dos años hasta los diez años, el delito prescribe a los diez años, por lo que -desde esta óptica- no cabe duda que la acción penal no está prescripta.

30

00053829



**SUPREMA CORTE
DE JUSTICIA**

En suma, no puede concluirse, al menos con los elementos a la vista, que el delito por el que se solicita la extradición se encuentre prescripto.

Además, tratándose de conductas interactivas por las que se reclama la extradición (continuidad o reiteración delictual), sea cual fuere el sistema, el comienzo del cómputo prescriptivo es la cesación de la ilicitud, extremo que ni siguiera fue alegado por la defensa letrada.

Nuevamente, cabe insistir en que las facultades del Estado requerido se encuentran limitadas en la materia, por resultar de aplicación el llamado sistema belga-holandés, según el cual aquel Estado debe estar a las resultancias de la solicitud del Estado requirente, por lo que, si surge de ésta que el delito se habría cometido de forma permanente hasta abril de 2016, es a dicha fecha que debe estarse como inicio del plazo de prescripción.

Lógicamente, ello no supone un juicio definitivo ni vinculante para el Estado requirente respecto a la no prescripción del delito imputado al sujeto extraditable, pues corresponderá a las autoridades de aquel Estado determinar, en el marco del juicio que habrá de seguirse al sujeto extraditado, si se configuró o no la prescripción del delito por el

Protected Material

cual se concede su entrega.

III.4)   De los agravios vinculados al supuesto riesgo de violación de los derechos humanos en caso de concederse la extradición.

El recurrente se agravió por entender que, de concederse la extradición, existe riesgo que se le imponga la pena de muerte o de prisión perpetua en Estados Unidos. Además, denunció que las condiciones de reclusión en Estados Unidos no brindan garantía alguna.

A criterio de la Corte, el agravio es de franco y total rechazo.

A decir verdad, la defensa no identifica cuál sería la regla de derecho violada por la sentencia atacada, limitándose a realizar una serie de apreciaciones genéricas sobre supuestas violaciones a los derechos humanos en aquel país, pero sin esgrimir un motivo válido habilitante de casación, por lo que el planteo no satisface las exigencias del art. 272 del C.P.P. de 1980, siendo este motivo suficiente para desestimar esta fase de la impugnación.

Más aún, no existe agravio en lo atinente a la eventual imposición de la pena de muerte, que es la única que contempla el Tratado vinculante en su artículo 7 para supeditar el otorgamiento de la extradición a que la parte requirente

00053831



**SUPREMA CORTE
DE JUSTICIA**

otorgue garantías consideradas suficientes por la parte requerida en el sentido que no será impuesta dicha sanción o que, de ser impuesta, tal pena no se aplicará.

Cabe observar entonces que la pena a aplicar está prevista en el Tratado sólo en dos supuestos, a saber, el mínimo punitorio de un año de prisión a cumplir (art. 2 in fine) y la máxima pena (la de muerte) donde se faculta a disponer como condición que la misma no será aplicada (art. 7).

A la luz de esta conclusión, es claramente improcedente tomar en cuenta la penalidad (ya sea en su contenido, monto o forma de aplicación), salvo esos dos excepcionales supuestos, para negar o condicionar la extradición.

En opinión de la Corte, sea cual fuere el método interpretativo, no puede desconocerse la primacía que tiene todo Tratado de extradición firmado por el Estado, dada su naturaleza específica y de fuente original de previsiones que no pueden alterarse salvo por medio de otro tratado o denuncia del vigente de acuerdo con las normas de derecho internacional público aplicables.

En efecto, por los Tratados de extradición, el Estado limita sus derechos soberanos en favor de lo que en aquellos se estipula, por lo que no puede prevalecer otra previsión que la consignada en su

cuerpo normativo.

Asimismo, el tenor de lo previsto por el art. 9 del propio Tratado es por demás claro en el sentido que el método interpretativo ha de ser el textual (de consuno con los métodos y reglas de interpretación consagrados en la Convención de Viena de 1969).

Por último, forzoso es significar que este carácter obligatorio, específico y taxativo, se impone a todos los órganos del Estado destinatario, sean jurisdiccionales o no (jueces o fiscales respectivamente).

Por otra parte, de acuerdo con lo dicho, en la medida de que el Tratado de extradición se encuentra vigente y no ha sido denunciado, no puede ser un argumento válido para negar la extradición el de las condiciones de cumplimiento de la pena en el Estado requirente. Si existiera ese riesgo, lo que correspondería es que el Estado uruguayo denunciara el Tratado; pero no resulta un argumento válido para incumplir -en definitiva esto es lo que propone el impugnante- el Tratado vigente.

Por otra parte, el riesgo de que se le imponga la pena de prisión perpetua o la pena de muerte, está conjurada porque la sentencia de primera instancia (confirmada por la impugnada) condicionó la

34



**SUPREMA CORTE
DE JUSTICIA**

concesión de la extradición a que las autoridades intervinientes aseguren que, en caso de ser condenado, no se le impondrá a GONZÁLEZ VALENCIA la pena de muerte ni de prisión perpetua (ver la parte dispositiva de la sentencia de primera instancia a fs. 250).

En suma, el agravio habrá de ser desestimado por las razones referidas.

III.5) <u>De los agravios asociados al invocado error al haberse diferido la entrega hasta la obtención de la excarcelación provisional o de la libertad definitiva.</u>

Al respecto, la defensa señala que se padeció error en la sentencia de primer grado, confirmada por la atacada, al afirmarse que se difiere la entrega hasta que el requerido obtenga su excarcelación provisional o libertad definitiva, pues el art. 8 del Tratado de 1973 dispone que la entrega podrá ser postergada "*hasta la conclusión del proceso y, en caso de condena hasta la extinción o cumplimiento de la pena*", sin hacer mención a la libertad obtenida en forma provisional.

En el punto, tampoco se advierte que las sentencias de mérito hayan incurrido en error de derecho, por lo que este sector de la impugnación también será desestimado.

El art. 8 del Tratado de 1973

00053834

establece:

"*Cuando la persona cuya extradición se solicita estuviera sometida a proceso o cumpliendo una condena en el territorio de la Parte requerida por un delito distinto a aquel por el que se solicita la extradición su entrega podrá ser postergada hasta la conclusión del proceso y, en caso de condena hasta la extinción o cumplimiento de la pena*".

Ciertamente, la norma faculta al Estado requerido a postergar la entrega del extraditado, en caso de que éste hubiera sido previamente condenado en aquel país, hasta la extinción o cumplimiento de la pena.

Empero, ello no supone que el Estado requerido deba necesariamente diferir la entrega del extraditable hasta que se cumpla o extinga la pena en su totalidad. Se trata de una condicionante que el Estado requerido puede o no imponer al conceder la extradición. En consecuencia, no existe ilegitimidad alguna en el hecho de permitir que, eventualmente, la entrega del sujeto requerido se haga antes de la extinción o cumplimiento total de la pena, si es que se verificara previamente la excarcelación provisional del extraditable.

III.6) De los agravios ligados al pretendido error al no haberse condicionado la

36



**SUPREMA CORTE
DE JUSTICIA**

extradición a que la pena máxima a ser aplicada en el
Estado requirente sea la de 18 años de penitenciaría.

El último planteo del
recurrente consiste en señalar que la extradición, en
caso de concederse, debería condicionarse a que la pena
máxima a aplicar al extraditado sea limitada al
"quantum" más gravoso que establece nuestra legislación
penal (decreto-ley No. 14.294 y ley No. 17.016) respecto
al delito de análoga naturaleza, o sea, 18 años de
penitenciaría.

Tampoco le asiste razón en el
punto.

El Tratado de 1973, ni los
Tratados de Montevideo de 1889 y 1940 aplicables en
subsidio, prevén que el Estado requerido imponga tal
condición al momento de conceder la extradición. La
determinación del "quantum" punitivo corresponderá que
sea efectuada por las autoridades judiciales del Estado
requirente, de acuerdo a la legislación aplicable, con
las limitantes indicadas en la sentencia de primera
instancia.

Con tales criterios en mente,
es correcto concluir que la individualización de la pena
será impuesta por el Estado requirente, conforme a su
normativa interna, condicionada en el presente caso a
que no podrá imponerse prisión perpetua, ni pena de

Protected Material

muerte. La imposición de las penas, dentro de los mínimos y máximos previstos en la legislación del Estado requirente, es una cuestión privativa de las autoridades judiciales de este último Estado, y en ello las autoridades judiciales del Estado requerido no deben inmiscuirse.

En consecuencia, por cuanto viene de decirse, el dispositivo impugnado no adolece de vicios que causen nulidad, lo cual determina la solución desestimatoria anunciada.

IV) De las costas y costos.

No existe mérito para imponer condenas causídicas en el grado (arts. 56.1 y 279 del C.G.P y art. 688 del C.C.).

Por los fundamentos expuestos, la Suprema Corte de Justicia, por unanimidad,

*FALLA*:

I) DESESTÍMASE EL RECURSO DE CASACIÓN INTERPUESTO; SIN ESPECIAL CONDENA PROCESAL.

II) ESTÍMANSE LOS HONORARIOS FICTOS EN 20 B.P.C.

III) NOTIFÍQUESE Y, OPORTUNAMENTE, DEVUÉLVESE.

DRA. BERNADETTE MINVIELLE
PRESIDENTE DE LA SUPREMA
CORTE DE JUSTICIA

00053837

38

**SUPREMA CORTE
DE JUSTICIA**

**DRA. ELENA MARTÍNEZ**
MINISTRA DE LA SUPREMA
CORTE DE JUSTICIA

**DR. EDUARDO TURELL**
MINISTRO DE LA SUPREMA
CORTE DE JUSTICIA

**DR. LUIS TOSI BOERI**
MINISTRO DE LA SUPREMA
CORTE DE JUSTICIA

**DR. TABARÉ SOSA AGUIRRE**
MINISTRO DE LA SUPREMA
CORTE DE JUSTICIA

**DR. GUSTAVO NICASTRO SEOANE**
SECRETARIO LETRADO DE LA SUPREMA
CORTE DE JUSTICIA

39

Protected Material

[hw:] *752*



SUPREMA CORTE
DE JUSTICIA   [logo:] SUPREME COURT OF JUSTICE

//Judgment No. [hw:] *18*                     DRAFTING JUDGE:

DOCTOR ELENA MARTINEZ

Montevideo, February eleventh, two thousand twenty.

### RECITALS:

For a final judgment, these proceedings are entitled: **"GONZALEZ VALENCIA, GERARDO. EXTRADITION - CRIMINAL CASSATION" - IUE: 474-76/2016.**

### RESULTING:

I) By Judgment No. 13, dated August 28, 2017, the Criminal Court of First Instance Specializing in Organized Crime, 1st Panel, ruled:

*"It is ordered to grant the extradition of Gerardo González Valencia requested by the competent authorities of the United States, under the following conditions: I) the hand-over be deferred until the party subject to the extradition request obtains his provisional release or definitive release in the case that is prosecuted in Uruguay before this Court, IUE 2-37467/2016; II) the extradition granted be conditioned on the authorities of the requesting State ensuring that the party subject to the request will not be judged or convicted for offenses other than those referred to in the extradition request, with the exception of the cases enshrined in sections 1 and 2 of the aforementioned article; III) the extradition granted be conditioned on the requesting authorities granting*

1

*guarantees considered sufficient by the national authorities involved in this trial that, in the event that Gerardo González Valencia is convicted in the criminal proceedings that are intended to be initiated in the requesting country, he shall not receive the death penalty or a sentence of life imprisonment; IV) the competent authorities of the requesting State must state whether they accept the conditions set forth in the previous sections within forty days from the notification of this ruling (…)"* (p. 238/250).

II) By judgment No. 208, issued on October 2, 2018, by the Criminal Court of Appeals, 4th Panel, the following was ordered:

*"The appealed Judgment of the Court of First Instance is confirmed. (…)"* (p. 317/321 reverse).

III) GONZALEZ VALENCIA's defense filed the appeal for cassation in question against the aforementioned ruling (p. 334/344).

In this regard, it argued the following, in summary.

a) Initially, it stated that the Court erred in applying the Treaty on Extradition and Cooperation in Criminal Matters between the United States of America and the Oriental Republic of Uruguay (dated April 6, 1973, signed in the city of Washington),

2

00053801

[hw:] *753*



[logo:] SUPREME COURT OF JUSTICE

since such agreement does not refer to the case at hand.

It recalled that GONZÁLEZ is not prosecuted or convicted, as required by Article 1 "eiusdem".

It considered that the Treaty applicable to the case is that of Mutual Legal Assistance in criminal matters, entered into on May 6, 1991 and ratified by our country through Law 16,431.

b) It alleged, as another defect of the challenged ruling, that no evidence was required for the purposes of verifying the facts narrated by the requesting State.

It insisted that Article 10 of the Treaty in its section 3 indicates that "*the requested party may request that the requesting party submit sufficient evidence to establish 'prima facie' that the person sought has committed the offense for which extradition is sought, and the requested party may refuse extradition if an examination of the case shows that the arrest warrant is manifestly unfounded*".

It mentioned that a simple tax return is not evidence. Likewise, it questioned the role of protected witnesses and the evidentiary value that the U.S. authorities grant to text messages.

c) It indicated that in its opinion, the statute of limitations of the crimes to be

3

00053802

charged applies.

It emphasized that at best the alleged wrongdoing occurred in August 2007, while the indictment is dated April 19, 2016.

Consequently, it asserted that since more than five years have passed since the offense, the statute of limitations has expired, according to the rules of the requesting country.

d) It claimed a danger of violation of human rights if the extradition was granted.

It mentioned – by way of example – that the High Court of Justice of Ireland rejected the request of the United States to extradite an individual facing trial due to the severe conditions of confinement in that country.

In addition, it stated that in the event of being extradited, he is at risk of being sentenced to life imprisonment or even death.

e) It stated that it should also be considered that GONZÁLEZ has a case in Uruguay, where the defense, when answering the prosecution's indictment, requested that the accused provide extended testimony and argued that it is in accordance with the Law applicable to this case in our country until he is sentenced. As arises from Art. 8 of both Treaties in question, that of 1973 and 1991, Uruguay has the power

4

00053803

[hw:] *754*



**SUPREMA CORTE
DE JUSTICIA**   [logo:] SUPREME COURT OF JUSTICE

to defer extradition, in the event that it is granted, until the conclusion of the criminal trial to which he is subject in our country.

   f)   Finally, it stated that the maximum penalty to be imposed should be limited to the most burdensome "quantum" established in Decree-Law No. 14,294 and Law No. 17,016, with respect to the crime of a similar nature, which is that established in Article 31, that is, 18 years of imprisonment.  It understood that it should be added as a condition, in the event that extradition is granted, that the maximum sentence to be imposed should be 18 years, since this is the legal limit for a similar offense in our country.

   IV) By Order No. 219, dated February 20, 2019 (page 357), it was ordered to admit the appeal for cassation filed.

   V)   Once the respective responses were made available, the Federal Prosecutor Specializing in Organized Crime appeared, requesting the rejection of the appeal (pages 363/366); the Court Prosecutor made the same pronouncement (pages 399/404).

   VI) By Decree No. 883, dated May 16, 2019 (p. 406), the transfer of the case to be examined was ordered (p. 406); once the examination was concluded, it was agreed that the judgment would be rendered today.

***WHEREAS:***

5

00053804

I) The Supreme Court of Justice, by unanimity of its natural members, will dismiss the Appeal for Cassation filed by the defendant, for the legal grounds that will be expressed, since the grievances set forth in support of the appeal are not effective to resolve to the contrary of what was decided in the Court of Second Instance.

II) <u>The extradition processed in court proceedings and the grievances set forth in cassation</u>.

This case deals with the extradition request filed by the United States of America against Gerardo GONZÁLEZ VALENCIA, who is accused of committing repeated offenses related to drug trafficking.

In this context, the above judgments were handed down that authorized the handing over of GONZÁLEZ VALENCIA to the authorities of the requesting State, which led to the filing of the Appeal for Cassation under review.

Specifically, the following grievances can be identified from the contesting petition:

1) grievances regarding the application in the case of the Treaty on Extradition and Cooperation in Criminal Matters entered into in 1973

6

00053805



SUPREMA CORTE
DE JUSTICIA   [logo:] SUPREME COURT OF JUSTICE

between the Oriental Republic of Uruguay and the United States of America (ratified in our country by Decree-Law No. 15,476);

2) grievances related to the alleged absence of sufficient evidence to grant the extradition;

3) grievances related to the invoked statute of limitations on the offenses for which the extradition was requested.

4) grievances related to the alleged risk of violation of human rights if the extradition is granted.

5) grievances associated with the alleged error in having deferred the hand-over until the provisional release or definitive freedom is obtained; and

6) grievances related to the alleged error in not having made the extradition conditional on the fact that the maximum sentence to be imposed in the requesting State be 18 years of imprisonment.

They will be analyzed hereinafter in the proposed order.

III.1)   The grievances referring to the application in the case of the Treaty on Extradition and Cooperation in Criminal Matters entered

7

00053806

into in 1973 between the Oriental Republic of Uruguay and the United States of America (ratified in our country by Decree-Law No. 15,476)

III.1.1) As the first line of defense, the appellant notes that the Court of Appeal committed a legal error by arguing that the Treaty applicable in relation to the request for extradition initiated is that ratified by Decree-Law no. 15,476.

It understands that the request was made for the purpose of subjecting Mr. GONZÁLEZ VALENCIA to trial and that said request is based on a Treaty that is not applicable, since it contravenes the legal status of the defendant, who, not having been prosecuted or convicted, is not subject to the Treaty of April 6, 1973.

It insists that, in the case in question, the applicable Treaty is the one concluded on May 6, 1991 between the Uruguayan State and the United States of America, on Treaty on Mutual Legal Assistance in Criminal Matters, ratified by law No. 16,431.

In the Court's opinion, the appeal is not admissible, since the legal framework of the case in the above judgments is irreproachable.

Indeed, in this regard, the Treaty on Extradition and Cooperation in Penal Matters signed in Washington (USA) on April 6, 1973, approved by

8

00053807

[hw:] *756*



SUPREMA CORTE
DE JUSTICIA   [logo:] SUPREME COURT OF JUSTICE

decree-law No. 15,476 (hereinafter: 1973 Treaty), is
applied, on the understanding that the legal status of
GONZÁLEZ VALENCIA fits perfectly with the assumption
provided for by the aforementioned bilateral regulation.

Against what the appellant says,
the 1973 Treaty has not been repealed, modified or
replaced by the provisions of the Treaty on Mutual Legal
Assistance in Criminal Matters held in Montevideo, on
May 6, 1991, ratified by law No. 16,431 (hereinafter:
1991 Treaty). While such a Treaty is subsequent, it
certainly regulates another type of mutual legal
assistance in criminal matters and not strictly to
extradition.

In fact, the hypotheses
regulated by the 1991 Treaty do not refer to the
extradition of persons (at no time does the bilateral
regulation refer to extradition), but to another type of
assistance in criminal matters.

In other words: the 1991 Treaty
does not apply, for referring to degrees of cooperation
of less intensity to extradition, namely:
"*a. notification of documents; b. receipt of
testimonies or statements from persons, as well as the
conducting of surveys and examination of objects and
places; c. location or identification of persons; d.
notification to witnesses or experts for the voluntary*

9

00053808

*appearance to give testimony in the requesting State; e.
transfer of persons subject to criminal proceedings for
the purpose of appearing as witnesses or for other
purposes expressly indicated in the application; f.
Precautionary measures or immobilization of property; g.
compliance with requests for search and seizure; h.
handing over of documents and other evidence; i.
immobilization, confiscation or transfer of confiscated
property, as well as in matters of compensation and fines
imposed by criminal judgment; and j. any other form of
assistance not prohibited by the laws of the requested
State for investigation and prosecution of
offenses"* (Art. 2).

In this last sense, the
reference to "*purposes expressly indicated in the
request*" (letter e), as the Federal Prosecutor notes "*it
cannot be understood that extradition can be requested
in this way, since extradition is a process subject to
multiple conditions and requirements, which must be
expressly provided for in the bilateral regulation
(included offenses, excluded offenses, deadlines for
making the request, preventive arrest, required
documentation, formalities, etc.) which are not provided
for in the 1991 Treaty*" (p. 363 reverse).

The foregoing is sufficient to
repel this first area of grievance.

10

00053809



SUPREMA CORTE
DE JUSTICIA   [logo:] SUPREME COURT OF JUSTICE

III.1.2)   In   another   vein,   as   a
subsidiary defense, GONZÁLEZ VALENCIA argues that he has
not been prosecuted or convicted in the United States of
America, for which reason the requirements of Article 1
of the 1973 Treaty to grant extradition would not be
met.

Again, he is incorrect.

In   the   Court's   opinion,   the
appellant makes a biased reading of Article 1 of the
bilateral regulation to argue that extradition cannot be
granted until there is an indictment.

First, as a general criterion,
such   an   interpretation   goes   against   the   bases   and
principles   of   international   judicial   cooperation   in
criminal matters.

It should not be overlooked that
when   interpreting   the   Treaties   (unlike   the
interpretation made by the appellant), this must be done
in a manner that favors the purpose for which they were
agreed,   in   the   understanding   that   the   premises   of
cooperation between States and the protection of society
must govern beyond the physical location of the subject
to which the wrongful act is being imputed.

As the Justice of the Court, Dr.
Tabaré SOSA AGUIRRE, has stated: "*...the criterion in
matters of international judicial assistance must be to*

11

00053810

*facilitate, expand and shorten the relevant procedures in the procedural aspect and reduce the conditions in the substantive aspect"* (see "Judicial independence as a condition for international cooperation", published in "Curso de Cooperación Penal Internacional (International Criminal Cooperation Course)", Rio de Janeiro 1994, Ed. Carlos Álvarez, First Edition, Montevideo, 1994, p. 141).

Secondly, with specific reference to the interpretation of the terms "prosecuted" and "convicted", used by the aforementioned Article 1 of the 1973 Treaty, the Court considers that this must be done by applying the logical-systematic criterion or method, according to which, it is necessary to resort to the regulatory context, that is, to the rest of the articles of the international instrument under analysis (in addition to the preamble and its annexes), in order to determine whether the Treaty itself contains any definition of the terms to be interpreted (Article 31.1 of the Vienna Convention on the Law of Treaties).

Hence, the defendant's defense is wrong in claiming that the prosecution required by the regulation should be understood in terms similar to the domestic system.

In this regard, the 1973 Treaty

12

00053811

[hw:] *758*



SUPREMA CORTE
DE JUSTICIA   [logo:] SUPREME COURT OF JUSTICE

itself refers, in Article 10(3), that when "*the request refers to a person who has not yet been convicted, it must be* **accompanied by a bench warrant or arrest warrant or an equivalent indictment,** *issued by the competent authority of the requesting Party*" (as verified by "extensive documents on record").

To claim that prosecution or conviction is required in light of the terms used in our legal system is to limit cooperation in extradition matters to individuals who fled before or after prosecution, or who were tried in absentia against them.

It so happens that the interpretation made by the defense clashes with basic aspects of the legal concept of extradition itself.

In this regard, Manuel A. VIEIRA and Carlos GARCÍA ALTOLAGUIRRE state: "*.... when the defendant (person against whom the evidence required by domestic law to be tried has been gathered and the Public Prosecutor's Office has so requested), the accused (person against whom an indictment has been issued) or the convicted person (person against whom a final judgment has been handed down) is not within the territorial jurisdiction of the judge hearing the case, but is in another country and is not willing to appear voluntarily before it, that is, is unwilling to comply with the procedural subjection that corresponds to him,*

13

00053812

*the Justice has a tool to remedy this difficulty, and ensure the outcome of the process he is responsible for, which is the legal concept of extradition"* (see "Extradición (Extradition)", Publisher FCU, First Edition, Montevideo, 2001, p.125. ).

There is consistent case law of the Supreme Court of Justice with the understanding that the requirement must be limited to the subject being able to exercise his right of defense in the proceedings (e.g.: Judgment No. 274/2002). Consequently, in numerous judgments it has granted extraditions in cases in which the prosecution occurred in absentia.

In coinciding terms, The Judge of the Court Dr. Tabaré SOSA AGUIRRE, presiding over the Court of First Instance in Criminal and Juvenile Matters, 2nd Panel, by judgment issued on May 19, 1989, established the following interpretative bases:

*"...that the defendant has never declared before a judicial authority is a petition for principle, since what is precisely the object of the extradition process cannot be established as a condition and that this is a trial requirement in our law, it is not possible to extend it to other legislations. The only requirement (and considered when ratifying the Treaty) is the existence in the requesting State, if applicable, of the guarantees of due process of law, but*

14

00053813

[hw:] *759*



SUPREMA CORTE
DE JUSTICIA   [logo:] SUPREME COURT OF JUSTICE

*the specific characteristics or modalities that this
guarantee assumes in each country is a matter for each
State and cannot be interfered with*" (see LJU (La
Justicia Uruguaya [Uruguayan Justice Journal]),
individualized case No. 11,475).

Well, with such considerations
in mind, it is appropriate to address the analysis of
this phase of grievance.

The defense of GONZÁLEZ VALENCIA
interprets the reference to persons who have been
"prosecuted" as implying submission to criminal
proceedings in terms comparable to the prosecution
regulated in the 1980 Domestic Code of Criminal
Procedure.

However, as has just been said,
the interpretation it sets out is absolutely partial and
does not respond to the natural and obvious meaning that
can be inferred from the contextual analysis of the
provisions of the Treaty.

In this case, the disjunctive
conjunction "or" contained in the last mentioned
regulation indicates the existence of alternatives among
various options provided for in the Treaty, not requiring
that the subject of the extradition has been directly
subjected to criminal proceedings -in the terms defined
by the relevant legislation-. The regulation admits that

15

00053814

the extradition request may be accompanied by a bench warrant or arrest warrant, which are broader hypotheses than prosecution, associated with an indictment for certain offenses, which require legal subjection to criminal proceedings.

As pointed out by the Court Prosecutor: *"The clear text of the regulation leaves no doubt that the extradition request is admissible, even when the person is not "processed", since the bench warrant is sufficient to give effect to the request.*

*And such a circumstance is fulfilled in these proceedings since, overcoming the differences in terminology and procedure, the formal arrest warrant against Gerardo González Valencia, issued by the United States District Court for the District of Colombia dated April 19, 2016 is added in the proceedings (p. 82)."* (p. 402 overleaf).

According to the appellant's logic, extradition could only be requested for individuals who have been - at least - prosecuted in the requested country, a hypothesis that could only occur in cases of proceedings in absentia without the physical presence of the party subject to the extradition request or in cases of absconding. Naturally, this interpretation the appellant sets out is not reasonable, as it would restrict the scope of application of the

16

00053815

[hw:] *760*



SUPREMA CORTE
DE JUSTICIA   [logo:] SUPREME COURT OF JUSTICE

Treaty.

In short, within the framework of the aforementioned 1973 Treaty, it is not comparable to require prosecution or conviction by the requesting State for our country to grant the requested extradition.

III.2)   <u>The grievances related to the alleged absence of sufficient evidence to grant the extradition.</u>.

In this context, the 1973 Treaty requires – as we have already seen – that when the person whose extradition is sought has not been convicted, the request must be accompanied by: "*a bench warrant or arrest warrant or the equivalent judicial indictment issued by the competent authority of the requesting Party.". To* this is added that: "*The requested Party may request that the requesting Party submit sufficient evidence to establish 'prima facie' that the person sought has committed the offense for which extradition is sought. The requested Party may deny extradition if an examination of the case shows that the arrest warrant is manifestly unfounded.*" (Article 10.3).

In his statement of grievances, GONZÁLEZ VALENCIA asserted that the Court has misapplied this regulation, because it has accepted without question the "say-so" of prosecutors and agents of the U.S. government. It stated that the statements of

17

00053816

government officials of the requesting country, which strictly do not constitute evidence, were considered evidence. It insisted that the opinion of these agents is not evidence.

The unlawfulness of the judgment -according to the challenge procedure- would derive from the fact that the Court accepted the extradition of GONZÁLEZ VALENCIA without having previously demonstrated that there was sufficient evidence that would constitute prima facie evidence to grant the extradition. It claims that Uruguay should be more demanding and request at least an expansion of the evidence presented, as it does not meet the standard of prima facie evidence. It recognizes that although in the extradition trial the requested jurisdiction must not examine the evidentiary merits of the case to determine whether the party subject to the extradition request is guilty or innocent, it must establish that there are elements that constitute prima facie evidence, as required by Uruguayan case law to issue an indictment.

In summary, it states that the affidavit of officials of the government of the requesting State does not satisfy the requirements of the Treaty in order to prove probable cause for extradition, since it is based on vague and confusing statements such as those indicating that Mr. GONZÁLEZ

18

00053817



SUPREMA CORTE
DE JUSTICIA   [logo:] SUPREME COURT OF JUSTICE

VALENCIA is a drug trafficker, which are not evidence, nor do they constitute evidence to justify the decision to extradite him to the United States of America.

Well, on this point, the appellant is not right either.

A reading of the 1973 Treaty does not reveal a departure from the system that, as a rule, operates in our country in extradition matters, which is the so-called "Belgian-Dutch system", according to which only a formal analysis of the extradition request can be made, without requiring an analysis of the merits of the matter, or proof of the facts attributed to the party subject to the extradition request. The judge does not declare whether the party subject to the extradition request is innocent or guilty, but only whether the request satisfies the formal requirements of the Treaty.

In this regard, as recalled by the Federal Prosecutor (p. 364 overleaf), the Court has ruled on multiple occasions (Judgments Nos. 216/2003, 191/2005, 341/2006, 219/2007, 640/2012, 769/2012 and 125/2015).

In any case, as the Federal Prosecutor correctly points out in his response to the appeal, the Treaty authorizes, but does not require, that the requesting State present sufficient evidence to

19

00053818

establish, "prima facie", that the person sought has committed the offense for which the extradition is being sought.

In effect, the request for evidence under Article 10 of the 1973 Treaty is a power granted to the Judge when using the verb "may"; an assertion that is verified by the final part of the precept, which allows the denial of extradition only "*if an examination of the case shows that the arrest warrant is manifestly unfounded"*, a concept that is not related to the analysis and evaluation of the evidentiary elements.

On the other hand, as indicated by the Court Prosecutor: "*The discretionary nature of the regulation then determines that it cannot be designated as an error of law in this instance*" (p. 403).

In any case, it is not possible to observe, from the examination of the extradition request, that the arrest warrant issued by the authorities of the requesting State is "manifestly unfounded", and therefore there is no illegitimacy in the actions of the merit bodies in having granted the extradition in question.

The appellant seeks to ignore that the arguments concerning the sufficiency of the evidentiary elements, in order to prove the commission

00053819

[hw:] *762*



SUPREMA CORTE
DE JUSTICIA   [logo:] SUPREME COURT OF JUSTICE

of the offense, are the subject of the trial to be held
in the United States of America, but outside the scope
of this jurisdictional proceeding (see Supreme Court of
Justice Judgment No. 145/2002, published in LJU, case
No. 14,492; and unnumbered judgment, dated 12/26/1984,
issued by the TAP (Tribunal de Apelaciones en lo Penal
[Court of Criminal Appeals]) 3rd Panel, published in
LJU, case No. 10,356).

On this point, our case law has
stated: "*...in addition, the possibility for the
requesting state to present sufficient evidence is a
power of the requested State, the text says 'the
requested Party may request that the requesting party
present sufficient evidence …'.*

*The appellant's criticism of the
prosecution's evidence in No. 13 of p. 202, in short,
speaks of the seriousness of the petitioner's
procedures, and if the participation of the party subject
to the extradition request in the offenses attributed to
him is not proven, he will surely, like the others
involved in the facts, emerge from the trial unscathed.*

*The effectiveness of the
evidence is not a matter for our courts to rule upon,
but for the courts in charge of administering justice* in
the *requesting State, otherwise it would be an
inadmissible interference.*

21

00053820

*Granting the extradition in no way means that the extradited person will be sentenced, but only that he will be tried with all the guarantees of due process with all the assurances that this entails*" (see Judgment No. 283/2000 of the Court of Criminal Appeals, 2nd Panel, published in LJU, case No. 14,131).

Corollary to the foregoing is that, in the opinion of the Court, there is no reproach to the jurisdictional work carried out, in the understanding that the formal requirements (especially those provided for in Article 10 of the Treaty) were complied with. The reproaches made to the evidence (mainly to the testimony of certain witnesses, evidence mentioned by the prosecutor and text messages, among others), will be subject to discussion before the U.S. justice system once the subject is extradited.

Drs. VIEIRA and GARCÍA ALTOLAGUIRRE, in this respect, summarized: "*... Uruguayan case law, in relation to the production of evidence in extradition proceedings, is clear and uniform in the sense of maintaining that in the civil law system to which our legal system is affiliated, the admission of evidence aimed at disproving or verifying the facts stated in the extradition request is not admissible. This means that in the extradition process*

22

00053821

[hw:] *763*



**SUPREMA CORTE DE JUSTICIA**   [logo:] SUPREME COURT OF JUSTICE

*it is not possible to judge the offense for which the defendant is requested, nor to carry out jurisdictional control over the consistency of the evidence on which the extradition request is based"* (op. cit., p. 430).

Likewise, on the matter under analysis, this Court has set out in judgment No. 125/2015:

*"It should be borne in mind that, as has been repeatedly held by the Court, in the scope of the extradition process it is not appropriate to enter into the substance of the case, but rather the jurisdictional body must limit itself to controlling the formal regularity of the request and compliance with the requirements established in the applicable treaties (pursuant to Judgments of the Supreme Court of Justice Nos. 154/000 and 191/005, among many others).*

*This conceptual premise is a consequence of the adoption by the applicable conventional rules of the Belgian-Dutch system which, unlike others in comparative law, limits the powers of the requested State by preventing it from ruling upon the probability or plausibility of the alleged facts.*

*In the extradition proceeding, the only thing that must be assessed is the formal legitimacy of the request, since any other consideration regarding the merits, which is to say, the classification*

23

00053822

*of the offense or offenses for which the request is made, are absolutely violated of the principle of competence of the requesting authorities. The courts of the requested country that accept or do not accept the request for extradition are not competent to rule on the merit of the case. In this sense, De Olarte, in his treatise on 'Extradition', p. 49, stated that the Judge involved is not summoned to declare innocence or guilt, because ?extradition does not imply trial or punishment? [sic], limiting its function to verifying if the request is in accordance with the formalities and substantial requirements of the International Treaty ratified by the two States…' (pursuant to Supreme Court of Justice Judgment No. 154/999)"* (see also Court Judgment No. 145/2002, published in LJU, case No. 14,492).

This justifies the rejection of this second phase of the challenge procedure.

III.3)    <u>The grievances relating to the invoked statute of limitations on the offenses for which the extradition was requested</u>.

The appellant's third argument refers to the alleged statute of limitations of the offenses with which he is allegedly charged, inasmuch as - still in his opinion - it would emerge from the evidence provided by the United States of America that the alleged criminal act would have taken place on August

Protected Material

24

[hw:] *764*



**SUPREMA CORTE DE JUSTICIA**   [logo:] SUPREME COURT OF JUSTICE

20, 2007, for which reason, as of the date on which the indictment was filed (April 19, 2016), the five-year statute of limitations period provided for in the rules in force in the requesting State had expired.

Specifically, he states that in the evidence provided by the United States of America, there are two collaborating witnesses, former leaders of a narcotics organization in Mexico, who refer to a shipment of cocaine on August 20, 2007 and identify GONZÁLEZ VALENCIA in that action. Therefore, in the case, he points out that the indictment dates from April 19, 2016, when more than five years had already elapsed, therefore, the offense was time-barred.

Well, in the Court's opinion, the grievance is to be rejected, due to the lack of legal merit and the weak evidentiary power of its legal basis.

It appears from the affidavit -in support of the extradition request- given by the Trial Attorney of the Narcotic and Dangerous Drug Section of the Criminal Division of the U.S. Department of Justice that:

"*Because the applicable statute of limitations is five years, and because the indictment, which alleges criminal violations occurring between January 2003 and April 2016, was filed on April 19, 2016, Gonzalez Valencia was charged within the five-year time*

25

00053824

*limit. So the statute of limitations does not prohibit criminal prosecution in this case."* (p. 60).

It should be noted that Section No. 3282 of Title 18, United States Code-Offenses not capital, provides that:

*"In general, with the exceptions expressly provided by law, no person shall be prosecuted, or punished for any non-capital offense, unless the indictment is founded or of the information is instituted within five years after such offense has been committed."* (p. 67).

Therefore, if we abide by the indictment brought by the Grand Jury before the U.S. District Court, District of Columbia, the party subject to the extradition request GONZÁLEZ VALENCIA: *"Since approximately January 2003, and continuously thereafter, up to and including the date of the filing of this Indictment, both dates being approximate and inclusive, in the countries of Mexico, the United States and elsewhere, the defendant,* **GERARDO GONZÁLEZ VALENCIA, alias "Lalo", "Flaco" [Skinny], "Silver", "Silverio", "Eduardo", and "Laline",** *together with others, both known and unknown to the Grand Jury, knowingly, intentionally and willfully conspired to: (1) knowingly and intentionally distribute five (5) kilograms or more of a mixture and substance containing a detectable amount*

26

00053825

[hw:] *765*



SUPREMA CORTE
DE JUSTICIA   [logo:] SUPREME COURT OF JUSTICE

*of cocaine, a Schedule II controlled substance; (2)
knowingly and intentionally distribute (500) grams or
more of a mixture or substance containing detectable
amount of methamphetamine, a Schedule II controlled
substance, intending and knowing that such substances
would be illegally brought into States from a foreign
territory…"* (p. 77/78, emphasis is in the original).

This means that, as both the
acting Prosecutor and the Court Prosecutor point out,
the charges for the offenses he is accused of refer to
events that extend from 2003 to approximately the time
when the indictment was filed in the United States.

The appellant, in a biased
manner, seeks to place the alleged commission of the
offenses in the year 2007, based on the witness
statements of the collaborating witnesses, but this is
based on an isolated assessment of the documents
accompanying the extradition request.

Precisely because the appellant
fails to indicate that in the affidavit of the Special
Agent of the DEA, Mr. Kyle J. MORI, it is explained that:
*"The investigation revealed that from approximately
January 2003 until April 19, 2016, Gonzalez Valencia,
the leader of a Mexico-based narcotics trafficking
organization, transported shipments in multi-ton
quantities of cocaine and methamphetamine from Mexico,*

27

00053826

*for introduction into and distribution in the United States…*" (p. 85) and the investigator added that as part of the investigation, there were legally intercepted electronic communications.

In effect, the aforementioned Agent pointed out that: "*As part of this investigation, law enforcement authorities lawfully intercepted Gonzalez Valencia and his co-conspirators via electronic communications. The following is a summary of* text *messages, legally intercepted in California, between González Valencia and a co-conspirator.*

*On June 26, 2013, in legally intercepted text messages, Gonzalez Valencia and a co-conspirator discussed whether a drug trafficking transaction was consummated...González Valencia also spoke about additional amounts of drugs being prepared to ship "up there," which I believe is a reference to the United States...".*

Therefore, the appellant's argument that the criminal action is time-barred by the statute of limitations is groundless. In particular, because the charges do not refer exclusively to facts dating back to August 2007 (the shipment referred to by collaborating witnesses), but to maneuvers extended over time, based on evidence from telephone interceptions.

In the "sub-examine", taking

28

00053827



SUPREMA CORTE
DE JUSTICIA   [logo:] SUPREME COURT OF JUSTICE

into consideration the evidence on the exchanges by text messages between GONZÁLEZ VALENCIA and a co-conspirator, which date back to 2013, it cannot reasonably be understood that the statute of limitations of the criminal action is time-barred, since the indictment was filed on April 19, 2016, without the 5 years referred to in the rules in force in the United States having passed.

According to Article 5.3 of the 1973 Treaty, extradition may not be granted under any circumstances when the statute of limitations is time-barred under the laws of the requested or requesting State.

Therefore, it remains to be analyzed whether the action is (or is not) time-barred by the statute of limitations under the domestic laws of the Oriental Republic of Uruguay.

Section 117 of the Criminal Code, for cases such as the one at hand (which would fall under Section 31 of Decree-Law 14.294), has a punitive term of two to ten years of imprisonment, since it refers to an organized criminal group.

Accordingly, letter c) of Article 117 of the Criminal Code provides that in the case of offenses with a maximum sentence of imprisonment of more than two years up to ten years, the statute of limitations expires after ten years, so that - from this

29

00053828

point of view - there is no doubt that the criminal action is not time-barred.

In sum, it cannot be concluded, at least with the elements at hand, that the offense for which extradition is requested is time-barred.

Furthermore, in the case of interactive conducts for which extradition is requested (continuity or recurrence of the offense), regardless of the system, the beginning of the statute of limitations is the cessation of the offense, which was not even alleged by the defense counsel.

Again, it should be emphasized that the powers of the requested State are limited in this matter, since the so-called Belgian-Dutch system applies, according to which the requested State must comply with the results of the request of the requesting State, so that, if it appears from the request that the offense would have been committed on a permanent basis until April 2016, it is that date that must be considered as the beginning of the statute of limitations period.

Logically, this does not imply a definitive or binding judgment for the requesting State with respect to there being no statute of limitations for the offense imputed to the party subject to the extradition request, since it will be up to the authorities of that State to determine, within the

30

00053829

[hw:] *767*



SUPREMA CORTE
DE JUSTICIA   [logo:] SUPREME COURT OF JUSTICE

framework of the trial to be followed by the extradited subject, whether or not the statute of limitations of the offense for which his handing over is granted has been established.

III.4)   <u>Grievances related to the alleged risk of violation of human rights in the event extradition is granted</u>.

The appellant complained that, if extradition is granted, there is a risk that he will be sentenced to death or life imprisonment in the United States. Furthermore, he denounced that the conditions of imprisonment in the United States do not provide any guarantees.

In the Court's opinion, the grievance is frankly and totally rejected.

To tell the truth, the defense does not identify which rule of law was violated by the judgment being challenged, limiting itself to making a series of generic assessments on alleged human rights violations in that country, but without presenting a valid ground for cassation, for which reason the argument does not meet the requirements of Article 272 of the 1980 CPP (Código del Proceso Penal [Code of Criminal Procedure]), this being sufficient reason to dismiss this phase of the challenge procedure.

Moreover, there is no grievance

31

00053830

with regard to the possible imposition of the death penalty, which is the only penalty considered in Article 7 of the Binding Treaty for granting of extradition that the requesting party provide assurances considered sufficient by the requested party that such penalty will not be imposed or that, if imposed, it will not be applied.

It should be noted then that the penalty to be imposed is provided for in the Treaty only in two cases, namely, the minimum penalty of one year of imprisonment to be served (Article 2 last part) and the maximum penalty (death penalty) where it is empowered to provide as a condition that it shall not be imposed (Article 7).

In light of this conclusion, it is clearly inappropriate to take into account the penalty (whether in its content, amount or form of application), except for these two exceptional cases, to deny extradition or extradite upon conditions.

In the opinion of the Court, whatever the interpretative method, the primacy of any Extradition Treaty signed by the State cannot be disregarded, given its specific nature and its original source of provisions that cannot be altered except by means of another treaty or denouncing of the one in force in accordance with the applicable rules of public

32

00053831

[hw:] *768*



SUPREMA CORTE
DE JUSTICIA   [logo:] SUPREME COURT OF JUSTICE

international law.

Indeed, by the extradition Treaties, the State limits its sovereign rights in favor of what is stipulated therein, so that no other provision than the one set forth in its regulatory body can prevail.

Furthermore, the wording of Article 9 of the Treaty itself is quite clear in the sense that the interpretative method must be textual (in accordance with the methods and rules of interpretation enshrined in the 1969 Vienna Convention).

Finally, it must be noted that this mandatory, specific and exhaustive nature is imposed on all bodies of the State to which it is addressed, whether they are jurisdictional or not (judges or prosecutors, respectively).

On the other hand, according to the above, to the extent that the Extradition Treaty is in force and has not been denounced, it cannot be a valid argument to deny extradition to the conditions for the fulfillment of the penalty in the requesting State. If such a risk existed, what would be appropriate is for the Uruguayan State to denounce the Treaty; but it is not a valid argument to breach -in short, this is what the appellant is proposing- the Treaty in force.

On the other hand, the risk of

33

being sentenced to life imprisonment or the death penalty is averted because the Judgment of Court of First Instance (confirmed by the contested judgment) conditioned the granting of extradition on the intervening authorities' assurances that, if convicted, GONZÁLEZ VALENCIA would not be sentenced to death or life imprisonment (see p. 250 of the decision of the first instance judgment).

As such, the grievance must be dismissed for the aforementioned reasons.

III.5)   <u>The grievances associated with the alleged error in having deferred the hand-over until the provisional release or definitive freedom is obtained</u>.

In this regard, the defense notes that there was an error in the first instance judgment, confirmed by the judgment being challenged, in stating that the handing over is deferred until the party subject to the extradition request obtains his provisional release or definitive freedom, since Article 8 of the 1973 Treaty provides that the handing over may be deferred "*until the conclusion of the proceedings and, in case of conviction, until the termination or completion of the sentence*", without mentioning the freedom obtained provisionally.

On this point, it is also not

34

00053833



**SUPREMA CORTE DE JUSTICIA** [logo:] SUPREME COURT OF JUSTICE

evident that the above judgments have incurred in an error of law, and therefore this part of the challenge procedure will also be dismissed.

Article 8 of the 1973 Treaty states:

*"When the person whose extradition is requested is being prosecuted or is serving a sentence in the territory of the requested Party for an offense other than that for which extradition is requested, his handing over may be postponed until the conclusion of the proceedings and, in the case of a conviction, until the sentence has expired or has been served".*

Certainly, the regulation empowers the requested State to postpone the handing over of the extradited person, in the event that they have been previously sentenced in that country, until the sentence has expired or has been served.

However, this does not imply that the requested State must necessarily defer the handing over of the party subject to the extradition request until the sentence is served or expired in its entirety. This is a condition that the requested State may or may not impose when granting extradition. Consequently, there is no illegitimacy whatsoever in allowing that, eventually, the handing over of the party

Protected Material

35

subject to the extradition request be made before the extinction or total serving of the sentence, if the provisional release of the party subject to the extradition request is previously verified.

III.6)     Grievances related to the alleged error in not having made the extradition conditional on the fact that the maximum sentence to be imposed in the requesting State be 18 years of imprisonment.

The appellant's last argument is that extradition, if granted, should be made upon conditions that the maximum penalty to be applied to the extradited person is limited to the most severe "quantum" established by our criminal legislation (Decree-Law No. 14,294 and Law No. 17,016) for an offense of a similar nature, that is, 18 years of imprisonment.

He is also incorrect in this point.

Neither the 1973 Treaty, nor the Montevideo Treaties of 1889 and 1940 applicable in the alternative, provide for the requested State to impose such a condition at the time of granting extradition. The determination of the punitive "quantum" shall be made by the judicial authorities of the requesting State, in accordance with the applicable legislation, with the limitations indicated in the Judgment of Court of First

36

00053835

[hw:] *770*



SUPREMA CORTE
DE JUSTICIA   [logo:] SUPREME COURT OF JUSTICE

Instance.

      With such criterion in mind, it is correct to conclude that sentencing will be imposed by the requesting State, in accordance with its domestic law, made upon conditions in the present case that neither life imprisonment nor the death penalty may be imposed. The imposition of penalties, within the minimum and maximum sentences provided for in the legislation of the requesting State, is a matter for the judicial authorities of the requesting State, and the judicial authorities of the requested State should not interfere.

      Consequently, as stated above, the appealed provision is not vitiated by defects that cause nullity, which leads to the rejection of the challenged provision.

      IV) <u>Court costs and fees</u>.

      There is no merit in imposing legal costs in the instance (Articles 56.1 and 279 of the CGP (Código General del Proceso [General Procedural Code]) and Article 688 of the CC).

      On the basis stated above, the Supreme Court of Justice, unanimously,

      ***RULES:***

      **I)   TO DISMISS THE APPEAL FOR CASSATION FILED; WITHOUT SPECIAL PROCEDURAL SENTENCE.**

      **II) TO ESTIMATE THE NOTIONAL FEES AT 20 B.P.C.**

37

00053836

**III) LET IT BE NOTIFIED AND PROMPTLY RETURNED.**

[signature]

**Dr. BERNADETTE MINVIELLE**
**PRESIDING JUDGE OF THE SUPREME COURT OF JUSTICE**

[signature]

**Dr. ELENA MARTINEZ**
**JUDGE OF THE SUPREME COURT OF JUSTICE**

[signature]

**DR. EDUARDO TURELL**
**JUDGE OF THE SUPREME COURT OF JUSTICE**

[signature]

**DR. LUIS TOSI BOERI**
**JUDGE OF THE SUPREME COURT OF JUSTICE**

[signature]

**DR. TABARÉ SOSA AGUIRRE**
**JUDGE OF THE SUPREME COURT OF JUSTICE**

[signature]

**DR. GUSTAVO NICASTRO SEOANE**
**COURT CLERK OF THE SUPREME COURT OF JUSTICE**

Protected Material

38



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Dan McCourt, hereby certify that the document "**00053800-00053838**" is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English.

_____
Dan McCourt

Sworn to before me this
June 29, 2023

_____
Signature, Notary Public



_____
Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

1250 BROADWAY, 32ND FLOOR, NEW YORK, NY 10001  |  T 212.689.5555  |  F 212.689.1059  |  WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE